IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| PEGGY JONES, as Administrator of the Estate and Personal Representative of Christy Dawn Varden, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) | 2:15cv34-MHT (WO) |
| THE CITY OF CLANTON, | ) ) | |
| Defendant. | ) | |

### JUDGMENT

In accordance with the opinion entered this date, it
is the ORDER, JUDGMENT, and DECREE of the court as
follow:

(1) The parties' joint motion for entry of final
judgment (doc. no. 72) is granted.

(2) The parties' settlement agreement (doc. no. 72)
is adopted as the order of the court.

(3) As expressly requested by the parties in their
joint motion for entry of final judgment (doc. no. 72) at

2, the following facial declaration is adopted and entered by the court:

> "The use of a secured bail schedule to detain a person after arrest, without a hearing on the merits that meets the requirements of the Fourteenth Amendment regarding the person's indigence and the sufficiency of the bail setting, is unconstitutional as applied to the indigent. Without such a hearing, no person may, consistent with the Fourteenth Amendment, continue to be held in custody after an arrest because the person is too poor to deposit a monetary sum set by a bail schedule. If the government offers release from custody after an arrest upon the deposit of money pursuant to a bail schedule, it cannot deny release from custody to a person, without a hearing regarding the person's indigence and the sufficiency of the bail setting, because the person is unable to deposit the amount specified by the schedule. See Pugh v. Rainwater, 572 F.2d 1053 (5th Cir. 1978); Bearden v. Georgia, 461 U.S. 660 (1983); and State v. Blake, 642 So. 2d 959 (Ala. 1994)."

(4) The parties are to comply with all terms of the settlement agreement (doc. no. 72) for the period set out in the agreement.

(5) Plaintiff's claims are dismissed with prejudice but with two exceptions: the court retains jurisdiction

(a) to enforce the settlement agreement (doc. no. 72) for the period set out in the agreement and (b) to resolve the matter of attorney's fees.

(6) Plaintiff Peggy Jones is allowed 42 days from today's date to file a motion for attorney's fees, costs, and expenses. The court will enter a briefing schedule after the motion is filed.

The clerk of the court is DIRECTED to enter this document on the civil docket as a final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

This case is closed.

DONE, this the 14th day of September, 2015.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| DONYA PIERCE et al., | ) |  |
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) | Case No. 4:15-cv-570-HEA |
| THE CITY OF VELDA CITY, | ) |  |
|  | ) |  |
| Defendant. | ) | (Class Action) |
|  | ) |  |

## ORDER

Based on the representations of the Parties, the Court orders the following:

1.  The Parties to the Settlement Agreement, which is Exhibit 1 to this Order, are

ordered to comply with its terms.

2.  The parties' motion for the entry of final declaratory relief is granted. The Court

hereby issues the following declaratory judgment:

> The use of a secured bail schedule to set the conditions for release of a person in
> custody after arrest for an offense that may be prosecuted by Velda City implicates
> the protections of the Equal Protection Clause when such a schedule is applied to
> the indigent. No person may, consistent with the Equal Protection Clause of the
> Fourteenth Amendment to the United States Constitution, be held in custody after
> an arrest because the person is too poor to post a monetary bond. If the government
> generally offers prompt release from custody after arrest upon posting a bond
> pursuant to a schedule, it cannot deny prompt release from custody to a person
> because the person is financially incapable of posting such a bond.

3.  The Plaintiffs' claims are hereby dismissed with prejudice subject only to the

further jurisdiction of this Court to enforce its injunction as set forth below.

4.  The Court further orders as follows:

>   a. The named Plaintiff and her undersigned counsel notify counsel for the City of
>   Velda City upon the discovery of any perceived breach of their settlement

agreement or the Court's order as set forth herein and give the City of Velda City a reasonable amount of time to cure such alleged breach. The named Plaintiff shall seek relief from the Court for such alleged breach only after such notice and a failure to cure within a reasonable time.

b. The City of Velda City shall, unless and until otherwise ordered by the Court, comply with the following:

    i. The City of Velda City and all of its officers, employees, and agents will not utilize secured money bail for persons in the custody of the City on arrest, either without a warrant or on the initial warrant issued, for any violation that may be prosecuted by the City.

    ii. The City of Velda City and all of its officers, employees, and agents will offer every person in the custody of the City on arrest, either without a warrant or on the initial warrant issued, for any violation that may be prosecuted by the City, release from the custody of the City on recognizance or on an unsecured bond as soon as practicable after booking. The only exception to this provision is such persons as are brought before the court within 24 hours of arrest for potential imposition of conditions for release other than the posting of money bond in cases involving intentionally assaultive or threatening conduct or for a determination that release must be denied to prevent danger to a victim, the community or any other person under applicable constitutional standards.[1] Persons who violate conditions of release shall be subject to such actions as determined by the court pursuant to applicable law without regard to any additional procedures set forth herein.

    iii. The City of Velda City will notify all arrestees in writing upon release of the time, date, and place at which they are required to appear in court, if any.

    iv. The City of Velda City will request the most recent address and contact information for any arrestees, and will update that information in any court file or record.

    v. The City will comply with the following principles for subsequent proceedings after the release of a person arrested without a warrant or on an initial warrant or after the issuance of a summons or citation for an offense that does not involve a custodial arrest:

        1. If the person does not appear for a court hearing as required, the City will send a letter by first class mail notifying the person that they missed their court date and providing a new court date. The City may also attempt to contact the person by telephone or text message to inform or remind the person about their court date.

---

[1] For the purposes of this agreement, the term "secured" bond means a monetary sum that must be paid or posted as a precondition of release from custody. The term "recognizance" means a person's release upon their promise to appear in court at a later date. The term "unsecured" bond does not require any up-front payment and is defined as a monetary sum that a person agrees to pay later if the person fails to appear as required without good cause.

    2. If the person does not appear at the subsequent court date discussed in (i), the City's municipal court may, in its discretion, issue a warning that a warrant may be issued for the person's arrest. The City will notify the person of the potential issuance of a warrant by first class mail and, in its discretion, by phone or text message. With such notification, the City will inform the person that they can avoid issuance of the warrant and receive a new court date by appearing in person at the office of the municipal court clerk during normal business hours, and executing a recognizance or unsecured bond.

        a. If the person does not request a new court date within 30 days, the City may issue and execute the arrest warrant. If the warrant is executed and the person is taken into custody, the City will release the person on unsecured bond with notice of a court date.

    3. If after actions described in (ii) the person fails to appear at a subsequent proceeding, the City's municipal court may, in its discretion, issue a warrant and the City may arrest the person. Upon arrest, the City may detain the person in custody without bond for up to 48 hours so that the person may be brought before a judge for the consideration of their underlying case and, if further proceedings are necessary, for individualized consideration of detention or conditions of release provided that no person will be denied pretrial release because of their individual inability to make a monetary payment.

    4. At any time after any non-appearance, the City may take appropriate and lawful steps under state law to convert any unsecured bond into a money judgment.

  vi. The City of Velda City will not hold an arrestee in its custody for another municipality on charges relating to ordinance violations for more than 4 hours.

  vii. Velda City police will not impound a car owned by a person arrested on charges of violations of an ordinance so long as the arrestee designates a licensed driver who will immediately take possession of the car and remove it from the scene of arrest, unless such car is to be held for investigation or evidence.

Dated this 3rd day of June, 2015

United States District Judge

3

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

PEGGY JONES, as                )
Administrator of the           )
Estate and Personal            )
Representative of Christy       )
Dawn Varden,                   )
                               )
        Plaintiff,             )
                               )     CIVIL ACTION NO.
        v.                     )      2:15cv34-MHT
                               )         (WO)
THE CITY OF CLANTON,           )
                               )
        Defendant.             )

### JUDGMENT

In accordance with the opinion entered this date, it is the ORDER, JUDGMENT, and DECREE of the court as follow:

(1) The parties' joint motion for entry of final judgment (doc. no. 72) is granted.

(2) The parties' settlement agreement (doc. no. 72) is adopted as the order of the court.

(3) As expressly requested by the parties in their joint motion for entry of final judgment (doc. no. 72) at

2, the following facial declaration is adopted and entered by the court:

> "The use of a secured bail schedule to detain a person after arrest, without a hearing on the merits that meets the requirements of the Fourteenth Amendment regarding the person's indigence and the sufficiency of the bail setting, is unconstitutional as applied to the indigent. Without such a hearing, no person may, consistent with the Fourteenth Amendment, continue to be held in custody after an arrest because the person is too poor to deposit a monetary sum set by a bail schedule. If the government offers release from custody after an arrest upon the deposit of money pursuant to a bail schedule, it cannot deny release from custody to a person, without a hearing regarding the person's indigence and the sufficiency of the bail setting, because the person is unable to deposit the amount specified by the schedule. <u>See</u> <u>Pugh v. Rainwater</u>, 572 F.2d 1053 (5th Cir. 1978); <u>Bearden v. Georgia</u>, 461 U.S. 660 (1983); and <u>State v. Blake</u>, 642 So. 2d 959 (Ala. 1994)."

(4) The parties are to comply with all terms of the settlement agreement (doc. no. 72) for the period set out in the agreement.

(5) Plaintiff's claims are dismissed with prejudice but with two exceptions: the court retains jurisdiction

(a) to enforce the settlement agreement (doc. no. 72) for the period set out in the agreement and (b) to resolve the matter of attorney's fees.

(6) Plaintiff Peggy Jones is allowed 42 days from today's date to file a motion for attorney's fees, costs, and expenses. The court will enter a briefing schedule after the motion is filed.

The clerk of the court is DIRECTED to enter this document on the civil docket as a final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

This case is closed.

DONE, this the 14th day of September, 2015.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| PEGGY JONES, as | ) | |
| Administrator of the | ) | |
| Estate and Personal | ) | |
| Representative of Christy | ) | |
| Dawn Varden, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
|     v. | ) | 2:15cv34-MHT |
| | ) | (WO) |
| THE CITY OF CLANTON, | ) | |
| | ) | |
|     Defendant. | ) | |

OPINION

Plaintiff Peggy Jones brings this 42 U.S.C. § 1983
case as administrator of the estate of Christy Dawn
Varden, the original plaintiff in this case, who is now
deceased.  Administrator Jones claims that, in violation
of the First, Eighth and Fourteenth Amendments, Varden
was jailed because she was too poor to pay a small amount
of bail money, which she was required to pay under the
terms of defendant City of Clanton's bail schedule.
Jurisdiction is proper under 28 U.S.C. §§ 1331 (federal
question) and 1343 (civil rights).

The litigation is now before the court on the parties' joint motion for entry of final judgment as to all matters excluding attorney's fees. Based on the representations made on the record on July 1, 2015, and after a review of the entire record, the motion will be granted.

## I.    BACKGROUND

Administrator Jones claims that Varden was unconstitutionally jailed because she could not afford to pay the amount of money set by the Clanton Municipal Court's generic bail schedule. Although the facts remain disputed, the court will briefly review them--as alleged by Jones--to give background for the court's decision to approve the settlement.

Administrator Jones alleges that Varden was arrested and jailed for four misdemeanor offenses: shoplifting, resisting arrest, failure to obey a police officer, and possession of drug paraphernalia. At the time of Varden's arrest, the Clanton Municipal Court utilized a

generic bail schedule for new misdemeanor arrests, a schedule from which it did not deviate: $ 500 per charge (and $ 1,000 per DUI charge). Those able to pay the amount of the bond always obtained immediate release. Those unable to pay were required to wait in jail until the next court date, typically held on Tuesday afternoons. The bail schedule required payment upfront and provided no option to secure release on recognizance or by an unsecured bond (that is, a promise to pay the amount only if one did not appear for the scheduled court date).[1]

Administrator Jones alleges that under the terms of the bail schedule, Varden could have been released immediately had she paid a bond of $ 500 per charge, or $ 2,000 in total. Varden was indigent, however, and too

---

1. Some people who cannot make this payment seek the assistance of third-party commercial bail agents, who typically charge an upfront fee of 10 %. Thus, a bonding agent would charge $ 50 for each $ 500 cash bond. However, the availability of third-party agents is not guaranteed, and agents are free to refuse to pay for the release of any arrestee. Further, some arrestees cannot afford even the 10 % fee.

poor to pay this amount. Because she was arrested on a Tuesday, after the weekly court hearings had already occurred, she would have been forced to remain in jail for seven days, until the next week's hearings, before any judge reviewed her imprisonment or determined that the required bail was appropriate and reasonable in the context of her individualized circumstances. However, upon learning of the lawsuit, the city released her from jail a day after her arrest.

Jones also alleges that at the time Varden was arrested, the municipal court enforced a policy of barring the public from its courtroom.

The parties agree that, in the time since this lawsuit was filed, the city's municipal-court policies as to both bail and public access have changed. Specifically, while the standard bail schedule for secured bonds remains the same, any person arrested on a misdemeanor violation is now released on an unsecured appearance bond as long as she has no outstanding warrant for failure to appear. Thus, the arrestee can be

4

released without any upfront payment, but will be required to pay the bond if she does not appear for her scheduled court date. An arrestee who has an outstanding failure-to-appear warrant is required to post a cash bond, commercial surety bond, or signatory bond (backed by real property) in the amount established by the bail schedule. The current policy also allows city officials to deny the release of anyone who poses a danger to herself or others or whose release is precluded by statute.

For a person who does not obtain immediate release under this policy, the municipal court will now hold a hearing within 48 hours of arrest to make an individualized determination as to whether the person may be released, and if so, under what conditions. The court understands the requirement in the city's current policy guaranteeing "the arrestee ... the opportunity to object to the bail amount set for him or her" to mean that the municipal court will consider objections regarding ability to pay in determining the necessity and

5

appropriate amount of bail and whether to use an alternative to bail. A new policy also allows the public access to the courtroom during court sessions.

## II. DISCUSSION

With the now pending joint motion for entry of final judgment and the settlement agreement in support of it, the parties seek a judgment that, among other things, (1) resolves all disputes in this matter with the exception of attorney's fees; (2) declares that the Clanton Municipal Court's current bail practices, as they are reflected in the settlement agreement, are facially constitutional; (3) requires that the parties comply with the settlement agreement; and (4) dismisses this litigation with the exception that the court retains jurisdiction to enforce the settlement agreement and to resolve the matter of attorney's fees.

Because a court's declaration reflects its own views, this court has an independent obligation to make sure that the declaration is accurate and appropriate. Having

6

reviewed the Clanton Municipal Court's current bail practices, the court, as explained below, agrees with the parties that, facially, they are consistent with applicable law and, as result, the court will enter the requested declaration.

The Fourteenth Amendment prohibits "punishing a person for his poverty," Bearden v. Georgia, 461 U.S. 660, 671 (1983), and this includes deprivations of liberty based on the inability to pay fixed-sum bail amounts. Indeed, this principle applies with special force to criminal defendants awaiting trial, who have not been found guilty of any crime. See United States v. Salerno, 481 U.S. 739, 750 (1987) (recognizing the fundamental nature of the right to pretrial liberty).

While the "[u]tilization of a master bond schedule provides speedy and convenient release for those who have no difficulty in meeting its requirements," "[t]he incarceration of those who cannot [meet them], without meaningful consideration of other possible alternatives, infringes on both due process and equal protection

7

requirements." Pugh v. Rainwater, 572 F.2d 1053, 1057 (5th Cir. 1978)[2].

Thus, the use of a secured bail schedule to detain a person after arrest, without an individualized hearing regarding the person's indigence and the need for bail or alternatives to bail, violates the Due Process Clause of the Fourteenth Amendment. See Pugh, 572 F.2d at 1056-57 ("[I]mprisonment solely because of indigent status is invidious discrimination and not constitutionally permissible. ... Such requirement as is necessary to provide reasonable assurance of the accused's presence at trial is constitutionally permissible. Any requirement in excess of that amount would be inherently punitive and run afoul of due process requirements."); Bearden, 461 U.S. at 673-74 (explaining, in the context of probation, that to deprive a person "of his conditional freedom simply because, through no fault of his own, he cannot

---

2. In Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

pay the fine ... would be contrary to the fundamental
fairness required by the Fourteenth Amendment."); <u>State
v. Blake</u>, 642 So. 2d 959, 968 (Ala. 1994) ("Under Alabama
law a defendant has an absolute right to bail in all
noncapital cases.  A system of bail based totally on some
form of monetary bail, and not providing for release on a
defendant's own recognizance in appropriate
circumstances, would be unconstitutional.") (internal
citations omitted).

Under this precedent, the court finds that, facially,
the Clanton Municipal Court's new bail policy, as
reflected in the municipal court's new standing order,
<u>see</u> joint motion for entry of final judgment (doc. no.
72-2) at 8-9, and the court's above explanation of its
understanding of that policy, <u>see</u> <u>supra</u> at 5-6, meets
constitutional due-process standards.  This court need
not--and will not--determine whether the new policy
merely constitutes the constitutional minimum or goes
beyond what is required.  But it does commend the city
and the municipal court for taking swift action to

9

rectify the former policies. Bail schemes such as the one formerly enforced in the municipal court result in the unnecessary pretrial detention of people whom our system of justice presumes to be innocent. This period of detention "has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness." Barker v. Wingo, 407 U.S. 514, 532 (1972). It can also impede the preparation of one's defense, see id. at 533 (noting that pretrial detention hinders a defendant's "ability to gather evidence, contact witnesses, or otherwise prepare his defense"); it can induce even the innocent to plead guilty so that they may secure a quicker release, see Andrew D. Leipold, "How the Pretrial Process Contributes to Wrongful Convictions," 42 Am. Crim. L. Rev. 1123, 1154 (2005); and it may result in a period of detention that exceeds the expected sentence, see Stephanos Bibas, "Plea Bargaining Outside the Shadow of Trial," 117 Harv. L. Rev. 2463, 2492 (2004). Moreover, unnecessary pretrial detention burdens States, localities, and taxpayers, and

10

its use appears widespread: nationwide, about 60 % of jail inmates are pretrial detainees, and the majority of those people are charged with nonviolent offenses. See Todd D. Minton and Zhen Zeng, U.S. Dep't of Justice, Bureau of Justice Statistics, Jail Inmates at Midyear 2014, at 4, http://www.bjs.gov/content/pub/pdf/jim14.pdf (PDF replication in this litigation (doc. no. 75)); Richard Williams, Bail or Jail, State Legislatures, May 2012, http://www.ncsl.org/research/civil-and-criminal-justice/ bail-or-jail.aspx (PDF replication in this litigation (doc. no. 75)).

Criminal defendants, presumed innocent, must not be confined in jail merely because they are poor. Justice that is blind to poverty and indiscriminately forces defendants to pay for their physical liberty is no justice at all. By enacting a new policy that takes account of the circumstances of those who come before its courts, the Clanton Municipal Court has made marked strides in improving the quality of the justice it delivers. Cf. Griffin v. Illinois, 351 U.S. 12, 16

11

(1956) ("Providing equal justice for poor and rich, weak and powerful alike is an age-old problem. People have never ceased to hope and strive to move closer to that goal.").

***

The court will, therefore, enter an appropriate judgment granting the parties' joint motion for entry of final judgment and, in accordance with that motion, (1) declaring that the Clanton Municipal Court's current bail policies are facially constitutional, (2) requiring that the parties comply with their settlement agreement, and (3) dismissing administrator Jones's claims with prejudice albeit with the exception that the court will

12

retain jurisdiction over the case to enforce the settlement agreement and adjudicate the matter of attorney's fees.

DONE, this the 14th day of September, 2015.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

ANTHONY COOPER,                      )
individually and on behalf of a      )
class of similarly situated people,  )
                                     )
         Plaintiffs,                 )
                                     )
v.                                   )   CASE NO. 1:15-CV-425-WKW
                                     )            [WO]
THE CITY OF DOTHAN,                  )
                                     )
         Defendant.                  )

## ORDER

Plaintiff Anthony Cooper has filed suit against the City of Dothan, Alabama

("the City"), on behalf of himself and similarly situated individuals, alleging that the

City's arrest and detention policies and practices routinely result in the confinement

of individuals solely due to their poverty in violation of the Fourteenth Amendment's

Due Process and Equal Protection clauses. Specifically, he argues that the City's

post-arrest detention scheme featuring preset and undifferentiated bond amounts

forces indigent individuals arrested on misdemeanor offenses to remain behind bars

for as long as a week, while allowing those who can afford the scheduled bond to

walk free. Before the court are the named Plaintiff's motion for temporary

restraining order or, in the alternative, motion for preliminary injunction (Doc. # 2)

and supplemental motion for temporary restraining order (Doc. # 6).

"A temporary restraining order protects against irreparable harm and preserves the status quo until a meaningful decision on the merits can be made." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1297 (11th Cir. 2005). A temporary restraining order may be issued without notice only if

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1)(A)–(B). Additionally, the elements that apply to a motion for preliminary injunction also govern the issuance of a temporary restraining order. *See Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034–35 (11th Cir. 2001). These four elements are "(1) a substantial likelihood of success on the merits, (2) a threat of irreparable injury, (3) that [the movant's] own injury would outweigh the injury to the nonmovant, and (4) that the injunction would not disserve the public interest." *Tefel v. Reno*, 180 F.3d 1286, 1295 (11th Cir. 1999). The movant bears the burden of establishing entitlement to a temporary restraining order. *See Parker*, 275 F.3d at 1034.

After careful consideration of the record, the court finds that the motion for a temporary restraining order is due to be granted in part and denied in part. The procedural requirements of Rule 65(b) for issuing a temporary restraining order without notice to Defendant are satisfied. An affidavit from Mr. Cooper has been

2

filed evidencing immediate and irreparable injury, as discussed below. Moreover, counsel for Mr. Cooper has certified his efforts to notify the City and has provided sufficient reasons why notice should not be required.

Mr. Cooper also has demonstrated the four elements required for temporary injunctive relief. First, he has highlighted long standing case law from the Fifth Circuit Court of Appeals, as well as from the Supreme Court of Alabama, that establishes the unconstitutionality of a pretrial detention scheme whereby indigent detainees are confined for periods of time solely due to their inability to tender monetary amounts in accordance with a master bond schedule, while those able to afford the preset bond may quickly purchase their release. *See Pugh v. Rainwater*, 572 F.2d 1053, 1057 (5th Cir. 1978) ("Utilization of a master bond schedule provides speedy and convenient release for those who have no difficulty meeting its requirements. The incarceration of those who cannot, without meaningful consideration of other possible alternatives, infringes on both due process and equal protection requirements.")[1]; *State v. Blake*, 642 So. 2d 959, 968 (Ala. 1994) (recognizing the unconstitutionality and irrationality of a bail scheme that allows "a defendant with financial means who is charged with a noncapital violent felony, and

---

[1] In *Bonner v. City of Prichard*, the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981. See 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

3

who may potentially pose a great threat to community safety," to "obtain immediate release simply by posting bail," while forcing an "indigent defendant charged with a relatively minor misdemeanor" to "remain incarcerated for a minimum of three days, and perhaps longer, before being able to obtain judicial public bail").

Furthermore, Mr. Cooper has brought to the court's attention a recent consent judgment from the Eastern District of Missouri in which a post-arrest detention scheme centered upon a secured bail system that failed to account for indigency was declared unconstitutional. *Pierce v. City of Velda City*, No. 4:15-cv-570-HEA (E.D. Mo. June 3, 2015). The similarity between the post-arrest practices of the City of Velda City, Missouri, and the City of Dothan, coupled with the constitutional principles espoused in *Pugh* and *Blake*, provide sufficient grounds to find that Mr. Cooper has a substantial likelihood of success on the merits of his challenge.[2]

Second, if a temporary restraining order is not entered, Mr. Cooper will remain confined at the City jail pending his initial appearance as a result of his inability to pay the schedule bond amount. Mr. Cooper has sufficiently demonstrated that this threat of injury is immediate and irreparable. Third, the alleged injury to Mr. Cooper would outweigh any injury to the City, and, as

---

[2] As the Fifth Circuit explained in *Pugh*, "We have no doubt that in the case of an indigent whose appearance at trial could reasonably be assured by one of the alternate forms of release, pretrial confinement for inability to post money bail would constitute imposition of an excessive restraint." 572 F. 2d at 1058.

4

demonstrated by Mr. Cooper, the City has constitutional alternatives to confining Mr. Cooper in response to his inability to pay the preset bond, while accounting for his future court appearance. Fourth, the public interest will not be disserved by Mr. Cooper's release from confinement.

Generally, security is required when a temporary restraining order issues. *See* Fed. R. Civ. P. 65(c). This is not the typical case, however, in that the present action is grounded upon Mr. Cooper's lack of financial resources. In light of Mr. Cooper's indigency, the ability of the City to secure Mr. Cooper's future appearance through alternative measures, and the court's determination that no costs or damages will be incurred by the City during the pendency of the temporary restraining order, no security bond will be required.

Accordingly, it is ORDERED that:

1.      The motion for temporary restraining order (Doc. # 2) is GRANTED insofar as the City is ORDERED to release Plaintiff Anthony Cooper immediately either on his own recognizance or subject to an unsecured bond or other reasonable and lawful non-financial conditions.

2.      Plaintiff's motion for temporary restraining order (Doc. # 2) is DENIED in all other respects.

3.      A hearing to determine whether to convert this temporary restraining order into a preliminary injunction is set for an evidentiary hearing on **June 26, 2015**

5

**at 10:00 a.m.,** at the Federal Building & U.S. Courthouse, 100 West Troy Street, Dothan, Alabama.

    4.    By **12:00 p.m., Monday, June 22, 2015,** Defendant is DIRECTED to respond to the motion for a preliminary injunction (Doc. # 2).

    5.    By **12:00 p.m., Thursday, June 25, 2015,** Plaintiff may file a reply to Defendant's response.

    6.    Plaintiff is DIRECTED to serve Defendant with a copy of this Order, and the Clerk of the Court is DIRECTED to fax to Defendant a copy of this Order.

    DONE this 18th day of June, 2015, at 10:00 a.m.

CHIEF UNITED STATES DISTRICT JUDGE