Phil Telfeyan (CA Bar No. 258270)
Katherine Hubbard (CA Bar No. 302729)
Attorneys, Equal Justice Under Law
601 Pennsylvania Avenue NW
South Building — Suite 900
Washington, D.C. 20004
(202) 505-2058
ptelfeyan@equaljusticeunderlaw.org
khubbard@equaljusticeunderlaw.org
*Attorneys for Plaintiffs Riana Buffin and Crystal Patterson*

# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RIANA BUFFIN and CRYSTAL PATTERSON, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY AND COUNTY OF SAN FRANCISCO,<br><br>Defendant. | Case No. 15-CV-4959 (YGR)<br>(Class Action) |

## AMENDED CLASS ACTION COMPLAINT

### Introduction

1. This case is about San Francisco keeping some of its poorest residents in jail because of their inability to make a monetary payment. Named Plaintiffs Riana Buffin and Crystal Patterson are indigent arrestees who were kept in the county jail solely because they were too poor to pay the amount of money San Francisco demanded for their release.

2. In San Francisco, arrestees face two different outcomes depending on their wealth status. If Ms. Buffin and Ms. Patterson had been rich enough to pay $30,000 and $150,000 respectively — like many wealthier people accused of the same offenses — they could have

walked out of their jail cells immediately under San Francisco's pay-for-freedom pretrial justice system. Because the only criterion standing between Plaintiffs and freedom was their ability to make a monetary payment, San Francisco operates a wealth-based detention scheme.

3. On behalf of the many other arrestees subjected to Defendant's unlawful wealth-based detention scheme, the named Plaintiffs in this action challenge the use of money bail to detain poor arrestees while letting rich arrestees free. Defendant's wealth-based detention scheme violates the Equal Protection and Due Process Clauses of the United States Constitution because it ties pretrial freedom to the ability to make a monetary payment, thus making freedom dependent on wealth-status.

4. By and through their attorneys and on behalf of themselves and all others similarly situated, the named Plaintiffs seek the vindication of their fundamental rights, injunctive relief preventing future wealth-based detention of all Class Members, and a declaration that Defendant cannot use money bail to detain any person solely because she is unable to make a monetary payment.

## Nature of the Action[1]

5. It is the policy and practice of the City and County of San Francisco to refuse to release arrestees from jail unless they pay their money bail amount. Plaintiffs seek declaratory and injunctive relief prohibiting Defendant's wealth-based detention scheme and requiring that pretrial release or detention decisions be based on factors other than wealth-status.

## Jurisdiction and Venue

6. This is a civil rights action arising under 42 U.S.C. § 1983 and 28 U.S.C. § 2201, *et seq.*, and the Fourteenth Amendment to the United States Constitution. This Court has

---

[1] Plaintiffs make the allegations in this Complaint based on personal knowledge as to matters in which they have had personal involvement and on information and belief as to all other matters.

Amended Class Action Complaint, 15-CV-4959          2

jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

7. Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

**Intradistrict Assignment**

8. Assignment to the San Francisco Division is proper pursuant to Civil L.R. 3-2(c). The events giving rise to this claim arise in the County of San Francisco.

**Parties**

9. Named Plaintiff Riana Buffin is a 19-year-old resident of Oakland. She lives with her mother, whose only source of income is disability payments, and her three younger brothers. Her two youngest brothers, ages 9 and 10, suffer from disabilities. She represents herself as an individual and represents a Class of similarly situated people subjected to Defendant's wealth-based detention scheme.

10. Named Plaintiff Crystal Patterson is a 29-year-old resident of San Francisco. She lives with and is the primary caregiver for her grandmother. Her mother is unemployed and homeless. She represents herself as an individual and represents a Class of similarly situated people subjected to Defendant's wealth-based detention scheme.

11. Defendant City and County of San Francisco is a local government entity organized under the laws of the State of California. The San Francisco Sheriff's Department is a division of San Francisco and operates the San Francisco County Jail. The Sheriff has charge of, and is the sole and exclusive authority to keep the county jail and the prisoners in it. Cal. Gov't Code § 26605; San Francisco Charter § 6.105. The Sheriff's Department detains inmates at the county jail and is authorized to issue and sign orders of release for pretrial detainees. *See* Cal. Pen. Code § 1269b(a).

12. The Sheriff's Department is headed by the San Francisco Sheriff, who is an

officer of San Francisco. The officers and employees of the Sheriff's Department are authorized to accept money bail, order the release of an arrestee, and set a time for an arrestee's appearance in state court. The Sheriff's Department, by policy and practice, detains arrestees too poor to afford their bail amount.

13. The Custody Division of the San Francisco Sheriff's Department is charged with the operations of all six of San Francisco's County Jails, the Hospital Ward, the Classification Unit, and the various Jail Programs.

14. The Sheriff is the final policymaker for Defendant with regard to release and detention decisions and Defendant's release/detention policy.

15. Under the Supremacy Clause, the United States Constitution is the supreme law of the land. All government officials must uphold the Equal Protection and Due Process Clauses of the Fourteenth Amendment, regardless of contrary instructions from state officials, local officials, or state judges. Additionally, upon taking office, the San Francisco Sheriff swears an oath to support and defend the Constitution of the United States.

16. Although state law contemplates and permits certain features of San Francisco's money bail system, San Francisco has a policy and practice of applying state law to detain individuals based on their inability to make a monetary payment. San Francisco is responsible for its application of its policies, including its release and detention policies.

17. The Sheriff's Department enforces San Francisco's money bail system.

18. California state law does not completely bind the decision-making authority of the Sheriff and Sheriff's Department with regard to release and detention decisions. For example, for those accused of non-violent felonies (absent those on felony probation or parole and those with multiple prior failures-to-appear), state law does not prevent release by the Sheriff's

Department immediately after booking without a hearing.  *See* Cal. Pen. Code §§ 1319, 1319.5.

19.     Defendant San Francisco is liable for its unconstitutional policies and practices — including the policies and practices of its officers and divisions — even if they are consistent with state law and even if they are consistent with orders of state judges.

## Factual Allegations

**A.  The Named Plaintiffs Were Held in Jail by the City and County of San Francisco Because They Were Unable To Pay Their Money Bail Amount**

20.     Ms. Buffin was arrested by San Francisco police on October 26, 2015.  She was accused of grand theft of personal property and conspiracy.

21.     Ms. Buffin was taken to jail and told that she would be released if she paid $30,000.  She was told that she would be kept in jail unless she paid $30,000.  *See* ECF 1-2, Declaration of Riana Buffin.

22.     Ms. Buffin is indigent.  She survived on the income she made working at the Oakland airport for approximately $10.25 per hour.  She lives with her mother, who has a disability and receives disability payments.  She is also a caretaker for her three younger brothers, two of whom have severe disabilities.

23.     Because of her indigence, Ms. Buffin was unable to pay her money bail amount.

24.     Ms. Buffin was not told when she would be brought to court and was never brought to court for an initial appearance.  After approximately 46 hours in jail, she was discharged when the District Attorney's Office decided not to file formal charges against her.

25.     Due to her detention, Ms. Buffin lost her job at the Oakland airport.

26.     Ms. Patterson was arrested by San Francisco police on October 27, 2015.  She was accused of assault with force causing great bodily injury.

27.     Ms. Patterson was taken to jail and told that she would be released if she paid

1  $150,000.  She was told that she would be kept in jail unless she paid $150,000.  *See* ECF 1-3,
2  Declaration of Crystal Patterson.

3  28. Ms. Patterson is indigent.  She survives on the income she makes doing in-home
4  care services for approximately $12.50 per hour.  She lives with her grandmother, who is
5  unemployed.  Because her mother is homeless and unemployed, Ms. Patterson is the primary
6  caregiver for her grandmother, and her income goes to supporting her and her grandmother's
7  basic necessities of life.

8  29. Due to her indigence, Ms. Patterson was unable to pay her money bail amount.

9  30. Ms. Patterson was not told when she would be brought to court and was never
10 brought to court for an initial appearance.  Desperate to get home to take care of her aging
11 grandmother, Ms. Patterson was able to convince relatives to pay 1% ($1,500) of her bail amount
12 to a private bail bond company.  Ms. Patterson (and a co-signor) agreed to pay the balance of
13 $15,000, financed over years "at the maximum rate of interest allowed by law."  After signing
14 the debt agreement and after several hours of processing by the private bail bond company, Ms.
15 Patterson was eventually released, having spent a total of approximately 31 hours in jail.

16 31. Hours after her release, Ms. Patterson's case was discharged when the District
17 Attorney's Office decided not to file formal charges against her.  Even though she does not face
18 any criminal charges, Ms. Patterson is still indebted to a private bail bond company for the
19 balance of her $15,000 debt, plus interest.  This is debt she never would have had to take on were
20 it not for the wealth-based detention Defendant imposed on her.

21 32. Had Ms. Patterson been wealthy enough to pay the full bail amount of $150,000
22 immediately, she would have been immediately released and would have had her full amount
23 returned to her when her case was discharged.

**B.  Defendant's Wealth-Based Detention Scheme Detains Arrestees Who Cannot Pay Their Money Bail Amount while Releasing Those Who Can Pay**

33. Upon arrest, all arrestees in San Francisco are transported to San Francisco County Jail #1 for booking. The Sheriff's Custody Division performs booking processes on all arrestees.

34. The San Francisco Sheriff's Department has a computerized Jail Management System, which records various data on all inmates in the county jail system. These records are updated on an ongoing basis as events occur, and include information about the time of arrest and the charge(s), the posting of any bail, and the date and time of release from custody.

35. The booking processes of arrestees includes searching arrestees, medical triage, photographing, fingerprinting to include warrant checks, classification to include a criminal history review, review by the O.R. Project for eligibility to be released on one's own recognizance, review for eligibility to be cited and released, DNA collection from persons arrested for felony charges, and inventory and storage of property.

36. The San Francisco Pretrial Diversion Project contracts with the Sheriff's Department to provide certain pretrial services, including the O.R. Project. Employees of the O.R. Project interview inmates in the county jail and prepare a workup to submit to a magistrate. The workup includes contacting references provided by the inmate. The process of obtaining release through the O.R. Project may take hours or several days.

37. At the end of booking processes, arrestees are given a booking sheet, which includes their booking charge and their bail amount. Bail is determined by referring to the Felony and Misdemeanor Bail Schedule as established by the Superior Court of California, County of San Francisco. Deputy sheriffs use this bail schedule, referring to an arrestee's booking charge(s), when determining an arrestee's bail amount.

38. Arrestees are told that if they pay their bail amount, they will be released immediately. They are told that if they cannot pay bail, they will remain in jail until arraignment or discharge, unless they are able to obtain release through the O.R. Project.

39. Arrestees who are not able to pay their money bail amount are shown a poster listing the phone numbers of bail bond agents and told that they may call one of these numbers to attempt to secure their release. Arrestees who obtain release through bail agents remain in jail while making arrangements with the agent such as finding cosigners for the bail bond contract. This process can take hours or days.

40. If an arrestee can afford to pay her bail amount, the Sheriff's Department accepts the money and orders the release of the arrestee.

41. If an arrestee cannot afford to pay her bail amount, the Sheriff's Department keeps her in jail until either she can make other arrangements to obtain her release, she is discharged, or she is taken to court 2 to 5 days later for arraignment.

42. The Sheriff's Department books approximately 18,000 individuals in county jail every year. On a typical day, the Sheriff's Department locks approximately 50 new arrestees in the county jail.

43. At any given time, approximately 85% of county jail inmates in San Francisco are being detained pretrial.

44. Although they are presumed innocent of the crime for which they have been arrested, more than 100 individuals at any given time are being detained by San Francisco solely because they cannot afford money bail.

45. Approximately 90% of pretrial detainees are held due to probation revocation proceedings, violation of terms of release, immigration detainers, or other holds. Even

1  discounting this percentage, San Francisco detains more than 1,800 individuals annually who are

2  in jail solely due to their wealth-status.

3  **C.  Defendant's Wealth-Based Detention Scheme Caused Plaintiffs To Be Held in Jail
4  Solely Due to Their Inability To Pay Bail**

6      46.     The named Plaintiffs would have been released from jail immediately if they paid

7  the amount of money required by Defendant.

8      47.     Arrestees are given a right to release pending trial, but Defendant's pay-for-

9  freedom system conditions their release on their ability to afford money bail, thus tying their

10 pretrial freedom to their wealth-status.

11     48.     The treatment of the named Plaintiffs and other Class Members is caused by and

12 is representative of Defendant's wealth-based detention policies and practices.

13     49.     As a matter of policy and practice, when the San Francisco Sheriff's Department

14 books a new arrestee at the county jail, county employees inform the arrestee that she will be

15 released from jail immediately if she pays her money bail amount. The arrestee is told that she

16 will remain in jail if she is not able to make that payment.

17     50.     It is the policy and practice of the Sheriff's Department to immediately release

18 those arrestees who pay their money bail amount.

19     51.     In a typical week, the Sheriff's Department releases dozens of individuals who

20 pay their money bail amount.

21     52.     It is the policy and practice of the Sheriff's Department to detain individuals who

22 do not pay their money bail amount. Before arraignment, it is the policy and practice of the

23 Sheriff's Department to detain individuals who do not pay the amount listed on the bail schedule.

24 After arraignment, it is the policy and practice of the Sheriff's Department to detain individuals

25 who do not pay the bail amount set by the Superior Court.

53. In a typical week, the Sheriff's Department detains dozens of individuals who do not pay their money bail amount.

54. The Sheriff and the Sheriff's Department have discretion to release arrestees from jail even if they have not paid their money bail amount.

55. The Sheriff and Sheriff's Department have a longstanding practice and custom — which constitutes the standard operating procedure of Defendant — of releasing those individuals who pay their money bail amount.

56. The Sheriff and Sheriff's Department have a longstanding practice and custom — which constitutes the standard operating procedure of Defendant — of detaining those individuals who cannot pay their money bail amount.

57. Under Defendant's pay-for-freedom system, those wealthy enough to pay their bail amount are immediately released from the county jail. Some poorer arrestees eventually make arrangements with private bail bond companies — arrangements that require significant time spent in jail not suffered by wealthier arrestees. And many others who are poorer still are left to languish in jail until the resolution of their case.

**D. None of the Alternatives to Bail Available in San Francisco Allow for Immediate Release of Arrestees**

58. Those arrestees too poor to pay for their freedom are not appointed counsel until their first appearance in court. Such arrestees could theoretically apply to a magistrate for release on lower bail or on own recognizance, but this process is functionally non-existent while arrestees remain unrepresented by counsel.

59. Some indigent arrestees are released without bail at the discretion of the O.R. Project, a service contracted by the Sheriff's Department. This service does not operate to release all arrestees, and it is not immediate. Even those eventually released under the O.R.

1 Project spend significant time in jail before their release.

2     60.     Wealthy arrestees do not have to wait in jail for any of these processes, because
3 the County grants them immediate release if they pay their money bail amount.

4     61.     By offering bail to arrestees, Defendant allows pretrial release, but condition that
5 release on an arrestee's wealth-status. Only those who can afford their money bail amount are
6 permitted pretrial release.

**E.     San Francisco's Use of Money Bail Is Not Narrowly Tailored — Nor Is It as Effective as Many Other Methods — in Securing Court Attendance or Public Safety**

10     62.     While tying pretrial freedom to wealth-status is the norm in San Francisco, other jurisdictions throughout the country do not hold people in jail because of their poverty. Instead of relying on money bail, these places release arrestees with pretrial supervision practices that can help increase court attendance and public safety without requiring detention. Pretrial services agencies in other counties employ numerous methods of maximizing public safety and court appearances, including reporting obligations, phone and text message reminders of court dates, rides to court for those without transportation or a stable address, counseling, drug and alcohol treatment, batterer intervention programs, anger management courses, reporting obligations, SCRAM bracelets (for alcohol testing), or electronic monitoring, among other services, when necessary to guard against a particular risk.

20     63.     Other jurisdictions also employ non-monetary conditions of release, including unsecured or "signature" bonds (which do not require payment up front), stay-away orders, curfews, or even home detention, further contributing to high public safety and court appearance rates.

24     64.     San Francisco can and does use such pretrial services, but only tangentially. The majority of arrestees booked in San Francisco County Jail are processed and detained through

1  San Francisco's money bail scheme rather than non-monetary supervision methods.

2       65.    Jurisdictions with robust pretrial services and non-monetary conditions of release
3  often achieve court-appearance rates over 90%, with more than 85% of those released pretrial
4  remaining arrest-free (and 98–99% remaining arrest-free for violent crimes).

5       66.    Unnecessary pretrial detention causes instability in employment, housing, and
6  care for dependent relatives. Studies show that those detained pretrial face worse outcomes at
7  trial and sentencing than those released pretrial, even when charged with the same offenses.
8  Detained defendants are more likely to plead guilty just to shorten their jail time, even if they are
9  innocent. They have a harder time preparing for their defense, gathering evidence and witnesses,
10 and meeting with their lawyers. Studies also show that just two days of pretrial detention
11 increases the likelihood of future arrests.

12      67.    Pretrial detention is more than ten times more expensive than effective pretrial
13 supervision programs. Through non-monetary tools, pretrial supervision programs can save
14 taxpayer expense while maintaining high public safety and court appearance rates.

15      68.    Although money bail is the central component of Defendant's pretrial justice
16 system, in limited circumstances Defendant can and does rely on a variety on non-wealth-based
17 metrics to make release/detention decisions. For example, Defendant decides to detain arrestees
18 (without money bail) who have violated probation, have violated terms of release, have
19 immigration detainers, or have other holds. Defendant can also detain individuals accused of
20 certain serious crimes without money bail. Similarly, Defendant can release arrestees without
21 requiring money bail.

22      **Class Action Allegations**

23      69.    The named Plaintiffs bring this action, on behalf of themselves and all others

similarly situated, to assert the claims alleged in this Complaint on a common basis.

70. A class action is a superior means, and the only practicable means, by which the named Plaintiffs and unknown Class Members can challenge Defendant's unlawful wealth-based detention scheme.

71. This action is brought and may properly be maintained as a Class action pursuant to Rule 23(a)(1)–(4) and Rule 23(b)(2) of the Federal Rules of Civil Procedure.

72. This action satisfies the numerosity, commonality, typicality, and adequacy requirements of those provisions.

73. Plaintiffs propose one Class seeking declaratory and injunctive relief. The Declaratory and Injunctive Class is defined as: all arrestees who are or will be in the custody of the City and County of San Francisco and are or will be detained for any amount of time because they are unable to pay money bail.

**A.     Numerosity — Fed. R. Civ. P. 23(a)(1)**

74. The San Francisco County Jail detains approximately 18,000 individuals annually. Of those, approximately 85% are detained pretrial. Those arrestees who are not held due to probation revocation proceedings, violation of terms of release, immigration detainers, or other holds are presented with San Francisco's standard money bail choice of pay or jail.

75. Some arrestees are able to pay for release immediately. Those not able to pay are held in the county jail pursuant to Defendant's wealth-based detention scheme.

76. The number of current and future arrestees detained pursuant to Defendant's wealth-based detention scheme — if it is not enjoined — is well into the hundreds.

**B.     Commonality — Fed. R. Civ. P. 23(a)(2)**

77. The relief sought is common to all Class Members, and common questions of law

and fact exist as to all Class Members. The named Plaintiffs seek relief concerning whether Defendant's policies, practices, and procedures violate the rights of the Class Members and relief mandating Defendant to change its policies, practices, and procedures so that the constitutional rights of the Class Members will be protected in the future.

78. These common legal and factual questions arise from one set of policies and practices: Defendant's wealth-based detention scheme. Defendant operates this scheme in materially the same manner every day. The material components of the scheme do not vary from Class Member to Class Member, and the resolution of these legal and factual issues will determine whether all Class Members are entitled to the relief they seek.

Among the most important, but not the only, common questions of fact are:

- Does San Francisco have a policy and practice of requiring money bail as a prerequisite for post-arrest release?
- Does San Francisco immediately release those arrestees wealthy enough to pay their money bail amount?
- Does San Francisco detain, for any amount of time, those arrestees too poor to pay their money bail amount solely because they cannot make that monetary payment?

79. Among the most important common question of law are:

- Do the Equal Protection and Due Process Clauses prohibit the government from jailing an individual solely due to her inability to make a monetary payment?
- Does jailing an individual due solely to her inability to afford money bail constitute jailing her due to her inability to make a monetary payment?

**C.   Typicality — Fed. R. Civ. P. 23(a)(3)**

80. The named Plaintiffs' claims are typical of the other Class Members' claims, and they have the same interests in this case as all other Class Members. Each Class Member is confined in jail because she could not afford Defendant's money bail amount. The answer to whether Defendant's wealth-based detention scheme is unconstitutional will determine the claims of the named Plaintiffs and every other Class Member.

81. If the named Plaintiffs succeed in the claim that Defendant's policies and practices concerning wealth-based detention violate their constitutional rights, that ruling will likewise benefit every other Class Member.

**D.   Adequacy — Fed. R. Civ. P. 23(a)(4)**

82. The named Plaintiffs are adequate representatives of the Class because their interests in the vindication of the legal claims that they raise are entirely aligned with the interests of the other Class Members, who each have the same basic constitutional claims. They are a member of the Class, and their interests coincide with, and are not antagonistic to, those of the other Class Members.

83. There are no known conflicts of interest among Class Members, all of whom have a similar interest in vindicating their constitutional rights in the face of Defendant's pay-for-freedom system.

84. Plaintiffs are represented by attorneys from Equal Justice Under Law, who have experience in litigating complex civil rights matters in federal court and extensive knowledge of both the details of Defendant's scheme and the relevant constitutional and statutory law. Counsels' relevant qualifications are more fully set forth in the previously filed Motion for Class Certification.

85. The combined efforts of Class counsel have so far included extensive investigation into money bail schemes over a period of years, including numerous interviews with witnesses, court employees, jail inmates, families, attorneys throughout the region, community members, statewide experts in the functioning of state and local courts, and national experts in constitutional law, post-arrest procedure, law enforcement, judicial procedures, criminal law, pretrial services, and jails.

86. Class counsel have a detailed understanding of state law and practices as they relate to federal constitutional requirements. Counsel have studied the way that these systems function in other counties in order to investigate the wide array of lawful alternatives.

87. As a result, counsel have devoted enormous time and resources becoming intimately familiar with Defendant's scheme and with the relevant state and federal laws. Counsel has also developed relationships with many of the individuals and families most victimized by Defendant's practices. The interests of the Class Members will be fairly and adequately protected by the Plaintiffs and their attorneys.

E.  Rule 23(b)(2)

88. Class action status is appropriate because Defendant — through the policies and practices that make up its wealth-based detention scheme — have acted in the same unconstitutional manner with respect to all Class Members. Defendant enforces a wealth-based system of pretrial justice: wealthy arrestees can purchase their immediate release, while poorer arrestees must remain in jail.

89. The Class therefore seeks declaratory and injunctive relief to enjoin San Francisco from detaining arrestees who cannot afford their money bail amounts. Because the putative Class challenges Defendant's scheme as unconstitutional through declaratory and injunctive relief that would apply the same relief to every Class Member, Rule 23(b)(2) certification is appropriate and necessary.

90. Injunctive relief compelling Defendant to comply with these constitutional rights will similarly protect each Class Member from being subjected to Defendant's unlawful policies and practices. A declaration and injunction stating that Defendant cannot detain arrestees due to their inability to make a monetary payment would provide relief to every Class Member.

Therefore, declaratory and injunctive relief with respect to the Class as a whole is appropriate.

91.  Plaintiffs seek the following relief and hereby demand a jury in this cause for all matters so appropriate.

## Claims for Relief

**Count One: Defendant City and County of San Francisco Violates Plaintiffs' Rights by Jailing Them Because They Cannot Afford a Monetary Payment**

92.  Plaintiffs incorporate by reference the allegations in paragraphs 1–91.

93.  The Fourteenth Amendment's Equal Protection and Due Process Clauses prohibit jailing a person because of her inability to make a monetary payment. Defendant City and County of San Francisco violates Plaintiffs' fundamental rights by keeping them in jail solely because they cannot afford to pay money bail.

## Request for Relief

WHEREFORE, Plaintiffs and the other Class Members request that this Court issue the following relief:

a.  A declaratory judgment that Defendant violates the named Plaintiffs' and Class Members' constitutional rights by keeping them in jail solely because they cannot make a monetary payment;

b.  An order and judgment preliminarily and permanently enjoining Defendant from enforcing its unconstitutional wealth-based detention policies and practices against the named Plaintiffs and the Class of similarly situated people that they represent;

c.  An order and judgment preliminarily and permanently enjoining Defendant — including the Sheriff and all officers and employees of the Sheriff's Department at the county jail — from using money bail to detain any person due to her inability to make a monetary payment and requiring that all release/detention decisions be based on factors other than wealth-status or ability to make a monetary payment;

d.  An order declaring that where state law does not bind Defendant's release and detention decisions, Defendant must act in accordance with the Equal Protection and Due Process Clauses' prohibition against wealth-based detention, and that, where state law purportedly permits wealth-based detention, Defendant must

      follow the requirements of the Equal Protection and Due Process Clauses (state law notwithstanding);

    e.    A judgment individually compensating the named Plaintiffs for the damages that they suffered as a result of Defendant's unconstitutional and unlawful conduct, including damages resulting from their confinement in jail;

    f.    An order and judgment granting reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and any other relief this Court deems just and proper.

Respectfully submitted,

*/s/ Phil Telfeyan*
Phil Telfeyan (California Bar No. 258270)
*/s/ Katherine Hubbard*
Katherine Hubbard (California Bar No. 302729)
Attorney, Equal Justice Under Law
601 Pennsylvania Avenue NW
South Building — Suite 900
Washington, D.C. 20004
(202) 505-2058
ptelfeyan@equaljusticeunderlaw.org
khubbard@equaljusticeunderlaw.org
*Attorneys for Plaintiffs*