1  Phil Telfeyan (CA Bar No. 258270)
2  Katherine Hubbard (CA Bar No. 302729)
3  Attorneys, Equal Justice Under Law
4  601 Pennsylvania Avenue NW
5  South Building — Suite 900
6  Washington, D.C. 20004
7  (202) 505-2058
8  ptelfeyan@equaljusticeunderlaw.org
9  khubbard@equaljusticeunderlaw.org
10  *Attorneys for Plaintiffs Riana Buffin and Crystal Patterson*

## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RIANA BUFFIN and CRYSTAL PATTERSON, on behalf of themselves and others similarly situated, | )<br>)<br>)<br>) |
| Plaintiffs, | ) |
| v. | )  Case No. 15-CV-4959 (YGR)<br>)        (Class Action) |
| THE CITY AND COUNTY OF SAN FRANCISCO, VICKI HENNESSY in her official capacity as the San Francisco Sheriff, and KAMALA HARRIS in her official capacity as the California Attorney General, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## THIRD AMENDED CLASS ACTION COMPLAINT

### Introduction

1.    This case is about the City and County of San Francisco keeping some of its poorest residents in jail because of their inability to make a monetary payment.  Named Plaintiffs Riana Buffin and Crystal Patterson are indigent arrestees who were kept in the county jail solely because they were too poor to pay the amount of money that the San Francisco Sheriff's Department demanded for their release.

1    2.    In San Francisco, arrestees face two different outcomes depending on their wealth

2    status. If Ms. Buffin and Ms. Patterson had been rich enough to pay $30,000 and $150,000

3    respectively — like many wealthier people accused of the same offenses — they could have

4    walked out of their jail cells immediately under San Francisco's pay-for-freedom pretrial justice

5    system. Because the only criterion standing between Plaintiffs and freedom was their ability to

6    make a monetary payment, San Francisco operates a wealth-based detention scheme.

7    3.    On behalf of the many other arrestees subjected to Defendants' unlawful wealth-

8    based detention scheme, the named Plaintiffs in this action challenge the use of money bail to

9    detain poor arrestees while letting rich arrestees free. Defendants' wealth-based detention

10   scheme violates the Equal Protection and Due Process Clauses of the United States Constitution

11   because it ties pretrial freedom to the ability to make a monetary payment, thus making freedom

12   dependent on wealth-status.

13   4.    By and through their attorneys and on behalf of themselves and all others

14   similarly situated, the named Plaintiffs seek the vindication of their fundamental rights,

15   injunctive relief preventing future wealth-based detention of all Class Members, and a

16   declaration that any state statutory or constitutional provisions that require the use of secured

17   money bail to detain any person without an inquiry into ability to pay are unconstitutional.

18   Defendants cannot use money bail to detain any person solely because she is unable to make a

19   monetary payment.

20                                    **Nature of the Action**[1]

21   5.    It is the policy and practice of the City and County of San Francisco and Sheriff

22   Vicki Hennessy to refuse to release arrestees from jail unless they pay their money bail amount.

---

[1] Plaintiffs make the allegations in this Complaint based on personal knowledge as to matters in which they have had personal involvement and on information and belief as to all other matters.

1    Additionally, the Sheriff and the Attorney General enforce unconstitutional state laws that

2    require the use of money bail to detain individuals without an inquiry into their ability to pay.

3    Plaintiffs seek declaratory and injunctive relief prohibiting Defendants' wealth-based detention

4    scheme and requiring that pretrial release or detention decisions be based on factors other than

5    wealth-status.

6                                    **Jurisdiction and Venue**

7           6.      This is a civil rights action arising under 42 U.S.C. § 1983 and 28 U.S.C. § 2201,

8    *et seq*., and the Fourteenth Amendment to the United States Constitution.   This Court has

9    jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

10          7.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

11                                  **Intradistrict Assignment**

12          8.      Assignment to the San Francisco Division is proper pursuant to Civil L.R. 3-2(c).

13   The events giving rise to this claim arise in the County of San Francisco.

14                                          **Parties**

15          9.      Named Plaintiff Riana Buffin is a 19-year-old resident of Oakland.  *See generally*

16   Ex. 1, Buffin Decl.  She lives with her mother, whose only source of income is disability

17   payments, and her three younger brothers.  Along with her mother, her two youngest brothers,

18   ages 9 and 10, have severe disabilities.  She represents herself as an individual and represents a

19   Class of similarly situated people subjected to Defendants' wealth-based detention scheme.

20          10.     Named Plaintiff Crystal Patterson is a 29-year-old resident of San Francisco.  *See*

21   *generally* Ex. 2, Patterson Decl.  She lives with and is the primary caregiver for her grandmother.

22   Her mother is unemployed and is experiencing homelessness.  She represents herself as an

23   individual and represents a Class of similarly situated people subjected to Defendants' wealth-

1    based detention scheme.

2    11.    Defendant City and County of San Francisco is a local government entity

3    organized under the laws of the State of California.  The San Francisco Sheriff's Department is a

4    division of San Francisco and operates the San Francisco County Jail.

5    12.    Defendant Vicki Hennessy, in her official capacity as San Francisco Sheriff, is an

6    official of Defendant City and County of San Francisco in her role as jailor and with regard to

7    release and detention decisions and San Francisco's release/detention policy.

8    13.    The Sheriff has charge of and is the sole and exclusive authority to keep the

9    county jail and the prisoners in it.  Cal. Gov't Code § 26605; San Francisco Charter § 6.105.  The

10   Sheriff's Department detains inmates at the county jail and is authorized to issue and sign orders

11   of release for pretrial detainees.  *See* Cal. Pen. Code § 1269b(a).

12   14.    The Sheriff's Department is headed by the San Francisco Sheriff, who is an

13   officer of San Francisco.  The officers and employees of the Sheriff's Department are authorized

14   to accept money bail, order the release of an arrestee, and set a time for an arrestee's appearance

15   in state court.  The Sheriff's Department, by policy and practice, detains arrestees too poor to

16   afford their bail amount.

17   15.    The Custody Division of the San Francisco Sheriff's Department is charged with

18   the operations of all six of San Francisco's County Jails, the Hospital Ward, the Classification

19   Unit, and the various Jail Programs.

20   16.    The Sheriff is the final policymaker for Defendant City and County of San

21   Francisco with regard to release and detention decisions and San Francisco's release/detention

22   policy.

23   17.    Under the Supremacy Clause, the United States Constitution is the supreme law

1   of the land.  All government officials must uphold the Equal Protection and Due Process Clauses

2   of the Fourteenth Amendment, regardless of contrary instructions from state officials, local

3   officials, state law, local law, or state judges.  Additionally, upon taking office, the San Francisco

4   Sheriff swears an oath to support and defend the Constitution of the United States.

5       18.     State law requires the use of secured money bail after arrest, but state law does

6   not expressly bind the decision-making authority of the Sheriff and Sheriff's Department with

7   regard to release and detention decisions.  The Sheriff enforces the law requiring use of secured

8   money bail after arrest, and San Francisco has a policy and practice of detaining individuals

9   based on their inability to make a monetary payment.

10      19.     San Francisco is responsible for its application of its policies, including its release

11  and detention policies.

12      20.     Defendant San Francisco is liable for its unconstitutional policies and practices —

13  including the policies and practices of its officers and divisions — even if they are consistent

14  with state law and even if they are consistent with orders of state judges.

15      21.     Under *Ex parte Young*, 209 U.S. 123 (1908), the Sheriff in her official capacity

16  can be enjoined from enforcing any unconstitutional state laws.  Any statutes requiring or

17  permitting wealth-based detention without an inquiry into an individual's ability to make a

18  monetary payment are unconstitutional.

19      22.     Under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the City and County

20  of San Francisco and the Sheriff are liable for their unconstitutional policies and practices.  Any

21  wealth-based detention practices lacking an inquiry into an individual's ability to make a

22  monetary payment are unconstitutional.

23      23.     Defendant Kamala Harris is the California Attorney General and the chief law

1  enforcement officer in California.  She is charged with the enforcement of California's laws,

2  including provisions of the Penal Code.  In her official capacity as the California Attorney

3  General, she requires the Sheriff to impose bail pursuant to a bail schedule, thereby creating a

4  wealth-based detention scheme.  *See* Cal. Pen. Code § 1269b.

5       24.    The Attorney General has direct supervision over every county sheriff in the state.

6  Cal. Const. Art. V, § 13; Cal. Gov't Code § 12560.  Several statutory provisions give the

7  Attorney General specific supervisory powers over sheriffs.  *See, e.g.*, Cal. Gov't Code §§

8  12524, 12560, 12561.

9       25.    The Attorney General also has direct supervision over county district attorneys

10  and may assist the district attorney or take full charge of any investigation or prosecution.  *See*

11  Cal. Gov't Code § 12550.  The Attorney General has a duty to prosecute violations of law

12  whenever, in her opinion, "any law of the State is not being adequately enforced in any county."

13  Cal Const. Art. V, § 13.  Criminal violations of the bail law can be prosecuted either by county

14  district attorneys or by the Attorney General herself.

15       26.    Under *Ex parte Young*, the Attorney General in her official capacity can be

16  enjoined from enforcing any unconstitutional state laws.  Any statutes requiring or permitting

17  wealth-based detention without an inquiry into an individual's ability to make a monetary

18  payment are unconstitutional.

19                           **Factual Allegations**

20  **A.     The Named Plaintiffs Were Held in Jail by the Sheriff and the City and County of**
21  **San Francisco Because They Were Unable to Pay Their Money Bail Amount**
22

23       27.    Ms. Buffin was arrested by San Francisco police on October 26, 2015.  She was

24  accused of grand theft of personal property and conspiracy.

25       28.    Ms. Buffin was taken to jail and told that she would be released if she paid

1   $30,000.  She was told that she would be kept in jail unless she paid $30,000.  *See* Ex. 1, Buffin

2   Decl. at ¶ 3.

3      29.   Ms. Buffin is indigent.  She survived on the income she made working at the

4   Oakland airport for approximately $10.25 per hour.  *Id.* at ¶ 5.  She lives with her mother, who

5   has a disability and receives disability payments.  *Id.* at ¶ 4.  She is also a caretaker for her three

6   younger brothers, two of whom have severe disabilities.  *Id.*

7      30.   Because of her indigence, Ms. Buffin was unable to pay her money bail amount.

8   *Id.* at ¶ 6.

9      31.   Ms. Buffin was not told when she would be brought to court and was never

10  brought to court for an initial appearance.  *See* Ex. 3, Boudin Decl. at ¶ 14.  After approximately

11  46 hours in jail, she was discharged when the District Attorney's Office decided not to file

12  formal charges against her.

13     32.   Due to her detention, Ms. Buffin lost her job at the Oakland airport.  *Id.* at ¶ 16.

14     33.   Ms. Patterson was arrested by San Francisco police on October 27, 2015.  She

15  was accused of assault with force causing great bodily injury.  Ex. 2, Patterson Decl. at ¶ 2.

16     34.   Ms. Patterson was taken to jail and told that she would be released if she paid

17  $150,000.  She was told that she would be kept in jail unless she paid $150,000.  *Id.* at ¶ 3.

18     35.   Ms. Patterson is indigent.  She survives on the income she makes doing in-home

19  care services for approximately $12.50 per hour.  *Id.* at ¶ 5.  She lives with her grandmother, who

20  is unemployed.  *Id.* at ¶ 4.  Because her mother is unemployed and is experiencing homelessness,

21  Ms. Patterson is the primary caregiver for her grandmother, and her income goes to supporting

22  her and her grandmother's basic necessities of life.  *Id.*

23     36.   Due to her indigence, Ms. Patterson was unable to pay her money bail amount.

1    *Id.* at ¶ 6.

2    37.    Ms. Patterson was not told when she would be brought to court and was never

3    brought to court for an initial appearance.  Ex. 3, Boudin Decl. at ¶ 18.  Desperate to get home to

4    take care of her aging grandmother, Ms. Patterson was able to convince relatives to pay 1%

5    ($1,500) of her bail amount to a private bail bond company.  Ms. Patterson (and a co-signor)

6    agreed to pay the balance of $15,000, financed over years "at the maximum rate of interest

7    allowed by law."  After signing the debt agreement and after several hours of processing by the

8    private bail bond company, Ms. Patterson was eventually released, having spent a total of

9    approximately 31 hours in jail.

10    38.    Hours after her release, Ms. Patterson's case was discharged when the District

11    Attorney's Office decided not to file formal charges against her.  *Id.* at ¶ 17.  Even though she

12    does not face any criminal charges, Ms. Patterson is still indebted to a private bail bond company

13    for the balance of her $15,000 debt, plus interest.  This is debt she never would have had to take

14    on were it not for San Francisco's wealth-based detention.

15    39.    Had Ms. Patterson been wealthy enough to pay the full bail amount of $150,000

16    immediately, she would have been immediately released and would have had her full amount

17    returned to her when her case was discharged.

18    **B.    Defendants' Wealth-Based Detention Scheme Detains Arrestees Who Cannot Pay**
19    **Their Money Bail Amount while Releasing Those Who Can Pay**
20
21    40.    Upon arrest, all arrestees in San Francisco are transported to San Francisco

22    County Jail #1 for booking.  The Sheriff's Custody Division performs booking processes on all

23    arrestees.

24    41.    The San Francisco Sheriff's Department has a computerized Jail Management

25    System, which records various data on all inmates in the county jail system.  These records are

1   updated on an ongoing basis as events occur, and include information about the time of arrest

2   and the charge(s), the posting of any bail, and the date and time of release from custody.

3        42.    The booking processes of arrestees include searching arrestees, medical triage,

4   photographing, fingerprinting to include warrant checks, classification, criminal history review,

5   review by the O.R. Project for eligibility to be released on one's own recognizance, review for

6   eligibility to be cited and released, DNA collection from persons arrested for felony charges, and

7   inventory and storage of property.

8        43.    The San Francisco Pretrial Diversion Project contracts with the Sheriff's

9   Department to provide certain pretrial services, including the O.R. Project.  *See* Ex. 4, McCovey

10  Aff. at ¶ 12.  Employees of the O.R. Project interview inmates in the county jail and prepare a

11  workup to submit to a magistrate.  *Id.*  The workup includes contacting references provided by

12  the inmate.  *Id.*  The process of obtaining release through the O.R. Project may take hours or

13  several days.

14       44.    At the end of booking processes, arrestees are given a booking sheet, which

15  includes their booking charge and their bail amount.  Bail is determined by referring to the

16  Felony and Misdemeanor Bail Schedule as established by the Superior Court of California,

17  County of San Francisco.  Deputy sheriffs use this bail schedule, referring to an arrestee's

18  booking charge(s), when determining an arrestee's bail amount.

19       45.    Arrestees are told that if they pay their bail amount, they will be released

20  immediately.  They are told that if they cannot pay bail, they will remain in jail until arraignment

21  or discharge, unless they are able to obtain release through the O.R. Project.

22       46.    Arrestees who are not able to pay their money bail amount are shown a poster

23  listing the phone numbers of bail bond agents and told that they may call one of these numbers to

Third Amended Class Action Complaint
15-CV-4959                                         9

1   attempt to secure their release.  Arrestees who obtain release through bail agents remain in jail

2   while making arrangements with the agent such as finding cosigners for the bail bond contract.

3   This process can take hours or days.

4       47.   If an arrestee can afford to pay her bail amount, the Sheriff's Department accepts

5   the money and orders the release of the arrestee.

6       48.   If an arrestee cannot afford to pay her bail amount, the Sheriff's Department

7   keeps her in jail until either she can make other arrangements to obtain her release, she is

8   discharged, or she is taken to court 2 to 5 days later for arraignment.

9       49.   The Sheriff's Department books approximately 18,000 individuals in county jail

10   every year.  On a typical day, the Sheriff's Department locks approximately 50 new arrestees in

11   the county jail.

12       50.   At any given time, approximately 85% of county jail inmates in San Francisco are

13   being detained pretrial.

14       51.   Although they are presumed innocent of the crime for which they have been

15   arrested, more than 100 individuals at any given time are being detained by San Francisco solely

16   because they cannot afford money bail.

17       52.   Approximately 90% of pretrial detainees are held due to probation revocation

18   proceedings, violation of terms of release, immigration detainers, or other holds.   Even

19   discounting this percentage, San Francisco detains more than 1,800 individuals annually who are

20   in jail solely due to their wealth-status.

21   **C.   Defendants' Wealth-Based Detention Scheme Caused Plaintiffs To Be Held in Jail**
22   **Solely Due to Their Inability To Pay Bail**
23
24       53.   The named Plaintiffs would have been released from jail immediately if they had

25   paid the amount of money required by the Sheriff's Department.

1    54.    Arrestees are given a right to release pending trial, but Defendants' pay-for-

2    freedom system conditions their release on their ability to afford money bail, thus tying their

3    pretrial freedom to their wealth-status.

4    55.    The treatment of the named Plaintiffs and other Class Members is caused by two

5    factors: (1) the unconstitutional provisions of California's Penal Code that are enforced by the

6    Sheriff and Attorney General and (2) the Sheriff's and San Francisco's policies and practices of

7    wealth-based detention.

8    56.    As a matter of policy and practice, when the San Francisco Sheriff's Department

9    books a new arrestee at the county jail, county employees inform the arrestee that she will be

10   released from jail immediately if she pays her money bail amount.  The arrestee is told that she

11   will remain in jail if she is not able to make that payment.

12   57.    It is the policy and practice of the Sheriff's Department to immediately release

13   those arrestees who pay their money bail amount.

14   58.    In a typical week, the Sheriff's Department releases dozens of individuals who

15   pay their money bail amount.

16   59.    It is the policy and practice of the Sheriff's Department to detain individuals who

17   do not pay their money bail amount.  Before arraignment, it is the policy and practice of the

18   Sheriff's Department to detain individuals who do not pay the amount listed on the bail schedule.

19   After arraignment, it is the policy and practice of the Sheriff's Department to detain individuals

20   who do not pay the bail amount set by the Superior Court.

21   60.    In a typical week, the Sheriff's Department detains dozens of individuals who do

22   not pay their money bail amount.

23   61.    No provision of California law expressly prohibits the Sheriff and the Sheriff's

Third Amended Class Action Complaint
15-CV-4959                                    11

1   Department from releasing indigent arrestees from jail even if they have not paid their money

2   bail amount.

3       62.     The Sheriff and Sheriff's Department have a longstanding practice and custom —

4   which constitutes the standard operating procedure of the Sheriff and the City and County of San

5   Francisco — of releasing those individuals who pay their money bail amount.

6       63.     The Sheriff and Sheriff's Department have a longstanding practice and custom —

7   which constitutes the standard operating procedure of the Sheriff and the City and County of San

8   Francisco — of detaining those individuals who cannot pay their money bail amount.

9       64.     Under San Francisco's pay-for-freedom system, those wealthy enough to pay

10  their bail amount are immediately released from the county jail.   Some poorer arrestees

11  eventually make arrangements with private bail bond companies — arrangements that require

12  significant time spent in jail not suffered by wealthier arrestees.   And many others who are

13  poorer still are left to languish in jail until the resolution of their case.

14      65.     Any provisions of California law that require the use of secured money bail to

15  detain individuals due to their inability to pay are unconstitutional because they violate the

16  principle that no person should have to spend a single day in jail simply because she cannot

17  make a monetary payment.

18      66.     By directing that arrestees' money bail amounts are set without regard to ability to

19  pay, Cal. Pen. Code § 1269b(b) violates the Equal Protection and Due Process Clauses of the

20  Fourteenth Amendment.

21      67.     The Sheriff is liable under *Ex parte Young* for enforcing California law in

22  imposing money bail irrespective of an arrestee's ability to pay.

23      68.     The Attorney General is liable under *Ex parte Young* for enforcing California law

1   in supervising the Sheriff and in requiring imposition of money bail irrespective of an arrestee's

2   ability to pay.

3       69.     The Sheriff and the City and County of San Francisco are liable under *Monell* for

4   the policy and practice of detaining all individuals who do not pay money bail while releasing

5   those individuals who do pay money bail.

6   **D.   None of the Alternatives to Bail Available in San Francisco Allows for Immediate**
7   **Release of Arrestees**
8
9       70.     Those arrestees too poor to pay for their freedom are not appointed counsel until

10  their first appearance in court.  Such arrestees could theoretically apply to a magistrate for

11  release on lower bail or on own recognizance, but this process is functionally non-existent while

12  arrestees remain unrepresented by counsel.

13      71.     Some indigent arrestees are released without bail at the discretion of the O.R.

14  Project, a service contracted by the Sheriff's Department.  This service does not operate to

15  release all arrestees, and it is not immediate.  Even those eventually released under the O.R.

16  Project spend significant time in jail before their release.

17      72.     Wealthy arrestees do not have to wait in jail for any of these processes, because

18  the County grants them immediate release when they pay their money bail amount.

19      73.     By offering bail to arrestees, the Sheriff's Department allows pretrial release, but

20  condition that release on an arrestee's wealth-status.  Only those who can afford their money bail

21  amount are permitted pretrial release.

22  **E.   Defendants' Use of Money Bail Is Not Narrowly Tailored — Nor Is It as Effective as**
23  **Many Other Methods — in Securing Court Attendance or Public Safety**
24
25      74.     While tying pretrial freedom to wealth-status is the norm in San Francisco, other

26  jurisdictions throughout the country do not hold people in jail because of their poverty.  Instead

1    of relying on money bail, these jurisdictions release arrestees with pretrial supervision practices

2    that effectively promote court attendance and public safety without requiring detention.  Pretrial

3    services agencies in other counties employ numerous methods of maximizing public safety and

4    court appearances, including reporting obligations, phone and text message reminders of court

5    dates, rides to court for those without transportation or a stable address, counseling, drug and

6    alcohol treatment, batterer intervention programs, anger management courses, reporting

7    obligations, SCRAM bracelets (for alcohol testing), or electronic monitoring, among other

8    services, when necessary to guard against a particular risk.  *See generally* Ex. 5, Murray Aff.; Ex.

9    6, Morrison Aff.

10           75.     Other jurisdictions also employ non-monetary conditions of release, including

11   unsecured or "signature" bonds (which do not require payment up front), stay-away orders,

12   curfews, or even home detention, further contributing to high public safety and court appearance

13   rates.  *See generally* Ex. 5, Murray Aff.

14           76.     San Francisco can and does use such pretrial services, but only tangentially.  *See*

15   *generally* Ex. 7, Mirkarimi Decl. at ¶ 9.  The majority of arrestees booked in San Francisco

16   County Jail are processed and detained through San Francisco's money bail scheme rather than

17   non-monetary supervision methods.

18           77.     Jurisdictions with robust pretrial services and non-monetary conditions of release

19   often achieve court-appearance rates over 90%, with more than 85% of those released pretrial

20   remaining arrest-free (and 98–99% remaining arrest-free for violent crimes).  *See generally* Ex.

21   6, Morrison Aff.; Ex. 8, Herceg Aff.

22           78.     Unnecessary pretrial detention causes instability in employment, housing, and

23   care for dependent relatives.  *See generally* Ex. 5, Murray Aff.  Studies show that those detained

1    pretrial face worse outcomes at trial and sentencing than those released pretrial, even when

2    charged with the same offenses.  Detained defendants are more likely to plead guilty just to

3    shorten their jail time, even if they are innocent.  Ex. 9, Adachi Decl. at ¶ 7.  They have a harder

4    time preparing for their defense, gathering evidence and witnesses, and meeting with their

5    lawyers.  *Id.* at ¶ 8.  Studies also show that just two days of pretrial detention substantially

6    increase the likelihood of future arrests.

7         79.    Pretrial detention is more than ten times more expensive than effective pretrial

8    supervision programs.  *See generally* Ex. 5, Murray Aff.  Through non-monetary tools, pretrial

9    supervision programs can save taxpayer funds while maintaining high public safety and court

10    appearance rates.

11        80.    Although money bail is the central component of Defendants' pretrial justice

12    system, in limited circumstances the Sheriff's Department can and does rely on a variety on non-

13    wealth-based metrics to make release/detention decisions.    For example, the Sheriff's

14    Department decides to detain arrestees (without money bail) who have violated probation, have

15    violated terms of release, have immigration detainers, or have other holds.   The Sheriff's

16    Department can also detain individuals accused of certain serious crimes without money bail.

17    Similarly, the Sheriff and the City and County of San Francisco can release arrestees without

18    requiring money bail.

19                            **Class Action Allegations**

20        81.    The named Plaintiffs bring this action, on behalf of themselves and all others

21    similarly situated, to assert the claims alleged in this Third Amended Complaint on a common

22    basis.

23        82.    A class action is a superior means, and the only practicable means, by which the

1   named Plaintiffs and unknown Class Members can challenge Defendants' unlawful wealth-based

2   detention scheme.

3        83.    This action is brought and may properly be maintained as a Class action pursuant

4   to Rule 23(a)(1)–(4) and Rule 23(b)(2) of the Federal Rules of Civil Procedure.

5        84.    This action satisfies the numerosity, commonality, typicality, and adequacy

6   requirements of those provisions.

7        85.    Plaintiffs propose one Class seeking declaratory and injunctive relief.   The

8   Declaratory and Injunctive Class is defined as: all arrestees who are or will be in the custody of

9   the City and County of San Francisco and are or will be detained for any amount of time because

10  they are unable to pay money bail.

11  **A.    Numerosity — Fed. R. Civ. P. 23(a)(1)**

12       86.    The San Francisco County Jail detains approximately 18,000 individuals

13  annually.   Of those, approximately 85% are detained pretrial.   Those arrestees who are not held

14  due to probation revocation proceedings, violation of terms of release, immigration detainers, or

15  other holds are presented with Defendants' standard money bail choice of pay or jail.

16       87.    Some arrestees are able to pay for release immediately.   Those not able to pay are

17  held in the county jail pursuant to Defendants' wealth-based detention scheme.

18       88.    The number of current and future arrestees detained pursuant to Defendants'

19  wealth-based detention scheme — if it is not enjoined — is well into the hundreds.

20  **B.    Commonality — Fed. R. Civ. P. 23(a)(2)**

21       89.    The relief sought is common to all Class Members, and common questions of law

22  and fact exist as to all Class Members.   The named Plaintiffs seek relief concerning whether

23  provisions of state law that require the use of money bail and whether the Sheriff Department's

1   policies, practices, and procedures violate the rights of the Class Members and relief mandating

2   that Defendants not enforce such provisions nor continue such practices so that the constitutional

3   rights of the Class Members will be protected in the future.

4         90.    These common legal and factual questions arise from one set of policies and

5   practices: Defendants' wealth-based detention scheme.   Defendants operates this scheme in

6   materially the same manner every day.   The material components of the scheme do not vary

7   from Class Member to Class Member, and the resolution of these legal and factual issues will

8   determine whether all Class Members are entitled to the relief they seek.

9         Among the most important, but not the only, common questions of fact are:

10   •     Do the Sheriff and San Francisco have a policy and practice of requiring money bail as a
11        prerequisite for post-arrest release?
12   •     Do the Sheriff and San Francisco immediately release those arrestees wealthy enough to
13        pay their money bail amount?
14   •     Do the Sheriff and San Francisco detain, for any amount of time, those arrestees too poor
15        to pay their money bail amount solely because they cannot make that monetary payment?
16
17         91.    Among the most important common question of law are:

18   •     Do the Equal Protection and Due Process Clauses prohibit the government from jailing
19        an individual solely due to her inability to make a monetary payment?
20   •     Does jailing an individual due solely to her inability to afford money bail constitute
21        jailing her due to her inability to make a monetary payment?
22
23   **C.**     **Typicality — Fed. R. Civ. P. 23(a)(3)**

24         92.    The named Plaintiffs' claims are typical of the other Class Members' claims, and

25   they have the same interests in this case as all other Class Members.   Each Class Member is

26   confined in jail because she could not afford her money bail amount.   The answer to whether

27   Defendants' wealth-based detention scheme is unconstitutional will determine the claims of the

28   named Plaintiffs and every other Class Member.

29         93.    If the named Plaintiffs succeed in the claim that Defendants' policies and

1   practices concerning wealth-based detention violate their constitutional rights, that ruling will

2   likewise benefit every other Class Member.

3   **D.      Adequacy — Fed. R. Civ. P. 23(a)(4)**

4          94.     The named Plaintiffs are adequate representatives of the Class because their

5   interests in the vindication of the legal claims that they raise are entirely aligned with the

6   interests of the other Class Members, who each have the same basic constitutional claims.  They

7   are a member of the Class, and their interests coincide with, and are not antagonistic to, those of

8   the other Class Members.

9          95.     There are no known conflicts of interest among Class Members, all of whom have

10  a similar interest in vindicating their constitutional rights in the face of Defendants' pay-for-

11  freedom system.

12         96.     Plaintiffs are represented by attorneys from Equal Justice Under Law, who have

13  experience in litigating complex civil rights matters in federal court and extensive knowledge of

14  both the details of Defendants' scheme and the relevant constitutional and statutory law.

15  Counsels' relevant qualifications are more fully set forth in the previously filed Motion for Class

16  Certification.

17         97.     The combined efforts of Class counsel have so far included extensive

18  investigation into money bail schemes over a period of years, including numerous interviews

19  with witnesses, court employees, jail inmates, families, attorneys throughout the region,

20  community members, statewide experts in the functioning of state and local courts, and national

21  experts in constitutional law, post-arrest procedure, law enforcement, judicial procedures,

22  criminal law, pretrial services, and jails.

23         98.     Class counsel have a detailed understanding of state law and practices as they

1  relate to federal constitutional requirements.  Counsel have studied the way that these systems

2  function in other counties in order to investigate the wide array of lawful alternatives.

3      99.    As a result, counsel have devoted enormous time and resources becoming

4  intimately familiar with Defendants' scheme and with the relevant state and federal laws.

5  Counsel have also developed relationships with many of the individuals and families most

6  victimized by Defendants' practices.  The interests of the Class Members will be fairly and

7  adequately protected by the Plaintiffs and their attorneys.

8  **E.      Rule 23(b)(2)**

9      100.   Class action status is appropriate because Defendants have acted in the same

10  unconstitutional manner with respect to all Class Members.  Defendants enforce a wealth-based

11  system of pretrial justice: wealthy arrestees can purchase their immediate release, while poorer

12  arrestees must remain in jail.

13      101.   The Class therefore seeks declaratory and injunctive relief to enjoin the Sheriff

14  and San Francisco from detaining arrestees who cannot afford their money bail amounts.

15  Because the putative Class challenges Defendants' scheme as unconstitutional through

16  declaratory and injunctive relief that would apply the same relief to every Class Member, Rule

17  23(b)(2) certification is appropriate and necessary.

18      102.   Injunctive relief compelling Defendants to comply with these constitutional rights

19  will similarly protect each Class Member from being subjected to Defendants' unlawful policies

20  and practices.  A declaration and injunction stating that the Sheriff and San Francisco cannot

21  detain arrestees due to their inability to make a monetary payment would provide relief to every

22  Class Member.  Therefore, declaratory and injunctive relief with respect to the Class as a whole

23  is appropriate.

Third Amended Class Action Complaint
15-CV-4959

1    103.    Plaintiffs seek the following relief and hereby demand a jury in this cause for all

2    matters so appropriate.

3                                    **Claims for Relief**

4    **Count One: Defendants Violate Plaintiffs' Rights by Jailing Them Because They Cannot**
5    **Afford a Monetary Payment**

7    104.    Plaintiffs incorporate by reference the allegations in paragraphs 1–103.

8    105.    The Fourteenth Amendment's Equal Protection and Due Process Clauses prohibit

9    jailing a person because of her inability to make a monetary payment.   Defendants violate

10   Plaintiffs' fundamental rights by keeping them in jail solely because they cannot afford to pay

11   money bail.

12                                  **Request for Relief**

13   WHEREFORE, Plaintiffs and the other Class Members request that this Court issue the

14   following relief:

15   a.    A declaratory judgment that Defendant City and County of San Francisco and the
16         Sheriff violate the named Plaintiffs' and Class Members' constitutional rights by
17         keeping them in jail solely because they cannot make a monetary payment;

19   b.    An order and judgment preliminarily and permanently enjoining Defendants from
20         enforcing their unconstitutional wealth-based detention policies and practices
21         against the named Plaintiffs and the Class of similarly situated people that they
22         represent;

24   c.    An order and judgment preliminarily and permanently enjoining Defendant City
25         and County of San Francisco — including the Sheriff and all officers and
26         employees of the Sheriff's Department at the county jail — from using money
27         bail to detain any person due to her inability to make a monetary payment and
28         requiring that all release/detention decisions be based on factors other than
29         wealth-status or ability to make a monetary payment;

31   d.    An order and judgment preliminarily and permanently enjoining the Attorney
32         General from requiring the use of money bail to detain indigent arrestees in San
33         Francisco;

35   e.    An order declaring that all Defendants must follow the requirements of the Equal

1  Protection and Due Process Clauses, regardless of contrary state law or contrary
2  policies and practices;
3
4  f.  An order declaring that, as applied by Defendants against Plaintiffs and Class
5  Members, California Penal Code section 1269b(b) and any other state statutory or
6  constitutional provisions that require the use of secured money bail to detain any
7  person without an inquiry into ability to pay are unconstitutional;
8
9  g.  A judgment individually compensating the named Plaintiffs for the damages that
10  they suffered as a result of Defendants' unconstitutional and unlawful conduct,
11  including damages resulting from their confinement in jail;
12
13  h.  An order and judgment granting reasonable attorneys' fees and costs pursuant to
14  42 U.S.C. § 1988, and any other relief this Court deems just and proper.
15
16  Respectfully submitted,
17
18  */s/ Phil Telfeyan*
19  Phil Telfeyan (California Bar No. 258270)
20  */s/ Katherine Hubbard*
21  Katherine Hubbard (California Bar No. 302729)
22  Attorney, Equal Justice Under Law
23  601 Pennsylvania Avenue NW
24  South Building — Suite 900
25  Washington, D.C. 20004
26  (202) 505-2058
27  ptelfeyan@equaljusticeunderlaw.org
28  khubbard@equaljusticeunderlaw.org
29  *Attorneys for Plaintiffs*