United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RIANA BUFFIN,** *et al.*, | Case No.  15-cv-04959-YGR |
| Plaintiffs, | **ORDER ON MOTIONS TO DISMISS AND MOTION TO INTERVENE** |
| v. | |
| **THE CITY AND COUNTY OF SAN FRANCISCO,** *et al.*, | Re: Dkt. Nos. 76, 77, 81 |
| Defendants. | |

Plaintiffs Riana Buffin and Crystal Patterson, on behalf of themselves and all others similarly situated, bring this civil rights action against defendants the City and County of San Francisco (the "County"), Vicki Hennessy in her official capacity as the County's Sheriff (the "Sheriff"), and Kamala Harris in her official capacity as the Attorney General (the "Attorney General") for the State of California (the "State").  Plaintiffs bring a single count against the County, the Sheriff, and the Attorney General for violation of their Fourteenth Amendment equal protection and due process rights when the Sheriff enforces state law by keeping them in jail before arraignment solely because they cannot afford to pay money bail.  Specifically, plaintiffs challenge defendants' enforcement of California Penal Code section 1269b, which provides that a sheriff may only collect bail from pre-arraignment arrestees in the amount fixed, *inter alia*, in the schedule of bail set by the superior court judges sitting in and for that county.

Based thereon, plaintiffs seek declaratory and injunctive relief on behalf of themselves and putative class members.  The named plaintiffs additionally seek monetary damages, attorneys' fees, and costs from defendants.  Defendants move under Rule 12(b)(6) to dismiss the single count in the Third Amended Complaint ("3AC"), arguing plaintiffs fail to state a cognizable claim for relief

under the Fourteenth Amendment as to each of them.  Additionally, the California Bail Agents Association ("CBAA") moves to intervene as a defendant.  Having carefully considered the papers submitted and the pleadings in this action, and for the reasons discussed below, the Court **GRANTS IN PART** the County's and the Sheriff's motion to dismiss, **GRANTS IN PART** the Attorney General's motion to dismiss **WITHOUT PREJUDICE**, and **DENIES WITHOUT PREJUDICE** CBAA's motion to intervene.

**I.     BACKGROUND**

   **A. Factual Background**

   The County police arrested plaintiff Riana Buffin on October 26, 2015 for grand theft of personal property from a department store and conspiracy.  (Dkt. No. 71, "3AC," ¶ 27.)  Plaintiff Buffin was taken to jail and she was informed that her bail was set at $30,000.  (*Id.* ¶ 28.)  Late in the evening of October 28, 2015, after approximately 46 hours in jail, plaintiff Buffin was released when the District Attorney's office decided not to file formal charges against her.  (*Id.* ¶ 31.)

   With respect to plaintiff Crystal Patterson, she was arrested on October 27, 2015 by the County police for assault with force causing great bodily injury.  (*Id.* ¶ 33.)  The police took her to jail where she was told that her bail was set at $150,000.  (*Id.* ¶ 34.)  After approximately 31 hours in jail, plaintiff Patterson posted bail through a private bond company.  (*Id.* ¶ 37.)  Following her release, the case against plaintiff Patterson was discharged and no formal charges were filed against her.  (*Id.* ¶ 38.)  Named plaintiffs make no allegation that their bail amounts were set by the Sheriff other than in conformance with the County's bail schedule set by state judges on the California Superior Court sitting in and for the City and County of San Francisco (the "Superior Court").

   In California, state law imposes a duty on superior court judges to "prepare, adopt, and annually revise a uniform countywide schedule of bail" for all bail-eligible offenses except Vehicle Code infractions.  Cal. Pen. Code § 1269b(c).  In San Francisco, the Superior Court establishes the felony and misdemeanor bail schedule.  (*Id.* ¶ 44.)  The Sheriff determines an arrestee's bail amount by reference to the bail schedule; she is authorized to release arrestees from the County's

United States District Court
Northern District of California

jail prior to appearance in front of a judicial officer[1] only when they pay their bail amount as set forth in that schedule of bail.[2]  Cal. Pen. Code § 1269b(a).  Plaintiffs allege that, consistent with California Penal Code section 1269b(a), the Sheriff "enforces the law [*i.e.*, California Penal Code section 1269b(a)] requiring use of secured money bail after arrest," which has the effect of discriminating against poor arrestees.  (*Id.* ¶ 18.)  Plaintiffs further allege that the County "has a policy and practice of detaining individuals based on their inability to make a monetary payment," but plaintiffs identify no such county policy other than the Sheriff's enforcement of the bail schedule established pursuant to state law.  (*Id.*)

### B.  Procedural Background

Plaintiffs filed their original complaint on October 28, 2015 against the County and "the State of California" generically.  (Dkt. No. 1.)  They concurrently filed an emergency motion for temporary restraining order and preliminary injunction for the immediate release of named plaintiffs and all putative class members from the County's jail (Dkt. No. 2), as well as a motion to certify their proposed class (Dkt. No. 7).  The Court denied the motion for temporary restraining order, finding plaintiffs had not established they were entitled to the affirmative relief sought.  (Dkt. No. 13.)  The Court then set a schedule for the parties to brief the pending motions for preliminary injunction and for class certification, as well as defendants' anticipated motions to dismiss.  (Dkt. No. 19.)

The County and the State moved to dismiss the complaint on Rule 12 grounds, namely arguing: (1) the State was entitled to sovereign immunity under the Eleventh Amendment, and (2) *Younger* abstention applied such that the Court should not consider any of plaintiffs' claims.  (Dkt. Nos. 20, 26.)  Plaintiffs implicitly conceded that the State was entitled to sovereign immunity, and

---

[1]  Subject to narrow exceptions, in California a person accused of committing an offense requiring them to remain in custody must be taken before a magistrate judge for arraignment within 48 hours of his or her arrest, not including Sundays and holidays.  Cal. Pen. Code § 825(a)(1).

[2]  California Penal Code section 1269b(a) also authorizes the Sheriff to release arrestees upon collection of bail in the amount set by the warrant of arrest or by court order.  Here, however, plaintiffs challenge the practice of bail as "determined by referring to the Felony and Misdemeanor Bail Schedule as established by the Superior Court of California, County of San Francisco," and not bail set by warrants of arrest or by individual court order.  (3AC ¶ 44.)

the Court granted the State's motion on that ground.  (Dkt. No. 55 at 3.)  With respect to defendants' *Younger* argument, the Court found the comity doctrine did not apply because there was no ongoing state proceeding when plaintiffs filed their complaint.  (*Id.* at 3–8.)  Thus the case could proceed against the County.  The Court did agree with the County, however, that plaintiffs' complaint had "analytical, legal, and factual gaps" such that they should be ordered to provide a more definite statement on their claims and requests for relief under Rule 12(e).  (*Id.* at 8–9.)  Given the unintelligible nature of plaintiffs' complaint, the Court otherwise denied without prejudice plaintiffs' pending motion for preliminary injunction and motion for class certification.  (*Id.* at 9–10.)  For similar reasons, the Court found that the motion to intervene brought by CBAA was premature.  (*Id.* at 10.)

Plaintiffs' amended complaints followed.  (*See* Dkt. No. 58, "FAC," Dkt. No. 62, "SAC.")  By agreement of the parties, the County did not respond to plaintiffs' FAC, and plaintiffs instead filed the SAC.  (*See* Dkt. No. 61.)  The County then moved to dismiss the SAC under Rule 12(b)(6), or in the alternative, for a more definite statement under Rule 12(e).  (Dkt. No. 63.)  Plaintiffs filed a motion for leave to file a surreply, which in part sought leave to amend to cure the concerns raised by the County in its motion.  (Dkt. No. 69.)  To promote judicial efficiency, the Court allowed plaintiffs to file the portion of the surreply containing the request for leave to amend and directed plaintiffs to file the 3AC.  (Dkt. No. 70.)

The 3AC adds the Sheriff and the Attorney General as defendants in this action for the first time.  (3AC ¶¶ 12, 23.)  Plaintiffs allege that the Sheriff is an officer of the County, and in that capacity, is the final policymaker for the County with respect to its release and detention policy at its six jails.  (*Id.* ¶¶ 12-16.)  The Sheriff allegedly enforces discriminatory state bail laws based on her "exclusive authority to keep the county jail and the prisoners in it."  (*Id.* ¶ 13) (citing Cal. Gov. Code § 26605.)  Plaintiffs seek to enjoin the Sheriff from enforcing the California state law requiring her to use secured money bail after arrest, which, in plaintiffs' view, results in wealth-based discrimination against class members.  (*Id.* ¶ 18, Requests for Relief b, c.)  With respect to the Attorney General, plaintiffs allege that, in her official capacity as the chief law enforcement officer in California, she "requires the Sheriff to impose bail pursuant to a bail schedule, thereby

4

United States District Court
Northern District of California

1   creating a wealth-based detention scheme." (*Id.* ¶ 23) (citing Cal. Pen. Code § 1269b.) Plaintiffs

2   similarly request relief enjoining the Attorney General from requiring use of money bail for

3   indigent detainees in the County's jails. (*Id.* at Request for Relief d.)

4       Now pending before the Court are defendants' motions to dismiss pursuant to Rule 12(b)(6)

5   and CBAA's second motion to intervene. (Dkt. Nos. 76, 77, 81.)

6   **II. DEFENDANTS' MOTIONS TO DISMISS**

7       The County, the Sheriff, and the Attorney General move to dismiss under Rule 12(b)(6),

8   arguing plaintiffs fail to state a claim under the Fourteenth Amendment as to each of them in the

9   3AC. The County and the Sheriff principally argue that no claim exists against them because the

10  Sheriff acts on behalf of the State, not the County, when she enforces the bail schedule. The

11  Attorney General argues the claims against her should be dismissed or stayed because they are

12  duplicative of claims filed against her in a case pending in the Eastern District of California.

13  Alternatively, the Attorney General argues she is immune from suit under the Eleventh Amendment

14  and the exception thereto as announced in *Ex Parte Young* does not apply here. The Court

15  considers each of these arguments in turn:

16      **A. Applicable Legal Standard**

17      A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in

18  the complaint. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199–1200 (9th Cir. 2003). "Dismissal can be

19  based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

20  cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

21  All allegations of material fact are taken as true and construed in the light most favorable to the

22  plaintiff. *Johnson v. Lucent Techs., Inc.,* 653 F.3d 1000, 1010 (9th Cir. 2011). To survive a motion

23  to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

24  relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

25  *Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

26      **B. The County's and the Sheriff's Motion to Dismiss**

27      The County argued in its previous motion to dismiss that the SAC failed to state a claim

28  against it because the Sheriff acts on behalf of the State when she implements the State's money

United States District Court
Northern District of California

1   bail system; the system is not a municipal policy or practice.  The Court recognized the County's

2   concerns as valid and allowed plaintiffs another opportunity to amend their complaint.  The 3AC

3   then supplemented to include the Sheriff and the Attorney General as additional defendants.

4   Consistent with its prior arguments for dismissal, the County and the Sheriff maintain that

5   the Sheriff is a state actor when she enforces the money bail system against arrestees.  They argue

6   the Sheriff is entitled to Eleventh Amendment immunity from suit and the County cannot be held

7   liable for her acts done on behalf of the State.  Plaintiffs oppose, contending that the Sheriff is a

8   county official in her capacity as a jailor, including her pre-arraignment release and detention

9   decisions.

10          1.  *Applicable Legal Framework*

11          The Supreme Court instructs federal courts to conduct a case-by-case analysis focusing on

12   state law and a sheriff's actions at issue when determining whether to construe a sheriff as a state

13   actor or county actor.  *McMillian v. Monroe Cty., Alabama*, 520 U.S. 781, 785–86 (1997).  When

14   announcing the appropriate framework in *McMillian*, the Supreme Court cautioned that the

15   question is not whether the Sheriff acted for the state or county "in some categorical, 'all or

16   nothing' manner."  *Id*. at 785.  Rather, in deciding the issue, courts are guided by two principles: (1)

17   "whether governmental officials are final policymakers for the local government in a particular

18   area, or on a particular issue," and (2) analysis of state law focused on "the definition of the

19   official's functions under relevant state law."  *Id*.; *see also Brewster v. Shasta Cty.*, 275 F.3d 803,

20   806 (9th Cir. 2001).  To determine if the Sheriff is a policymaker for the County in this context

21   (principle one), the Court must "ask whether Sheriff [Hennessey] represents the State or the

22   [C]ounty when" she detains a person who is unable to pay the bail amount set by the Superior

23   Court.  *McMillian*, 520 U.S. at 785–86.  When analyzing state law (principle two), the Court must

24   look beyond any state law simply labeling the Sheriff as a municipal or state official, and examine

25   "the actual function of a governmental official, in a particular area" of her authority.  *Id*. at 786.

26          The Ninth Circuit has addressed this topic as to California sheriffs three times since the

27   Supreme Court announced the *McMillian* framework.  In each decision, the Ninth Circuit

28

1  conducted an analysis unique to the circumstances and concluded that the sheriffs acted on behalf

2  of the county in each particular context.  The decisions are summarized as follows:

3       The Ninth Circuit first addressed the issue under the *McMillian* framework in *Streit v. Cty.*

4  *of Los Angeles*, 236 F.3d 552, 559–65 (9th Cir. 2001).  In *Streit*, the question was whether:

5            the Los Angeles County Sheriff's Department (the 'LASD') in
             adopting and administering its policy of requiring that a records
6            check, including review of all wants and holds received on a
             prisoner's release date, act[s] on behalf of the state of California or on
7            behalf of the [County]?

8  *Id*. at 555.   Following an exhaustive analysis of relevant provisions in California state law, the

9  *Streit* court concluded that the LASD acts on behalf of the county when administering local jails'

10 release policy.  The court found that the California Constitution, California Government Code, and

11 the county's own code "lead inexorably to the conclusion that the LASD is tied to the County in its

12 political, administrative, and fiscal capacities." *Id*. at 562.  In particular, the court looked to its

13 determinations that "there is no provision in the California Constitution that states that the LASD

14 acts for the state when managing the local jails," the California and county codes provide that the

15 county pays monetary damages for section 1983 claims against the LASD, and the county code

16 reflects that the county board of supervisors "retains budgetary oversight and control over the

17 LASD." *Id*. at 562.

18      Turning to the particular function at issue, the court emphasized that merely framing the

19 function as LASD's over-detention of a prisoner in the county jail was not dispositive.  Decisions to

20 detain a prisoner can be both administrative functions performed for the county, while others are

21 made on behalf of California.  The court made a "critical" distinction between a challenge to a

22 sheriff department policy of "[s]earching for wants and holds that may or may not have been issued

23 for person whom the state has no legal right to detain," on the one hand, and challenges to a

24 sheriff's detention of a prisoner based on a "facially-valid warrant" on the other.  *Id*. at 564.  The

25 court viewed the former challenge, at issue in *Streit*, as one to the "administrative function of jail

26 operations for which the LASD answers to the County."  *Id*.  By contrast, acting upon a facially-

27 valid warrant is part of a sheriff's "law enforcement function with which the LASD is tasked under

28 California state law."  *Id*.  Thus, after "examining the precise function at issue in conjunction with

1    the state constitution, codes, and case law, [the court] conclude[d] that the LASD acts as the final

2    policymaker for the county when administering the County's release policy and not in its state law

3    enforcement capacity." *Id.* at 564–65.

4         Next, in *Brewster*, the Ninth Circuit was faced with whether a California sheriff acts for the

5    county or state when investigating a crime in the county. *Brewster*, 275 F.3d at 805–12. The

6    *Brewster* court heavily relied on the reasoning in *Streit* to conclude that a sheriff acts as a county

7    official when investigating crime. *Id.* at 807 ("It requires little extension of *Streit* for us to conclude

8    that the [sheriff] acts for the County, not the state, when investigating a crime in the county.") The

9    court noted that the same provisions in the California Constitution and Code relied on by the *Streit*

10   court applied equally in *Brewster*. The *Brewster* court rejected the county's arguments that

11   additional state law provisions required a different outcome when considering a sheriff's

12   investigatory functions rather than execution of a jail release policy. First, reliance on Article V,

13   section 13, of the California Constitution placing sheriffs under the "direct supervision" of the

14   Attorney General "would prove too much, as the California Constitution permits the Attorney

15   General to supervise all other law enforcement officers as may be designated by law." *Id.* at 809

16   (internal quotations omitted). Second, the court viewed a statutory provision "prohibit[ing] a

17   county board of supervisors from obstructing the investigative function of the sheriff," as "akin to a

18   separation of powers provision, and as such [had] no bearing" on the relevant inquiry. *Id.* at 810–

19   11 (analyzing Cal. Gov. Code § 25303). Finally, the court was similarly unpersuaded by the

20   county's arguments that the sheriff is a state actor in investigating a crime because:

> California law imposes on sheriffs the duty to 'preserve peace,' Cal.
> Gov. Code § 26600; arrest 'all persons who attempt to commit or
> who have committed a public offense,' Cal. Gov. Code § 26601;
> and 'prevent and suppress any affrays, breaches of the peace, riots,
> and insurrections…, and investigate public offenses which have
> been committed,' Cal. Gov. Code § 26602…

25   *Id.* at 811. In the court's view, these provisions did not show that the county was not given

26   discretionary authority regarding law enforcement. "Unlike in Alabama [in *McMillian*,] however,

27   in California, county boards of supervisors have authority to supervise the conduct of the sheriffs,

28   including their law enforcement conduct, subject to the limitation that the board not obstruct the

sheriff's investigation of crime." *Id.* The *Brewster* court thus concluded that a California sheriff acts on behalf of the county, not state, when investigating a crime within the county. *Id.* at 812.

Finally, in *Cortez v. Cty. of Los Angeles*, 294 F.3d 1186 (9th Cir. 2002), the Ninth Circuit held that a California sheriff acts as a county official "in establishing and implementing policies and procedures for the safekeeping of inmates in the county jail." *Id.* at 1187. The particular function at issue was the sheriff-established policy to segregate inmates identified as gang members. The *Cortez* court construed *Streit* as standing for the proposition that a "sheriff acts on behalf of the county when serving in his administrative capacity." *Id.* at 1189–90. In that regard, the court reasoned that *Streit* "resolve[d] the question," *id.* at 1189, presented in *Cortez*:

> As in *Streit*, the Sheriff's actions here were taken in his capacity as the administrator of the jail. Sheriffs are given broad statutory authority to manage county jails under California law. Government Code section 26605 provides that the 'sheriff shall take charge of and be the sole and exclusive authority to keep the county jail and the prisoners in it.' Cal. Gov't. Code § 26605; *accord* Cal. Pen. Code § 4000 (providing that the county sheriff operates the county jail). As administrator of the jail, the Sheriff is responsible for developing and implementing policies pertaining to inmate housing. Cal. Code Regs. tit. 15, § 1050.

*Id.* at 1190. Moreover, even if the court adopted the county's view that the policy was established pursuant to the sheriff's duty to keep the peace, it would still have come to the same conclusion. *Id.* at 1191. The court reviewed *Streit* and *Brewster*, *supra*, to reject the county's position that a sheriff necessarily is a final policymaker for the state when executing law enforcement functions. The sheriff's policy to segregate gang members was "established pursuant to his authority as the administrator of the county jail and custodian of the inmates within it." *Id.* at 1192. His actions in enforcing the policy were therefore attributable to the county rather than the state.

   2. *Analysis*

The Court thus analyzes whether the Sheriff is properly classified as a state or county actor when she enforces the bail schedule set by the Superior Court in conformance with California state law.[3] California has a "comprehensive statutory scheme" regulating bail. *Galen v. Cty. of Los*

---

[3] The County argues no supervisory liability exists against it under *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978), regardless of whether the Sheriff is classified as a

*Angeles*, 477 F.3d 652, 660 (9th Cir. 2007); *see* Cal. Pen. Code § 1268–1276.5.  Under that scheme, California law establishes the circumstances under which a sheriff may release persons committed to a county jail and mandates that any "prisoner committed to the county jail . . . *must* be actually confined in the jail until legally discharged."  Cal. Pen. Code § 4004 (emphasis supplied); *see also*, *id.* § 1269a (providing "Any officer releasing any defendant upon bail otherwise than as herein provided shall be guilty of a misdemeanor.")

Relevant here, and as alleged in the 3AC, Penal Code section 1269b(a) provides that a sheriff and her officers "may approve and accept bail . . . to issue and sign an order for the release of the arrested person . . . ."  *Id.* § 1269b(a).[4]  "[T]he amount of the bail shall be pursuant to the uniform countywide schedule of bail for the county in which the defendant is required to appear, previously fixed and approved as provided [herein]."  *Id.* § 1269b(b).  The statute further provides that "[i]t is the duty of the superior court judges in each county to prepare, adopt, and annually revise a uniform countywide schedule of bail" for all bail-eligible felony and misdemeanor offenses, except as to Vehicle Code infractions.  *Id.* § 1269b(c).  Thus, the Sheriff's authority to

---

county or state actor when enforcing the bail schedule.  As discussed, *infra*, the Court determines at the outset that the Sheriff is a state actor in this context and so no liability arises as to the County under *Monell*.  However, even if the Court were to determine that the Sheriff was wearing her county hat when enforcing the bail schedule, the 3AC would still fail to state a claim against the County or the Sheriff for supervisory liability.  To state a *Monell* claim against them, plaintiffs must plausibly allege that the Sheriff took "action pursuant to official municipal policy of some nature caused a constitutional tort."  *Id.* at 691.  Plaintiffs allege in a conclusory fashion that the Sheriff's mandatory compliance with state law is a municipal policy.  (*See, e.g.*, 3AC ¶¶ 18, 56.)  The Court concludes as a matter of law there is no county policy where the State directs its judges to set a bail schedule, which the Sheriff's department is required to enforce pursuant to state law.  *See id.*; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (a municipal policy for *Monell* purposes must involve "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."); *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002) (applying the standard as announced by the Supreme Court in *Pembaur*).  The Sheriff cannot choose a course of action "from various alternatives" when she or her deputies enforce the bail schedule set by the Superior Court judges.  Because the 3AC fails to allege plausibly that a municipal policy was the cause of plaintiffs' detention, no *Monell* claim is stated against the County or the Sheriff.

[4]  The other alternatives for an order of release are acceptance of "bail in the amount fixed by the warrant of arrest" or by order of the court.  Cal. Pen. Code § 1269b(a).

United States District Court
Northern District of California

release arrestees is dictated by the bail amount set by the Superior Court. In this regard she has no discretion, nor does the 3AC allege to the contrary.

Federal district courts have distinguished *Streit*, *Brewster*, and *Cortez*, *supra*, to conclude that California sheriffs acted as representatives of the state, not a county, when detaining prisoners pursuant to a court order.[5] First, in *McNeely v. Cty. of Sacramento*, 2008 WL 489893, *3–5 (E.D. Cal. Feb. 20, 2008), the district court distinguished *Streit* and *Brewster* holding there that the sheriff "was acting on behalf of the State of California in detaining Plaintiff pursuant to pending criminal proceedings, and a facially valid bench warrant issued by the [county's superior court]." *Id*. at *3. On those facts, the district court concluded:

> While the Ninth Circuit has treated the sheriff as a county actor where his administrative or investigative responsibilities are under scrutiny, those cases are distinguishable from the present case, which concerns conduct arising from simply detaining Plaintiff in jail pending the outcome of ongoing criminal proceedings in Sacramento and Placer Counties. [citations]  Indeed in *Streit*, the Ninth Circuit recognizes that '[a]cting upon a warrant is a law enforcement function with which [a sheriff's department] is tasked under California state law. *See* Cal. Gov. Code § 12560.' *Streit*, 236 F.3d at 564.

*Id*. at *4. Moreover, the district court emphasized that California Penal Code section 4004 requires a sheriff to keep a detainee in county jail "until legally discharged." *Id*. at *5 (quoting Cal. Pen. Code. § 4004). As such, the district court reasoned "it would make no sense to hold the sheriff liable for incarcerating individuals at the prosecutor's impetus," when the prosecutor herself is

---

[5]  Similarly, a district court concluded that a California sheriff acts on behalf of the state not county when issuing licenses in compliance with state law. *Scocca v. Smith*, 912 F. Supp. 2d 875, 879–80 (N.D. Cal. 2012). In *Scocca*, plaintiffs sued the county and its sheriff for the sheriff's administration of a state statute providing for the issuance of licenses to carry concealed weapons ("CCW"). The district court determined that the Ninth Circuit's prior analyses of state law under the *McMillian* framework had "limited application" to the question before it in *Scocca*, "*i.e.*, how does state law treat a sheriff, in particular, when acting as a CCW licensor?" *Id*. at 881–82. The district court analyzed the relevant California code provisions and concluded they do not provide for county oversight in the CCW process, but instead "clearly delineate[d] a role for the state with respect to administration and oversight." *Id*. at 883. The district court also found persuasive that the CCW licensing scheme largely allowed a sheriff in one county "to grant a license which conveys a right exercisable throughout the state and thus [had] a statewide effect." *Id*. Thus the district court determined that that sheriff, "when making her decisions on granting or denying CCW licenses, acts as a representative of the state of California, not the County." *Id*.

11

United States District Court
Northern District of California

immune under well-established principles of prosecutorial immunity.  *Id*. at 5; *Smith v. Cty. of San Mateo*, 1999 WL 672318, at *5 (N.D. Cal. Aug. 20, 1999) (applying *McMillian* framework to conclude on summary judgment that sheriff's incarceration of arrestee at county jail pursuant to bench warrant was on behalf of the state, not the county).

Likewise, in *Munoz v. Kolender*, 208 F. Supp. 2d 1125, 1152–53 (S.D. Cal. 2002), the district court determined that a California sheriff acts on behalf of the state, not the county, when detaining a plaintiff in a county jail pursuant to court order.  The district court distinguished *Sreit* as follows:

> The *Streit* county jail detainees sued . . . for detention in county jails 'after all legal justification for their seizure and detention ended,' while the Sheriff's Department conducted an automated search of a computerized law enforcement data base to confirm the prisoner is not wanted by any other law enforcement agency.  *Streit*, 236 F.3d at 556.  Under departmental policy, all warrants and holds arriving through the day of scheduled release were to be input into the data base before the search was run . . . .  The result of that policy was to perpetuate the jail confinement of inmates who were no longer required to serve time, extending their incarceration beyond their release date, with no other judicial proceedings pending.  [The plaintiff here], in contrast, appears to have been at all relevant times in lawful custody under state law . . . .

*Id*. at n. 31.

*McNeely* and *Munoz* both address the precise issue presented here: whether a California sheriff is a state or county actor when detaining arrestees at a county jail pursuant to a lawful state order.  Together they highlight the critical distinction (first raised in *Streit*) between detention caused by a sheriff's own administrative policy, on the one hand, versus detention required by state law or court order, on the other.  In both *McNeely* and *Munoz*, the district courts acknowledged that, in certain circumstances, the state law provisions relied upon by the Ninth Circuit in *Streit* support a conclusion that the sheriff is a county actor.  However, the *McNeely* and *Munoz* decisions distinguished the circumstances from *Streit* to conclude that a California sheriff acts on behalf of the state – not the county – when the sheriff detains someone pursuant to state law rather than under an administrative policy set by the sheriff herself.  The Court finds the reasoning of its sister courts persuasive.

12

United States District Court
Northern District of California

California allows three alternative methods of release: "(1) citation (Pen. Code §§ 853.5, 853.6); (2) bail (Pen. Code § 1268 et seq.); or (3) own recognizance release (Pen. Code § 1318 et seq.)." *Van Atta v. Scott*, 27 Cal.3d 424, 430 (1980).  The first[6] and third[7] methods lie outside the purview of plaintiffs' complaint.  With respect to bail, California assigns decisions regarding the terms of release to superior courts, not county sheriffs.  *See* Cal. Pen. Code §§ 1268, 1269b(c), 1270; *Galen v. Cty. of Los Angeles*, 477 F.3d 652, 660 (9th Cir. 2007) (noting that California has a "comprehensive statutory scheme" regulating bail determinations).  Thus, the Sheriff may accept the bail amount as set either: (i) in the warrant of arrest, if one exists, signed by a judicial officer; or (ii) by the bail schedule established by the judges of the superior court as required by state law.  *See* Cal. Pen. Code § 1269b(a).  Once the arrestee has appeared in front of a judicial officer, the Sheriff may accept the bail amount set (iii) individually by the court.  *See id*.  In all three cases, the Sheriff lacks discretion to release the arrested person outside the bounds of the statute.[8]

Although the San Francisco Superior Court is nominally designated as the County, it is an arm of the State.  *Greater Los Angeles Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1110 (9th Cir. 1987) (a superior court's "geographical location within any particular county cannot change the fact that the court derives its power from the State and is ultimately regulated by the State").  As

---

[6]  The 3AC does not allege that the Sheriff has a policy of imposing detention on individuals who are entitled to citation release.  Nor do plaintiffs have standing to bring such a claim, as neither named plaintiff asserts she was entitled to – but was not afforded – citation release.  The authority for law enforcement to cite and release offenders is limited to certain infractions and misdemeanors.  *See* Cal. Pen. Code §§ 853.5, 853.6.

[7]  Plaintiffs allege that the County partially funds and operates the "O.R. Project" to review an arrestee's eligibility for own recognizance release, which takes into account factors other than the arrestee's ability to pay.  (3AC ¶¶ 42–43.)  The O.R. Project does not affect the Court's analysis on the pending motions.  As an initial matter, the parties agree that the O.R. Project is not relevant to their arguments.  (*See* Dkt. No. 95.)  Further, the Sheriff may release an arrestee participating in the O.R. Project only following a judicial determination – *i.e.*, pursuant to state law.  (*See id*. ¶ 1.)

[8]  That the Sheriff determines the booking charge, which in turn dictates the bail amount, is irrelevant to plaintiffs' claims.  The 3AC does not allege that the Sheriff's policy in setting the booking charge is unconstitutional.  Under plaintiffs' theory, the Sheriff acts unconstitutionally when she detains a person who cannot afford the applicable bail, regardless of the amount.

United States District Court
Northern District of California

1   such, the Court concludes that the terms of release at issue are set wholly by the State, as the

2   Superior Court establishes the bail schedule.  The Sheriff is not acting on behalf of the County.

3        As noted, California law requires the Sheriff's conduct challenged by plaintiffs.  The Penal

4   Code provides her no discretion to alter the terms of release as she sees fit.  Instead, the Sheriff

5   must detain individuals lawfully in her custody unless a court order directs their release: "A

6   prisoner committed to the county jail for examination . . . *must* be actually confined in the jail until

7   legally discharged."  Cal. Pen. Code § 4004 (emphasis supplied).[9]  As in *McNeely* and *Munoz*,

8   where the fact of detention is established by California state law under Section 4004, the Sheriff

9   acts on behalf of the State when detaining an individual pursuant thereto.  Indeed, plaintiffs' own

10   allegations acknowledge that the Sheriff imposes the challenged bail schedule at the direction of the

11   State.  (*See, e.g.,* 3AC ¶ 18 ["State law requires the use of secured money bail after arrest"].)

12        Plaintiffs make two additional arguments.  First, plaintiffs attempt to characterize the

13   Sheriff as a county actor because of her general capacity overseeing the jail.  This fails under Ninth

14   Circuit precedent.  That the Sheriff may be a policymaker for the County in the establishment and

15   administration of departmental policies affecting the conditions of confinement is not dispositive

16   here.  *Cf. Streit v. Cty. of Los Angeles*, 236 F.3d 552, 559–65 (9th Cir. 2001) (sheriff acts on behalf

17   of county in administering its departmental records check policy before releasing detainee from

18   county jail); *Cortez v. Cty. of Los Angeles*, 294 F.3d 1186 (9th Cir. 2002) (sheriff acts on behalf of

19   county  in "establishing and implementing policies and procedures for the safekeeping of inmates

20   in the county jail.").  The fact that the Sheriff has authority over the County's jails is not what

21   drives the actions at issue.  Rather, the function is driven exclusively by the State's non-

22   discretionary mandate.  *See* Cal. Pen. Code §§ 1268, 1269b(a), 1269b(c), 4004.

23        Plaintiffs next argue that the Sheriff does make decisions related to conditional release,

24   including: (1) whether the arrestee tendered the bail amount as set by the Superior Court's adopted

25

26       [9]  Plaintiffs argue in opposition that Section 4004 applies only to prisoners committed "by

27   the court" to the jail, and not to arrestees.  (Dkt. No. 82 at 12:1–4.)  This argument fails for two reasons.  First, the quoted language does not appear in the statute nor is it an accurate representation

28   of the law.  Second, the California Supreme Court has said that the term "prisoner" as used in the Penal Code includes arrestees.  *Teter v. City of Newport Beach*, 30 Cal.4th 446, 455–56 (2003).

United States District Court
Northern District of California

1    bail schedule, (2) the methods of payment accepted, (3) when arrestees are notified of the amount

2    of bail, (4) whether arrestees receive a list of bail bond companies, and (5) when and how arrestees

3    may contact persons to make arrangements to satisfy bail.  Even if true, these decisions and

4    procedures are not challenged by plaintiffs in this lawsuit and do not alter the Sheriff's lack of

5    discretion in detaining a person who is unable to pay the bail amount set by the bail schedule.  Said

6    otherwise, plaintiffs have not tethered the Sheriff's policymaking authority on behalf of the County

7    to the conduct *at issue*.

8         In sum, the Court concludes that defendant Sheriff Hennessey acts on behalf of the State

9    when she detains a person based on his or her inability to pay the bail amount prescribed in the bail

10   schedule as set by the Superior Court.  As a state actor, the Sheriff is entitled to immunity from suit

11   for money damages under the Eleventh Amendment and plaintiffs' request for such relief is barred

12   thereby.  However, to the extent plaintiffs seek declaratory or injunctive relief against the Sheriff

13   for her allegedly unconstitutional conduct,[10] the sole count for violation of plaintiffs' Fourteenth

14   Amendment rights may proceed against her.  *Ex Parte Young*, 209 U.S. 123, 155–56 (1908)

15   (Eleventh Amendment immunity from suit does not bar claims for injunctive or declaratory relief

16   against state actors enforcing challenged state law).

17        As to the County, however, the sole claim alleged fails.  The State is the relevant actor when

18   the Sheriff detains a person who does not pay bail and plaintiffs have not alleged a municipal policy

19   or practice for which the County may be held liable.  *McMillian v. Monroe Cnty., Ala.*, 520 U.S.

20   781, 783 (1997) (explaining that the county is liable for the sheriff's actions only if they constitute

21   a county policy) (citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)).

22   The County's motion to dismiss is **GRANTED**, the Sheriff's motion is **GRANTED IN PART** to the

23   extent the 3AC seeks monetary damages, and the Sheriff's motion is **DENIED IN PART** with respect

24   to the requests for injunctive or declaratory relief.

25   _____

26        [10]  The Sheriff concedes that Eleventh Amendment immunity does not bar prospective or injunctive relief against a state actor.  *C.f.* Section II.C.2, *infra* (discussion of exception to Eleventh

27   Amendment immunity under *Ex Parte Young*).  She nevertheless argues that plaintiffs' assertion of claims for monetary damages necessarily precludes their requests for declaratory and injunctive

28   relief against her.  This argument does not persuade.  The Court can dismiss certain requests for relief as barred while allowing others to proceed.

United States District Court
Northern District of California

**C.  The Attorney General's Motion to Dismiss**

The Attorney General moves to dismiss on two separate grounds.[11]  First, she argues procedurally the Court should dismiss or stay the claims because they are duplicative of identical claims previously asserted against her in another district court.  Second, the Attorney General argues substantively (i) she is immune from suit under the Eleventh Amendment and (ii) the exception for prospective and declaratory relief against state actors first announced in *Ex Parte Young* does not apply here.  The Court addresses each argument below.

*1.  First-to-File Rule*

As discussed, *supra*, plaintiffs filed this putative class action on October 28, 2015 against the County and the "State of California" generically.  On January 26, 2016, the Court held a hearing on defendants' pending motions to dismiss and for more definite statement, and indicated that the State would be dismissed because it was entitled to sovereign immunity.  Plaintiffs conceded as much at the hearing.  (Dkt. No. 57 at 4:21–22.)  Three days later, on January 29, 2016, plaintiffs' counsel filed a substantially identical complaint on behalf of a similarly situated putative class in the Eastern District of California against Sacramento County and the Attorney General.  *See* Case No. 2:16-cv-00185-TLN-DB ("Sacramento Docket" at No. 1.)  Plaintiffs were given an opportunity to amend the complaint in this case, which they did on February 25, 2016 (FAC) and again on March 17, 2016 (SAC).  Neither the FAC nor the SAC named the Attorney General as a defendant.  Plaintiffs then requested to file a further amended complaint in response to the County's motion to dismiss the SAC, which the Court permitted.  (*See* Dkt. No. 70.)  The 3AC, filed May 27, 2016, named the Attorney General as a defendant for the first time.  (*See* 3AC.)  In the interim, the Attorney General filed a motion to dismiss the Sacramento litigation.  (Sacramento Docket at No. 14.)  On October 11, 2016, Judge Nunley issued an order granting in part the Attorney General's

---

[11]  Additionally, the Attorney General argues that the 3AC fails to state claims against her for violations of plaintiffs' rights under the Equal Protection and Due Process Clauses of the Fourteenth Amendment.  The Sheriff did not join in these arguments.  Because the Court dismisses the Attorney General on Eleventh Amendment grounds, the Court does not reach the Attorney General's Fourteenth Amendment arguments.

1   motion.  (Sacramento Docket at No. 30.)   The Sacramento litigation will proceed against the

2   Attorney General for violation of the Due Process Clause Fourteenth Amendment.

3          A federal district court has discretion to dismiss, stay, or transfer a case to another district

4   court under the first-to-file rule.  *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th

5   Cir. 1982); *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991) ("The most

6   basic aspect of the first-to-file rule is that it is discretionary.").  The first-to-file rule is "a generally

7   recognized doctrine of federal comity" permitting a district court to decline jurisdiction over an

8   action.  *Inherent.com v. Martindale–Hubbell,* 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006)

9   (quoting *Pacesetter*, 678 F.2d at 94–95).  The rule is primarily meant to alleviate the burden placed

10   on the federal judiciary by duplicative litigation and to prevent the possibility of conflicting

11   judgments.  *See Microchip Tech., Inc. v. United Module Corp.*, 2011 WL 2669627, at *3 (N.D. Cal.

12   July 7, 2011).  As such, the rule should not be disregarded lightly.  *Id*.  Courts analyze three factors

13   in determining whether to apply the first-to-file rule: (1) chronology of the actions; (2) similarity of

14   the parties; and (3) similarity of the issues.  *Id*. (citing *Alltrade*, 946 F.2d at 625).

15          A district court may, in its discretion, decline to apply the first-to-file rule in the interests of

16   equity.  *Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1149 (E.D. Cal. 2010); *Ward v.

17   Follett Corp.*, 158 F.R.D. 645, 648 (N.D. Cal. 1994).  Exceptions to the first-to-file rule include

18   where the filing of the first suit evidences bad faith, anticipatory suits, and forum shopping.

19   *Alltrade*, 946 F.2d at 628.  The Ninth Circuit has cautioned that relaxing the first-to-file rule on the

20   basis of convenience is a determination best left to the court in the first-filed action.  *Ward*, 158

21   F.R.D. at 648 (citing *Alltrade*, 946 F.2d at 628).

22          Application of the first-filed rule without further briefing is inappropriate here.  At the

23   outset, whether this action was first-filed is a matter of serious contention.  While it is beyond

24   dispute that this case was filed before the Sacramento litigation, the parties agree that the Attorney

25   General was first sued for similar claims in Sacramento.  The case law suggests that the relevant

26   inquiry is when the court "acquired jurisdiction over the [*other*] *action*, not the *parties* . . . . All this

27   Court is concerned with is whether the [other district court] had the matter before it first . . . ."

28

17

*Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*, 544 F. Supp. 2d 949, 958 (N.D. Cal. 2008) (emphasis in original).

The Court has an insufficient record before it to determine whether plaintiffs' counsel, as opposed to plaintiffs themselves, engaged in forum shopping or conduct evidencing bad faith in how they pursued the two different actions.   The Court directed plaintiffs to amend their complaint to add a suitable defendant to answer for their alleged constitutional harms in this litigation.  The addition of the Attorney General as a defendant was plaintiffs' attempt to add an appropriate representative of the "State of California."  Further, the relief plaintiffs seek against the Attorney General in this action is limited to enforcement of the bail system by the City and County of San Francisco – *i.e.*, relief the plaintiff in the Sacramento litigation does not request.

Given the current record, the Court will not invoke the first-to-file rule to dismiss the Attorney General.  The Attorney General's motion to stay or dismiss on this basis is **DENIED WITHOUT PREJUDICE**.

### 2. *Eleventh Amendment Immunity*

The Court previously dismissed plaintiffs' claims against the "State of California" as barred by the Eleventh Amendment.  (*See* Dkt. No. 55 at 3.)  Plaintiffs have now amended to sue the Attorney General in her official capacity as the chief law enforcement officer for the State.  The Attorney General argues that the 3AC fails to state a claim against her as she is also entitled to Eleventh Amendment immunity from suit.  Plaintiffs acknowledge that the Eleventh Amendment generally bars suit against the Attorney General in her official capacity.  However, they invoke the exception first announced in *Ex Parte Young*, 209 U.S. 123 (1908), to argue immunity does not protect the Attorney General from prospective injunctive relief prohibiting her from enforcing an unconstitutional statute.

The exception to Eleventh Amendment immunity from suit under *Ex Parte Young* "allows citizens to sue state officers in their official capacities for prospective declaratory or injunctive relief . . .  for their alleged violations of federal law." *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013) (internal quotations omitted) (alteration in original).  The exception applies only where the state official has "some connection with the

enforcement of the act." *Ex Parte Young*, 209 U.S. at 157; *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2014).  The connection of the state official to the act at issue "must be fairly direct; a *generalized duty* to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *Coal. to Defend*, 674 F.3d at 1134 (quoting *Los Angeles Cty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992)) (emphasis supplied).

Plaintiffs urge that *Ex Parte Young* applies because the Attorney General enforces the bail scheme vis-à-vis her authority to prosecute punishable violations of the California Penal Code's bail provisions.  Plaintiffs primarily rely on the Ninth Circuit's analysis in *Quebec*, *supra*, for this proposition.  729 F.3d at 943.  In *Quebec*, producers and sellers of foie gras brought an action seeking to enjoin the California Attorney General from enforcing a statutory provision banning the sale of their product as unconstitutionally vague.  The Ninth Circuit recognized that, without more, the Attorney General's enforcement duties could not establish a "fairly direct" connection between the Attorney General and the challenged statute.  Importantly, the statute banning the sale of foie gras also "expressly authorize[d] enforcement of the statute by district attorneys and city attorneys."  *Id.*  The Ninth Circuit held that this provision "giv[ing] district attorneys the authority to prosecute violations" of the challenged statute in combination with "the Attorney General's duty to prosecute as a district attorney establishes sufficient enforcement power for *Ex Parte Young*." *Id.* at 943–44.

The enforcement provision in *Quebec* is meaningfully distinct from the bail enforcement provision at issue in this case.  In *Quebec*, the Ninth Circuit emphasized that the Attorney General had authority to prosecute anyone who violated the foie gras statute, including the plaintiffs in that case.  In that respect, enjoining her from bringing such an enforcement action would protect those plaintiffs from the alleged injury of prosecution for violation of an unconstitutional statute.  By contrast, the only enforcement provision which plaintiffs reference in the bail statute authorizes criminal punishment of an *officer* for the *officer's* failure to enforce the bail scheme, notably not the plaintiffs.  Cal. Pen. Code § 1269a ("Any officer releasing any defendant upon bail otherwise than as herein provided shall be guilty of a misdemeanor.").

United States District Court
Northern District of California

1    To determine whether the *Ex Parte Young* exception applies, the Court must consider the

2    Attorney General's enforcement authority in the context of plaintiffs' injury alleged to arise

3    therefrom.  *Long v. Van de Kamp*, 961 F.2d 151, 152 (9th Cir. 1992) ("Absent a real likelihood that

4    the state official will employ [her] supervisory powers against *plaintiffs*' interests, the Eleventh

5    Amendment bars federal court jurisdiction.") (emphasis supplied).  Here, plaintiffs' claims are

6    based on the Sheriff's enforcement of the bail law against them.  Nothing suggests that the Attorney

7    General has, will, or can supplant the Sheriff in her routine and daily role of releasing arrestees

8    based upon the bail schedule.

9    As alleged, this case is not about the Attorney General's enforcement – or threat of

10   enforcement – of an unconstitutional law against plaintiffs or the putative class.  Rather, as

11   plaintiffs allege throughout the 3AC, the Sheriff is the actor responsible for enforcing the

12   challenged state law in San Francisco.  Ninth Circuit precedent makes clear that the Attorney

13   General's role as the Sheriff's ultimate supervisor is not alone sufficient to bring suit against her in

14   federal court for enforcement of the law by the Sheriff.  *Coal. to Defend*, 674 F.3d at 1134

15   ("general supervisory power over the persons responsible" does not subject a state official to suit in

16   federal court).  Likewise, "[s]tate attorneys general are not invariably proper defendants in

17   challenges to state criminal laws."  *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908,

18   919 (9th Cir. 2004).  The Court finds that the generic notion that the Attorney General can assist a

19   district attorney in prosecuting crimes or enforcing the Penal Code is too remote to the function

20   challenged in the 3AC.  Thus plaintiffs have failed to allege a "fairly direct" connection between

21   the Attorney General's actions or authority and plaintiffs' claims.

22   Accordingly, sovereign immunity bars the claims against the Attorney General and her

23   motion to dismiss on this ground is **GRANTED**. However, the Court grants the motion **WITH LEAVE**

24   **TO AMEND** consistent with this Order and counsel's Rule 11 obligations.

25   **III.     CBAA'S MOTION TO INTERVENE**

26   CBAA is a non-profit association of approximately 3,300 bail agents in California.  CBAA

27   moves to intervene under Rule 24 as a defendant in this action to represent the financial interest of

28   its members to insure that the California bail system is not eliminated.  Plaintiffs oppose, arguing

1  CBAA does not meet the requirements for intervention under Rule 24.  The named defendants do

2  not take a position on CBAA's motion to intervene.  (*See* Dkt. Nos. 85, 87.)

3  **A.  Applicable Legal Standard**

4  A person may move to intervene as of right pursuant to Rule 24(a) or under a permissive

5  standard pursuant to Rule 24(b).  A district court must grant intervention as of right under Rule

6  24(a)(2) to anyone who satisfies a four-factor test: (1) the applicant must assert a "significantly

7  protectable" interest relating to the property or transaction that is the subject of the action; (2) the

8  applicant's interest must be represented inadequately by the parties to the action; (3) disposition of

9  the action without intervention may as a practical matter impair or impede its ability to protect that

10  interest; and (4) the applicant's motion must be timely.  *Donnelly v. Glickman*, 159 F.3d 405, 409

11  (9th Cir. 1998); *Cabazon Band of Mission Indians v. Wilson,* 124 F.3d 1050, 1061 (9th Cir. 1997).

12  Failure to satisfy any one of the requirements is fatal to the application, and a court need not reach

13  the remaining elements if one of the elements is not satisfied.  *Perry v. Proposition 8 Official*

14  *Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

15  With respect to permissive intervention, the Court considers three factors pursuant to Rule

16  24(b)(1)(B), namely:  (1) the applicant's claim or defense must share a common question of law or

17  fact with the main action; (2) any independent grounds for jurisdiction over the claim or defense;

18  and (3) timeliness.  *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir.

19  1997); Fed. R. Civ. P. 24(b).  Even where all the prerequisites are met, a district court has

20  considerable discretion in ruling on the motion for permissive intervention.  *In re Benny*, 791 F.2d

21  712, 721–22 (9th Cir. 1986).  "In exercising its discretion, the court must consider whether the

22  intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R.

23  Civ. P. 24(b)(3).

24  In addition, both intervention as of right and permissive intervention are subject to service

25  and pleading requirements.  Under Rule 24(c), a motion to intervene must be: (1) served on the

26  parties as provided in Rule 5, and (2) accompanied by a pleading that sets out the claim or defense

27  for which intervention is sought.  The requirement in Rule 24(c) that a pleading be attached to the

28  motion to intervene is relaxed in certain circumstances and the Ninth Circuit has approved of

United States District Court
Northern District of California

21

1   motions to intervene "without a pleading where the court was otherwise apprised of the grounds for

2   the motion." *Beckman Industries, Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 474 (9th Cir. 1992).

3       **B.   Analysis**

4       Plaintiffs argue that the motion to intervene fails under Rule 24(c) because CBAA does not

5   attach a pleading to its intervention motion.   CBAA concedes it has not complied with Rule 24(c)

6   and asks the Court to relax the pleading requirement because the Court is otherwise aware of the

7   defenses CBAA intends to raise.

8       In narrow circumstances the Ninth Circuit has declined to impose a "technical" application

9   of Rule 24(c).  *Beckman*, 966 F.2d at 474 (citing *Shores v. Hendy Realization Co.*, 133 F.2d 738,

10  (9th Cir. 1943) (declining to enforce literal interpretation of earlier version of Rule 24)).   In

11  *Beckman*, the proposed intervenor sought to modify the terms of a protective order to gain access to

12  deposition transcripts following resolution of the underlying action.   Although the proposed

13  intervenor did not attach a pleading to its motion, the district court granted intervention as the Rule

14  24 motion "describe[d] the basis for intervention with sufficient specificity to allow the district

15  court to rule" thereon.  *Id*. at 475.   On that record the Ninth Circuit determined that Rule 24(c) was

16  not a proper ground for reversal of the district court order granting intervention.  *Id*.

17      Likewise, in *Bushansky v. Armacost*, the district court granted a motion to intervene despite

18  the proposed intervenor's failure to comply strictly with Rule 24(c).  2014 WL 5335255, at *2

19  (N.D. Cal. Oct. 17, 2014).   In that case, the proposed plaintiff intervenor filed his motion in

20  response to a press release noting that the purported class action would be dismissed without

21  prejudice as the current plaintiff was not proper.  *Id*.   The district court recognized that its previous

22  order "invited intervention in [the] action premised on the existing complaint."  *Id*.   Indeed, the

23  district court had "ordered the parties to provide express notice to [purported class members] to

24  allow them to intervene, and that notice identified this case and included an explanation of the

25  causes of action alleged in the complaint."  *Id*.   Additionally, the district court found "that the

26  original complaint was incorporated by reference into his request to intervene and thus that the

27  [district court was] aware of the grounds for intervention."  *Id*.   Thus, the district court found that it

28  and the parties were adequately "apprised of the grounds" for the request to intervene as Rule 24(c)

United States District Court
Northern District of California

22

United States District Court
Northern District of California

envisions.  *Id.*; *accord Dixon v. Cost Plus*, 2012 WL 2499931, at *6 (N.D. Cal. June 27, 2012) (granting motion to intervene where proposed plaintiff intervenor "specifically state[d] that intervention [was] sought on claims already included" in the operative complaint).

Here, the Court understands CBAA's financial interest in the State's bail system.  However, how those issues relate to the constitutionality of the State's bail law provisions remains elusive.  CBAA indicates it intends to file a response to the operative complaint following this Court's ruling on the pending motions to dismiss, relying on the Ninth Circuit's decision in *Beckman* and district court orders including *Bushansky*.  Those cases are distinguishable.  In *Beckman*, the proposed intervenor sought to modify a protective order in a closed case and did not seek to assert claims or defenses in the action.  In *Bushansky*, the proposed intervenor sought to assert the same claims in the operative complaint and incorporated that pleading by reference into his motion to intervene.  CBAA has not presented any reason for the Court to relax the Rule 24(c) pleading requirement in this instance and allow CBAA to delay explaining the defenses it intends to assert, especially in light of the complex constitutional issues presented by plaintiffs in this case.   The Court requires a proposed responsive pleading from CBAA to assess adequately whether intervention is appropriate.  Moreover, by this Order, the Court resolves the motions to dismiss.

Accordingly, the Court **DENIES** CBAA's motion to intervene **WITHOUT PREJUDICE** to CBAA re-filing its motion in full compliance with Rule 24, including a proposed pleading attached thereto.

## IV.   CONCLUSION

Based upon the foregoing, the Court rules on the pending motions as follows:

- The County's and the Sheriff's motion to dismiss (Dkt. No. 76) is **GRANTED IN PART**: plaintiffs' requests for monetary damages against the Sheriff are **DISMISSED WITH PREJUDICE** on Eleventh Amendment immunity grounds and the single count against the County is **DISMISSED WITH PREJUDICE**.

- The Attorney General's motion to dismiss (Dkt. No. 77) is **GRANTED** on Eleventh Amendment immunity grounds **WITH LEAVE TO AMEND**.

- Proposed intervenor California Bail Agents Association's motion to intervene (Dkt. No. 81) is **DENIED WITHOUT PREJUDICE** to re-filing the motion with a proposed pleading attached thereto in compliance with Rule 24(c).

Accordingly, the 3AC properly alleges a single claim against the Sheriff in her official capacity for prospective declaratory and injunctive relief for her alleged violation of plaintiffs' Fourteenth Amendment rights. The Sheriff shall file her answer to the 3AC no later than **November 1, 2016**. Any further motion to intervene by CBAA shall be filed no later than **November 1, 2016**.

While the Court is not convinced that an appropriate claim can be stated, to the extent plaintiffs seek to file a fourth amended complaint against the Attorney General consistent with this Order and Rule 11, plaintiffs shall file the same by **October 25, 2016**. Otherwise, the dismissal of the Attorney General will be deemed with prejudice.

The Court hereby **SETS** a case management conference to be held on **December 5, 2016** on the Court's **2:00 p.m.** calendar in the Federal Courthouse, 1301 Clay Street Oakland, California, Courtroom 1. The parties shall file their Joint Case Management Statement by no later November 28, 2016.

This Order terminates Docket Numbers 76, 77, and 81.

**IT IS SO ORDERED**.

Date: October 14, 2016

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California

24