*Buffin et al., v. City and County of San Francisco, et al.*
**United States District Court**
**Northern District of California**
**Case No. 4:15-cv-04959-YGR**

**REBUTTAL EXPERT REPORT**

**Judge Quentin L. Kopp (Ret.)**
380 West Portal Avenue
San Francisco, CA 94127

Date: June 2, 2017

Signed _/s/ Quentin L. Kopp_
Quentin L. Kopp

1

**TABLE OF CONTENTS**

I. Introduction ........................................................................................................................ 3

II. Professional Qualifications and Experience, FRCP 26(a)(2)(B)(iv), (v) ............................... 3

III. Facts or Data Considered, FRCP 26(a)(2)(B)(ii) ................................................................. 4

IV. Opinions, with Basis and Reasons, FRCP 26(a)(2)(B)(i) ..................................................... 4

    a. California Jail Population…………………………………………………………….5

    b. County and Judicial Costs Imposed by Alternative Pretrial Release Conditions……...5

    c. Alternative Pretrial Release Conditions Do Not Achieve Better Protection of Indigent Defendants……………………………………………………………………………8

I.      Introduction

1.      This rebuttal expert report is prepared and submitted by Judge Quentin L. Kopp (Ret.). I have been retained by the California Bail Agents Association and its counsel, Dhillon Law Group Inc., as a rebuttal expert on issues pertaining to the efficacy and costs of secured money bail, as compared to alternative pretrial conditions of release. This report complies with the requirements of Federal Rule of Civil Procedure 26(a)(2)(B).

2.      I do not plan to use exhibits to summarize or support the opinions expressed here. FRCP 26(a)(2)(B)(iii).

3.      I am being compensated at the rate of $350 per hour for my testimony and other services in the case at bar. FRCP 26(a)(2)(B)(vi).

II.     Professional Qualifications and Experience, FRCP 26(a)(2)(B)(iv), (v)

4.      I am a licensed California attorney, a trial lawyer since 1956, and retired judge of the San Mateo County Superior Court. I am currently Of Counsel to the San Francisco firm of Furth, Salem, Mason and Li. My professional biography is attached to this declaration.

5.      I graduated from Dartmouth College in 1949, and obtained my law degree from Harvard Law School in 1952. As a trial lawyer, I tried and appeared in both criminal and civil matters in California state and federal courts. In 1999, I was appointed as a San Mateo County Superior Court Judge. I served in that capacity until my retirement in 2004, and thereafter in the California Judicial Council's Assigned Judges Program. I was a general trial judge handling both civil and criminal matters in San Mateo County and, by order of the Chief Justice of the California Supreme Court, in eight other counties, to wit, Humboldt, Sonoma, Napa, San Francisco, Santa Cruz, Los Angeles, San Diego, and Riverside.

6.      As a Superior Court judge, I spent 11 years setting bail and granting "own recognizance" (or "OR") release to defendants. I was also the San Mateo County Grand Jury Judge for 2.5 years, which included an investigation of the San Mateo County "OR" program,

3

that had been operated by the Private Defenders System of the San Mateo County Bar Association. It was a result of that investigation and report that the San Mateo County Superior Court acted to transfer the San Mateo County "OR" Program to the County's Probation Department because of dissatisfaction with non-appearing (in court) defendants.

7. I was elected to the San Francisco Board of Supervisors in 1971 and reelected four times until election to the California State Senate in 1986. I was reelected in 1990 and 1994, serving until 1998. I was a member of the State Senate Committee on Criminal Law and Public Safety for nine years, and California Law Revision Commission for 10 years.

8. In the last four years, I have been an expert witness in two San Francisco Superior Court civil cases: *Kye-Rorie v. Luxor Cabs Company*, Inc., Case No. 13535063, and *Sarain v. Sarain*, Case No. 15544620.

### III. Facts or Data Considered, FRCP 26(a)(2)(B)(ii)

9. I have considered the following materials in preparation of this report:

   a. The Third Amended Class Action Complaint filed by Plaintiffs on May 27, 2016;

   b. Affidavits attached to the Third Amended Class Action Complaint;

   c. California Bail Agents Association's Answer to the Third Amended Class Action Complaint;

   d. Numerous articles, reports, and California case law and statutory authority concerning the issues presented in this case, as cited in my report below.

### IV. Opinions, with Basis and Reasons, FRCP 26(a)(2)(B)(i)

10. I understand that the Plaintiffs in this case seek to replace the use of secured money bail with alternative pretrial release policies, for those who claim inability to make a monetary payment, and argue that doing so will lead to better results and lower costs to cities and counties. This position lacks fundamental knowledge of California's criminal justice courts, existing practices, and the law itself.

### a.  California Jail Population

11. In 2015, there were about 1,100,000 adults arrested in California.

12. In my experience, based on over 60 years of practice within the California criminal justice system, most people in jail, pending trial, are in jail because of non-financial reasons. They are either serving a sentence on another case, accused of a probation or parole violation, or facing an immigration or arrest warrant retention.

13. In a 2012 study of the Los Angeles County jail system by the American Civil Liberties Union, the ACLU found that 87 percent of individuals who were in jail pending trial and unable to be released on bail were due to "non-financial holds." The true number of pretrial defendants eligible for pretrial release is closer to 13 percent, according to the same ACLU study. Many such defendants are released through the current bail system.

14. Every year, more than 300,000 defendants choose to be released on bail in California. With some exceptions, a criminal defendant in the state of California has a right to be released on bail by sufficient sureties. (Cal. Const., art. I, §§12, 28, subd. (e).)

15. I note from the Third Amended Complaint that named Plaintiff Crystal Patterson chose to exercise her right to be released on bail by using a private bail bond company, despite claiming to be indigent. TAC, ¶¶ 35, 37.

### b.  County and Judicial Costs Imposed by Alternative Pretrial Release Conditions

16. Plaintiffs' witnesses argue that replacing the use of secured money bail with non-financial or unsecured pretrial release policies would benefit cities and counties by saving taxpayers money that would otherwise be spent on pretrial detention. In support of their argument, they cite programs implemented in jurisdictions such as Washington, D.C., which operates a criminal justice system without using money bail. *See* 71-5, ¶17.

17. The District of Columbia is not an appropriate comparison to California, such that California could reasonably be expected to implement a similar type of pretrial release system.

The District of Columbia's pretrial release system costs $65,200,000 a year. It is important to note that the population of D.C. is only about 670,000 people, as contrasted with California's population of over 39,000,000 people. If the D.C. system were used to serve California's population, it would cost approximately $3,780,000,000 per year.

18.     Recently, New Jersey adopted a bail program requiring use of a pretrial services agency which will have enough new employees and other resources to evaluate and prepare a pretrial risk assessment report for every defendant arrested, with certain exceptions. New Jersey's three-month old program is already estimated to cost over $450,000,000. New Jersey has a quarter of California's population.

19.     It will manifestly be too expensive and onerous for California to implement a pretrial services program of the type which exists in D.C. or New Jersey, where a pretrial assessment is conducted for each defendant instead of using a court-adopted bail schedule.

20.     California Penal Code §825 requires that defendants in custody be arraigned in court within 48 hours of arrest. Without use of the bail schedule, the courts and district attorney and public defender offices will be compelled to deal with 300,000 additional arraignments within 48 hours of arrest, where those individuals would otherwise have been released on bail. Many more prosecutors and supporting staff of county employees will need to be hired to perform such a requirement.

21.     It is my opinion, based on over 60 years of experience with the California criminal justice system, that shifting more than 300,000 defendants from privately funded bail to taxpayer-funded pretrial release programs will strain California's already underfunded court system.

22.     In addition to the cost associated with operating a pretrial system sufficient to replace use of surety bail in the ways Plaintiffs request, there exists also the cost of monitoring hundreds of thousands of defendants who will be released onto the streets, the cost to the courts

after a defendant fails to appear in court for a court-ordered proceeding, and the cost of finding and arresting those who fail to appear.

23.     Pretrial release services have a poor performance record in such respects. According to "*Not in it for Justice*" by Human Rights Watch,[1] Alameda County's pretrial services performs poorly in locating and rearresting defendants released on their own recognizance, meaning without bail.

24.     A University of Texas study found the cost to the courts of each failure to appear in Dallas County to be $1,775. (Morris, Robert G., "*Pretrial Release Mechanisms in Dallas County, Texas: Differences in Failure to Appear, Recidivism/Pretrial Misconduct, and Associated Costs of FTA*," The University of Texas at Dallas (2013), p. 2-3).[2]

25.     Plaintiffs claim that "[b]ecause pretrial detention imposes costs on cities and counties, ending the use of money bail would actually benefit jurisdictions by saving them money." Dkt. 71-5, ¶24. The savings are, however, based on an erroneous assumption that approximately 63 percent of defendants are in jail because they cannot afford bail. *See* Dkt. 71-8, ¶23. In fact, pretrial jailed defendants are not eligible for bail or pretrial release programs because they have "holds" from other agencies or are serving a sentence for a previous criminal conviction. Therefore, the claimed savings will not materialize, but the state and counties (and their taxpayers) will suffer the high new costs of implementing alternative pretrial release programs.

26.     California's courts have already faced severe financial decreases over the past decade. The failure of adequate funding to cover costs has adversely affected the public with longer waiting times in courtrooms, reduced courthouse hours, and the closing of branch courthouses. California Governor Jerry Brown's proposed 2017-18 state budget allocates

---

[1] Available at https://www.hrw.org/report/2017/04/11/not-it-justice/how-californias-pretrial-detention-and-bail-system-unfairly
[2] Available at https://www.utdallas.edu/epps/ccjs/dl/Dallas%20Pretrial%20Release%20Report%20-FINAL%20Jan%202013c.pdf

$2,790,000,000 to support trial court operations, but California's courts need an additional $158,500,000 million just to preserve existing service levels. By most conservative estimates, alternative pretrial release conditions that "end[]…reliance on money bail" (Dkt. 71-5, ¶24) will cost the state and counties (and taxpayers) an additional $2,000,000,000 to $4,000,000,000 each year.

### c. Alternative Pretrial Release Conditions Do Not Achieve Better Protection of Indigent Defendants

27. As noted, a defendant's right to bail by sufficient sureties is guaranteed by the California Constitution. Bail by sufficient sureties means a defendant must possess the option to secure release through a bail bond posted by a commercial surety. Several other high courts have considered identical language in their state constitutions and have reached the same conclusion. *See State v. Barton* 181 Wn.2d 148 (2014); *State ex rel. Sylvester v. Neal*, 140 Ohio St.3d 47 (2014); *State v. Parker*, 546 So.2d 186, 186 (La.1989); *State v. Golden*, 546 So.2d 501, 503 (La. Ct. App 1989); *State v. Brooks*, 604 N.W.2d 345, 352–53 (Minn.2000); *State ex rel. Jones v. Hendon*, 66 Ohio St.3d 115, 609 N.E.2d 541, 544 (1993).

28. Plaintiffs' witnesses maintain that the use of secured money bail to detain people causes harm to indigent accused, who fare better under alternative conditions of release. To the extent, however, that such alternatives require defendants to agree to onerous pretrial release conditions in order to be released (e.g. mandatory drug testing and GPS monitoring), they are not in the best interest of the accused.

29. The U.S. Court of Appeals for the Ninth Circuit has held that, in some circumstances, such pretrial release conditions are unconstitutional. In *United States v. Scott*, 450 F.3d 863, 874 (9th Cir. 2005), the defendant agreed to submit to home searches and drug testing in order to obtain pretrial release. After law enforcement officers conducted a home search and drug test of that defendant, however, the Ninth Circuit suppressed the results because these searches could not pass Fourth Amendment principles "under any of the three [relevant]

approaches: consent, special needs or totality of the circumstances." *Id.* As an individual merely accused of a crime and presumed innocent, the defendant maintained Fourth Amendment rights that the government could not violate. Even the defendant's consent to the conditions of pretrial release could not render those conditions constitutionally legitimate because the government cannot impose "unconstitutional conditions" in exchange for government benefits. *Id.* at 866 (citing *Dolan v. City of Tigard*, 512 U.S. 374 (1994)).

30.  I disagree unqualifiedly with Plaintiffs that exclusive use of alternative conditions of pretrial release is in the best interest of defendants, indigent or otherwise.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 2nd day of June, 2017, at San Francisco, California.

*/s/ Quentin L. Kopp*
Quentin L. Kopp