DENNIS J. HERRERA, State Bar #139669
City Attorney
WAYNE K. SNODGRASS, State Bar #148137
JEREMY M. GOLDMAN, State Bar #218888
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone:     (415) 554-6762
Facsimile:     (415) 554-4699
E-Mail:        jeremy.goldman@sfcityatty.org

Attorneys for Defendant
SHERIFF VICKI HENNESSY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RIANA BUFFIN and CRYSTAL PATTERSON, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>SHERIFF VICKI HENNESSY, in her official capacity,<br><br>Defendant.<br><br>vs.<br><br>CALIFORNIA BAIL AGENTS ASSOCIATION,<br><br>Intervenor Defendant. | Case No. C15-04959 YGR<br><br>**SHERIFF VICKI HENNESSY'S RESPONSE TO PLAINTIFFS' AND CBAA'S MOTIONS FOR SUMMARY JUDGMENT**<br><br>Hearing Date:  December 12, 2017<br>Time:          2:00 p.m.<br>Place:         Courtroom 1, Fourth Floor<br>Judge:         Hon. Yvonne Gonzalez Rogers |

Defendant Sheriff Vicki Hennessy ("the Sheriff") submits this response to the motions for summary judgment filed by Plaintiffs and by Defendant-Intervenor California Bail Agents Association ("CBAA"). As the Sheriff stated in her Answer, ECF No. 101 at 1, she will not defend the pre-arraignment bail laws challenged in this action, and accordingly this response does not address the merits of Plaintiffs' and CBAA's legal arguments concerning their constitutionality.[1] Instead, this response will address some factual inaccuracies in Plaintiffs' memorandum and discrepancies between the relief they appear to be seeking and the legal claim they have asserted.

## I. PLAINTIFFS' FACTUAL RECITATIONS CONTAIN SEVERAL ERRORS AND MISUNDERSTANDINGS

By offering the following observations and corrections concerning several of Plaintiffs' factual assertions, the Sheriff does not contend that the errors, or indeed the facts themselves, are material to the legal issue to be decided by the Court. On the contrary, many of the facts appear to be marginal or irrelevant; this case presents a constitutional challenge to a state statutory scheme, not to procedures in the San Francisco jail. Nonetheless, in the interest of ensuring that the information presented to the Court is accurate, we address several assertions that are incorrect or incomplete.[2]

### A. Plaintiffs' Discussion of Statistics Concerning the O.R. Project Contains Inaccuracies and Omissions

On page 10 of their memorandum and in an accompanying declaration by Ms. Hatton, Plaintiffs try to summarize certain data produced in discovery by the Sheriff. Plaintiffs' general point is that individuals who are able to pay the amount on the bail schedule (whether in cash or by means of a surety bond) can obtain release more quickly than those who obtain release through a pre-arraignment application to a magistrate facilitated by the OR Project. That much is undoubtedly true. While an individual with access to adequate funds can pay bail and be released immediately, an order

---

[1] Since it was not cited in either of the opening memoranda, it is appropriate to call to the attention of the other parties and the Court a recent decision of the Ninth Circuit that, although it arises in the immigration context, may have some relevance to this case: *Sessions v. Hernandez*, 872 F.3d 976 (9th Cir. 2017). Plaintiffs and CBAA may address it as they deem warranted. The Sheriff takes no position on the motions to exclude testimony filed by Plaintiffs and CBAA. *See* ECF Nos. 134, 137, 138, 139.

[2] This response does not attempt to cover every such issue. Moreover, given that the Sheriff is not addressing the merits of the legal arguments, this response is not an opposition and accordingly the Sheriff does not separately respond to Plaintiffs' Separate Supporting Statement.

granting OR release will necessarily take some amount of time: Some time is required for OR Project staff to prepare the materials requested by the court, and some additional time is required for the court to rule on the application. *See generally* ECF No. 136-1, Stipulated Facts 20-26. For the purposes of Plaintiffs' legal argument, that is probably all that matters, but given Plaintiffs' assertion that the O.R. Project is "woefully inefficient" compared to "immediate paid release," ECF No. 136 at 10, it is worth pointing out that Plaintiffs have misunderstood or overlooked some relevant information, making their claims on this page inaccurate or potentially misleading.

First, the statistics reported by Plaintiffs regarding the timing of the releases are off by a wide margin. Plaintiffs write: "Of the 513 people released in 2016 through the OR Project, only 4% were released in less than 24 hours; nearly 11% spent 24–48 hours waiting for their release; 71% waited at least two full days; roughly 14% waited for at least three full days." ECF No. 136 at 10. These assertions actually misreport the results of Ms. Hatton's analysis, which they purport to summarize,[3] but the analysis itself used the wrong data. Ms. Hatton took the time in custody from the number of days reported in a column on SHF000236. *See* ECF No. 136-15 ¶ 15. But that number is not a precise measure of the duration of custody; it represents jail days credited, and because any fraction of 24 hours will be credited as at least a full calendar day and potentially two, it overstates the actual amount of time in custody. Bui Decl. ¶ 4. The duration of custody (broken into different categories requested by Plaintiffs in an interrogatory) is set out in SHF000235. *Id.* ¶ 5. Taking Ms. Hatton's figure of 513 "Project O.R." releases, SHF000235 shows that 253, which is over 49% of the total, occurred within 24 hours—not 4% as claimed by Plaintiffs. Goldman Decl. ¶ 3 & Ex. 1. A further 218 releases occurred between 24 and 48 hours, which is 42.5%, not 11%. *Id.* Subtracting those two groups from the total of 513 leaves only 42 releases, or just above 8% of the total, at more than 48 hours—a far cry from the 71% figure that appears in Plaintiffs' memorandum.

Second, we caution that Plaintiffs' methodology did not identify all pre-arraignment releases granted through the OR Project, because it assumed they would all be denominated "Project O.R." on

---

[3] Ms. Hatton stated in her analysis of the data that approximately 11% of arrestees were released "within 24 hours"—not between 24 and 48 hours—and the next group was released "between 1 and 2 days of detention (approximately 71%)," ECF No. 136-15 ¶ 16, which would be less than two full days.

ECF Nos. 136-3 (SHF000235) and 136-16 (SHF000236).  *See* ECF No. 136-15 (Hatton Decl. ¶¶ 10, 14-16).  As an initial matter, when an individual is released under more active supervision, which can occur either before arraignment or at some later point, that release is denominated "Assertive Case Management."  Riker Decl. ¶ 5; Goldman Decl. Ex. 2 (Rodrigues Deposition at 18:1-9).[4]  Moreover, because the Jail Management System can record only one release reason, and a person may be detained for multiple reasons, there would be additional pre-arraignment releases granted through the OR Project that were not recorded as either "Project O.R." or "Assertive Case Management."  Bui Decl. ¶ 7.  While the Sheriff's Department does not have a reason to believe that the ***percentages*** of releases occurring within the specified timeframes would be significantly different if all releases were considered, Plaintiffs' count of the number of releases necessarily understates the total.[5]

Third, again with respect to the total numbers, it is important to point out that Plaintiffs have tried to count only releases.  But since this case does not include a challenge to individualized judicial decisions, it would be fairer to acknowledge that many additional pre-arraignment applications were presented, but the duty judge denied them.  For example, an analysis of the first six months following the introduction of the PSA Tool (*i.e.*, April 30th through October 31st of 2016) reported that the court denied release in 39% of the pre-arraignment applications presented through the OR Project.  Riker Decl. Ex. 1 at SHF000837.

Finally, by simply comparing the number of pre-arraignment bail releases to the number of pre-arraignment OR releases, Plaintiffs' summary likewise fails to acknowledge that many arrestees are ineligible for pre-arraignment OR release under state law, even while they can obtain pre-arraignment release by paying the applicable amount under the bail schedule.  *See* ECF No. 136-1, Stipulated Fact 40.  The OR Project has no ability to obtain pre-arraignment OR release for those who are ineligible for it under state law.  *Id.*, Stipulated Fact 24.  The same six-month study cited above

---

[4] While the number of hours may give some indication, the data in the Jail Management System are not segregated or demarcated based on whether the release occurred before arraignment, at arraignment, or at some later point.  Bui Decl. ¶ 6.

[5] A study of the six-month period following the introduction of the PSA Tool on April 30, 2016, indicates that 448 pre-arraignment applications were granted in those six months alone.  *See* Riker Decl. Ex. 1 at SHF000837 (showing that 736 cases were presented pre-arraignment, of which 39% were denied).  Had Plaintiffs discussed in advance what statistics they wished to present, we would have tried to reach a stipulation on methodology and results.  *See* ECF No. 119 at 7.

reported that, while 736 cases were presented pre-arraignment to the duty judge, 1,562 were presented at arraignment. Riker Decl. Ex. 1 at SHF000837-38. By excluding the applications that were presented again at arraignment after being denied by the duty judge, it is possible to conclude that approximately half of all cases in that six-month period were ineligible for pre-arraignment OR release. Riker Decl. ¶ 9.

### B. Plaintiffs Misstate Certain Jail Procedures

Plaintiffs write that "Deputy Sheriffs decide who is eligible to apply [for pre-arraignment release or lowered bail] during intake, but they are not required to inform eligible arrestees that they have this option." ECF No. 136 at 3. As the director of the OR Project testified at his deposition, the document Plaintiffs cite, ECF No. 136-4, is actually a page from the *OR Project*'s manual outlining the factors determining eligibility for pre-arraignment OR release. Goldman Decl. Ex. 2 (Rodrigues Deposition at 41:15-21); Goldman Decl. Ex. 3 (Rodrigues Depo Exhibit 5). OR Project staff determine whether individuals are eligible for pre-arraignment release (saying they "decide" is misleading, because there is no exercise of discretion, *see* Goldman Decl. Ex. 2 (Rodrigues Deposition at 56:10-14)); they are not Deputy Sheriffs (in fact they are not Sheriff's Department employees at all, but serve as investigative staff for the Superior Court, ECF No. 136-1, Stipulated Fact 20); and their identification of eligible individuals is something that occurs after the booking process, not during it, *id.* Stipulated Fact 23. That is because OR Project staff can prepare the criminal history required for the OR Workup, including the PSA report, only once they have received "ID confirmation"—*i.e.*, after the Sheriff's Department has submitted the arrestee's fingerprints to the California Department of Justice and the FBI and received confirmation of identity. Riker Decl. ¶ 6. And while it is true that OR Project staff do not inform individuals of the provisions of Penal Code section 1269c, they do meet with all individuals eligible for pre-arraignment release directly after determining their eligibility, and are required to inform them of their eligibility and explain that an application will be submitted on their behalf if they sign the form agreeing to obey any release conditions imposed by the court. *Id.*, Stipulated Facts 23, 43; Goldman Decl. Ex. 4 (Sheriff Vicki Hennessy's Response to CBAA Special Interrogatory No. 8); Goldman Decl. Ex. 2 (Rodrigues Deposition at 57-60).

### C. Ms. Buffin's Loss of her Job Was Not Caused by Her Detention

Although not asserted as a material fact, in their discussion of Ms. Buffin, Plaintiffs write: "Following her elongated detention, Ms. Buffin lost her job at the Oakland Airport." ECF No. 136 at 4. The only evidence cited for this statement is a declaration by a deputy public defender, Chesa Boudin, in which he states: "I am personally aware that, as a result of her detention, Ms. Buffin lost her job at the Oakland airport." ECF No. 136-11, ¶ 16. We thought we had reached an agreement with Plaintiffs that this assertion, subsequently contradicted by Ms. Buffin's own deposition testimony, would not appear in this motion at all. Goldman Decl. ¶¶ 7-8. However, Plaintiffs declined to re-file their memorandum without that assertion when we requested that they do so, although their counsel stated that Plaintiffs do not contend there is a causal relationship, at least one that might support the now-dismissed claim for damages (*see* ECF No. 99 at 15). Goldman Decl. ¶ 9 and Ex. 5. Given the possibility that Plaintiffs' papers may be read to imply a causal relationship, a brief response is in order.

In the first place, Mr. Boudin's statement is not competent evidence because it lacks foundation. Fed. R. Evid. 602. The declaration discloses no facts that would support his conclusory assertion that he is "personally aware" of the reason Ms. Buffin was terminated. He does not say that he represents or represented her; on the contrary, he says that his office is appointed at arraignment, ECF No. 136-11 ¶ 11, yet Ms. Buffin was never arraigned, *id.* ¶ 15. But even if he were Ms. Buffin's attorney, the likely source of his awareness is something reported to him by someone else, such as Ms. Buffin herself, which would make it hearsay rather than personal knowledge.

In any event, at her deposition, Ms. Buffin said otherwise. She was employed as a cashier at the airport, and she testified that she lost the job for two reasons: first, the arrest itself, which her employment did not allow her to have on her background; and second, a "no call/no show"—*i.e.*, a failure to show up for work ***without*** having called to say she would be absent. Goldman Decl. Ex. 6 (Buffin Deposition 51:7-53:12). The first reason has no connection whatsoever to her detention—the arrest would have been on her background even if the law had allowed immediate release on citation—and she has not challenged her arrest in this lawsuit. With respect to the second reason, Ms. Buffin acknowledged that the jail made available a free phone from which she could have made any

calls she wished (including to the Oakland area code), but explained that she decided against calling her employer because she thought it would be unprofessional. *Id.* (Buffin Deposition 52:12-22, 60:10-61:15).[6]

## II. THE RELIEF PLAINTIFFS SEEK EXCEEDS THE LEGAL CLAIM AND ARGUMENTS THEY HAVE MADE

The question of what relief Plaintiffs seek, and how it is connected to the claim they have asserted, has clouded this litigation from the outset, and has caused problems several times. *See, e.g.*, ECF Nos. 26 at 6; 29 at 6-7; 55 at 9; 63 at 16-18. The problems have not yet been resolved.

### A. Plaintiffs' Requests for Declaratory Relief Exceed the Scope of this Case

In its order on the most recent motions to dismiss, the Court summarized this action as follows:

> Plaintiffs bring a single count against the County, the Sheriff, and the Attorney General for violation of their Fourteenth Amendment equal protection and due process rights when the Sheriff enforces state law by keeping them in jail before arraignment solely because they cannot afford to pay money bail. Specifically, plaintiffs challenge defendants' enforcement of California Penal Code section 1269b, which provides that a sheriff may only collect bail from pre-arraignment arrestees in the amount fixed, inter alia, in the schedule of bail set by the superior court judges sitting in and for that county.

ECF No. 99 at 1. Similarly, the Court's subsequent order granting CBAA permissive intervention explained that the operative complaint "challenges the San Francisco Sheriff's use of a bail schedule to detain a person prior to being seen by a judicial officer" as required by section 1269b, and "allege[s] that section 1269b is unconstitutional because it requires or permits 'wealth-based detention without an inquiry into an individual's ability to make a monetary payment.'" ECF No. 119 at 1-2.

There is one request for declaratory relief that appears to correspond to this claim: "Declare unconstitutional and enjoin the Felony-Misdemeanor Bail Schedule established by the Superior Court of California, County of San Francisco." ECF No. 136 at 25, Request b. There are two others that are not so limited, however.

---

[6] In this testimony, Ms. Buffin also said that she did not have the number. But she could have called someone else to ask them to look up the number for her, and in any event, she reiterated that she would not have called even if she had the number because she felt it would have been unprofessional.

The first asks the Court to "[d]eclare unconstitutional and enjoin the use of money bail and all pretrial processes that condition release on a monetary sum extracted from a criminal defendant." *Id.*, Request a.  This request appears to exceed the scope of Plaintiffs' claim because it is not limited to the period when release is subject to the bail schedule, *i.e.*, before the defendant has appeared before a judicial officer.  As we understand it, Plaintiffs have not claimed that California law prohibits judges from considering a defendant's financial circumstances when setting bail individually, and they have not challenged any individual order setting bail.  Moreover, they have not argued that the use of money bail is unconstitutional in all cases, regardless of the amount set by the court and regardless of how the court arrived at it.

The second request asks the Court to "[d]eclare unconstitutional and enjoin the enforcement of all state laws that create wealth-based pretrial release processes, including but not limited to California Penal Code sections 1270.1, 1269b, and 1269c." *Id.*, Request c.  Although unclear, it appears to sweep as broadly as the first request and is therefore unwarranted for the same reasons.  But it is in any event too vague, both because it fails specify what laws it reaches beyond the three statutory sections cited, and because even those examples contain multiple provisions that Plaintiffs have not addressed.  For example, subdivision (c) of section 1270.1 specifies factors that a court is required to consider when setting bail or releasing an individual on his or her own recognizance, but—putting aside that this law is not enforced by the Sheriff—Plaintiffs have not offered argument that those factors are constitutionally impermissible, or explained how such argument would be encompassed within the pre-arraignment claim they have asserted.

Accordingly, these two requests for declaratory relief exceed the scope of the claim and argument Plaintiffs have presented.

**B.     Plaintiffs Have Not Justified the Injunctive Relief They Seek, Which Also Remains Unclear**

In prior briefing, Plaintiffs have argued that "logistical consequences … are not a matter for this court" and "are for Defendants to sort out" from among multiple alternatives.  ECF No. 33 at 22-25; *see also* ECF No. 66 at 19-21.  The motion for summary judgment appears to take a different view, with three requests for injunctive release.

The first two are closely related to each other and suffer from a common difficulty. The first asks the Court to "order[] Defendants [sic] to release all individuals eligible for release as defined by the California Constitution, Article I, Section 12." ECF No. 136 at 25, Request d. The second asks the Court to "enjoin[] Defendants from detaining any release-eligible individual arrested in San Francisco County as defined by the California Constitution, Article I, Section 12, absent some legal and non-monetary to their release (e.g., revocations or other legal holds)." *Id.*, Request e. Taken together, the two requests are either inconsistent (because Request e. creates an exception to Request d.) or merely duplicative; it is unclear which alternative Plaintiffs intend.

Putting that aside, Section 12 of Article I provides that individuals are entitled to release on "sufficient sureties" except in three circumstances:

> (a) Capital crimes when the facts are evident or the presumption great; (b) Felony offenses involving acts of violence on another person, or felony sexual assault offenses on another person, when the facts are evident or the presumption great and the court finds based upon clear and convincing evidence that there is a substantial likelihood the person's release would result in great bodily harm to others; or (c) Felony offenses when the facts are evident or the presumption great and the court finds based on clear and convincing evidence that the person has threatened another with great bodily harm and that there is a substantial likelihood that the person would carry out the threat if released.

Cal. Const. Art. I § 12. By their express terms, these exceptions contemplate findings made by the court, and thus they do not appear to change anything in the pre-arraignment period when no judicial officer has considered the individual's entitlement to pretrial release. Moreover, the two requests for injunctive relief, if ordered by this Court, would require the Sheriff to release every person who—presumably after being seen by a judge—was not found to be ineligible under the state constitution for release on bail, including in any case in which the court set bail and denied OR release, notwithstanding that the bail set by the court has not been paid. These provisions are functionally equivalent to a command to state court judges to grant release without financial conditions to every person constitutionally entitled to release on bail. As discussed above with respect to Plaintiffs' claims for declaratory relief, this remedy appears to go beyond the claim Plaintiffs have asserted, at least without more explanation from Plaintiffs of their reasoning.

The third request for injunctive relief—which Plaintiffs alternatively suggest could be deferred for later briefing and consideration—asks for the following: "Enter an injunction ordering Defendants

[sic] to adopt a non-monetary remedial solution to pre-arraignment release consistent with the criteria outlined herein; specifically, to adopt a policy of immediately releasing all individuals accused of non-violent felonies and misdemeanors with appropriate non-monetary conditions, and to offer prompt, robust risk assessment and own recognizance release processes for remaining defendants that adequately balance government interests in pretrial liberty, public safety, and maximizing court appearance without unconstitutionally discriminating on wealth status." ECF No. 136 at 25, Request f.(1).

In the first place, this wording exhibits a confusion that has appeared at other times in the case. The Sheriff has no authority under California law to decide the terms of pretrial release, and Plaintiffs have not articulated a legal claim or argument that would justify the transfer of the relevant authority from the Superior Court to the Sheriff. She does not decide what non-monetary conditions are "appropriate." She does not have a "policy" with respect to the terms of an individual's pretrial release—she is required to follow state law and the Superior Court's orders—and she cannot be ordered to adopt one. Plaintiffs' suggestion that non-monetary release conditions could be imposed "at the Sheriff's discretion," ECF No. 136 at 18, misses this fundamental point, which the Court has previously covered. *See* ECF Nos. 55 at 9, 99 at 9-15.[7]

Moreover, to the extent this request for relief seeks an order that would require the OR Project, as the program that gathers and presents information to the court to assist in its release decisions, to operate in a particular way, it is not only vague, but also unexpected given the absence of allegations in the Third Amended Complaint regarding the specific operation of the OR Project. While state law authorizes counties to fund investigative staff for the court to assist in processing OR release decisions, Cal. Penal Code § 1318.1, it does not require them to do so, although San Francisco has done so for decades. At least some of what Plaintiffs ask for the OR Project already does, and we are

---

[7] We lament Plaintiffs' decision in their motion papers to continue to describe the relevant actor as "San Francisco" or "the County" notwithstanding this Court's decision to the contrary. The Court dismissed the City and County of San Francisco as a defendant, and held that the Sheriff acts as a state official in following her legal obligation to enforce state law and court orders. Plaintiffs' legal challenge is to California statutes, but the target in their papers is repeatedly referred to as "San Francisco's money bail system." Unfortunately, the problem is not simply one of loose phrasing, but also creates substantive problems with Plaintiffs' requests for relief.

unable to tell where Plaintiffs believe that it, as opposed to the Superior Court for example, falls short. The information presented by the OR Project does not bind or restrict the court's decision-making, and state law does not require a pretrial detainee to seek OR release solely by means of a county-funded program.

Putting aside questions about the scope of Plaintiffs' legal claim, Plaintiffs have not provided this Court with enough information and argument to ask it to set down specific new rules. As some of the discussion above indicates, Plaintiffs still appear to misunderstand or misperceive details about the OR Project's operation—who does what, based on what information, and on what timeline. As the Court is undoubtedly aware, bail reform is currently a subject of intense public interest in California; among other things, there is pending state legislation that would make significant changes to legal standards, procedures, and local and state resources; and a recent report commissioned by the State's Chief Justice contains numerous recommendations for reform.[8] To the extent Plaintiffs ask this Court to mandate the various components and features of a new pretrial release system, *see, e.g.*, ECF No. 136 at 21, and to the extent this Court is inclined to do so, the Sheriff requests that the subject be deferred for later consideration on a proper record and with adequate briefing.

Dated: November 14, 2017

DENNIS J. HERRERA
City Attorney
WAYNE K. SNODGRASS
JEREMY M. GOLDMAN
Deputy City Attorneys

By:     /s/*Jeremy M. Goldman*
JEREMY M. GOLDMAN

Attorneys for Defendant
SHERIFF VICKI HENNESSY

---

[8] *See* SB 10, available at https://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=201720180SB10; "Pretrial Detention Reform: Recommendations to the Chief Justice," Pretrial Detention Reform Workgroup, October 2017, available at http://www.courts.ca.gov/documents/PDRReport-20171023.pdf.