HARMEET K. DHILLON (SBN: 207873)
harmeet@dhillonlaw.com
KRISTA L. BAUGHMAN (SBN: 264600)
kbaughman@dhillonlaw.com
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593

Attorneys for Defendant Intervenor
California Bail Agents Association

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| RIANA BUFFIN and CRYSTAL PATTERSON, on behalf of themselves and other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, *et al.*<br><br>Defendants. | Case No. 4:15-cv-04959-YGR<br><br>**CALIFORNIA BAIL AGENTS ASSOCIATION'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date:    December 12, 2017<br>Time:    2:00 p.m.<br>Place:    Courtroom 1, Fourth Floor<br>Judge:   Hon. Yvonne Gonzalez Rogers |



# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. EVIDENTIARY OBJECTIONS ................................................................................... 3

III. CBAA IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ITS EIGHTH AMENDMENT DEFENSE ............................................................................................. 3

IV. CBAA IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ITS DEFENSE TO THE FOURTEENTH AMENDMENT CLAIMS, AS RATIONAL BASIS REVIEW APPLIES AND IS MET ........................................................................................................................ 5

    a. Immediate Release in the Pre-Arraignment Period Is Not a Fundamental Right That Gives Rise to Strict Scrutiny ........................................................................................ 6

        i. There is no Fundamental Right Under a Traditional Fourteenth Amendment Analysis 6

        ii. A "Fundamental Fairness" Analysis Has No Application To This Case ...................... 12

    b. Plaintiffs Raise No Disputed Issues of Material Fact Concerning CBAA's Defense That Rational Basis Review Is Met ........................................................................................ 14

V. IF THE COURT APPLIES STRICT SCRUTINY, THE CASE MUST BE TRIED ............... 14

VI. PLAINTIFFS' SUDDEN CHANGE OF REQUESTED RELIEF DEMONSTRATES THE CONFUSED STATE OF THEIR CLAIMS ........................................................................ 15

VII. CONCLUSION ........................................................................................................... 15



# TABLE OF AUTHORITIES

**Cases**

*U.S. v. Salerno,* 481 U.S. 739 (1987) .................................................................................................. 2

*Albright v. Oliver,* 510 U.S. 266 (1994) ............................................................................................... 6

*Bird v. Glacier Elec. Coop, Inc.,* 255 F.3d 1136 (9th Cir. 2001) ........................................................ 5

*Carlson v. Landon,* 342 U.S. 524 (1952) ............................................................................................. 7

*Cty. of Riverside v. McLaughlin,* 500 U.S. 44 (1991) ....................................................................... 10

*DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189 (1989) ............................. 5, 8

*Douglas v. California,* 372 U.S. 353 (1963) ........................................................................................ 6

*Dowling v. U.S.,* 493 U.S. 342 (1990) .................................................................................................. 6

*Draper v. Washington,* 372 U.S. 487 (1963) ....................................................................................... 6

*Dunn v. Blumstein,* 405 U.S. 330 (1972) ............................................................................................. 6

*Fields v. Henry Ct.,* 701 F.3d 180 (6th Cir. 2012) ............................................................................. 11

*Flemming v. Nestor,* 363 U.S. 603 (1960) ........................................................................................... 5

*Foucha v. Louisiana,* 504 U.S. 71 (1992) ........................................................................................ 5, 8

*Gagnon v. Scarpelli,* 411 U.S. 778 (1973) ......................................................................................... 13

*Galen v. County of Los Angeles*, 477 F.3d 652 (2007) ....................................................................... 4

*Gaylor v. Does,* 105 F.3d 572 (10th Cir. 1997) ................................................................................. 12

*Gerstein v. Pugh,* 420 U.S. 103 (1975) ......................................................................................... 10, 12

*Gideon v. Wainwright,* 372 U.S. 335 (1963) ....................................................................................... 6

*Griffin v. Illinois,* 351 U.S. 12 (1956) .................................................................................................. 6

*Halet v. Wend Inv. Co.,* 672 F.2d 1305 (9th Cir. 1982) .................................................................... 6, 9

*Harper v. Virginia State Bd. Of Elections,* 383 U.S. 663 (1996) ........................................................ 6

*Hawaii Boating Ass'n v. Water Transportation Facilities Division,* 651 F.2d 661 (9th Cir. 1981) .... 9

*High Tech Gays v. Defense Indus. Sec. Clearance Office,* 909 F.2d 375 (9th Cir. 1990) ................... 6

*M.L.B. v. S.L.J.,* 519 U.S. 102 (1996) ................................................................................................. 6

*Martinez v. City of Oxnard,* 337 F.3d 1091 (9th Cir. 2003) ............................................................... 5

*Mayer v. Chicago,* 404 U.S. 189 (1971) .............................................................................................. 6



| | |
|---|---|
| *Medina v. California,* 505 U.S. 437 (1992) | 6 |
| *O'Donnell v. Harris County,* 4:16-cv-01414 (S.D. Tex. Apr. 28, 2017) | 4 |
| *Reynolds v. Simms,* 377 U.S. 553 (1964) | 6 |
| *Ross v. Moffitt,* 417 U.S. 600 (1974) | 6, 11 |
| *Lopez-Valenzuela v. Arapaio*, 770 F.3d 772 (9th Cir. 2004) | 9 |
| *Sessions v. Hernandez,* 872 F.3d 976 (9th Cir. 2017) | 7 |
| *Skinner v. Oklahoma,* 316 U.S. 535 (1942) | 6 |
| *Smith v. Bennett,* 365 U.S. 709 (1961) | 6 |
| *Smith v. Doe,* 538 U.S. 84 (2003) | 5 |
| *Socialist Workers Party v. March Fong Eu,* 591 F.2d 1252 (9th Cir. 1978) cert denied., 441 U.S. 946 (1979) | 9 |
| *Stack v. Boyle*, 342 U.S. 1 (1951) | 4 |
| *Terry v. Ohio,* 392 U.S. 1 (1968) | 5, 12 |
| *Turner v. Rodgers,* 564 U.S. 431 (2011) | 13 |
| *U.S. v. Chase,* 499 F.3d 1061 (9th Cir. 2007) | 13 |
| *Washington v. Glucksberg,* 521 U.S. 702 (1997) | 5 |
| *Welchen v. Cnty. of Sacramento*, No. 2:16-cv-00185-TLN-KJN 2016 WL 5930563 (E.D. Cal. Oct. 11, 2016) | 11 |
| *Wright v. Incline Village Gen. Improvement Dist.,* 665 F.3d 1128 (9th Cir. 2011) | 5 |
| *Zadvydas v. Davis,* 533 U.S. 678 (2001) | 7 |

**Statutes**

| | |
|---|---|
| 8 U.S.C. §1226(a) | 8 |
| Cal. Pen. Code § 1269 | 1, 2, 7 |
| Cal. Pen. Code § 1270.1 | 2, 8 |

**Constitutional Provisions**

| | |
|---|---|
| Cal. Const. Art. 1 §12 | 4, 15 |



## I. INTRODUCTION

Plaintiffs' Opposition ("Opposition") to CBAA's Motion for Summary Judgment ("Motion") exposes a fundamental misunderstanding of Rule 56's legal standards. Plaintiffs' operative Complaint ("3AC," Dkt. 71) challenges the San Francisco Sheriff's ("Sheriff") use of a bail schedule ("Bail Schedule") to detain a criminal arrestee prior to arraignment without an inquiry into ability to pay, and seeks a declaration that the California statute establishing the Bail Schedule (Cal. Penal Code §1269b), is unconstitutional as applied to self-proclaimed indigents. *See* 3AC, pp. 20-21.

CBAA's first defense is that Plaintiffs' challenge arises under the Eighth Amendment. The sole fact material to that defense (namely, whether the Sheriff complied with California's laws governing the setting of bail when assigning bail to Plaintiffs) is undisputed. *See* ECF 153-10, Fact 1. Under binding 9th Circuit case law, the bail assigned to Plaintiffs is not constitutionally excessive. As such, this defense permits judgment as a matter of law under Rule 56 against Plaintiffs.

CBAA's second defense consists of three parts, none of which raise a genuine issue of material fact. First, the appropriate level of scrutiny is rational basis review, because a) wealth is not a suspect classification, and b) liberty in the brief pre-arraignment context is not a fundamental right. Plaintiff concede the former, and while they dispute the latter, this is solely a matter of law, for this Court's determination. Second, it is undisputed that the State of California[1] has a legitimate interest in ensuring the appearance of the accused in court. *See* ECF 153-10, Issue 4. Finally, there is a rational relationship between ensuring appearance and pre-arraignment detention. Plaintiffs concede this point by failing to cite any admissible evidence to the contrary, and their claim that the use of a bail schedule may have some negative consequences does not raise a genuine issue of fact.

Plaintiffs spend the vast majority of their Opposition arguing that strict scrutiny applies to their as-applied, wealth-based claims. But as they have done throughout this case, Plaintiffs employ

---

[1] Plaintiffs' challenge, as phrased in the 3AC, is to California law, and thus the operative "government interest" is the State's interest. Where CBAA has previously referred in the dispositive motion briefing to "government interest," such references were meant to refer to interests of the State of California (not the interests of San Francisco County), though this correction does not implicate any substantive or analytical problems with CBAA's previously-asserted arguments.

a strategy of obfuscating the issues by basing their arguments in rhetoric ("[l]iberty is *always* fundamental"), cherry-picking platitudes that are utterly inapplicable in the pre-arraignment bail context, and – in some cases – quoting judicial decisions entirely out of context. *See* discussion of *Riverside v. McLaughlin,* below. Plaintiffs also misstate critical facts, further clouding the record on which the Court has been called to decide foundational issues of Constitutional law.[2]

As previously discussed (*see* Dkt. 143 – 144-13), Plaintiffs cannot obtain judgment as a matter of law under the strict scrutiny standard they advance, as the issue of whether there is an effective alternative to California's bail scheme is one of the most hotly contested and politicized issues in the criminal justice field today. Plaintiffs improperly ask this Court to sit as a legislature by weighing the pros and cons of various pretrial release systems that theoretically could be employed in San Francisco County, and to craft an alternative from whole cloth and based on a disputed record.[3] CBAA respectfully submits that the Court should refuse this invitation.

Plaintiffs appear to be confused about the very relief they are seeking, and the grounds therefor. Their most recent requests for declaratory relief – which they set forth for the *first time* in their Motion filed mere weeks ago – greatly exceed the scope of this case, as the Sheriff has also noted. *See* Dkt. 149, p.7. While the 3AC asserts an as-applied challenge to the imposition of money bail on those unable to pay (*see* Dkt. 17, p. 20), Plaintiffs now assert a facial challenge to the use of money bail *in any circumstance*, and to State laws "that create wealth-based pretrial release processes" (including Penal Code §§ 1270.1, 1269b, and 1269c). Dkt. 136, p. 29. Such a challenge must establish, *inter alia,* "that no set of circumstances exist under which the [challenged statutes] would be valid" (*U.S. v. Salerno,* 481 U.S. 739 (1987)), yet Plaintiffs fail to argue that the enforcement of these statutes is unconstitutional in all cases.

---

[2] *See* Sheriff's Response to Motions for Summary Judgment, in which she states that "Plaintiffs' factual recitations contain several errors and misunderstandings" that, in some places, make their claims "inaccurate or potentially misleading." Dkt. 149, pp. 2-3. CBAA hereby joins each of the objections to Plaintiffs' Motion set forth in the Sheriff's Response (Dkt. 149), as to both factual inaccuracies and improper scope of Plaintiffs' request for declaratory relief.

[3] *See, e.g.,* Dkt. 136, p. 29 (asking the Court for an Order that would define, *inter alia,* "prompt, robust risk assessment and own recognizance release processes…that adequately balance government interests in pretrial liberty, public safety, and maximizing court appearance without unconstitutionally discriminating on wealth status").



For the reasons set forth below, CBAA respectfully requests that the Court grant summary judgment on its defenses, and dismiss Plaintiffs' lawsuit with prejudice.[4]

## II.   EVIDENTIARY OBJECTIONS

Plaintiffs attach as Exhibits 4, 5, and 6 (Dkt. 153-4 through 153-6) copies of the same scholarly articles to which CBAA previously objected as inadmissible evidence (*see* Dkt. 143, pp. 6-8, incorporated here by reference), and CBAA continues to object to the content of these articles on the grounds that they are not properly authenticated pursuant to FRE 901; constitute inadmissible hearsay not subject to any exclusion under FRE 802-803; and are irrelevant, unfairly prejudicial, and/or likely to confuse the issues under FRE 401-403. CBAA also objects to Exhibit 3 (Dkt. 153-3) – another unauthenticated scholarly article – on each of these three grounds.

CBAA incorporates by reference its prior objections to the testimony of Garry Herceg (Dkt. 136-20, Dkt. 153-2), set forth at Dkt. 143, pp.7-8, and also objects on the ground that this testimony lacks foundation. Concerning the testimony of Mr. Morrison (Dkt. 136-20, Dkt. 153-2), CBAA incorporates by reference its pending *Daubert* motion to exclude such testimony (Dkt. 135), and also objects on the ground that the testimony is irrelevant, unfairly prejudicial, and/or likely to confuse the issues under FRE 401-403. CBAA objects to Exhibit 7 (Dkt. 153-7) on the grounds that it constitutes inadmissible hearsay not subject to any exclusion under FRE 802-803, lacks foundation, and is irrelevant, unfairly prejudicial, and/or likely to confuse the issues under FRE 401-403.

## III.   CBAA IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ITS EIGHTH AMENDMENT DEFENSE

As discussed in CBAA's opening brief, because Plaintiffs' 3AC challenges the application of secured money bail to those who claim inability to pay it, their claims are appropriately evaluated under the Eighth Amendment's Excessive Bail Clause, which proscribes the imposition of bail that is unreasonably high in light of the government's purpose for imposing it. *See, e.g., Stack v. Boyle*, 342 U.S. 1, 4-5 (1951). Under *Galen v. County of Los Angeles*, 477 F.3d 652 (2007), the sole

---

[4] In their Opposition, Plaintiffs inexplicably begin referring to CBAA as the "Bail Industry." This is patently inaccurate as a factual matter (*see, e.g.,* Dkt. 102-2, ¶2, establishing that CBAA is a non-profit association of bail agents licensed in California), and Plaintiffs appear to use this descriptor to garner a politically-motivated reaction from readers and distract from the issues.



material fact relevant to this issue is whether the Sheriff complied with California's laws governing the setting of bail when assigning bail to Plaintiffs, and Plaintiffs agree that the Sheriff so complied. *See* Dkt. 153-10, p. 1. As such, it is undisputed that the assigned bail was not unconstitutionally excessive.

Even if the imposition of secured bail could be excessive as applied to certain defendants (such as Plaintiffs, who claim indigence), that would only justify as-applied relief, and not facial invalidation for *all* defendants at *all* times during the pendency of their criminal casees, which Plaintiffs now suddenly appear to request. *See Salerno*, 481 U.S. at 745 (facial challenge "must establish that no set of circumstances exists under which the [government policy] would be valid"). While seeking to enjoin money bail, Plaintiffs do not establish that there is *no* set of circumstances under which the use of money bail to incentivize an arrestee to appear at trial would be valid.

Plaintiffs argue that "if San Francisco were to demand higher bail amounts for Muslims than Christians," a Fourteenth Amendment challenge would be appropriate. Opposition, p. 22. Certainly, but this case does not concern a different amount of bail being charged to poor than to wealthy arrestees, nor does it concern detention of poor arrestees *because* they are poor. Rather detention is based upon an arrestee's failure to post the "sufficient sureties" required by the California Constitution for pretrial release. Cal. Const. Art. 1 §12.

The sole case Plaintiffs cite to oppose an Eighth Amendment analysis is *O'Donnell v. Harris County,* 4:16-cv-01414 (S.D. Tex. Apr. 28, 2017), which is not binding precedent in this Court, nor is it even analogous. *See* Dkt. 143, p. 23, FN 14. Further, the relief requested in *O'Donnell* (injunction against the use of money bail as applied to those who cannot afford to pay) did not extend as far as the relief Plaintiffs now seek (injunction against the use of money bail entirely).[5]

---

[5] *O'Donnell* is currently on appeal to the 5th Circuit, in which the states of Texas, Arizona, Hawai'i, Kansas, Louisiana, and Nebraska, through their respective State Attorneys General, have filed an *amicus curiae* brief in support of the appellants, arguing, *inter alia,* that the lower court's order contravenes constitutional precedent, including by failing to analyze the case under the Eighth Amendment, and by creating "a novel constitutional right: a categorical, substantive right for misdemeanor defendants to avoid bail if they cannot afford to pay," Brief for the States of Texas et al. as Amici Curiae Supporting Appellants at 9, *O'Donnell v. Harris County, Texas, et al.,* No. 17-20333, (5th Cir. Jun. 26, 2017).

*O'Donnell* does not change the Eighth Amendment analysis, pursuant to which CBAA is entitled to summary judgment.

## IV. CBAA IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ITS DEFENSE TO THE FOURTEENTH AMENDMENT CLAIMS, AS RATIONAL BASIS REVIEW APPLIES AND IS MET

Plaintiffs have wholly abandoned any argument that California's "wealth-based" bail system implicates a suspect classification for purposes of Equal Protection analysis. As such, their argument for the application of strict scrutiny relies entirely upon a finding by this Court that detention in the brief period from arrest to detention burdens a fundamental right recognized by Supreme Court jurisprudence. This finding cannot be made as a matter of law, and Plaintiffs' efforts to string together a legal theory by selectively misconstruing inapposite cases[6] do nothing to change this result. Rational basis review is the applicable standard, and it is amply met.

---

[6] For example, the following cases cited in Plaintiffs' Opposition have no bearing on bail or whether there exists a fundamental right to pre-arraignment release, let alone the constitutionality of California's bail scheme: *Martinez v. City of Oxnard,* 337 F.3d 1091 (9th Cir. 2003) (discussing qualified immunity in case of a police sergeant whose conduct was alleged to have violated suspect's constitutional rights by subjecting him to coercive interrogation); *Smith v. Doe,* 538 U.S. 84 (2003) (holding that an Alaska sex offender registration act was not unconstitutional in violation of the ex post facto clause); *Washington v. Glucksberg,* 521 U.S. 702 (1997) (asserted right to assistance in committing suicide was not fundamental liberty interest protected by due process clause, and ban on such conduct was rationally related to legitimate government interests); *DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189 (1989) (State had no constitutional duty to protect child from his father after receiving reports of possible abuse); *Foucha v. Louisiana,* 504 U.S. 71 (1992) (violation of due process for continued confinement of insanity acquittee after report of no evidence of mental illness and recommended conditional discharge); *Terry v. Ohio,* 392 U.S. 1 (1968) (discussing reasonable scope of search and seizure in prosecution for carrying concealed weapon); *Flemming v. Nestor,* 363 U.S. 603 (1960) (finding no punishment by virtue of termination of old-age insurance benefits of aliens who are deported on certain grounds); *Bird v. Glacier Elec. Coop, Inc.,* 255 F.3d 1136 (9th Cir. 2001) (finding construction corporation's closing argument in Tribal Court offended fundamental fairness and violated due process by appealing to racial bias, in a contract and defamation case); *Wright v. Incline Village Gen. Improvement Dist.,* 665 F.3d 1128 (9th Cir. 2011) (district's restriction of beach access to those who owned or rented property within the district's 1968 boundaries did not violate Equal Protection).

### a. Immediate Release in the Pre-Arraignment Period Is Not a Fundamental Right That Gives Rise to Strict Scrutiny

#### i. There is no Fundamental Right Under a Traditional Fourteenth Amendment Analysis

Plaintiffs repeat inaccurate superlatives ("[l]iberty is *always* fundamental; [d]etention of an adult always requires strict scrutiny review," Opposition, p. 5) to distract from the indisputable fact that the Supreme Court repeatedly has declined to expand the protections afforded to "fundamental rights" beyond "matters relating to marriage, family, procreation, and the right to bodily integrity" *Albright v. Oliver,* 510 U.S. 266, 271-272 (1994) – particularly in the field of criminal law. *See, e.g., Medina v. California,* 505 U.S. 437, 433 (1992); *Dowling v. U.S.,* 493 U.S. 342, 352 (1990).

Indeed, heightened scrutiny under the Fourteenth Amendment has been limited to a narrow subset of cases involving substantial burdens placed on: i) the right to vote/ the right to access to the ballot; ii) the right to migrate to another state; iii) the right to marry and procreate and live as a family unit; and iv) the right to avoid fees that prevent indigents from divorcing, maintaining parental rights, and obtaining transcripts or securing legal assistance for a criminal appeal or writ of habeas corpus. This conclusion is borne out by the cases cited by Plaintiffs in support of their fundamental right theory, *all of which* fall into one of these four categories, and *none of which* grants a criminal defendant the right to release during the brief period from arrest to arraignment.[7] *See, e.g., M.L.B. v. S.L.J.,* 519 U.S. 102, 114 (1996) (recognizing a narrow category of civil cases in which the State must provide access to its judicial processes without regard to a party's ability to pay court

---

[7] *See Harper v. Virginia State Bd. Of Elections,* 383 U.S. 663 (1996) and *Reynolds v. Simms,* 377 U.S. 553 (1964) (right to vote); *Dunn v. Blumstein,* 405 U.S. 330 (1972) (right to migrate among states); *Halet v. Wend Inv. Co.,* 672 F.2d 1305 (9th Cir. 1982), *Skinner v. Oklahoma,* 316 U.S. 535 (1942), and *High Tech Gays v. Defense Indus. Sec. Clearance Office,* 909 F.2d 375 (9th Cir. 1990) (right to marry, procreate, live as a family unit); *M.L.B. v. S.L.J.,* 519 U.S. 102 (1996), *Mayer v. Chicago,* 404 U.S. 189 (1971), *Gideon v. Wainwright,* 372 U.S. 335 (1963), *Draper v. Washington,* 372 U.S. 487 (1963), *Smith v. Bennett,* 365 U.S. 709 (1961), *Douglas v. California,* 372 U.S. 353 (1963), *Ross v. Moffitt,* 417 U.S. 600 (1974), *Griffin v. Illinois,* 351 U.S. 12 (1956) (right to be free from fees preventing indigent from divorcing, maintaining parental rights, and obtaining transcripts or securing legal assistance for a criminal appeal or writ of habeas corpus).

fees, which is "the exception, not the general rule," and refusing to extend *Griffin v. Illinois,* 351 U.S. 12 (1956) to a broader array of civil cases).

It is simply not the case that "freedom from detention is a fundamental right in all contexts." Opposition, p. 7, sub. (a). The cases Plaintiffs cite for this proposition, do not support it, and are much narrower than Plaintiffs would lead this Court to believe. For example, Plaintiffs' oft-cited case of *Zadvydas v. Davis,* 533 U.S. 678 (2001) merely held that the Constitution "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States" and "does not permit *indefinite detention*." *Id.* at 689 (emphasis added) (further holding that the "presumptively reasonable period of detention" under post-removal-period provision of the Immigration and Nationality Act was six months). *Zadvydas* found it critical that "[t]he civil confinement here at issue is not limited, but potentially permanent." *Id.* at 691, *citing Carlson v. Landon,* 342 U.S. 524, 545-546 (1952) (upholding temporary detention of alien during deportation proceeding while noting that 'problem of…unusual delay' was not present). In the pre-arraignment bail context, however, the concern patently is not "permanent" detention or even significant delay.

There are other critical distinctions between *Zadvydas,* a civil case, and pre-arraignment detention in the criminal context. While the statute at issue in *Zadvydas* shared the goal of ensuring the appearance of aliens at future immigration proceedings, the Court found that there was "no sufficiently strong special justification here for indefinite civil detention" and that the appearance justification was "weak or nonexistent where removal seems a remote possibility at best." *Zadvydas,* 533 U.S. at 690. By contrast, in the criminal context, there is a very real and recognized possibility of non-appearance. Further, the *Zadvydas* Court noted that "the sole procedural protections available to the alien are found in administrative proceedings, where the alien bears the burden of proving he is not dangerous, without…significant later judicial review." *Id.* at 692. Yet arrestees in San Francisco County arrestees not only have the procedural protection of an individualized, expedited review under Penal Code §1269c available in most cases, but they also will receive "later judicial review" of bail terms at an arraignment held within 48 hours. The bail context does not implicate "[t]he serious constitutional problem arising out of a statute that…permits an indefinite, perhaps permanent, deprivation of human liberty without any such [procedural] protection…" *Id.* at 692.

7

The recent case of *Sessions v. Hernandez,* 872 F.3d 976 (9th Cir. 2017), which concerns detention of non-citizens in removal proceedings after an individualized bond inquiry, is also inapposite. The *Hernandez* class plaintiffs were individuals "detained pursuant to 8 U.S.C. §1226(a) on a bond set by an [immigration official]," and "whom immigration officials have determined are *not* a danger to the community or a flight risk that requires detention." *Id.* at 986 and FN 3. The named plaintiffs had been detained without bond for two weeks and seven months respectively, prior to their bond hearing, at which the immigration officer did not inquire about plaintiffs' ability to pay. The court held that "[g]iven that the detainees have been determined to be neither dangerous nor so great a flight risk as to require detention without bond," their detention without consideration of financial circumstances and possible alternative release conditions failed to ensure that the conditions of release would be reasonably related to the governmental interest in ensuring their appearance. *Id.* at 990-991. In granting a preliminary injunction, the court noted that all that was required of the government "is that it make consideration of financial circumstances and alternative conditions of release explicitly, rather than implicitly, required factors" when setting bond – something that 8 U.S.C. §1226(a) does not require. *Id.* at 994. The court also found that the "modest burden" imposed on the government by this relief would help reduce "the major hardship posed by needless prolonged detention." *Id.* at at 996 (citations omitted).

*Hernandez* did not hold that the use of money bond was unconstitutional, nor that bond hearings must be held "immediately" following arrest (as Plaintiffs argue); rather, it merely required the federal government to incorporate at bond hearings the ability-to-pay factor that is *already* required by California law. *See* Penal Code §1270.1(c) (court "shall" consider evidence of ability to post bond).  *Hernandez* was concerned with "needless prolonged detention" of weeks and months of civil detainees for whom an individualized determination had already been made – not the exceedingly brief detention of suspected criminals immediately following arrest and prior to a statutorily-guaranteed individualized bail hearing, for the purpose of ensuring appearance and public safety. Nor would the burden imposed on the government by virtue of Plaintiffs' relief be "modest."

Plaintiffs also cite *DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 200 (1989) and *Foucha v. Louisiana,* 504 U.S. 71 (1992) in support of their argument that "freedom from detention is a fundamental right in all contexts." Opposition, p. 7, sub. (a). However, *DeShaney*



held only that when the state takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being. *DeShaney,* 489 U.S. at 200. *Foucha* concerned the parameters of constitutional confinement of a mentally ill person, and similarly has no application to pretrial detention. Moreover, Plaintiffs' citation to *Foucha* for the proposition that "[t]he government cannot restrict someone's freedom absent narrow tailoring to a compelling interest" (Opposition, p. 7), is both misleading and inaccurate – in fact, as noted in Justice Thomas' dissent (joined by Chief Justice Rehnquist and Justice Scalia), the *Foucha* majority "ignore[d] [the] well-established analytical framework" for analyzing substantive due process claims, and "never explain[ed] whether we are dealing with a fundamental right…[and] never disclose[d] what standard of review applies." *Foucha* at 115-116. Plaintiffs also cite repeatedly to *Salerno* and *Lopez-Valenzuela v. Arapaio*, 770 F.3d 772 (9th Cir. 2004), but for the reasons discussed in CBAA's Opposition (Dkt. 143, pp. 13-16), these cases fail to establish a fundamental right to release prior to arraignment.

Further, as noted in the very case law Plaintiffs cite, "[n]ot every state action that infringes upon a fundamental right triggers strict scrutiny." *Halet v. Wend. Inv. Co.,* 672 F.2d 1305, 1311 (9th Cir. 1982) (where state action infringed upon the fundamental right of privacy, e.g. the right of family members to live together, reversing dismissal of Fourteenth Amendment claims to enable district court to consider "whether, under the recently-decided *Hawaii Boating Ass'n v. Water Transportation Facilities Division,* 651 F.2d 661 (9th Cir. 1981), a 'genuinely significant deprivation' of a fundamental right ha[d] occurred"); *quoting Hawaii Boating Ass'n,* 651 at 665 (discussing Supreme Court's indication that "the 'penalty' required to invoke strict scrutiny involves a genuinely significant deprivation, such as a denial of the basic 'necessities of life'…or the denial of a 'fundamental political right…" (internal citations omitted)); *see also Socialist Workers Party v. March Fong Eu,* 591 F.2d 1252, 1260 (9th Cir. 1978), *cert denied.,* 441 U.S. 946 (1979) (fundamental right to vote must be subject to a "substantial burden[]" before strict scrutiny standard is applied). CBAA argues that a criminal defendant does not have a fundamental right to immediate release following arrest and prior to arraignment; however, even if such a right were said to exist, CBAA submits that a brief detention between arrest and arraignment so that the County may ensure

CBAA Reply ISO Motion for Summary Judgment                                    Case No. 4:15-CV-04959-YGR



that appearance at trial is likely and the public will be protected, does not implicate a "genuinely significant deprivation" that necessitates application of strict scrutiny.

Relevant to this point are *Gerstein v. Pugh,* 420 U.S. 103 (1975) ("*Gerstein*") and *Cty. of Riverside v. McLaughlin,* 500 U.S. 44 (1991) ("*McLaughlin*"), which Plaintiffs misleadingly cite for the proposition that "[e]ven in the context of detention prior to initial appearance, the Supreme Court has also required that detention to be justified by a compelling interest, not a mere rational basis." Opposition, p. 8. In fact, *Gerstein* and *McLaughlin*, which discuss detention prior to a probable cause hearing and do not mention or require strict scrutiny, support CBAA's position. *Gerstein* recognized "the desirability of flexibility and experimentation by the States" in the pre-arraignment context, and discussed the need for a "practical compromise" between the arrestee's liberty interests and law enforcement's need for "a brief period of detention to take the administrative steps incident to arrest." *Gerstein,* 420 U.S. at 123; 113-114. The Court held that "[w]hatever procedure a State may adopt, it must provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before or promptly after arrest." *Id.* at 125.

The "prompt" requirement was given parameters in *McLaughlin,* which held that a probable cause determination made within 48 hours of arrest was presumptively reasonable. *McLaughlin,* 500 U.S. at 56. Plaintiffs egregiously misrepresent *McLaughlin* as standing for the proposition that "[w]aiting *even a few hours* so that a bail hearing or arraignment could take place at the same time as the probable cause determination would amount to a constitutional violation." Opposition, p. 9 (emphasis added by Plaintiffs). A review of this quote in its full context shows that the Supreme Court was making the exact opposite conclusion, and that Plaintiffs are attempting to mislead the Court through critical omission:

> Inherent in *Gerstein'*s invitation to the States to experiment and adapt was the recognition that **the Fourth Amendment does not compel an immediate determination of probable cause** upon completing the administrative steps incident to arrest. Plainly, if a probable cause hearing is constitutionally compelled the moment a suspect is finished being "booked," there is no room whatsoever for "flexibility and experimentation by the States." Incorporating probable cause determinations "into the procedure for setting bail or fixing other conditions of pretrial release"—which *Gerstein* explicitly contemplated —would



be impossible. Waiting even a few hours so that a bail hearing or arraignment could take place at the same time as the probable cause determination would amount to a constitutional violation. **Clearly, *Gerstein* is not that inflexible."**

*McLaughlin,* 500 U.S. at 53-54 (*citing Gerstein*) (emphases added).[8] In setting the 48-hour time frame for probable cause hearings, the *McLaughlin* Court rejected Justice Scalia's dissent arguing (as do Plaintiffs) that the more appropriate outer boundary was 24 hours, concluding that this proposal would compel jurisdictions "to speed up [their] criminal justice mechanisms substantially, presumably by allotting local tax dollars to hire additional police officers and magistrates," and noting that "[t]here may be times when the Constitution compels such direct interference with local control, but this is not one." *Id.* at 57-58.

Plaintiffs' remaining case citations similarly fail to support their arguments. Plaintiffs cite *Harper* for the vague and lofty proposition that "[p]ersonal liberty is one of the most fundamental principles of our democracy; it cannot be premised on how much money a person has" (Opposition, p. 20), but *Harper* merely held that "wealth or fee paying has…no relation to voting qualifications." *Harper,* 383 U.S. at 670. By contrast here, it is well-established that detaining arrestees prior to arraignment has a rational relation to appearance at trial, and that a bond schedule "represents an assessment of what bail amount would ensure the appearance of the average defendant facing such a charge" and is "therefore aimed at assuring the presence of a defendant." *Fields v. Henry Ct.,* 701 F.3d 180, 184 (6th Cir. 2012); *see also Welchen v. Cnty. of Sacramento*, No. 2:16-cv-00185-TLN-KJN, 2016 WL 5930563 at *11 (E.D. Cal. Oct. 11, 2016).

Plaintiffs refer to Justice Frankfurter's concurrence in *Griffin* for the proposition that "[w]ealth discrimination violates equal protection any time it 'bolt[s] the door to equal justice'" (Opposition, p. 29 (*citing M.L.B.,* 519 at 110, which cited *Griffin*)), but omit the full context of that

---

[8] Plaintiffs' intentional and egregious misquotation of legal authority exceeds the bounds of zealous advocacy, and permeates their pleadings. For instance, while *Ross v. Moffitt,* 417 U.S. 600 (1974) states that certain "transcript and fee cases" summarized therein comprise a "*limited doctrine*" holding that "a State cannot arbitrarily cut off *appeal rights* for indigents while leaving open avenues *of appeal* for more affluent persons" (*id.* at 607) (emphases added), Plaintiffs misleadingly cite *Ross* as support for the broader proposition that "a State cannot arbitrarily cut off [opportunities] for indigents while leaving open avenues [] for more affluent persons." Opposition, p. 23. Plaintiffs similarly misquote *Mayer*, by substituting the general word "opportunity" in place of the Court's explicit reference to an "appeal." *Mayer,* 404 U.S. at 196-197.

11



conclusion, which reads "the State will neither bolt the door to equal justice nor support a wasteful abuse of the appellate process." *Griffin,* 351 U.S. at 24. Justice Frankfurter wrote this line after concluding two things: 1) if a state has a general policy of allowing criminal appeals, it cannot make lack of means an effective bar to exercise of this opportunity; and 2) "in order to avoid or minimize abuse and waste, a State may appropriately hedge about the opportunity to prove a conviction wrong," and the State may also "protect itself so that frivolous appeals are not subsidized and public moneys not needlessly spent." *Id*. Thus, the full context of this misconstrued quote reflects the Court's long-standing concern with achieving a balance between the liberty interests of the indigent and the important interests of the State – the latter of which are arguably most acute when they arise in the post-arrest, pre-arraignment context, which implicates the compelling need to protect victims from further crime and ensure the integrity of the judicial system through court appearance.

Plaintiffs point out that probable cause is required for the police to stop someone on the street (*citing Terry v. Ohio,* 392 U.S. 1 (1968)), and continues to be necessary for detention after arrest (*citing Gerstein v. Pugh,* 420 U.S. 103 (1975)), but that "holding someone indefinitely because they do not have enough money for bail" is unconstitutional absent a compelling justification for detention. Opposition, pp. 8; 16. However, in this case, "indefinite" detention obviously is not at issue, and it is undisputed that the Sheriff detained Plaintiffs because probable cause existed to believe they had committed crimes, and because California has a legitimate interest in securing their appearance at trial to answer for those crimes. Nor is the 10th Circuit case of *Gaylor v. Does,* 105 F.3d 572 (10th Cir. 1997) on point, as that case involved an arrest warrant issued by a judge prior to arrest, as well as an arrestee's liberty interests *after* a magistrate had set his bond, and where he was not informed of his bail status. For each of these many reasons, Plaintiffs' arguments fail to establish a "fundamental right" to immediate pre-arraignment release, and strict scrutiny does not apply.

### ii. A "Fundamental Fairness" Analysis Has No Application To This Case

In the alternative, Plaintiffs argue that pre-arraignment detention violates a "fundamental fairness requirement of the Fourteenth Amendment." Opposition, p. 16. In support of this argument, Plaintiffs again advance the *Bearden-Tate-Williams* line of cases, which have no application to the



pre-arraignment bail context, for the reasons previously discussed by CBAA. *See* Dkt. 132, pp. 14-16; Dkt. 143, pp. 11-13. In short, these category of cases neither speak to nor raise *any* of the concerns implicated in the bail or pretrial detention context. The additional cases Plaintiffs cite are inapplicable to the bail context in the same way as the originally-cited cases, and do not save Plaintiffs' vague "fundamental fairness" argument. *See, e.g., Gagnon v. Scarpelli,* 411 U.S. 778 (1973) (revocation of probation without a hearing and counsel was denial of due process for indigent probationer in habeas corpus proceeding); *U.S. v. Chase,* 499 F.3d 1061 (9th Cir. 2007) (recognizing that indigent defendants are entitled to the "basic tools of an adequate defense"). Plaintiffs argue that "it would be fundamentally unfair to condition any criminal justice outcome – whether punitive or not – on ability to make a payment." Opposition, p. 17. Yet in *Turner v. Rodgers,* 564 U.S. 431 (2011), another case cited by Plaintiffs, the Court found that the Due Process Clause did *not* require the provision of counsel at a father's civil contempt proceeding based on failure to pay child support, though that proceeding led to incarceration, where other procedural safeguards were in place.

      Plaintiffs' reliance on slogans, platitudes, and inapplicable case law fails to establish either the existence of a fundamental right to pre-arraignment release, or that a "genuinely significant deprivation" arises that necessitates application of strict scrutiny. Rational basis review applies.[9]

---

[9] Plaintiffs also argue that they were faced with "an illusory choice" concerning the payment of bail (Opposition, p. 23), but for the reasons previously set forth by CBAA(*See* ECF Dkt. 158), it is not clear that this choice was "illusory" for either Plaintiff – particularly Ms. Patterson, who in fact obtained release by posting bail. Nor have Plaintiffs explained how the Court or the Sheriff could viably determine whether a given arrestee truly lacked funds to pay bail. Further, Plaintiffs' claim that California's bail scheme works a "categorical denial of pretrial liberty" on them (Opposition, pp. 23-24) is baseless in light of the fact that most arrestees are statutorily entitled to avail themselves of the procedures set forth in Penal Code §1269c, allowing for an individualized consideration of circumstances to potentially achieve OR release or reduced bail, and all arrestees will receive an individualized bail hearing within (generally) 48 hours of arrest.

Further, Plaintiffs' contention that "although California law mandates that arrestees be able to seek release from a magistrate, there is no evidence to show that this option is actually available to arrestees" (Opposition, pp. 14-15), is frivolous, as Plaintiffs do not explain how a statutorily-granted right is "unavailable." Moreover, Plaintiffs misunderstand the very evidence they cite in support of their assertion that no arrestees "gained freedom by a magistrate's order" from 2014 through 2016, which is not accurate. *See* Dkt. 149 (Sheriff's Response to Motions for Summary Judgment), pp. 2-3.

### b. Plaintiffs Raise No Disputed Issues of Material Fact Concerning CBAA's Defense That Rational Basis Review Is Met

Plaintiffs concede that there is a legitimate government interest in ensuring the appearance of the accused in court. *See* Dkt. 153-10, p. 2. Plaintiffs devote no portion of their Opposition to challenging CBAA's conclusion that California's comprehensive bail scheme satisfies rational basis review due to the rational relationship between the legitimate interest and the pre-arraignment detention of criminal defendants, though Plaintiffs incorporate by reference their earlier argument that "money bail is counterproductive to compelling state interests." Opposition, p. 10, FN 1. As discussed in CBAA's Opposition to Plaintiffs' Motion for Summary Judgment, rational basis review only requires this Court to uphold California's bail scheme upon a showing that it bears a rational relation to *some* legitimate end, and does not require a showing that *no possible harm* will result from use of the challenged procedure. *See* Dkt. 143, pp. 28-29.

Thus, even if Plaintiffs' factual contentions concerning certain "counterproductive" aspects of money bail were correct (which CBAA disputes) and based on admissible evidence (they are not), these contentions are not material, and therefore do not raise a genuine issue for trial. Plaintiffs offer no evidence to refute that California's unique pre-arraignment scheme, taken as a whole, is not rationally related to achieving court appearance. As such, CBAA is entitled to summary judgment on its defense that rational basis review applies to Plaintiffs' claims and has been met.

## V. IF THE COURT APPLIES STRICT SCRUTINY, THE CASE MUST BE TRIED

Plaintiffs argue that California's comprehensive bail scheme is not narrowly tailored to a compelling government interest. CBAA incorporates by reference the arguments set forth in its Opposition to Plaintiffs' Motion for Summary Judgment, which explain the many genuine issues of material fact concerning whether a less restrictive but equally effective alternative to San Francisco County's use of the Bail Schedule exists, and therefore whether or not strict scrutiny is met. *See* Dkt. 143 (CBAA Opposition) pp. 18-28; Dkt. 143-1 (CBAA Responsive Separate Statement). Plaintiffs also misunderstand and, in many places, misstate the very evidence on which they rely. *See* Dkt. 149 (Sheriff's Response to Motions for Summary Judgment), pp. 2-7.

Suffice it to say: Plaintiffs' many factual contentions (i.e. whether non-monetary pre-trial release systems in other jurisdictions are "effective" at ensuring court appearance; whether "reliance



on money bail harms public safety"; whether arrestees are detained "longer than necessary") raise numerous factual disputes which must be tried to a fact-finder, and the relief Plaintiffs seek patently cannot be granted under Rule 56.

## VI.  PLAINTIFFS' SUDDEN CHANGE OF REQUESTED RELIEF DEMONSTRATES THE CONFUSED STATE OF THEIR CLAIMS

CBAA previously pointed out that the relief sought in Plaintiffs' 3AC (i.e. elimination of money bail as applied to indigent arrestees) would amount to inverse discrimination of those able to afford bail, who would continue to be subject to the Bail Schedule while Plaintiffs were relieved of its requirements. Plaintiffs essentially concede this point by drastically altering their requested relief to now seek elimination of money bail as to Idefendants, and by abandoning their earlier request for "an inquiry into the ability to pay" prior to release (which also conveniently allows Plaintiffs to side-step the fatal quandaries raised by CBAA, including how to verify "indigency"). But by "[a]bolishing money bail" as Plaintiffs request (Opposition, p. 23), the Court would be overriding the California Constitution's requirement that a criminal arrestee shall obtain release only "on bail by sufficient sureties" (Cal. Const. Art. 1 §12), and would essentially be commanding state court judges to grant release without financial conditions to every person constitutionally entitled to release on bail. CBAA submits that this drastic relief is inappropriately granted by a court of law, and that this issue is better suited to the consideration of the state legislature.

## VII.  CONCLUSION

For the foregoing reasons, CBAA respectfully requests that the Court grant CBAA's Motion for Summary Judgment and dismiss Plaintiffs' lawsuit with prejudice.

Respectfully submitted,

Date: November 21, 2017        DHILLON LAW GROUP INC.
                         By:   /s/ Krista L. Baughman
                               Harmeet K. Dhillon (SBN: 207872)
                               Krista L. Baughman (SBN: 264600)
                               Attorneys for Proposed Defendant Intervenor
                               California Bail Agents Association

