# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RIANA BUFFIN, ET AL.,**<br>Plaintiffs,<br>vs.<br>**CITY AND COUNTY OF SAN FRANCISCO, ET AL.,**<br>Defendants. | CASE NO. 15-cv-04959-YGR<br><br>**ORDER DENYING CBAA'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 132, 136 |

Pending before the Court are plaintiffs' and California Bail Agents Association's ("CBAA") cross motions for summary judgment on plaintiffs' Equal Protection and Due Process claims. Plaintiffs argue, principally, that San Francisco County's (the "County") system of pretrial bail violates the Equal Protection and Due Process clauses of the United States Constitution because it not only contravenes the absolute proscription against wealth-based discrimination in the criminal justice system, but also because personal liberty is a fundamental right, and the County's system cannot pass strict scrutiny review. In contrast, CBAA essentially argues that no constitutional right to pre-arraignment release exists, that the County's pre-arraignment policies are subject to rational basis review, and that the County's policies are constitutional under that standard.

Having carefully considered the pleadings, the fully-briefed motions, and the hearing held on December 12, 2017, and for the reasons set forth below, the Court **DENIES** both motions for summary judgment. As a threshold matter, the Court finds the strict scrutiny standard applies to plaintiffs' claims. Accordingly, as CBAA concedes, its motion cannot be granted. With respect to plaintiffs, the Court finds the current state of the factual record insufficient to grant summary judgment.

\\

## I. BACKGROUND

### A. Factual Overview

The Court finds the following facts not subject to reasonable dispute:[1]

San Francisco police arrested plaintiff Riana Buffin on October 26, 2015 for grand theft of personal property and conspiracy. Plaintiff Buffin was taken to jail and informed that her bail amount was set at $30,000. She did not post bail. Rather, she was released after the District Attorney's office decided not to file formal charges against her, at which point she had spent approximately 46 hours in jail and had not been brought to court for an initial appearance.

San Francisco police arrested plaintiff Crystal Patterson on October 27, 2015 for assault with a deadly weapon or instrument other than a firearm. She was taken to jail, where she was informed that her bail amount was set at $150,000. After approximately 29 hours, and prior to her initial appearance, plaintiff Patterson was able to post a bond with the financial assistance of relatives and was released.[2] Following plaintiff Patterson's release, the case against her was discharged when the District Attorney's office decided not to file formal charges against her.

In California, state law imposes a duty on superior court judges to "prepare, adopt, and annually revise a uniform countywide schedule of bail for all bailable felony offenses and for all misdemeanor and infraction offenses except Vehicle Code infractions." Cal. Penal Code § 1269b(c). In San Francisco, the superior court establishes the Felony and Misdemeanor Bail Schedule (the "Bail Schedule"). The Sheriff's Department, currently led by defendant Sheriff Vicki Hennessy (the "Sheriff"), determines an arrestee's bail amount by reference to the Bail Schedule, which sets forth bail amounts based on specific booking charges. The Sheriff's Department releases arrestees who are eligible for release on bail upon payment of the applicable bail amount as set forth in the Bail Schedule or the posting of a bail bond for the applicable bail

---

[1] *See generally* Joint Stipulation of Facts, Dkt. No. 133-1.

[2] Pursuant to a contract plaintiff Patterson signed with a surety bail agent, the cost of the bond was $15,000, of which $1,500 was to be paid up front, with the remainder to be paid in installments over time. Plaintiff Patterson's uncle paid the surety bail agent the $1,500 deposit on her behalf, and her sister and grandmother co-signed the surety bail contract.

2

amount as set forth in the Bail Schedule.[3] Not all arrestees are eligible for release on bail.

Under state law, some arrestees may apply to a magistrate for pre-arraignment release on lower bail or on his or her own recognizance ("OR"). *See* Cal. Penal Code § 1269c. This application may be made without a hearing. *Id*. Pursuant to California Penal Code ("Penal Code") sections 1269b and 1269c, individuals charged with certain offenses are ineligible to apply pre-arraignment for OR release or a reduction in bail, though they may obtain pre-arraignment release by paying the applicable amount under the Bail Schedule if specified therein, or any greater amount set by a judge pursuant to Penal Code section 1269c, absent some other legal impediment to their release. Individuals ineligible for pre-arraignment OR release or pre-arraignment reduction in bail may be ordered released on their OR, or on reduced bail, after a hearing in open court in accordance with Penal Code section 1270.1.

In setting bail, a judge or magistrate may consider the information included in a report prepared by an investigative staff employed by the court for the purpose of recommending whether a defendant should be released on his or her OR. Cal. Penal Code §§ 1275(a)(1), 1318.1. In San Francisco, the San Francisco Pretrial Diversion Project contracts with the Sheriff's Department to provide certain pretrial services, including the OR Project. One of the purposes of the OR Project is to provide the superior court with information to decide whether to release an arrestee on his or her OR prior to arraignment.

On April 30, 2016, the OR Project staff began using a Public Safety Assessment Tool (the "PSA Tool") developed by the Laura and John Arnold Foundation. The purpose of the PSA Tool is to assess the risk that an arrestee, if released pretrial, will fail to appear or will engage in new criminal activity, and to generate a release recommendation based on the assessed risk.[4] Various

---

[3] Subject to narrow exceptions, in California a person accused of committing an offense requiring them to remain in custody must be taken before a magistrate judge for arraignment within 48 hours of his or her arrest, not including Saturdays and holidays. Cal. Penal Code § 825(a)(1).

[4] Release recommendations are a function of (1) the score generated by the PSA Tool and (2) a decision-making framework ("DMF") prepared by a working group that includes representatives from the San Francisco Superior Court, Sheriff's Department, District Attorney, Public Defender, and Conflict Counsel.

3

procedures followed by the OR Project staff changed with the implementation of the PSA Tool.

Prior to the implementation of the PSA Tool, the OR Project staff prepared a report called an "OR Workup" after interviewing the arrestee, which consisted of the information gathered from the interview and references, a criminal history report, a summary of the criminal history report, and a cover sheet. For those arrestees eligible for pre-arraignment release, the OR Workup was presented to the duty judge.[5] Otherwise, the court considered it at arraignment.[6]

Since implementation of the PSA Tool, the OR project staff are no longer required to interview the arrestee. Rather, they prepare an OR Workup for each arrestee eligible for OR release (whether at arraignment or before), which includes a summary of the arrestee's individual and criminal history, the criminal history printouts, the police report, a cover sheet, and the release recommendation generated by the PSA Tool and the DMF. As before, for those arrestees eligible for pre-arraignment release, the OR Workup is either presented to the duty judge in the first instance or presented to the court for consideration at arraignment. There is no guaranteed timeline for when the OR Workup will be completed.[7]

In assigning bail to plaintiffs, the Sheriff's predecessor followed California laws governing the setting of bail and complied with the Bail Schedule.[8]

**B.  Procedural Overview**

Plaintiffs filed their original complaint on October 28, 2015 against the County and "the State of California" generically. (Dkt. No. 1.) The operative complaint is the Third Amended Complaint. (Dkt. No. 71 ("3AC").) Since plaintiffs filed their 3AC, the Court has dismissed all

---

[5] The duty judge is the judicial officer assigned to rule on applications for pre-arraignment release.

[6] The OR Workup prior to the implementation of the PSA Tool did not contain a release recommendation.

[7] For pre-arraignment applications, it is generally submitted to and ruled upon by the duty judge the same working day the OR Project receives the arrestee's fingerprint record. The OR Project did not prepare an OR Workup for plaintiff Patterson because she had already posted bail. It did not complete an OR Workup for plaintiff Buffin before she was released.

[8] Plaintiff Patterson's and plaintiff Buffin's arrests occurred before Sheriff Hennessy assumed office.

4

defendants except for the Sheriff, who announced that she would not defend this action. (*See* Dkt. No. 101 at 1.)

In this context, CBAA filed its fourth motion to intervene, which the Court granted subject to certain conditions. (*See* Dkt. No. 119 ("Intervention Order").) Subsequently, plaintiffs, CBAA, and the Sheriff (collectively, the "parties") agreed upon certain stipulated facts and conducted discovery regarding those facts that were not established through stipulation.

While the Court has articulated the scope of this case on numerous occasions,[9] plaintiffs' summary judgment briefing indicated an attempt to alter the scope of the case drastically. Namely, plaintiffs asked the Court to "[d]eclare unconstitutional and enjoin the use of money bail and all pretrial processes that condition release on a monetary sum extracted from a criminal defendant." (Plaintiffs' Motion for Summary Judgment, Dkt. No. 136 at 25 sub. (a) ("Plaintiffs' Motion").) Moreover, they argued the Court should "[d]eclare unconstitutional and enjoin the enforcement of all state laws that create wealth-based pretrial release processes, including but not limited to California Penal Code sections 1270.1, 1269b, and 1269c." (*Id.* sub. (c).)

In light of the overreaching, and unauthorized, scope of the relief sought by plaintiffs at this late stage in the litigation, the Court asked them recently to clarify the relief they are seeking. (*See* Dkt. No. 178.) Plaintiffs responded that they "seek an order declaring unconstitutional and

---

[9] In its order on the County's and the Sheriff's motion to dismiss the 3AC, the Court summarized the action as follows:

> Plaintiffs bring a single count against the County, the Sheriff, and the Attorney General for violation of their Fourteenth Amendment equal protection and due process rights when the Sheriff enforces state law by keeping them in jail before arraignment solely because they cannot afford to pay money bail. Specifically, plaintiffs challenge defendants' enforcement of California Penal Code section 1269b, which provides that a sheriff may only collect bail from pre-arraignment arrestees in the amount fixed, *inter alia*, in the schedule of bail set by the superior court judges sitting in and for that county.

(Dkt. No. 99 at 1.) Moreover, in its order granting CBAA permissive intervention, the Court explained that the 3AC "challenges the San Francisco Sheriff's use of a bail schedule to detain a person prior to being seen by a judicial officer" as required by Penal Code section 1269b, and "allege[s] section 1269b has the effect of requiring secured money bail and causes San Francisco to detain individuals solely because they cannot afford the cost of release." (Intervention Order at 1–2.)

enjoining the use of the bail schedule for the class . . . ." (Dkt. No. 181 at 2.)[10] Moreover, they seek "an injunction that outlines a framework for a replacement, non-monetary process for the class . . . ." (*Id.*) While plaintiffs' summary judgment briefing is tethered to the overreaching scope of the relief sought in their motion, they retreated at oral argument. Against this background, the Court will treat plaintiffs' constitutional challenges as challenges to the Sheriff's use of the Bail Schedule.

## II.  LEGAL STANDARD ON SUMMARY JUDGMENT

A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact as to the basis for the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

Where the moving party has the burden of proof at trial, it "must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. *See Anderson*, 477 U.S. at 250; *Soremekun*, 509 F.3d at 984; *see also* Fed. R. Civ. P. 56(c), (e). The opposing party's evidence must be more than "merely colorable" and must be "significantly probative." *Anderson*, 477 U.S. at 249–50. Further, the opposing party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence showing a genuine dispute of material fact exists. *See Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

---

[10] The Court will issue a separate order on plaintiffs' motion for class certification.

Nevertheless, when deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *See Anderson*, 477 U.S. at 255; *Hunt v. City of Los Angeles*, 638 F.3d 703, 709 (9th Cir. 2011). A district court may only base a ruling on a motion for summary judgment upon facts that would be admissible in evidence at trial. *See In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385 (9th Cir. 2010); Fed. R. Civ. P. 56(c).

**III. DISCUSSION**

**A. Eighth Amendment - Prohibition on Excessive Bail**

As a threshold matter, CBAA argues that plaintiffs' claims actually constitute a challenge under the Eighth Amendment's Excessive Bail Clause and should not be considered under a Fourteenth Amendment analytical framework. According to CBAA, it is entitled to summary judgment as to this claim on the ground that the bail amounts assigned to plaintiffs were not unconstitutionally excessive in light of the County's valid government interests. Citing *Galen v. County of Los Angeles*, 477 F.3d 652 (9th Cir. 2007), CBAA avers that because the Sheriff followed California's bail laws and Bail Schedule in assigning bail to plaintiffs, plaintiffs are foreclosed from arguing that the bail amounts are unconstitutionally excessive.

Plaintiffs respond that not every claim related to pretrial detention must necessarily be an excessive bail claim. Namely, they argue that rather than challenging the specific bail amounts on the Bail Schedule, they challenge the County's *discriminatory practices*. Because plaintiffs have not raised an Eighth Amendment claim, they deem CBAA's argument irrelevant.

The Court agrees with plaintiffs. CBAA's mischaracterization of the issues as an Eighth Amendment challenge to excessive bail is merely a red herring. As plaintiffs note, they do not challenge the specific amounts set out in the Bail Schedule. (Plaintiffs' Opposition to CBAA's Motion for Summary Judgment, Dkt. No. 153 at 22 ("Plaintiffs' Opposition").) Rather, their claims concern the *effect* the Sheriff's use of the Bail Schedule has on those who cannot afford to pay the set amounts in relation to those who can. CBAA's efforts to recast plaintiffs' claims as Eighth Amendment claims thus ignore the Supreme Court's express acknowledgement that federal courts "generally analyze the fairness of relations between the criminal defendant and the State

7

under the Due Process Clause, while [they] approach the question whether the State has invidiously denied one class of defendants a substantial benefit available to another class of defendants under the Equal Protection Clause." *Bearden v. Georgia*, 461 U.S. 660, 665 (1983).[11] CBAA also overlooks other cases involving similar challenges to bail systems that have been decided on Fourteenth Amendment grounds.[12]

**B.     Fourteenth Amendment - Due Process and Equal Protection**

The parties principally dispute whether the Sheriff's use of the Bail Schedule implicates a fundamental right and whether the rational basis or strict scrutiny standard of review applies to plaintiffs' Due Process and Equal Protection claims. The ensuing discussion addresses both issues.

*1.     Due Process Framework*

The Due Process Clause of the Fourteenth Amendment prohibits the government from depriving individuals of their life, liberty, or property, without due process of law. U.S. Const. amend. XIV, § 1. In general, it "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). Accordingly, the threshold inquiry in every Due Process challenge is "whether the

---

[11] Moreover, *Galen*, the case on which CBAA principally relies, did not involve the inability to pay. Rather, it involved a challenge to a significant bail enhancement—from $50,000 to $1 million—which the appellant argued was unconstitutionally excessive. *Galen*, 477 F.3d at 659. The Ninth Circuit concluded that "[b]ecause [Appellant] has offered no evidence that would tend to show that the Commissioner enhanced [Appellant's] bail for an improper purpose or that his bail was excessive in light of the purpose for which it was set, he has failed to meet his burden for withstanding summary judgment." *Id*. at 661.

[12] *See, e.g.*, *ODonnell v. Harris Cty.*, 251 F. Supp. 3d 1052, 1147–48 (S.D. Tex. 2017) (finding claim against county's post-arrest detention policies, which in practice detained people arrested for misdemeanor offenses who were unable to pay financial bond longer than those financially able to pay, was not an excessive bail challenge but rather a proper Fourteenth Amendment challenge warranting preliminary injunction); *Jones v. City of Clanton*, No. 2:15CV34-MHT, 2015 WL 5387219, at *2 (M.D. Ala. Sept. 14, 2015) (holding that "use of a secured bail schedule to detain a person after arrest, without an individualized hearing regarding the person's indigence and the need for bail or alternatives to bail, violates the Due Process Clause of the Fourteenth Amendment"); *Cooper v. City of Dothan*, No. 1:15-CV-425-WKW [WO], 2015 WL 10013003, at *1 (M.D. Ala. June 18, 2015) (finding allegations that city's arrest and detention policies and practices routinely resulted in confinement of individuals solely due to their poverty in violation of Fourteenth Amendment's Due Process and Equal Protection clauses warranted temporary restraining order).

8

plaintiff has been deprived of a protected interest in . . . 'liberty.'" *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999) (quoting Fourteenth Amendment); *see also Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008) ("To state a substantive due process claim, the plaintiff must show as a threshold matter that a state actor deprived it of a constitutionally protected life, liberty, or property interest."). The Supreme Court has long recognized constitutional limits on pretrial detention.[13]

By way of background, the Supreme Court in *Salerno* considered, *inter alia*, the substantive Due Process implications of the Bail Reform Act of 1984, which required pretrial detention of arrestees charged with certain serious felonies if the government demonstrated by clear and convincing evidence after an adversary hearing that no release conditions "will reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(e). Applying general Due Process principles, the Court considered whether the law constituted an impermissible infringement of arrestees' liberty interest. The Court explained that the "individual's strong interest in liberty" is "fundamental," *Salerno*, 481 U.S. at 750, and cited the "general rule of substantive due process that the government may not detain a person prior to a judgment of guilt in a criminal trial." *Id*. at 749 (internal quotation marks omitted). But the Court concluded that the Bail Reform Act passed constitutional muster because it both served a "compelling" and "overwhelming" governmental interest "in preventing crime by arrestees" and was "carefully limited" to achieve that purpose. *Id*. at 749–50, 755. Additionally, the Act "careful[ly] delineat[ed] . . . the circumstances under which detention will be permitted . . . ." *Id*. at 751.[14] While the *Salerno* Court itself did not describe its analysis as strict scrutiny, it made

---

[13] The Court has, *inter alia*: prohibited excessive bail, *see Stack v. Boyle*, 342 U.S. 1, 4–5 (1951); barred punitive conditions of pretrial confinement, *see Bell v. Wolfish*, 441 U.S. 520, 535–37 (1979); prohibited pretrial detention as punishment, *see United States v. Salerno*, 481 U.S. 739, 746–48 (1987); held that restrictions on pretrial release of adult arrestees must be carefully limited to serving a compelling government interest, *see id*. at 748–51; and required a judicial determination of probable cause within 48 hours after arrest, *see Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991). *See also Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 777 (9th Cir. 2014) (en banc) (discussing above cases).

[14] The Act: (1) "narrowly focus[d] on a particularly acute problem in which the Government interests are overwhelming"; (2) "operate[d] only on individuals who have been arrested for a specific category of extremely serious offenses"—individuals that "Congress

9

clear that under the Due Process Clause, "liberty is the norm, and detention prior to trial or without trial is the *carefully limited* exception." *Id*. at 755 (emphasis supplied).

In *Lopez-Valenzuela v. Arpaio*, the Ninth Circuit, sitting *en banc*, interpreted *Salerno* to require strict scrutiny of pretrial detention conditions. 770 F.3d 772, 780–81 (9th Cir. 2014).[15] Applying *Salerno*'s Due Process framework, the court considered the substantive Due Process implications of the Fourteenth Amendment with respect to an Arizona constitutional provision which denied eligibility for bail to individuals who were charged with "serious felony offenses" and who were in the United States illegally ("Proposition 100"). Citing *Salerno*, the court applied "heightened scrutiny" because the challenged laws "infringe[d] a fundamental right," namely, "the individual's strong interest in liberty." *Id*. at 780. Thus, the court explained, the Proposition 100 laws "[would] satisfy substantive due process only if they [were] 'narrowly tailored to serve a compelling state interest.'" *Id*. at 781 (quoting *Reno v. Flores*, 507 U.S. 292, 302 (1993)). Because the court found no evidence that the Proposition 100 laws were adopted to address a "particularly acute problem," the laws were not limited to "a specific category of extremely serious offenses," and the laws employed an "overbroad, irrebuttable presumption rather than an individualized hearing to determine whether a particular arrestee pose[d] an unmanageable flight risk," the court concluded that the Proposition 100 laws were "not carefully limited, as they must be to survive heightened scrutiny . . . ." *Id*. at 783–84 (internal quotation marks and citations omitted).

Based on the foregoing, this Court concludes that the Sheriff's use of the Bail Schedule

---

specifically found" were "far more likely to be responsible for dangerous acts in the community after arrest"; and (3) afforded arrestees a "full-blown adversary hearing" at which the government was required to "convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person." *Salerno*, 481 U.S. at 750.

[15] In their summary judgment briefing, plaintiffs do not do not state clearly whether their Due Process claim is of a procedural or substantive nature. However, given their emphasis on the alleged deprivation by the government of a right they deem fundamental, in addition to their reliance on *Lopez-Valenzuela* both in their briefing and at oral argument, the Court understands their Due Process claim to be of a substantive nature. Moreover, plaintiffs have not objected to CBAA's consistent characterization of plaintiffs' Due Process claim as a substantive Due Process claim.

implicates plaintiffs' fundamental right to liberty, and any infringement on such right requires a strict scrutiny analysis. According to the Ninth Circuit, that liberty is a fundamental right is "beyond dispute." *Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017); *id.* ("[T]he private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'") (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)); *see also Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."); *Foucha*, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action.").

Relying on *Gerstein v. Pugh*, 420 U.S. 103 (1975) and *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), CBAA attempts to frame the right at issue here narrowly, that is, as the "right to liberty in the brief period between arrest and arraignment." (CBAA's Opposition to Plaintiffs' Motion for Summary Judgment, Dkt. No. 143 at 9 ("CBAA's Opposition"); *see also* CBAA's Motion for Summary Judgment, Dkt. No. 132 at 18 ("CBAA's Motion").) Using this construction, CBAA argues that no such fundamental right exists but rather that detention is "justified and constitutional." (CBAA's Motion at 17.) In *Gerstein*, the Supreme Court held that the Fourth Amendment requires a prompt judicial determination of probable cause as a prerequisite to an extended pretrial detention following a warrantless arrest. 420 U.S. at 124–25. The Court did not specify what would meet the promptness standard, instead noting that "the nature of the probable cause determination usually will be shaped to accord with a State's pretrial procedure viewed as a whole." *Id.* at 123. Subsequently, in considering what constitutes a "prompt" probable cause determination under *Gerstein*, the Supreme Court held in *McLaughlin* that a judicial determination of probable cause within 48 hours of arrest generally will pass constitutional muster. 500 U.S. at 56.[16] Essentially, CBAA avers that *McLaughlin* creates a 48-

---

[16] In so holding, the Court recognized that "some delays are inevitable" where jurisdictions "incorporate probable cause determinations into other pretrial procedures . . . . [T]here will be delays caused by paperwork and logistical problems. Records will have to be

11

hour period within which the County can constitutionally detain arrestees pursuant to the Bail Schedule.

CBAA's narrow reading of *McLaughlin* ignores that the Court treated the 48-hour rule merely as a presumption. The fact that a person is given a determination of probable cause within 48 hours after arrest does not mean that "the probable cause determination in a particular case passes constitutional muster . . . ." *McLaughlin*, 500 U.S. at 56. Such a hearing may nonetheless violate the Constitution "if the arrested individual can prove that his or her probable cause determination was delayed unreasonably." *Id.* CBAA's reference to the "48-hour *outer-limit* found constitutional for probable cause hearings" is thus misleading. (CBAA's Motion at 17) (emphasis supplied). Moreover, it is not clear that the *McLaughlin* 48-hour presumption applies to the inquiry into an arrestee's eligibility for pre-arraignment release. CBAA baldly asserts that "the context of pre-arraignment bail hearings . . . also implicates the realities of law enforcement and the heavy burden on the criminal justice system to process defendants in a timely yet effective manner after arrest." (*Id.*) However, it offers no evidence to support its claim. As one court noted in a case similar to this one, "[t]he 48-hour probable-cause-hearing standard announced in [*McLaughlin*] is not a safe harbor . . . ." *ODonnell v. Harris Cty.*, 227 F. Supp. 3d 706, 732 (S.D. Tex. 2016) (noting "plaintiffs do not challenge the timing of probable-cause hearings"). Finally, *Gerstein* and *McLaughlin* dealt with the *procedural* safeguards necessary to effect limited post-arrest detention, and plaintiffs' claim here purports to be of a substantive nature.

Accordingly, CBAA's claim is unavailing. The Ninth Circuit has not drawn the narrow demarcation proffered, instead announcing general Due Process principles in cases involving detention of adults.[17]

---

reviewed, charging documents drafted, appearance of counsel arranged, and appropriate bail determined." *McLaughlin*, 500 U.S. at 55.

[17] *See, e.g., Hernandez*, 872 F.3d at 981 ("[W]e reaffirm our commitment to th[e] principle of fairness for all as embodied in the Due Process Clause . . . . Here, it prohibits our government from discriminating against the poor in providing access to fundamental rights, including the freedom from physical restraints on individual liberty."); *Lopez-Valenzuela*, 770 F.3d at 781 ("The institutionalization of an adult by the government triggers heightened, substantive due process scrutiny.") (internal quotation marks and alteration omitted).
Moreover, the District Court for the Eastern District of California, in a case involving a

12

### *2.*     *Equal Protection Framework*

The Equal Protection Clause of the Fourteenth Amendment prohibits the government from denying individuals equal protection of the laws. U.S. Const. amend. XIV, § 1. While Equal Protection is typically used to analyze government actions that draw a distinction among people based on specific characteristics, it is also used if the government discriminates among people as to the exercise of a fundamental right.[18]

Strict scrutiny under the Equal Protection Clause applies where the classification impinges on a fundamental right *or* the classification itself is suspect. *See Rodriguez*, 411 U.S. at 2 (the "strict judicial scrutiny . . . test is reserved for cases involving laws that operate to the disadvantage of suspect classes or interfere with the exercise of fundamental rights and liberties explicitly or implicitly protected by the Constitution." ); *cf. Pugh v. Rainwater*, 557 F.2d 1189, 1197 (5th Cir. 1977), *vacated*, 572 F.2d 1053 (5th Cir. 1978) (en banc) (where plaintiffs claimed that imprisonment prior to trial solely due to inability to pay bail violated Equal Protection, court applied strict scrutiny in part because "the inability to raise money bail necessarily affects fundamental rights of the indigent defendant").[19]

---

Due Process claim similar to the one at hand and which CBAA cites in support of its Equal Protection contentions, agreed with the plaintiff in that case that "pretrial liberty is a fundamental right" and that "detention conditioned upon posting of bail . . . is subject to strict scrutiny review." *Welchen v. Cty. of Sacramento*, No. 2:16-cv-00185-TLN-KJN, 2016 WL 5930563, at *9–10 (E.D. Cal. Oct. 11, 2016).

While the court in *Welchen* determined that the plaintiff's Equal Protection claim was subject to rational basis review, it did so based on the premise that "wealth status is not a suspect class" and is therefore irrelevant here. *Welchen*, 2016 WL 5930563 at *11. In any event, when the Supreme Court ruled in *San Antonio Independent School District v. Rodriguez* that wealth-based classifications ordinarily require rational basis review, it specifically exempted cases in which "the disadvantaged class was composed only of persons who were totally unable to pay the demanded sum." 411 U.S. 1, 22 (1973).

[18] *See, e.g.*, *Skinner v. Oklahoma*, 316 U.S. 535 (1942) (Court declared law unconstitutional as violating Equal Protection because it discriminated among people in their ability to exercise the fundamental right to procreate); *see also Bush v. Gore*, 531 U.S. 98 (2000) (Court used Equal Protection Clause to address the fundamental right to vote).

[19] The en banc court vacated as moot the panel decision finding the challenged system unconstitutional because Florida had amended its rules while the appeal was pending. *Rainwater* (en banc), 572 F.2d at 1058–59. Although the *en banc* court did not comment on the scrutiny standard to be applied, it cited *Williams v. Illinois*, 399 U.S. 235 (1970) and *Tate v. Short*, 401 U.S. 395 (1971), stating "[a]t the outset we accept the principle that imprisonment solely because of indigent status is invidious discrimination and not constitutionally permissible." 572 F.2d at

To the extent CBAA frames plaintiffs' Equal Protection claim as one based purely on a "wealth-based" classification, (*see* CBAA's Motion at 13–14), the Court agrees, as a matter of legal theory, that wealth-based challenges generally do not warrant strict scrutiny.[20] Here, however, plaintiffs do not proceed on that basis. Therefore, CBAA's wealth-based classification challenge fails.

With respect to plaintiffs' claim, given their muddled briefing, counsel attempted orally to clarify plaintiffs' theories. Relying principally on the *Bearden-Tate-Williams* line of cases, counsel described (i) an Equal Protection claim based on the deprivation of the fundamental right to personal liberty on an unequal basis; (ii) a Due Process claim based on the deprivation of the fundamental right to personal liberty; and (iii) a claim based on the "fundamental fairness" principle, which plaintiffs say involves a "blended analysis between the equal protection and due process clause[s]."[21] As a threshold matter, the Court does not interpret these cases as giving rise to a separate "fundamental fairness" claim under the Fourteenth Amendment. The *Bearden* Court itself noted that the "'touchstone of due process'" is "'fundamental fairness.'" *Bearden*, 461 U.S. at 666 n.7 (quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 791 (1973)); *see also Quill Corp. v. North Dakota*, 504 U.S. 298, 299 (1992) ("Due process concerns the fundamental fairness of government activity . . . ."). Rather, the Court understands "fundamental fairness" as a consideration that should *guide* its Fourteenth Amendment analysis, not that a separate claim springs therefrom.

That said, an examination of the *Bearden-Tate-Williams* line of cases persuades the Court that strict scrutiny applies to plaintiffs' Due Process and Equal Protection claims. In *Williams*, the Supreme Court held that a facially neutral system of imprisoning convicted defendants who did not pay their fines "works an invidious discrimination" as applied to indigent defendants and therefore violated the Equal Protection Clause. 399 U.S. at 242. Though the majority did not

---

1056.

[20] *But see supra* note 17 (noting exception to general rule).

[21] *See* Transcript of Proceedings Held on December 12, 2017, Dkt. No. 186 at 5:10–22, 6:16–22 ("Transcript").

14

explicitly call for heightened scrutiny, it used a functionally similar analysis, finding the government's "substantial and legitimate" interest in collecting revenues from fines did not justify "invidious discrimination" against those financially unable to pay the fines. *Id*. at 238, 242. In *Tate*, the Supreme Court followed and extended the rule in *Williams*, holding:

> The same constitutional defect condemned in *Williams* also inheres in jailing an indigent for failing to make immediate payment of any fine, whether or not the fine is accompanied by a jail term and whether or not the jail term of the indigent extends beyond the maximum term that may be imposed on a person willing and able to pay a fine. In each case, the Constitution prohibits the State from imposing a fine as a sentence and then automatically converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full.

*Tate*, 401 U.S. at 398 (internal quotation marks omitted). The Court similarly found that the "invidious discrimination" was not justified in light of "other alternatives to which the State may constitutionally resort to serve its concededly valid interest in enforcing payment of fines." *Id*. at 399.

In *Bearden*, the Supreme Court summarized the rule of *Williams* and *Tate* as follows: "[I]f the State determines a fine or restitution to be the appropriate and adequate penalty for the crime, it may not thereafter imprison a person solely because he lacked the resources to pay it." 461 U.S. at 667–68. Rather, the Constitution requires the government to use the least-restrictive alternative:

> [T]he [sentencing] court must consider alternate measures of punishment other than imprisonment. Only if alternate measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment.

*Id*. at 672–73. In so holding, the Court noted that "[d]ue process and equal protection principles converge in the Court's analysis" in cases involving the fair treatment of indigents in the criminal justice system. *Id*. at 665. The Court explained that the question whether differential treatment violates Equal Protection in such cases is "substantially similar to asking directly the due process question of whether and when it is fundamentally unfair or arbitrary for the State to revoke probation when an indigent is unable to pay the fine." *Bearden*, 461 U.S. at 665–66. The Court

reasoned that the answer to that question "cannot be resolved by resort to easy slogans or pigeonhole analysis, but rather requires a careful inquiry into such factors as 'the nature of the individual interest affected, the extent to which it is affected, the rationality of the connection between legislative means and purpose, [and] the existence of alternative means for effectuating the purpose . . . .'" *Bearden*, 461 U.S. at 666–67 (quoting *Williams*, 399 U.S. at 260 (Harlan, J., concurring)) (alterations in original).

While the Court disagrees that these cases establish an unambiguous *constitutional right* not to be detained based on indigence as plaintiffs apparently suggest,[22] the cases appear to require the Court to consider the instant challenge with heightened review. CBAA argues that the *Bearden-Tate-Williams* line of cases address additional penalties imposed after a convicted indigent criminal defendant was unable to pay court-ordered fines or restitution, which "essentially converted the defendant's purely-financial penal sentence into jail time for failure to pay." (CBAA's Motion at 14.) For this reason, CBAA maintains that these cases have "no application to the pretrial bail context . . . ." (*Id*. at 15.) CBAA does not persuade. The Supreme Court's holdings and analyses apply with special force in the bail context, where fundamental deprivations are at issue and arrestees are presumed innocent. Indeed, arrestees who have not been found guilty have an especially "strong interest in liberty." *Salerno*, 481 U.S. at 750.

Accordingly, the Court is satisfied that strict scrutiny review applies to plaintiffs' Due Process and Equal Protection claims. *See Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 357 (1978) ("[A] government practice or statute which restricts 'fundamental rights' . . . is to be subjected to 'strict scrutiny' and can be justified only if it furthers a compelling government purpose and, even then, only if no less restrictive alternative is available."); *see also Bearden*, 461

---

[22] Citing *Bearden*, plaintiffs argue that the County's use of money bail, which they describe as "detain[ing] arrestees who cannot afford bail longer than those who buy their freedom," violates the "fundamental principle that a government cannot hold someone in jail solely because she is unable to pay money." (Plaintiffs' Motion at 6; *see also id.* at 7 ("[M]oney bail violates the fundamental proscription of wealth-based detention.").) According to plaintiffs, *Bearden*, *Tate*, *Williams*, and related cases "compel the conclusion that the County's money bail system is unconstitutional." (*Id*. at 8.)

16

U.S. at 665 (in cases of detaining the indigent, "[d]ue process and equal protection principles converge in the Court's analysis.").

### C. Application and Parties' Respective Burdens

Applying these principles, the Court must determine (i) whether the Sheriff, through use of the Bail Schedule, has significantly deprived plaintiffs of their fundamental right to liberty, and, if so, (ii) whether, under the strict scrutiny standard of review, the Sheriff's use of the Bail Schedule is the least restrictive alternative for achieving the government's compelling interests.[23]

Plaintiffs first claim that the County's current bail system infringes on the fundamental right to pretrial liberty because the "non-monetary release alternatives" it affords to arrestees "are slower than monetary release" and "those who can afford bail procure release much faster than those who must wait for the OR Project." (Plaintiffs' Motion at 10.) The Court finds genuine disputes of fact exist as to plaintiffs' claim of a significant deprivation of liberty.

Plaintiffs contend: "Of the 513 people released in 2016 through the OR Project, only 4% were released in less than 24 hours; nearly 11% spent 24–48 hours waiting for their release; 71% waited at least two full days; roughly 14% waited for at least three full days." (Plaintiff's Motion at 10.) However, the Sheriff (and CBAA[24]) notes that plaintiffs' analysis used the wrong data. (Sheriff Vicki Hennessy's Response to Plaintiffs' and CBAA's Motions for Summary Judgment, Dkt. No. 149 at 2 ("Sheriff's Response to MSJs").) Specifically, the Sheriff argues that plaintiffs used certain figures which overstate the actual amount of time that individuals released through

---

[23] *See Halet v. Wend Inv. Co.*, 672 F.2d 1305, 1311 (9th Cir. 1982) ("Because the state action in this case infringes upon a fundamental right, we must reverse the district court's dismissal of [Appellant's] due process and equal protection claims to enable it to consider whether . . . a genuinely significant deprivation of a fundamental right has occurred. . . . If such a deprivation has occurred, then the court must determine whether the . . . policy can survive strict scrutiny.") (internal quotation marks and citations omitted); *Nat'l Ass'n for Advancement of Multijurisdiction Practice v. Berch*, 973 F. Supp. 2d 1082, 1114 (D. Ariz. 2013) ("Plaintiffs correctly state that rules that infringe on fundamental rights are subject to strict scrutiny . . . , but they have not shown infringement on a fundamental right . . . that would trigger that standard of review in this case.").

[24] CBAA concurs with each of the Sheriff's observations with respect to factual inaccuracies contained in Plaintiffs' Motion. (*See* CBAA's Reply ISO Motion for Summary Judgment, Dkt. No. 160 at 2 n.2).

17

the OR Project spent in custody.[25] Moreover, the Sheriff (and CBAA) cautions the Court that plaintiffs' methodology did not identify all pre-arraignment releases granted through the OR Project because it assumed they would all be denominated "Project OR" on certain spreadsheets produced by the Sheriff in discovery, which is not necessarily the case. (*Id*. at 2–3.)[26] For this reason, the Sheriff states that plaintiffs' count of the number of releases "necessarily understates the total." (*Id*. at 3.)

In light of the factual dispute as to the meaning of the data, the Court cannot say, as a matter of law, that the Sheriff significantly infringed on plaintiffs' fundamental right to liberty by "detain[ing] [them] longer" (Plaintiffs' Motion at 10), let alone that the Sheriff has done so by sole reason of their indigence.[27] Given that even those who pay the set bail amount are detained for some measure of time, the Court cannot find that any amount of detention *per se* is unconstitutional. Plaintiffs' motion thus fails. Accordingly, the evidence at trial must ultimately show the full context of the detentions at issue.

Plaintiffs' motion also fails because plaintiffs have not met their initial burden as to the existence of a less restrictive alternative to achieve the government's interests as compared to the Sheriff's use of the Bail Schedule. As plaintiffs concede, they must first make a prima facie

---

[25] According to the Sheriff, the appropriate interpretation of the data shows that of the 513 people released in 2016 through the OR Project, 49%—not 4%—were released in less than 24 hours; 42.5%—not 11%—were released between 24 and 48 hours; and 8%—not 71%—were released after 48 hours. (Sheriff's Response to MSJs at 2.)

[26] The Sheriff explains that when an individual is released under more active supervision, either before or after arraignment, the release is denominated "Assertive Case Management." (Sheriff's Response to MSJs at 3.) The Sheriff adds that because the Jail Management System can record only one release reason, and a person may be detained for multiple reasons, there would be additional pre-arraignment releases granted through the OR Project that were not recorded as either "Project OR" or "Assertive Case Management." (*Id*.)

[27] The Sheriff indicates that "[h]ad Plaintiffs discussed in advance what statistics they wished to present, we would have tried to reach a stipulation on methodology and results." (Sheriff's Response to MSJs at 3 n.5.) The Court notes that there is no genuine dispute of material fact as to data pertaining to the number of individuals released from custody through the OR Project within three hours or less or within ten hours or less. However, since this action concerns the 48 hours between arrest and arraignment, the Court deems the disputed information critical to understanding the extent of the alleged liberty deprivation.

18

showing in this regard. (*See* Plaintiffs' Reply ISO Motion for Summary Judgment, Dkt. No. 161 at 8.) That is, they must make a showing of a "*plausible*, less restrictive alternative[],"*Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004) (emphasis supplied). The proposed alternative need not be "*more* effective," *id*. at 669 (emphasis supplied)—plaintiffs must show only that it would be "*at least as effective*," *Reno v. ACLU*, 521 U.S. 844, 874 (1997) (emphasis supplied). The current record is insufficient on this point. Even plaintiffs' designated expert witness, Michael Jones, testified at his deposition that he is "very ignorant" about the County's pretrial practices and was not offering any opinion about whether any alternatives to the County's current system of pretrial release would be effective in achieving the government's interests in this County.[28] (Deposition of Michael R. Jones, Dkt. No. 144-12 at 81, 113.)[29] Plaintiffs' prima facie case need not rise to the level of scientific precision. However, given the absence of undisputed, competent evidence that the proffered alternative systems could be administered feasibly in the specific context of the County, plaintiffs have failed to meet their initial burden.

Once plaintiffs have made a showing of a plausible, less restrictive alternative, the government has the burden of proof under the strict scrutiny standard.[30] CBAA, having stepped

---

[28] The same issue is posed by the testimony of Judge Truman Morrison and Garry Herceg, which describe the pretrial systems of separate jurisdictions (Washington, D.C., and Santa Clara, respectively) without opining whether the County could reasonably be expected to implement a similar type of pretrial system. (*See* Dkt. Nos. 136-19, 136-20.)

[29] This is not to say that CBAA's evidence proffered on this point is without flaw. Namely, in support of its arguments that plaintiffs' proposed alternative is not less restrictive and is less effective at ensuring court appearance, CBAA cites to "expert" reports which in large part are not based on personal knowledge, are not supported by citations to verifiable sources, and/or fail to articulate a reliable methodology. (CBAA's Opposition at 16–17.)

[30] *See, e.g., Burson v. Freeman*, 504 U.S. 191, 199 (1992) ("To survive strict scrutiny . . . a State must do more than assert a compelling state interest—it must demonstrate that its law is necessary to serve the asserted interest."); *see also Miller v. Johnson*, 515 U.S. 900, 920 (1995) ("To satisfy strict scrutiny, the State must demonstrate that its . . . legislation is narrowly tailored to achieve a compelling interest."); *Bernal v. Fainter*, 467 U.S. 216, 227 (1984) ("To satisfy strict scrutiny, the State must show that [the statute] furthers a compelling state interest by the least restrictive means practically available."); *Nordyke v. King*, 681 F.3d 1041, 1045 n.2 (9th Cir. 2012) ("Strict scrutiny requires the government to show that it has taken the least restrictive means to serve a compelling government interest."); *c.f. Rodriguez*, 411 U.S. at 51 ("Only where state action impinges on the exercise of fundamental constitutional rights or liberties must it be found to have chosen the least restrictive alternative.").

19

into the shoes of the Sheriff as intervenor, must show that plaintiffs' proposed alternative would be less effective at serving the government's compelling interest(s) and/or more restrictive.[31] Here, plaintiffs and CBAA agree that at a minimum the County has a compelling interest in ensuring that arrestees appear for trial. (*See, e.g.*, CBAA's Motion at 20; Plaintiffs' Opposition at 7.) However, as mentioned previously, the evidence of plausible, less restrictive alternatives to furthering that interest is disputed (and, in many cases, given plaintiffs' evidentiary failures, was not admissible as proffered).

Given plaintiffs' numerous failures of proof, their motion is denied. CBAA's motion also fails because it is based on the assumption that no fundamental right is at issue and relies on a rational basis analysis.

**IV. CONCLUSION**

For the foregoing reasons, plaintiffs' motion for summary judgment is **DENIED,** and CBAA's motion for summary judgment is **DENIED**.

This Order terminates Docket Numbers 132 and 136.

**IT IS SO ORDERED.**

Dated: January 16, 2018

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[31] Plaintiffs need only make a prima facie showing as to one effective alternative. To the extent they introduce competent evidence as to more than one alternative, however, CBAA will have to show that each proposed alternative would be less effective and/or more restrictive than the Sheriff's use of the Bail Schedule. Of note, "[t]he Government's burden is not merely to show that a proposed less restrictive alternative has some flaws; its burden is to show that is less effective." *Ashcroft*, 542 U.S. at 669.