HARMEET K. DHILLON (SBN: 207872)
harmeet@dhillonlaw.com
BRANDON BAUM (SBN: 121318)
bbaum@dhillonlw.com
KRISTA L. BAUGHMAN (SBN: 264600)
kbaughman@dhillonlaw.com
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593

Attorneys for Defendant Intervenor
California Bail Agents Association

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| RIANA BUFFIN and CRYSTAL PATTERSON, on behalf of themselves and other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, *et al.*<br><br>Defendants. | Case No. 4:15-cv-04959-YGR<br><br>**CALIFORNIA BAIL AGENTS ASSOCIATION'S DAUBERT MOTION TO EXCLUDE OPINION TESTIMONY OF CLAIRE M. B. BROOKER**<br><br>Trial Date: September 17, 2018<br>Time:   8:30 a.m.<br>Place:   Courtroom 1, Fourth Floor<br>Judge:   Hon. Yvonne Gonzalez Rogers |

## I. INTRODUCTION

Plaintiffs bear the "initial burden as to the existence of a less restrictive alternative to achieve the government's interests" as compared to the San Francisco Sheriff's use of a bail schedule to set presumptive amounts for pre-arraignment release on bail (the "Current System"). Dkt. 191 (MSJ Order), p. 18. The proposed alternative must be shown to be "plausible," "less restrictive," and "at least as effective" as the Current System. *Id.* at p. 19. Plaintiffs have proposed three alternatives[1], each of which involves the elimination of class members' ability to post secured money bail to obtain pre-arraignment release. *See* Dkt. 221, p. 2 ("Each of these alternatives would not involve the use of a predetermined Bail Schedule with respect to the plaintiff class.").

Plaintiffs have designated Claire M. B. Brooker, a criminal and pretrial justice system analyst, facilitator, and trainer, to rebut the report of CBAA's expert, Robert Morris, by opining about two studies she conducted – one in in Yakima County (Washington State) and one in Jefferson County (Colorado). These studies compared the relative effectiveness of secured bonds (e.g., bail bonds) with unsecured bonds (e.g., promises to pay upon failure to appear) in pretrial systems that use both secured and unsecured bonds for pretrial release. According to Ms. Brooker, these studies "show that when these jurisdictions moved away from a heavy reliance on secured money bonds, pretrial detention was reduced with no harm to public safety and court appearance rates." Exhibit A (Brooker rebuttal report), ¶61.

However, secured versus unsecured bonds is not at issue in this case. Plaintiffs have not proposed that the Sheriff accept unsecured bonds as bail. Rather, Plaintiffs propose the elimination of bail entirely, irrespective of the form of security. Dkt. No. 136, p. 29 (seeking injunction of the Bail Schedule); Dkt. No. 221 (setting forth proposed alternatives). As such, Ms. Brooker's testimony is irrelevant to the issue of whether the Plaintiffs' proposed alternatives would be "as effective" as the Current System, for even if the Court were to find that unsecured bonds work as well as secured

---

[1] Plaintiffs propose as alternatives to the bail schedule that "the Sheriff's Department could: (1) rely solely on a computerized risk assessment process (such as the current San Francisco Public Safety Assessment ("PSA")) for all members of the plaintiff class; (2) reinstitute the San Francisco interview process for all members of the plaintiff class; and (3) use a combination computerized risk assessment and interview process, as has been done in other jurisdictions." Dkt. No. 221, p. 2.

bonds (they don't), that would not aid at all in deciding whether the Bail Schedule is unconstitutional. Ms. Brooker's testimony is also unreliable, to the extent that it is based solely on extra-jurisdictional studies whose conclusions have not been shown to be capable of generalization to San Francisco County, and given Ms. Brooker's willful ignorance of San Francisco-specific data available in this case.

## II.   LEGAL STANDARDS

Federal Rules of Evidence, Rule 702 governs the admissibility of expert testimony and states:

> A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"[T]he Rules of Evidence ... assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merril Dow Pharms., Ins.,* 509 U.S. 579, 591 (1993); *see also Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141 (1999); *Primiano v. Cook,* 598 F.3d 558, 564-566 (9th Cir. 2010). Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert,* 509 U.S at 591 (internal citations omitted).

## III.   MS. BROOKER'S OPINION IS IRRELVANT AND UNRELIABLE

Ms. Brooker's opinion is irrelevant to the issues in this case because each of the studies she relies upon involve jurisdictions that use *both* secured money bail and unsecured bonds simultaneously. *See, e.g.,* Exhibit A (Brooker rebuttal report), ¶¶ 37-38 (describing the Yakima County pilot project as being "*less reliant* on secured money and more focused on non-monetary release conditions" and "moving…*toward* a non-monetary release system"), ¶40 (describing the Jefferson County pilot project's goal of determining, "among other things, the impact of using *fewer* secured money bonds on four bail outcomes…")(emphases added). By stark and critical contrast, Plaintiffs' proposed alternatives involve wholesale elimination of the use of secured money bail – or any financial condition of release – for class members.

Second, Ms. Brooker's opinions regarding the comparative effectiveness of a "non-monetary release system" (Exhibit A, Brooker rebuttal report, ¶¶ 61-62) are irrelevant and unreliable, given that the facts and data she relied upon for those opinions do not involve exclusively "non-monetary release systems." Rather, each of the studies Ms. Brooker discusses in her report deal with "unsecured bonds," which – as defined in the studies she relies upon – are bonds with a financial condition that a defendant or his co-signor must pay if he fails to appear for court. *See, e.g.,* Exhibit B (Claire M. B. Brooker, Michael R. Jones, Timothy R. Schnacke, *The Jefferson County Bail Project: Impact Study Found Better Cost Effectiveness for Unsecured Recognizance Bonds over Cash and Surety Bonds,* (Pretrial Justice Institute, 2014), p. 4 (defining unsecured bond as "a bond **where money is promised to be paid** if the defendant fails to appear for court, but money does not have to be paid to gain release from custody…" (emphasis added)); Exhibit C (Michael R. Jones, *Unsecured Bonds: The Most Effective and Efficient Pretrial Release Option* (Pretrial Justice Institute, 2013), p. 7, FN 3 ("[u]nsecured bonds in Colorado are known in statute as personal recognizance bonds and although **they are required to have a financial condition in some monetary amount**, they do not require the defendant to post any money with the court prior to pretrial release from jail. If the defendant fails to appear, the court can hold the defendant liable for the full amount of the bond. The court can also require the signature of a co-signor on unsecured bonds prior to the defendant's release from jail. The co-signor is typically a family member who promises the court that he or she will assist the defendant in appearing in court and who may be held liable for the full monetary amount if the defendant fails to appear." (emphasis added)).

Studies that involve the use of unsecured financial bonds provide no reliable foundation for Ms. Brooker's conclusion that Plaintiffs' proposed alternatives – which contemplate the use of *no* financial release conditions – would be "as effective" as the Current System at achieving the County's compelling interests.

Ms. Brooker's testimony suffers from additional flaws that render her opinions unreliable. For instance, the two studies she authored involve no San Francisco County (or even California) data, nor does Brooker testify to any familiarity with San Francisco County's unique pretrial release

procedures and defendant population, let alone knowledge sufficient to enable her to opine that the results of experiments conducted in other jurisdictions could be extrapolated to this County.

Ms. Brooker's opinions are based on her experience as a consultant to jurisdictions in Colorado and Washington States, and the only materials she reviewed in preparing her expert report were three studies from those jurisdictions, as well as Mr. Morris' expert report. *See* Exhibit A (Brooker rebuttal report), Appendix A, B. Like Mr. Jones, Ms. Brooker ignores the raw data produced by the Sheriff reflecting unique bookings in the County (SHP001179), and chooses not to address Mr. Morris' statistical analysis of that data, which supports the conclusion that similarly-situated defendants have a lower risk for failure to appear when released via surety bond than via non-monetary methods. *See* Exhibit D (Morris opening report), pp. 7-9. Ms. Brooker's willful ignorance of such evidence renders her opinions unreliable and inadmissible. *See, e.g., Pyramid Technologies, Inc. v. Hartford Cas. Ins. Co.,* 752 F.3d 807, 813 (9th Cir. 2014) (expert opinion testimony is reliable "if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline.").

In sum, Ms. Brooker's testimony concerning the relative effectiveness of unsecured financial bonds in pretrial systems that also use secured money bail is irrelevant to the issue of whether the Plaintiffs' proposed alternatives would be "as effective" as the Current System, and therefore whether the Sheriff's use of the Bail Schedule is constitutional. Ms. Brooker's testimony is also unreliable, to the extent that it is based solely on extra-jurisdictional studies and Ms. Brooker has remained willfully ignorant of critical evidence in this case.

### IV.   CONCLUSION

For the foregoing reasons, Defendant Intervenor CBAA respectfully requests that this Court issue an order excluding from consideration Ms. Brooker's opinion testimony at trial.

Respectfully submitted,

Date: August 17, 2018            DHILLON LAW GROUP INC.

By:   /s/ Krista L. Baughman
Harmeet K. Dhillon (SBN: 207872)
Brandon Baum (SBN: 121318)
Krista Baughman (SBN: 264600)
Attorneys for Defendant Intervenor
California Bail Agents Association