LATHAM & WATKINS LLP
   Robert E. Sims (CA Bar No. 116680)
   Sadik Huseny (CA Bar No. 224659)
   Tyler P. Young (CA Bar No. 291041)
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095
Email: Robert.Sims@lw.com
Email: Sadik.Huseny@lw.com
Email: Tyler.Young@lw.com

EQUAL JUSTICE UNDER LAW
   Phil Telfeyan (Bar No. 258270)
400 7th Street NW, Suite 602
Washington, D.C. 20004
Telephone: +1.202.505.2058
Email: Ptelfeyan@equaljusticeunderlaw.org

Attorneys for Plaintiffs
*Riana Buffin and Crystal Patterson*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| RIANA BUFFIN and CRYSTAL PATTERSON, on behalf of themselves and others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>VICKI HENNESSY in her official capacity as the San Francisco Sheriff, *et al.*,<br><br>    Defendants. | CASE NO. 4:15-cv-04959-YGR<br><br>**PLAINTIFFS' MOTION IN LIMINE NO. 1 TO EXCLUDE ALL EVIDENCE, TESTIMONY AND ARGUMENT RELATING TO SURETY DATA SPREADSHEETS**<br><br>Date:  Sept. 7, 2018<br>Time:  9:30 a.m.<br>Dept.:  Courtroom 1, 4th Floor<br>Judge:  Hon. Yvonne Gonzalez Rogers |

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

PLTFS' MTN *IN LIMINE* NO. 1
TO EXCL. EVID. RE: SURETY DATA
CASE NO. 4:15-CV-04959-YGR

Plaintiffs move to exclude any evidence, testimony, or argument regarding the June 22, 2018 production by the Intervenor-Defendant, the California Bail Agents Association ("CBAA"), consisting of 22 Excel documents that purport to be the bond forfeiture data of at least eleven surety insurers ("surety data"). Declaration of Sadik Huseny In Support of Plaintiffs' Motion in Limine No. 1 To Exclude All Evidence, Testimony And Argument Relating To Surety Data Spreadsheets, Exh. A, CBAA003908-003917; CBAA004067-004078 ("Huseny Decl."). Plaintiffs move to exclude this data on the ground that it is procedurally improper and manifestly unreliable. Furthermore, any effort to rehabilitate the surety data and establish its authenticity, reliability and admissibility through document custodians at trial will both reward the CBAA for flouting this Court's discovery rules and be a significant waste of the Court's time. The surety data and any testimony or argument related to it should be excluded in its entirety. *See* Fed. R. Evid. 403.

## I.   THE EVIDENCE IS PROCEDURALLY IMPROPER

On March 2, 2018, this Court entered an order re-opening discovery in this case, and subsequently entered a case management order providing a fact discovery deadline of June 30, 2018. Consistent with the Court's direction, on April 5, 2018, Plaintiffs served a Rule 30(b)(6) deposition notice on the CBAA. The notice attached a document request which required production of all documents showing "the number of CBAA members' clients in the County of San Francisco who fail to appear as required in court while they are released on bail," all documents that relate to the "failure-to-appear rate for bail release," and all documents "that discuss, refer to, or relate to the number and amounts CBAA members paid for forfeitures (i.e., the full bail amount if the bonded person fails to appear in court) and the process by which this occurred in the City and County of San Francisco." Huseny Decl. Exh. B, Plaintiffs' Notice of Rule 30(b)(6) Videotaped Deposition ¶¶ 6, 8. CBAA agreed to produce all such materials in its possession, custody or control. Huseny Decl. Exh. C, CBAA's Objections to Plaintiffs' Rule 30(b)(6) Deposition Notice at 13-14. The deposition of the CBAA's representative, Jeffrey Clayton, then proceeded on May 22, 2018. Yet, despite having over 6 weeks, and agreeing to do so, the CBAA did not produce any data regarding forfeiture rates at that time. Plaintiffs

1

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

PLTFS' MTN *IN LIMINE* NO. 1
TO EXCL. EVID. RE: SURETY DATA
CASE NO. 4:15-CV-04959-YGR

1   proceeded with the deposition, exploring this area as best possible in light of Mr. Clayton's
2   limited recall. Huseny Decl. Exh. D, Clayton Dep. at 36-38.

3   One month later—on June 22, 2018—the CBAA suddenly amended their initial
4   disclosures to add ten additional third-party witnesses with information about this case. Huseny
5   Decl. Exh. E, CBAA's Amended Initial Disclosures. The same day, the CBAA produced 22
6   Excel documents that purport to be the bond forfeiture data of at least eleven surety insurers.
7   The Excel documents were produced without any explanation or accompanying declarations. In
8   other words, roughly *one week* before the close of discovery—when Plaintiffs could of course
9   do nothing about it—the CBAA conjured ten new witnesses and reams of data, in clear
10  violation of their discovery obligations. And then refused to answer any questions about it.

11  The CBAA had more in store. Two weeks later, Plaintiffs received the report of the
12  CBAA's proffered expert, Dr. Morris, who relied heavily upon the new, unvetted data to reach
13  some of his conclusions. Plaintiffs objected, and asked the CBAA to provide a factual witness
14  who could authenticate or otherwise explain how the data came to be in CBAA's possession and
15  why it was not disclosed before the Rule 30(b)(6) deposition. The CBAA ignored the request.
16  Plaintiffs asked again, in an effort to potentially stave off this eventual motion *in limine*. The
17  CBAA ignored the request yet again—never proffering any witnesses to explain this data.

18  Dr. Morris was himself eventually deposed, on July 31, 2018. At the deposition,
19  Plaintiffs asked Dr. Morris if *he* could explain, in any respect, how the data came to be. Dr.
20  Morris could not. Dr. Morris admitted that he did not know how the surety companies compiled
21  the data, who accumulated the data, who recorded it, or if there had been any quality checks to
22  ensure its accuracy or completeness. Huseny Decl. Exh. F, Morris Dep. at 81-83. Dr. Morris
23  simply didn't know *anything* about the genesis, makeup, or reliability of these spreadsheets. He
24  just took the numbers and plugged them into his report to support his pre-determined
25  conclusions.

26  This gamesmanship should not be countenanced. Plaintiffs have carefully chosen to file
27  very few motions *in limine*, in an effort to be respectful of this Court's time given the nature of
28  the upcoming bench trial, because many *in limine* arguments speak more readily to the weight of

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

PLTFS' MTN *IN LIMINE* NO. 1
TO EXCL. EVID. RE: SURETY DATA
CASE NO. 4:15-CV-04959-YGR

1  evidence rather than anything else. Not so here. The manner in which this data was produced is
2  reason enough to exclude it. The CBAA disclosed this data and its additional custodians with
3  very little time left in an already condensed discovery schedule. They did so entirely so that their
4  expert could base key opinions on data that he cannot know is reliable. The CBAA should not
5  be rewarded. *See Forbes v. 21st Century Ins. Co.*, 258 F.R.D. 335, 339 (D. Ariz. 2009)
6  (prohibiting use of documents where party "admit[ted] they have long had possession" of the
7  documents, "offer[ed] no justification for first disclosing these documents, even informally, so
8  close to the end of discovery" and failed to "adequately demonstrate that the late disclosure was
9  harmless"). The Court should exclude the surety data and any argument related to it.

10  **II.     THE DATA IS CHERRY-PICKED AND UNRELIABLE**

11          The purported forfeiture data and argument related to it should also be excluded because
12  it is inherently unreliable. Without any explanation as to how the data was initially collected or
13  gathered for production there is no way for Plaintiffs or the Court to confirm its reliability. It
14  was not produced in response to a third party subpoena, and because the CBAA claims it
15  produced the data when it received the data from a set of third parties, it could not be more
16  obvious that, after the time they were supposed to produce such materials, the CBAA instructed
17  surety companies (some or all of which are likely CBAA members) to self-select and report
18  particular data. *See* Huseny Decl. Exh. A. There is no way third parties to a litigation would do
19  so voluntarily, of course—so if these third parties were not compelled by process (and they were
20  not), the nature and substance of their production is inherently suspect. Neither the Plaintiffs nor
21  the Court know what the CBAA instructed the surety companies to gather and produce. It is
22  clear, however, that the CBAA did not ask the surety companies to produce all of the bond
23  forfeiture records called for in Plaintiffs' Rule 30(b)(6) notice because the surety data does not
24  include anything other than the summary information included in the spreadsheets.
25          Moreover, on its face the data presents serious reliability issues. Some of the
26  spreadsheets have more than 30,000 rows of data and others are completely blank without any
27  explanation. The spreadsheets also do not adequately explain their own values. For instance,
28  they use terms of art like "forfeiture date" without explaining whether that date corresponds to a

3

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

PLTFS' MTN *IN LIMINE* NO. 1
TO EXCL. EVID. RE: SURETY DATA
CASE NO. 4:15-CV-04959-YGR

missed court appearance, the date a notice was sent by a clerk, or the date the bond was surrendered, or something else entirely. There is also no way to know if this term of art, and others, are used consistently across the various spreadsheets by the different surety companies. Other spreadsheets use acronyms as column titles like "FRT" and "RI Ratio" without any explanation of what those terms mean. *See* Huseny Decl. Exh. A, CBAA004073.

Finally, there is no way to know the spreadsheets are complete. There are no assurances that (1) empty values under forfeiture date correspond to a client without forfeiture, (2) that the data for each surety represents all relevant criminal defendants, or (3) that the data represents all sureties who have been responsible for posting bonds in the relevant jurisdiction. Further, the data indicates the corresponding county from which it was derived for some bonds, but not for others. *See* Huseny Decl. Exh. A, CBAA004067. Without knowing how these names and sureties were selected, there is no indication that the data is representative of bail-paying defendants.

At bottom, the Court has before it a set of spreadsheets that were produced under questionable circumstances, containing missing and incomplete data from a hand-selected group of third parties who were somehow convinced to produce it without formal process, and without providing any explanation of what the spreadsheets say, how they were compiled, or for what purpose. This is manifestly unreliable evidence.

## III.     THE DATA SET CANNOT BE REHABILITATED

At his deposition, Dr. Morris testified that knew nothing about how the data was collected or reported and that many of the sets were more complete than others. Huseny Decl. Exh. F, Morris Dep. at 78:23-79:6; 81-83. Without any independent basis for evaluating the sources of data, Dr. Morris created a summary chart which included a column for "whether [he] thought the data appeared reliable." Huseny Decl. Exh. F, Morris Dep. at 83. That an expert vouches for data about which he has no personal knowledge cannot remedy the grave authenticity and reliability issues that infect this data set. The only way to even *potentially* seek to introduce this evidence at trial would be a parade of document custodians from the various surety companies who could explain how, why, and when the data was initially collected and

4

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

PLTFS' MTN *IN LIMINE* NO. 1
TO EXCL. EVID. RE: SURETY DATA
CASE NO. 4:15-CV-04959-YGR

under what circumstances it was produced to the CBAA. If the CBAA intends to rely on this data, Plaintiffs would be forced to serve trial subpoenas on each of those custodians, requesting all of the documents underlying the self-reported data, in addition to all of their communications with the CBAA and any non-privileged communications with attorneys that led to its production. This exercise would almost certainly devolve into a waste of the Court's limited time. The CBAA should not benefit from its dilatory and inadequate production, and it should not be permitted to waste several days of trial. All evidence, testimony, or argument concerning the surety data should be excluded.

Dated: August 17, 2018

Respectfully submitted,

LATHAM & WATKINS LLP

By:   /s/ Sadik Huseny
      Sadik Huseny

Attorney for Plaintiffs
*Riana Buffin and Crystal Patterson*

5

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

PLTFS' MTN *IN LIMINE* NO. 1
TO EXCL. EVID. RE: SURETY DATA
CASE NO. 4:15-CV-04959-YGR