HARMEET K. DHILLON (SBN: 207872)
harmeet@dhillonlaw.com
BRANDON BAUM (SBN: 121318)
bbaum@dhillonlw.com
KRISTA L. BAUGHMAN (SBN: 264600)
kbaughman@dhillonlaw.com
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593

Attorneys for Defendant Intervenor
California Bail Agents Association

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| RIANA BUFFIN and CRYSTAL PATTERSON, on behalf of themselves and other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VICKI HENNESSY in her official capacity as the San Francisco Sheriff, *et al.*<br><br>Defendants. | Case No. 4:15-cv-04959-YGR<br><br>**CBAA'S OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 1 TO EXCLUDE ALL EVIDENCE, TESTIMONY AND ARGUMENT RELATING TO SURETY DATA SPREADSHEETS**<br><br>Trial Date: September 17, 2018<br>Time: 8:30 a.m.<br>Place: Courtroom 1, Fourth Floor<br>Judge: Hon. Yvonne Gonzalez Rogers |

## I. INTRODUCTION

This case is (or should be) about how well or poorly secured money bail performs in San Francisco. Plaintiffs intend to direct the Court's attention to other jurisdictions, in other states, to say "alternatives to bail perform well in other places!" In response, CBAA will provide evidence about San Francisco, where bail and alternatives to bail have been employed side-by-side for several years. To do so, CBAA's counsel obtained data from bail surety companies regarding how often the bail bonds they posted were forfeited (the "surety data").[1] Not surprisingly, this data shows that bail works better than alternatives to bail with respect to failures to appear ("FTA"). The surety data confirms what CBAA's other data independently establish. Plaintiffs seek to exclude this data from the Court's consideration, arguing that it was not timely disclosed, that it is "inherently unreliable," and that any defects (which CBAA denies exist) cannot be cured. Plaintiffs' Motion fails, as discussed below.

CBAA's disclosure of the surety data was timely. CBAA's counsel promptly produced the spreadsheets to Plaintiffs shortly after acquiring them. Indeed, all nine spreadsheets[2] were shared with Plaintiffs less than 48 hours after receipt by CBAA's counsel, and within 1 day of being provided to CBAA's expert witness, Dr. Robert Morris. Accordingly, Plaintiffs' claim that the spreadsheets were untimely disclosed, is meritless; that the evidence was obtained by CBAA's counsel near the close of discovery is not grounds for exclusion.

As the surety data is supported by custodian declarations, the data is self-authenticating under Federal Rule of Evidence 902(11), and, pursuant to Federal Rule of Evidence 703, it is proper for CBAA's expert to rely upon the data, regardless of its admissibility. And if the Court requires, CBAA is willing to take all steps needed to ameliorate any outstanding evidentiary issues. Accordingly, CBAA respectfully submits that this Court should consider the surety data at trial, and Plaintiffs' Motion *in Limine* No. 1 should be denied.

---

[1] The relevant spreadsheets and custodian declarations are extremely voluminous (over 10,000 pages) so they have not been attached here, though CBAA will provide copies if the Court finds it helpful.

[2] Plaintiffs' Motion seeks to exclude 22 spreadsheets. CBAA intends to rely upon only nine of these spreadsheets at trial, identified as trial exhibits 1022 – 1030 and by the following Bates numbers: CBAA003908, CBAA 004073, CBAA 003910, CBAA 003911, CBAA 003915, CBAA 004067, CBAA 003917, CBAA 004071, and CBAA 004074. Duplicates of the spreadsheets are also attached to custodian declarations identified as trial exhibits 1031 – 1039. Accordingly, CBAA's opposition focuses narrowly on only those nine spreadsheets relevant to this dispute.

## II.   THE EVIDENCE WAS PROMPTLY DISCLOSED TO PLAINTIFFS

Plaintiffs first argue that the spreadsheets must be excluded because CBAA disclosed them with "very little time left in an already condensed discovery schedule." Motion, p.2. That is not the law. As any litigator knows, much of civil discovery occurs in the final weeks of the discovery schedule, with double- and triple-tracked depositions and document productions in the final days. The real question is whether counsel "sat on" the evidence, only to produce it so late in the discovery period that the opposing party was prejudiced by not having it sooner. That is not the case here.

Here, CBAA's counsel received all of the relevant spreadsheets on June 20, 2018 at approximately 8:19 p.m.[3] Nozzari Decl., ¶¶3-5. The spreadsheets were provided by third-party surety companies directly to CBAA's counsel (not to CBAA), who then promptly disclosed the spreadsheets to Plaintiffs on June 22, more than one week prior to the close of fact discovery, along with amended initial disclosures identifying persons and entities CBAA understood may have discoverable information as to the surety data. *Id.* Neither CBAA nor its counsel had possession of these spreadsheets prior to CBAA's May 22, 2018 30(b)(6) deposition, and Plaintiffs' suggestion that CBAA wrongly withheld these documents despite requests made in their 30(b)(6) deposition notice is false. Indeed, CBAA's expert witness, Dr. Robert Morris, was provided with these same spreadsheets just one day before Plaintiffs were provided with the same material. *Id.* at ¶4.

Even if the 48 hour delay in disclosure was material—it was not—Plaintiffs suffered no harm. On June 28, 2018, nearly one week after being provided with the spreadsheets, Plaintiffs deposed CBAA's President, Gloria Mitchell, yet asked none of the questions Plaintiffs now contend they were denied the opportunity to ask. Plaintiffs then *canceled* the deposition of CBAA Vice President, Maggie Kreins, scheduled for June 29, 2018. It was not until July 10, 2018 that Plaintiffs, for the first time, took issue with the spreadsheets, and only raised such concerns in response to CBAA's request that the Parties stipulate to the admissibility of FTA data produced by the Sheriff on June 29, 2018[4], the earmarks of a makeweight issue.

---

[3] The "relevant spreadsheets" are those considered by CBAA's expert. CBAA's counsel received three spreadsheets earlier, but they were not usable and CBAA's expert is not relying on them.
[4] The fact that Dr. Morris was able to evaluate the far more voluminous Sheriff's data and include his analysis in a report a week later shows that Plaintiffs had ample time to evaluate the surety data. That

The case cited by Plaintiffs, *Forbes v. 21 Century Ins. Co.*, 258 F.R.D. 335, 339 (D. Ariz. 2009), offers no support to their cause. In *Forbes*, the party admitted to having "long had possession" of the evidence. Here, however, the spreadsheets were promptly produced and were accompanied by a detailed amended disclosure. *GenSci OrthoBiologics v. Osteotech, Inc.*, No. CV 99-10111 MRP, 2001 WL 36239743, at *13 (C.D. Cal. Oct. 18, 2001) (denying motion to exclude witnesses where the party "fail[ed] to establish that the[] witnesses should have been disclosed any earlier.").

### III. THE EVIDENCE IS RELIABLE

Plaintiffs next argue, without citation to any authority, that the surety data should be excluded because it is "inherently unreliable." Again, Plaintiffs miss the mark. Federal Rule of Evidence 703 provides that expert testimony must be based on facts or data "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Fed. R. Evid. 703. Rule 703 requires only that the information be used as a basis for the expert's opinion; it need not be admissible in evidence or used for the truth of the matter asserted. *United States v. Affleck*, 776 F.2d 1451, 1456-57 (10th Cir. 1985). Additionally, a proper affidavit signed by a custodian of records under Rule 902(11) may be used to authenticate domestic records of a regularly conducted business activity. Fed. R. Evid. 803(6), 902(11). Such criteria are amply met here.

Forfeiture data of the sort analyzed by Dr. Morris is manifestly of a type reasonably relied upon by experts in this field to form inferences as to court appearance rates. While additional information can be (and is) used by CBAA to provide further insight into court appearance rates, the bail bond forfeiture data at issue was acquired from forfeiture notices issued by California courts following failures to appear. It therefore provides information relevant to assessing court appearance performance. Plaintiffs' own expert, Claire Brooker, relies upon her own study on Yakima County, Washington that similarly attempts to infer appearance rate information based on bench warrant data, which, like forfeiture notices, provides grounds to infer appearance rates, not appearance rates themselves.[5] While forfeiture (or bench warrant) rates may not track appearance rates perfectly, the

---

they evaluated *neither* data set (surety nor Sheriff's data) demonstrates that they do not like what actual SF data shows.

[5] Claire Brooker, *Yakima County, Washington Pretrial Justice System Improvements: Pre- and Post-Implementation Analysis* (Nov. 2017), Justice System Partners, available at https://justicesystempartners.org/wp-content/uploads/2015/04/2017-Yakima-Pretrial-Pre-Post-

information is nevertheless valuable, and any deviation between those rates and actual appearance rates goes to the weight such evidence should be given at trial, not the admissibility. *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (noting that even "shaky" evidence should "be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion.").

CBAA has also provided to Plaintiffs declarations signed by custodians for each of the spreadsheets CBAA intends to rely upon. Each declarant attests to the completeness of the data provided and the manner and means by which it was collected in the usual course of their respective businesses. Contrary to Plaintiffs' claim, within the nine relevant spreadsheets there are no material differences in the nomenclature adopted by the sureties in identifying the information pertinent to Dr. Morris's expert opinion, and the labeling of the data included therein is sufficiently clear. While there may be summaries or other terms employed on some spreadsheets, or on sheets within those files, such information is not relied upon or pertinent to the issues before the Court.

### IV.   IF NECESSARY, CBAA WILL AMELIORATE ANY ISSUES

As set forth above, the relevant spreadsheets are reliable and are accompanied by detailed declarations from custodian of records attesting to the manner and means by which the data was collected. Accordingly, pursuant to FRE 703, it is proper for CBAA's expert to rely upon such data when forming his expert opinion, and it is admissible under FRE 902(11). If the Court so requires, CBAA is committed to resolving any outstanding evidentiary issues necessary to render the spreadsheets admissible.

### V.   CONCLUSION

For the foregoing reasons, CBAA respectfully requests that the Court deny Plaintiffs' Motion in Limine No. 1 to exclude all evidence, testimony, and argument relating to surety data spreadsheets.

Respectfully submitted,

Date: August 10, 2018          DHILLON LAW GROUP INC.
                               By:  /s/ Krista L. Baughman
                                    Krista Baughman (SBN: 264600)
                                    Attorneys for Defendant Intervenors CBAA

---

Implementation-Study-FINAL-111517.pdf; *see also* Memo from A. Johnson to Public Safety and Justice Committee re: Bail Performance Outcomes (establishing appearance rates based on bench warrants issued in Santa Clara County, California). Trial Exs. 50, 1020.