LATHAM & WATKINS LLP
  Robert E. Sims (CA Bar No. 116680)
  Sadik Huseny (CA Bar No. 224659)
  Tyler P. Young (CA Bar No. 291041)
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095
Email: Bob.Sims@lw.com
Email: Sadik.Huseny@lw.com
Email: Tyler.Young@lw.com

EQUAL JUSTICE UNDER LAW
Phil Telfeyan (CA Bar No. 258270)
  ptelfeyan@equaljusticeunderlaw.org
Equal Justice Under Law
400 7th Street NW, Suite 602
Washington, D.C. 20004
Telephone: +1.202.505.2058
Email: Ptelfeyan@equaljusticeunderlaw.org

Attorneys for Plaintiffs
*Riana Buffin and Crystal Patterson*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| RIANA BUFFIN and CRYSTAL PATTERSON, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VICKI HENNESSY in her official capacity as the San Francisco Sheriff, *et al.*,<br><br>Defendants. | CASE NO. 4:15-cv-04959-YGR<br><br>**JOINT PRETRIAL CONFERENCE STATEMENT**<br><br>Date: September 7, 2018<br>Time: 9:30 a.m.<br>Dept.: Courtroom 1, 4th Floor<br>Judge: Hon. Yvonne Gonzalez Rogers |

1   Pursuant to the Court's Standing Order Regarding Pretrial Instructions, Plaintiffs Riana

2   Buffin and Crystal Patterson ("Plaintiffs"), Defendant Sheriff Vicki Hennessy ("Defendant") and

3   Defendant-Intervenor California Bail Agents Association ("CBAA") submit the following Joint

4   Pretrial Conference Statement.

5   **I.      THE ACTION**

6           **A.      Substance of the Action**

7   Plaintiffs' Position

8                   **1.      Introduction & Procedural Overview**

9                   No party in this action believes that the San Francisco Bail Schedule ("Bail Schedule") is

10  actually fair or defensible.  Plaintiffs, a certified class of pre-arraignment arrestees, believe it to be

11  grossly discriminatory and unconstitutional, and have been prosecuting this action for years in an

12  effort to overturn it.  Defendant Sheriff Vicki Hennessy has declared it unconstitutional, calling it

13  a "two-tiered system of pretrial justice" that "does not serve the interests of the government or the

14  public, and unfairly discriminates against the poor," and stating that it was an "all-purpose denial

15  of liberty for the indigent" which she would not defend in this litigation.  Dkt. 101 at 1:8-18.  And

16  even Defendant-Intervenor the CBAA has informed the California state legislature that San

17  Francisco's Bail Schedule is too high and unaffordable.  *See* Mitchell Dep. at 23:11-22-11.

18                  Against that backdrop—and this Court's several recent orders in this case—Plaintiffs

19  expected the parties to submit a relatively streamlined pretrial conference statement, and finally

20  move to a fulsome trial on what factual issues remained in dispute.  Not so.  The 7-page draft

21  Plaintiffs initially sent the two defendants in this action ballooned into the enormous document

22  now before the Court, because Defendants seek to defend the substantively indefensible by

23  *procedurally* limiting the upcoming trial in every way imaginable—each for their own reasons.

24  For her part, the Sheriff apparently seeks to avoid anything at trial that might have the effect of

25  embarrassing her (given that she continues to use and enforce an admittedly unconstitutional bail

26  schedule), and similarly seeks to avoid this Court ordering her to affirmatively *do* anything at all.[1]

27  _____

28  [1] The Court will recall that the Sheriff declared the Bail Schedule unfair and discriminatory *only after* she
    was finally forced by this Court to file an Answer.  Prior to the order keeping her in this case, the Sheriff

1   And the CBAA's members make money, a lot of it, in supplying bail to indigent individuals in the

2   class pursuant to the unconstitutional Bail Schedule.  It is protecting that financial interest by

3   raising (and re-raising) every possible argument it can, pretrial, to avoid this Court having a

4   fulsome picture of the issues before it and ultimately issuing rulings that might possibly affect its

5   members' pockets—with perhaps broader PR implications to the bail industry than just the SF Bail

6   Schedule before this Court.

7           Yet, by raising every pretrial issue they could think of, set forth below and in multiple

8   motions *in limine* and *Daubert* motions, Defendants repeatedly ignore or outright defy this Court's

9   orders and guidelines, and seek to obfuscate the history of this case.  Plaintiffs are therefore forced

10  to briefly respond with this overview.  Defendant Sheriff claims it to be an "affront" that the

11  Plaintiffs would dare include such an overview.  This is curious.  When the Sheriff (who apparently

12  feels that she can litigate or defend this case at whim, on her terms) decides to not provide a single

13  word of her inserts to this document until Thursday August 16, 2018 at noon, the day before it is

14  due—with no indication to Plaintiffs that she would be writing significant legal inserts into a

15  pretrial conference statement, and expecting Plaintiffs to somehow respond in a single day—the

16  Sheriff cannot realistically expect Plaintiffs to remain silent.

17          A few months ago, on January 16, 2018, this Court issued an order denying Plaintiffs'

18  and CBAA's cross-motions for summary judgment.  That order was the culmination of several years'

19  worth of litigation, where the parties in this action went back and forth on multiple motions to

20  dismiss and otherwise as to the nature of Plaintiffs' claims, who the proper defendants in this action

21  were, and whether (and under what strict conditions) CBAA would be allowed to intervene, when

22  the Sheriff refused to directly defend the unconstitutional regime.  In that summary judgment

23  order, the Court resolved all outstanding legal issues before it—largely ruling in favor of Plaintiffs'

24  view of the relevant legal framework—and gave the parties direction on what this case was about

25  and what evidence Plaintiffs must present at trial.  The Court was, in fact, crystal clear:

26

27  spent years raising every argument possible for why the case should be dismissed against her (along with
    counterpart government officials), and even now, in pretrial filings, argues that this Court should limit

28  Plaintiffs' ability to put on their case, and ultimately cannot make the Sheriff do anything affirmative at
    all.  This is a rather strange way to "not defend" the action; we address these issues below.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- "Plaintiffs' constitutional challenges [are] challenges to the Sheriff's use of the Bail Schedule." Dkt. 191 at 6:5-6.

- "[Plaintiffs'] claims concern the *effect* the Sheriff's use of the Bail Schedule has on those who cannot afford to pay the set amounts in relation to those who can." Dkt. 191 at 7:24-26. (emphasis in original)

- "[T]he evidence at trial *must ultimately show the full context of the detentions at issue*." Dkt. 191 at 18:12-13. (emphasis added).

In Plaintiffs' view, this was an order directing the parties to get to it—finish preparing for trial (with the benefit of the additional discovery the Court would also order), and present a case to the Court that, as the Court ordered, shows the full context of the detentions at issue and how the Sheriff's use of the Bail Schedule affects those allegedly injured. The Court then went on to certify the class of individuals so injured. Dkt. 214. In doing so, the Court sought to add additional counsel, to ensure a deep-bench, two-firm class counsel team would be able to prepare and present at trial exactly what the Court wanted to see. The undersigned counsel at Latham & Watkins therefore agreed to join the team, *pro bono*. And the Court's mandate to Plaintiffs' appointed class counsel was clear: "prosecute this action vigorously moving forward and adequately represent the interests of the class members." Dkt. 214 p 8:20-22.

Counsel has done so. In the several months since the Court's summary judgment and class certification orders, appropriately defining the scope and substance of the case before it, we have zealously moved this case forward, through multiple depositions, thousands of pages of document discovery and data, expert reports and discovery, and up to the eve of trial. It is critical to note that, throughout that time, neither Sheriff Hennessy nor the CBAA has *ever* filed a motion with this Court claiming that Plaintiffs were pursuing discovery that was outside the bounds of this case, as directed by the Court, or arguing that Plaintiffs could not pursue relief against the Sheriff—the parameters of which the Court will of course eventually decide. Nor did Defendants ever file a motion for reconsideration of any of the Court's prior rulings, or act as if there were any legal obstacles to the Court hearing full evidence at trial about the Sheriff's use of the Bail Schedule, the effects of such use on the class, and the various alternative bail frameworks—complete with

3

1  various release conditions and mechanisms—that San Francisco could implement to eliminate the

2  constitutional violation.

3        It therefore comes as a surprise that, essentially on the eve of trial, Defendants seek to raise

4  many of these arguments now.  They all fail, for the reasons briefly discussed below; they are also,

5  at this stage, a waste of this Court's time.  Plaintiffs have heeded the Court's rulings and are ready

6  for trial.  Indeed, with the exception of a *single* motion *in limine*—this one limited to a set of

7  documents and brand-new witnesses that CBAA disclosed a week before the close of discovery,

8  in direct defiance of their discovery obligations—Plaintiffs are not seeking to burden this Court's

9  time with complex pretrial orders and evidentiary/legal ruling at all, mindful of the Court's specific

10  direction in this case and general direction in its Standing Order.

11        Accordingly, we address below the evidentiary and other matters <u>relevant to trial</u>, as

12  appropriate for a conference statement of this nature.  Where necessary, we also briefly address

13  Defendants' various brand-new procedural and legal arguments, so that the Court has Plaintiffs'

14  position.  But as this is not the appropriate document or time for separate, full briefing on all of

15  these issues, Plaintiffs request that—should the Court want additional briefing and a full discussion

16  on any of the matters Defendants raise below—Plaintiffs be afforded a full opportunity to do so.

17        **2.**     **Substance of Claims and Defenses To Be Decided**

18        Plaintiffs' only claim is that the Sheriff violates their Fourteenth Amendment Equal

19  Protection and Due Process rights by keeping Plaintiffs in jail before arraignment, pursuant to

20  California Penal Code section 1269b, solely because they cannot afford to pay money bail fixed

21  in the Bail Schedule. set by superior court judges in and for the County of San Francisco.  The

22  Plaintiff class representatives are Riana Buffin and Crystal Patterson.  The Court certified the

23  following class:

24      "All pre-arraignment arrestees (i) who are, or will be, in the custody of the San

25      Francisco Sheriff, (ii) whose bail amount is determined by the Felony and
    Misdemeanor Bail Schedule as established by the Superior Court of California,

26      County of San Francisco; (iii) whose terms of pretrial release have not received an
    individualized determination by a judicial officer; and (iv) who remain in custody

27      for any amount of time because they cannot afford to pay their set bail amount.

28  Order Granting Pls. Mot. for Class Certification, Dkt. 214 at 3:16-19.

Defendant Sheriff Vicki Hennessy agrees that the Bail Schedule is unconstitutional, asserts no affirmative defenses, and has declined to defend this action. *See* Dkt. 101. Defendant-Intervenor the CBAA, through its President, has informed the California state legislature that San Francisco's Bail Schedule is too high and unaffordable, but is nonetheless currently seeking to defend the appropriateness of the Bail Schedule before this Court. Both the Sheriff and CBAA have raised numerous legal defenses throughout the course of this long litigation, seeking to have it dismissed or rejected in its entirety, but those have been rejected by this Court. See, e.g., Dkt. 99 at 5-15; Dkt. 191 at 7-17.

### 3.   Plaintiffs' Statement of Elements of Proof

Because the Court held that strict scrutiny applies to Plaintiffs' Due Process and Equal Protection claims, the remaining elements of Plaintiffs' Fourteenth Amendment claims are: "(i) whether the Sheriff, through use of the Bail Schedule, has significantly deprived plaintiffs of their fundamental right to liberty, and, if so, (ii) whether, under the strict scrutiny standard of review, the Sheriff's use of the Bail Schedule is the least restrictive alternative for achieving the government's compelling interests." Dkt. 191 at 14, 17.

Per the Court's standing order, below is a summary of the live evidence which Plaintiffs currently anticipate to offer to prove their case. The evidence and list of sources/sponsorship set forth below are not meant to be granular or comprehensive and do not of necessity include citation to all documentary evidence and non-live testimony to be presented, and Plaintiffs reserve all rights to alter or modify this evidence as the matter moves toward trial and as appropriate as the trial progresses, in light of the Court's rulings and the presentation of evidence and argument.

*Significant deprivation of liberty*: To prove that the use of the Bail Schedule significantly deprives class members of their fundamental right to liberty, Plaintiffs will present testimony showing the disparity between the Bail Schedule's effect on the indigent pre-arraignment arrestees versus those who can afford bail in the form of cash or surety bonds. Specifically, testimony from Tal Klement, the Deputy Public Defender at the San Francisco Public Defender's Office, will demonstrate that arrestees who post bail are released from pre-arraignment custody faster, on average, than those who are unable to post bail under the Bail Schedule. Plaintiffs also

5

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    anticipate testimony from Jeffrey Clayton, the CBAA's designated 30(b)(6) witness, proving that

2    detainees who pay the full bail amount obtain pre-arraignment release faster than those released

3    through other means, regardless of the offense committed.  And testimony from representatives

4    of various bail bond agencies and the president of CBAA, Gloria Mitchell, will show that the bail

5    amounts in the Bail Schedule in San Francisco are far higher in comparison to other counties in

6    California, and are unaffordable to many arrestees.  Ms. Mitchell will further testify that the

7    CBAA itself has informed the California state legislature that San Francisco's Bail Schedule is

8    too high and unaffordable, but no one at the state or local government level has been willing to

9    do anything about it.

10           Testimony from Tal Klement, Gloria Mitchell and others will also prove that the charging

11   practices in San Francisco City and County amplify the harmful effects of the Bail Schedule.

12   Specifically, Plaintiffs anticipate that both Mr. Klement and Ms. Mitchell, among others, will

13   testify that San Francisco has a practice of stacking charges in order to increase a detainee's total

14   bail amount, whereas other jurisdictions in California do not permit charge stacking.  Mr.

15   Klement will further testify that California criminal offenses that can be charged as felonies or

16   misdemeanors—"wobbler offenses"—are consistently charged as felonies so that the

17   corresponding bail amount under the Bail Schedule is higher.  Mr. Klement will also offer

18   testimony regarding how often new arrestees are held in custody or forced to pay bail agent fees

19   to secure their release, only to see the felony charges against them dropped or reduced to

20   misdemeanor offenses that have much lower bail amounts.  Mr. Klement, Crystal Patterson,

21   various bail bond agency representatives and Mr. Clayton will also testify that bail bond agencies

22   operating in San Francisco continue to demand installment payments from arrestees and/or third

23   parties even if the charges against them are dropped or reduced.  Mr. Klement will also testify

24   that since 2016, San Francisco has used the "OR process," one of Plaintiffs' proposed plausible

25   alternatives to the Bail Schedule.  However, the evidence will also show that new arrestees are

26   often not informed that the process exists, the process generally takes longer and often imposes

27   more release conditions and supervision on an indigent arrestee than does release on bail, and

28   California law prohibits certain classes of arrestees from consideration for OR release pre-

6

arraignment.  These same laws, however, allow for release on bail.  In other words, an arrestee who actually committed the charged offense, but can afford bail, can be released pre-arraignment with little or no supervision; while an indigent arrestee who did not commit the same charged offense may be detained until arraignment.

Finally, Representative Plaintiffs Crystal Patterson and Riana Buffin will testify about their respective experiences with pre-arraignment custody and the resulting deprivation of their liberty.

*Plausible, less restrictive alternatives*:  Plaintiffs will make a prima facie showing of plausible, less restrictive alternatives to the Sheriff's use of the Bail Schedule by offering testimony from Tal Klement, Matthew Alsdorf, Professor Robert Weisberg, and Garry Herceg. Plaintiffs will offer evidence of three plausible alternatives, and the components and mechanisms of how each has been implemented, but will focus on the OR Process, which San Francisco began to implement in 2016.  That process involves the use of a Public Safety Assessment ("PSA") tool, together with an individualized assessment of each arrestee.  The PSA tool's recommendation and related information are presented to a judge or commissioner who then makes a decision regarding release and whether to impose any conditions of release.  Mr. Alsdorf will testify that the PSA tool is not only less restrictive than the Bail Schedule, but is also more effective at predicting failure to appear and protecting public safety, because it provides an individualized assessment of each detainee, and is not based solely on an arrestee's ability to pay bail.  In fact, Mr. Clayton, Ms. Mitchell, various bail bond agency representative and other witnesses will testify that in California, if an arrestee is released on bail and commits a separate crime while on bail, the original bond is exonerated, and therefore money bail does little to protect public safety.  Testimony from Professor Weisberg and Mr. Klement will establish the workability and effectiveness of alternatives to the Bail Schedule in San Francisco City and County, including the PSA tool. Mr. Herceg and Professor Weisberg will also provide testimony that such tools have already been successfully implemented in other jurisdictions.

//

//

1

### 4.   <u>Plaintiffs' Response to CBAA</u>

2       CBAA has inserted *10 full pages* into this Statement, detailing all of the legal challenges

3 and issues it has with Plaintiffs' case.  This is inappropriate.  Plaintiffs briefly respond as follows.

4       **First**, the voluminous inserts on inapposite and inappropriate issues should be seen for

5 what they are:  CBAA apparently thumbing its nose at the Court's standing order which requires

6 the parties to lay out a summary of the evidence they will present at trial.  Plaintiffs did so, in full

7 compliance with the Court's order, so as to appropriately provide the Court with a roadmap of

8 what to expect, at a high level, during trial.  CBAA did not.  In fact, except for a reference to a

9 single witness they intend to call at trial—a proffered expert, Mr. Morris—the CBAA ignores this

10 requirement, instead preferring to obfuscate what the Court has asked for.  As a result of this failure

11 to comply, the Court should appropriately limit what CBAA can present at trial.

12      **Second**, the vast bulk of CBAA's many legal argument simply boil down to inappropriate

13 requests for the Court to reconsider several of its prior decisions.  In particular, CBAA argues that:

14

15  - Plaintiffs' claims are foreclosed by the Eighth Amendment.  CBAA previously
       argued this at ECF 131, 10-12; the Court considered and denied this argument at
16     ECF 191, 7-8.

17  - Plaintiffs' claims do not implicate a fundamental right under the Due Process
       Clause or the Equal Protection Clause.  CBAA previously argued this at ECF 131,
18     16-19; the Court considered and denied this argument at ECF 191, 8-17.

19  - Plaintiffs' claims do not implicate a suspect classification under the Equal
       Protection Clause.  CBAA previously argued this at ECF 131, 12-16, and the
20     Court considered it to be "irrelevant here."  ECF 191, 13 n.17.

21  - Rational basis review applies to Plaintiffs' claims and is met.  CBAA previously
22     argued this at ECF 131, 19-23; the Court considered and denied this argument at
       ECF 191, 8-17.

23

24 These backhanded requests for reconsideration are improper.  A party is prohibited from filing a

25 motion for reconsideration "without first obtaining leave of the Court to file the motion."  Civ.

26 L.R. 7-9(1); *see also Waypoint Homes, Inc. v. Fagorala*, No. 12-CV-05282-YGR, 2012 WL

27 6131080, at *1 (N.D. Cal. Dec. 10, 2012) (Gonzalez Rogers, J.) (denying motion for

28 reconsideration when leave was not sought).  Moreover, CBAA cannot offer any legitimate

8

grounds for *why* this Court should reconsider any of its carefully thought-out decisions in this case. Half of the time, CBAA simply presents the argument as if the Court is seeing it for the first time. And the only argument it even potentially has for reconsideration—that a *motions panel* in the 5th Circuit recently issued a ruling regarding a stay of a preliminary injunction order, which allegedly supports the arguments CBAA previously made to this Court and the Court rejected—is makeweight.  A motions panel decision from the 5th Circuit (not even a merits panel) is not anywhere close to new authority sufficient to have this Court revisit its prior decisions—let alone a motions panel decision that contradicts Supreme Court authority in several instances and fails to cite to any relevant authority for several other proclamations.  *O'Donell v. Harris Cnty., Texas et al.,* No. 18-20466 (5th Cir. Aug. 14, 2018).  Plaintiffs would be happy to address these errors in detail, should the Court allow CBAA to raise them and order briefing.

        **Third**, the two apparently new arguments CBAA raises below are improper and meritless. A Pretrial Conference Statement is not the place to bring threshold legal issues regarding the overall propriety of the claims in a case.  The time for that is long past.  As a result, CBAA's arguments that Plaintiffs' claim must be dismissed at the eve of trial because Plaintiffs allegedly "failed to join a necessary party" and must have instead brought their claims "as a petition for habeas corpus" should be rejected.  But it is also important to note that CBAA's decision to even raise these threshold issues with the Court is in violation of the strict conditions under which this Court allowed CBAA to intervene.  The Court expressly said that CBAA "may not expand the scope of this action or raise new issues" or raise motion to dismiss arguments.  Dkt 119 at 7. CBAA is acting in defiance of that order.[2]

---

[2] Again, Plaintiffs would be more than happy to address any such arguments, if the Court would like them to do so.  We simply note, for now, that CBAA's arguments are substantively meritless.  Plaintiffs' "joinder" argument fails because, among other things, complete relief is possible among existing parties and all absent parties' interests are adequately represented.  See Fed. R. Civ. P. 19; *Alto v. Black*, 738 F.3d 1111, 1126 (9th Cir. 2013); *see also Washington v. Daley*, 173 F.3d 1158, 1167 (9th Cir. 1999) (""As a practical matter, an absent party's ability to protect its interest will not be impaired by its absence from the suit where its interest will be adequately represented by existing parties to the suit.")  In this respect, the Court will recall that CBAA filed its third motion to intervene, but it was taken off calendar after the Attorney General indicated she would also seek to intervene. (Dkt. No. 106.)  Ultimately, however, the Attorney General decided not to intervene. (Dkt. No. 109.)  And Plaintiffs' "habeas" argument fails because Plaintiffs do not challenge the validity of their confinement, but rather the state

LATHAM&WATKINS
ATTORNEYS AT LAW
SAN FRANCISCO

1    Intervenor CBAA's Position

2          CBAA has reviewed Plaintiffs' responses to CBAA's input, and has chosen not to engage

3    in a point-for-point colloquy on non-merits issues. CBAA attempts to present the issues in a fair

4    and comprehensive way for the Court's consideration in ruling on a very important constitutional

5    matter, and CBAA believes it has done so below.

6          **1.      Substance of Claims and Defenses To Be Decided**

7          In many jurisdictions in California, arrestees have only a single way to obtain pre-

8    arraignment release – posting bail according to the county's bail schedule. In progressive San

9    Francisco, however, arrestees have two avenues for pre-arraignment release: (1) release through

10   the OR Project following evaluation by a Public Safety Assessment (PSA) tool[3] and individualized

11   consideration by a duty judge, and (2) release on secured money bail per the Bail Schedule. These

12   two options are not mutually exclusive, and an arrestee may qualify for release under either or

13   both.

14         Plaintiffs ask the Court to declare unconstitutional the second of the two options: release

15   on secured money bail pursuant to the Bail Schedule. That would leave only the single option that

16   is already offered to class members – release through the OR Project using the PSA. CBAA

17   submits that limiting the options available for class members cannot possibly be "less restrictive."

18         Because the constitutionality of secured money bail in pretrial release processes is an

19   evolving area of law, there are already splits of authority regarding the applicable legal standards.

20   Indeed, just three days ago, the Fifth Circuit issued a stay order in *ODonnell v. Harris County,*

21   which adopted many of the legal positions CBAA asserts here. *See ODonnell v. Harris Cnty.,*

22   *Texas et al.,* No. 18-20466 (5th Cir. Aug. 14, 2018) (*"ODonnell II"*). To preserve its rights, and

23   with due respect to the Court's prior rulings, CBAA respectfully submits the following defenses,

24   including threshold defenses that, in CBAA's view, require dismissal of Plaintiffs' claims (see

25

26   statute that established the process by which the Sheriff detained them. When the § 1983 claim "does not
     necessarily imply the invalidity of their continuing confinement, [plaintiffs are] not required to bring a
27   habeas corpus petition." *Bogovich v. Sandoval*, 189 F.3d 999, 1004 (9th Cir. 1999).

28   [3] The details of San Francisco's implementation of the PSA is described in the Joint Stipulation of Facts.
     *See* Dkt. 133-1, ¶¶ 20-27.

1    sections 2(a)-(f), below), as well as defenses that speak directly to the case posture addressed in

2    this Court's Order Denying Motions for Summary Judgment (Dkt. 191) (see section 2(h), below).

3                              **2.       Statements of Defenses and Elements of Proof**

4                              *a.   Plaintiffs have failed to join necessary parties.*

5            Plaintiffs have at various times made claims against state actors responsible for the

6    implementation of the bail schedule as the means to address the compelling state interests in

7    securing attendance at trial and public safety. In addition to the Sheriff, Plaintiffs named the State

8    of California (Dkt. No. 1), the City and County of San Francisco (*id.*), and the Attorney General

9    (Dkt. No. 71) as defendants. That makes sense – a challenge to state law should be addressed to

10   the state actors with the incentive and obligation to defend the law. However, Plaintiffs' pleadings

11   and allegations were so garbled and uncertain that the State of California and the Attorney General

12   were dismissed, leaving only the Sheriff, who has no policy-making authority over the bail

13   schedule law being challenged, Penal Code §1269b.

14           Plaintiffs' case challenges the constitutional right of all Californians to release on bail by

15   sufficient sureties. Cal. Const., art. I, § 12. *Reem v. Hennessy*, No. 17-CV-06628-CRB, 2017 WL

16   6539760, at *3 (N.D. Cal. Dec. 21, 2017) ("the California Constitution guarantees bail") (emphasis

17   in original). The necessary party rules of Fed. R. Civ. P. Rule 19 do not permit a constitutional

18   challenger to simply select a disinterested local official with no "dog in the fight" as a defendant.

19   *See e.g., ODonnell v. Harris Cnty.*, 892 F.3d 147, 156 (5th Cir. 2018) (naming judges who set bail

20   policy but dismissing Sheriff who "does not have the same policymaking authority as the County

21   Judges."); *Walker v. City of Calhoun*, 682 Fed. Appx. 721 (11th Cir. 2017) (naming as defendant

22   the city that set bail schedule); *Welchen v. Cty. of Sacramento & Kamala Harris*, No.

23   2:16CV00185, 2016 WL 5930563, at *1 (E.D. Cal. Oct. 11, 2016) (naming state attorney general);

24   *Pugh v. Rainwater*, 572 F.2d 1053, 1055 n.1 (5th Cir. 1978) (Naming judges and state attorney).

25   The idea that a plaintiff can seek a declaration that a state statute is unconstitutional simply by

26   suing a compliant or even complicit local official is absurd, and barred by Rule 19.

27           This Court dismissed the Attorney General with leave to amend. Plaintiffs chose not to

28   amend. That leaves this Court without all of the necessary parties to afford the relief requested,

and thus runs afoul of Rule 19.  Proceeding ahead in view of Plaintiffs' self-inflicted Rule 19 defect is a waste of this Court's time, as the issue can be raised any time, even *sua sponte* on appeal.  *CP Nat. Corp. v. Bonneville Power Admin.*, 928 F.2d 905, 911 (9th Cir. 1991) ("The absence of 'necessary' parties may be raised by reviewing courts *sua sponte*.")

### b. Plaintiffs' claims are foreclosed under Preiser v. Rodriguez.

The Supreme Court has held in *Preiser v. Rodriguez*, 411 U.S. 475 (1973), that "…when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Id.* at 500. *Preiser* (prohibiting section 1983 lawsuit seeking release of individuals held by the State). *Preiser* forecloses and requires dismissal of Plaintiffs' Fourteenth Amendment claims, to the extent Plaintiffs are a) complaining that the "OR process" they submit as a proposed plausible alternative to the Bail Schedule "*generally takes longer* and often imposes more release conditions and supervision on an indigent arrestee than does release on bail" (section A(2), *supra*) (emphasis added), and/or b) seeking release of individuals from imprisonment (*see, e.g.,* Dkt. 136, pp. 21, 25, 29 (request for injunction "ordering Defendants…to adopt a policy of *immediately releasing* all individuals accused of non-violent felonies and misdemeanors with appropriate non-monetary conditions") (emphasis added); Dkt. 71 (Third Amended Complaint, "3AC"), ¶4 (seeking "injunctive relief *preventing future wealth-based detention* of all Class Members") (emphasis added).

### c. Plaintiffs' claims are foreclosed by the Eighth Amendment.

Plaintiffs allege that they are detained "solely because they cannot afford to pay money bail fixed in the Bail Schedule…" (section I(A), *supra*). Plaintiffs further state that they intend to "show that the bail amounts in the Bail Schedule in San Francisco are far higher in comparison to other counties in California, and are unaffordable to many arrestees," and they repeatedly refer to Ms. Mitchell's anticipated testimony that the Bail Schedule "is too high and unaffordable." *Id.* In other words, the amounts set by the San Francisco Bail Schedule are excessive. The Eighth Amendment specifically prohibits "[e]xcessive bail," and when a plaintiff's claim falls within a specific "source [ ] of constitutional protection against … governmental conduct," the "claim must

12

1    then be judged by reference to the specific constitutional standard which governs that right, rather

2    than to some generalized … standard" fashioned from the Fourteenth Amendment. *Graham v.*

3    *Connor*, 490 U.S. 386, 394 (1989).

4            The relief sought by Plaintiffs is not warranted under the Eighth Amendment, as the "right

5    to release before trial is conditioned upon the accused's giving adequate assurance that he will

6    stand trial and submit to sentence if found guilty," and the use of a bail schedule and secured

7    money bail for this purpose has been approved. *Stack v. Boyle,* 342 U.S. 1 (1951); *see also Fields*

8    *v. Henry Cnty.,* 701 F.3d 180, 184 (6th Cir. 2012) ("[t]here is nothing inherently wrong with bond

9    schedules."). California's "comprehensive statutory scheme" regulating bail determinations has

10   been upheld by the Ninth Circuit against an as-applied challenge under the Excessive Bail Clause.

11   *See Galen v. County of Los Angeles,* 477 F.3d 652 (9th Cir. 2007).

12           *d.   Plaintiffs' claims do not implicate a fundamental right under the Due Process*

13                *Clause or the Equal Protection Clause.*

14           Earlier this week, the Fifth Circuit granted the motion of fourteen Harris County judges to

15   stay pending appeal the district court's revised injunction concerning pretrial release practices in

16   Harris County. *See ODonnell v. Harris Cnty., Texas et al.,* No. 18-20466 (5th Cir. Aug. 14, 2018)

17   (*"ODonnell II"*). Quoting from the panel's earlier opinion in the same matter (*"ODonnell I"*),[4] the

18   Fifth Circuit found that "the expansive injunction entered on remand repeats the mistake of the

19   original injunction. It 'amounts to the outright elimination of secured bail for indigent

20   misdemeanor arrestees.' But there is 'no such…fundamental substantive due process right to be

21   free from any form of wealth-based detention.'" *ODonnell I,* p. 14, *citing ODonnell II,* 892 F.3d

22   at 163. *ODonnell II* considered, *inter alia,* Section 7 in the revised injunction, which required

23   Harris County to release all misdemeanor arrestees showing inability to pay if they would have

24   been released had they posted bond, and within the same time frame of release as an arrestee who

25   posted bond. *ODonnell II* held that the release under Section 7 "is subject only to rational basis

26   review because it is premised solely on inability to afford bail, as distinguished from inability to

27

28   _____

     [4] *ODonnell v. Harris Cty.,* 892 F.3d 147, 152-155 (5th Cir. 2018) (opinion on petition for re-hearing)
     (*"O'Donnell I"*).

1    afford bail *plus* the absence of meaningful consideration of other possible alternatives." *ODonnell*

2    *II,* pp. 10-11.

3            The Fifth Circuit explained that, as the *ODonnell I* panel had previously clarified, "under

4    both the Due Process and Equal Protection clauses, the precise 'constitutional defect in the process

5    afforded was the *automatic* imposition of pretrial detention on indigent misdemeanor arrestees,"

6    when "coupled with the lack of meaningful considerations of alternatives." *ODonnell II,* pp. 6, 12.

7    The Fifth Circuit contrasted that scenario with "the alternative [of] the 48-hour detention and

8    hearing," concluding that "[m]isdemeanor arrestees awaiting their individualized bail hearing do

9    not face the same dire prospects of 'bear[ing] the brunt' of a lengthy pretrial incarceration caused

10   by an unconstitutional bail system, and holding that the "individualized hearings" imposed by the

11   district court as modeled on *ODonnell I's* suggestions were "sufficient to cure the automatic

12   imposition of bail," even when those hearings do not take place until 48 hours after arrest.

13   *ODonnell II,* pp. 7, 13, *citing ODonnell I* at 164-166 ("[t]he 48-hour requirement is intended to

14   address the endemic problem of misdemeanor arrestees being detained *until case disposition* and

15   pleading guilty to secure faster release from pretrial detention" (emphasis added)).[5] *ODonnell II*

16   further found "[t]hat some arrestees would continue to afford and pay bail while others would avail

17   themselves of the new hearing within 48 hours is an inherent part of this calculus." *Id.* at p. 12.

18           In other words, *ODonnell II* upheld the prior panel's finding that "the 48-hour limit [was]

19   sufficient to protect indigent arrestees from being detained too long pending their hearings."

20   *ODonnell II,* p.7, *citing ODonnell I* at 165. The Fifth Circuit found that Section 7 of the district

21   court's revised injunction violated the "explicit mandate [of the *ODonnell I* panel] not to eliminate

22   secured bail," and that "[s]ome wealth-based detention is permissible and was contemplated by

23   the panel." *ODonnell II,* p. 8, citing *ODonnell I* at 163.

24           The Fifth Circuit's recent decision aligns with arguments previously made by CBAA (*see,*

25   *e.g.,* Dkt. 132), that under *Gerstein v. Pugh,* 420 U.S. 103 (1975) and *Cnty. of Riverside v.*

---

[5] CBAA raises a similar argument regarding the inapplicability of evidence concerning "lengthy pretrial incarceration" in the pre-arraignment context, *see* Motion *in Limine* No. 1 to exclude evidence and argument concerning negative outcomes allegedly resulting from prolonged pretrial detention.

LATHAM&WATKINS™
ATTORNEYS AT LAW
SAN FRANCISCO

JOINT PRETRIAL CONFERENCE STATEMENT
CASE NO. 4:15-CV-04959-YGR

*McLaughlin*, 500 U.S. 44, 52 (1991), the Constitution permits a reasonable postponement of an individualized bail hearing for up to 48 hours while the government copes with the "everyday problems of processing suspects through an overly burdened criminal justice system." *McLaughlin* at 55; *see also O'Donnell I* at p. 166 (crafting model injunction to "enforce[e] federal standards indicating that 48 hours is a reasonable timeframe for completing the administrative incidents to arrest."); Stipulated Facts (Dkt. 133-1), ¶¶ 19-26, 28-38 (discussing steps to be taken by the Sheriff and/or SPFPD upon arrest, during booking, and prior to pre-arrangement release, including to ascertain and/or gather the arrestee's fingerprints, individual history, criminal history, criminal history printout, police report, cover sheet, release recommendations, etc.). The brief period of pre-arrangement detention does not implicate a fundamental substantive due process right.

As in *ODonnell,* the issue in this case is not the automatic imposition of lengthy pretrial detention on indigent misdemeanor arrestees without meaningful considerations of alternatives prior to trial. Rather, *all* San Francisco County arrestees receive an individualized *Humphrey* hearing at arraignment, which ensures that any Fourteenth Amendment concerns regarding financial ability to pay or less restrictive conditions will be fully addressed within the constitutionally-permissible period established in *ODonnell I* and *II*. *See In re Humphrey,* 19 Cal. App. 5th 1006 (2018). In addition, arrestees have the option of obtaining pre-arrangement release on lowered bail or own recognizance, pursuant to an individualized consideration by a duty judge, so long as they were not arrested for a Penal Code §1270.1 crime. *See* Penal Code §1269c. These are "meaningful alternatives." As such, and under *ODonnell I* and *II,* Plaintiffs' Fourteenth Amendment claims concerning their pre-arrangement detention do not implicate a fundamental right under the Due Process or Equal Protection clauses, and thus the claims are subject to rational basis review.

> e. *Plaintiffs' claims do not implicate a suspect classification under the Equal Protection Clause.*

In *ODonnell II,* the Fifth Circuit held that so long as the requirement of a hearing within 48 hours is in place, "the only remaining contention about the 48-window concerns the inability to afford bail. And that is an equal protection claim consistently rejected on rational-basis review."

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*ODonnell II,* p. 12. Here, Plaintiffs cannot and do not argue that they are deprived of an individualized *Humphrey* hearing at arraignment. Their sole remaining contention – that "some arrestees would continue to afford and pay bail" while others must wait 48 hours (*id.*) – is a wealth-based classification that is subject to rational basis review, and fails on that standard, as discussed below. *See also Reem v. Hennessy,* 2017 WL 6539760 (NDCA Dec. 2017) (wealth-based classifications are reviewed under a rational basis standard).

> f.   *Rational basis review applies to Plaintiffs' claims, and is met.*

Rational basis review requires a court to uphold a legislative classification so long as it bears a rational relation to *some* legitimate end. *See, e.g.*, *Romer*, 517 U.S. at 633; *Golinski*, 824 F. Supp. 2d at 995; *Heller*, 509 U.S. at 319-320. The Sheriff's use of the Bail Schedule to detain Plaintiffs in the first 48 hours before an individualized *Humphrey* hearing survives rational basis review. *See, e.g., ODonnell II* at 12 (distinguishing the discrete issue of the inability to afford bail during the first 48 hours with the separate issue of "inability to afford bail…coupled with the lack of meaningful considerations of alternatives" for pretrial release addressed in *ODonnell I,* which applied intermediate scrutiny); *Welchen*, No. 2:16-cv-00185-TLN-KJN, 2016 WL 5930563 at *11 (rational basis review satisfied on plaintiff's Equal Protection claim challenging detention pursuant to Cal. Penal Code §1269b); *Pugh v. Rainwater*, 572 F.2d at 1057 ("[u]tilization of a master bond schedule provides speedy and convenient release for those who have no difficulty in meeting its requirements."); *McGinnis v. Royster,* 410 U.S. 263 (1973) (upheld New York statute allowing those who post bail to be eligible for release earlier than those who could not, applying rational basis); *Schlib v. Kuebel,* 404 US 357 (1971) (upholding 1% fee charged when arrestee procured a commercial bail bond but no fee when full amount of bail was deposited by cash, under rational basis review). Rational basis review is met, requiring dismissal of Plaintiffs' claims.

> g.   *CBAA's Defenses arising from Summary Judgment Order (Dkt. 191)*

The Court has held that Plaintiffs have a fundamental right to liberty under the Fourteenth Amendment, and has framed the legal issues as follows: (i) whether the Sheriff, through use of the Bail Schedule, has significantly deprived plaintiffs of their fundamental right to liberty, and, if so, (ii) whether, under the strict scrutiny standard of review, the Sheriff's use of the Bail Schedule is

16

1   the least restrictive alternative for achieving the government's compelling interests." Dkt. 191, p.

2   17. The Court only reaches the second discrete analysis (strict scrutiny review) if it finds the first

3   ("significant deprivation") to be answered in the affirmative. CBAA discusses these analyses in

4   turn.

5        *i.   Plaintiffs suffer no "significant deprivation" of their fundamental right to*

6             *liberty, so rational basis review applies to the Fourteenth Amendment*

7             *claims.*

8        In deciding the cross-summary judgment motions, the Court stated: "[i]n light of the factual

9   dispute as to the meaning of the data, the Court cannot say, as a matter of law, that the Sheriff

10  significantly infringed on plaintiffs' fundamental right to liberty by 'detain[ing] [them] longer'

11  (Plaintiff's Motion at 10), let alone that the Sheriff has done so by sole reason of their indigence.

12  Given that even those who pay the set bail amount are detained for some measure of time, the

13  Court cannot find that any amount of detention *per se* is unconstitutional. Plaintiffs' motion thus

14  fails. Accordingly, the evidence at trial must ultimately show the full context of the detentions at

15  issue." Dkt. 191, p. 18.

16       The evidence at trial will show the full context of the detentions at issue – specifically, that

17  the average time to release on surety bond is 12.6 hours, about 12.8 to 15 hours less than those

18  who obtain release through the OR Project.[6] The disparity between the length of detention for those

19  who bail out as compared to Penal Code §1270.1 arrestees would necessarily be greater, as §1270.1

20  arrestees are not eligible for pre-arraignment OR Project release and must await their

21  individualized hearing at arraignment. *See* Penal Code §§ 1295c, 1270.1.

22       Nevertheless, as recently held in *ODonnell II,* so long as the indigent detainee receives an

23  individualized hearing within 48 hours, any disparity in length of detention does not constitute a

24  significant deprivation of liberty. *Id.* at 7 (upholding *ODonnell I*'s finding that "the 48-hour limit

25  [was] sufficient to protect indigent arrestees from being detained too long pending their

26

27  ───────────────

28  [6] This evidence is based on raw data regarding the duration of detention for defendants booked into the
    San Francisco jail in 2016 (SHF00235), as analyzed transparently by CBAA's expert.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    hearings."). The Court must therefore evaluate Plaintiffs' Fourteenth Amendment claims under

2    rational basis review, and as discussed above, the claims fail under that standard.

3                  *ii. The Sheriff's use of the Bail Schedule survives strict scrutiny review.*

4        Should the Court find a "significant deprivation" of Plaintiffs' fundamental liberty interest

5    and apply a strict scrutiny analysis, Plaintiffs bear the "initial burden as to the existence of a less

6    restrictive alternative to achieve the government's interests as compared to the Sheriff's use of the

7    Bail Schedule." Dkt. 191, p. 18. As the Court has held, Plaintiffs must "make a showing of a

8    '*plausible,* less restrictive alternative[]," *Ashcroft v. ACLU,* 542 U.S. 656, 666 (2004)(emphasis

9    supplied). The proposed alternative need not be '*more* effective,' *id.* at 669 (emphasis supplied) –

10    plaintiffs must show only that it would be '*at least as effective,*' *Reno v. ACLU,* 521 U.S. 844, 874

11    (1997)(emphasis supplied)." Dkt. 191, p 19.

12             *1. Plaintiffs cannot meet their initial burden to show a Plausible, As*

13                 *Effective, Less Restrictive ("PAL") alternative(s).*

14        Plaintiffs' three proposed alternatives (Dkt. 221) involve elimination of the Bail Schedule,

15    and replacement with either (1) the PSA that is already in use in San Francisco; (2) the interview

16    process that was used prior to the PSA and that the PSA was intended to replace; or (3) a

17    combination of (1) and (2).

18        Elimination of the bail schedule would eliminate the *only* option for pre-arrangment

19    release that is available to those class members who are arrested for a crime listed in Penal Code

20    §1270.1, because they are ineligible for pre-arrangment "own recognizance" release pursuant to

21    other, unchallenged Penal Code provisions. *See* Stipulated Facts (Dkt. 133-1), ¶¶ 40-41. It is

22    axiomatic that eliminating the sole avenue for release for some class members is not "less

23    restrictive."

24        The non-§1270.1, "OR-eligible" arrestees presently have two options to obtain pre-

25    arrangment release: post secured money bail pursuant to the Bail Schedule, or work with OR

26    Project staff to seek an individualized consideration by a duty judge and OR release or reduced

27

28

money bail prior to arraignment.[7] Plaintiffs' proposed alternatives would eliminate the bail option for OR-eligible class members. The evidence will show that a significant percentage of OR-eligible arrestees whose PSA score does not recommend pre-arraignment release, obtain such release through the Bail Schedule.  Eliminating the bail option for these class members would mean they stay in custody, which is not "less restrictive."

Moreover, the reliance on predictive "risk assessment" tools as proposed by Plaintiffs is considered by many (including the NAACP, American Civil Liberties Union, and San Francisco Public Defender Jeff Adachi), to implicate grave civil rights concerns, and potentially exacerbate unwarranted racial disparities in the administration of criminal law. In other words, Plaintiffs propose that this Court find that the PSA – an un-validated, non-transparent, potentially racist algorithm – should eliminate the race-neutral bail option.

In deciding the summary judgment motions, the Court held that "plaintiffs and CBAA agree that at a minimum the County has a compelling interest in ensuring that arrestees appear for trial." Dkt. 191, p. 20. However, the Court expressed concern over the lack of San Francisco-specific data. *Id.* at 19, n. 28.

Thankfully, during the second round of discovery in this case, the Sheriff was able to gather raw data reflecting unique bookings in San Francisco County, including information about failures to appear for different release types. *See* SHF001179. CBAA's expert, Dr. Robert Morris, analyzed the data and found that when comparing similarly-situated San Francisco arrestees, those released on surety bond fail to appear (FTA) at a significantly lower rate than those released on OR. *See* Morris Report, pp. 7-9. Plaintiffs' two rebuttal experts, Mr. Jones and Ms. Brooker, intentionally ignored and did not address Mr. Morris' statistical analysis (which is the subject of the CBAA's *Daubert* motions, filed separately).

Mr. Morris' conclusion regarding comparative FTA rates among OR release and secured money bail release was supported by his findings from a statistical analysis of different and

---

[7] In fact, there is a third option for "OR-eligible" class members for OR release pursuant to Penal Code § 1269c.  However, according to SF Probation, there has been little demand for §1269c applications due to the implementation of the PSA.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

JOINT PRETRIAL CONFERENCE STATEMENT
CASE NO. 4:15-CV-04959-YGR

1  independent data – namely, bond forfeiture data gathered by numerous surety insurers operating

2  in San Francisco County and California more broadly. And even consultants engaged by the Laura

3  and John Arnold Foundation – the creators of the PSA risk assessment tool used in San Francisco

4  – concluded that 28% of San Francisco arrestees released to the OR Project's supervision

5  following a PSA assessment and judicial decision of release were "terminated due to failure to

6  appear." *See* Dkt. 144-6 ("Public Safety Assessment Implementation in San Francisco,

7  *Preliminary Data from the First Six Months, January 2017*), p.23.[8] In other words, release through

8  the Bail Schedule works, and it works better than the proposed alternatives.

9  *2.   CBAA can meet its burden to show that the proposed alternative(s)*

10  *is less effective or more restrictive.*

11  Due to Plaintiffs' anticipated failure to meet their initial burden under strict scrutiny

12  review, the burden will never shift to CBAA to "show that plaintiffs' proposed alternative would

13  be less effective at serving the government's compelling interest(s) and/or more restrictive." Dkt.

14  191, p. 20. However, for the reasons discussed above, the evidence at trial will show that the

15  proposed alternatives are both more restrictive and less effective than the *status quo,* e.g. the

16  Sheriff's use of the Bail Schedule as to class members.

17  <u>Sheriff's Position</u>:

18  In the afternoon on which this document was due, Plaintiffs circulated the new three-page

19  "Introduction and Procedural Overview" that appears above.  Because this Court has presided over

20  the action from the start, we do not think it necessary to elaborate on how Plaintiffs' account deeply

21  distorts the history of this case and the positions the Sheriff has taken in it.  The accusations that

22  "Defendants repeatedly ignore or outright defy this Court's orders and guidelines" are unfounded

23  and inappropriate.  Plaintiffs also write that they circulated a "7-page draft" of the Pretrial

24  Conference Statement and then lay blame with the Defendants for causing it to "balloon."  The

25  reality is that Plaintiffs' 7-page "shell"—the word they used at the time—left blanks for everyone

26

27  _____

28  [8] CBAA will also present data from Harris County, demonstrating that after the *ODonnell* court enjoined the use of the bail schedule there, FTA rates skyrocketed, with 49.3% of those released on unsecured monetary bonds (e.g. promises to pay) forfeiting said bonds.

20

1   to fill in their position, including Plaintiffs' ***own*** positions with respect to points of law and fact.

2   Then, there was more Plaintiffs decided they needed to say even before responding to anything

3   else the other parties had written.  We do not want to be petty, but the last-hour addition of

4   Plaintiffs' misleading introduction, which seems intended to diminish opposing counsel in the eyes

5   of the Court while giving them little time to respond, is an affront.[9]

6          This case had a rocky start (the complaint went through four iterations, and not because

7   Defendants' motions lacked merit, as Plaintiffs now imagine), and also a rocky middle (both

8   Plaintiffs' and CBAA's motions for summary judgment were denied).  The Sheriff hopes for a

9   better end.  But the Court has repeatedly expressed frustration with Plaintiffs' unclear and shifting

10  legal theories, and their inscrutable requests for relief.  The persistence of those problems is the

11  only reason the Sheriff has anything at all to say in this document.

12         Plaintiffs lost their effort to assert a "policy and practice" claim almost two years ago, when

13  the Court ruled that they had properly alleged only a facial challenge to the constitutionality of

14  California law, and that the Sheriff is the defendant simply because she is the state official charged

15  with enforcing it.  *See* ECF No. 99.  Five days ago Plaintiffs disclosed for the first time that they

16  intended to introduce evidence of unalleged practices by unspecified criminal justice agencies or

17  the Superior Court.  Plaintiffs argue that they are doing only what this Court told them to in the

18  sentences of the summary judgment order quoted above.  We respectfully disagree. *See* ECF No.

19  191 at 9 & n.5.

20

---

21  [9] At 8:30 p.m. on the day this filing was due, Plaintiffs added additional sentences accusing the Sheriff of
    deciding "to not provide a single word of her inserts to this document until Thursday August 16, 2018 at
22  noon, the day before it is due—with no indication to Plaintiffs that she would be writing significant legal
    inserts into a pretrial conference statement."  This is a misrepresentation. On August 3, two weeks ago,
23  Plaintiffs emailed that they would circulate a "shell" of the Pretrial Conference Statement into which
    CBAA and the Sheriff should insert their contributions.  On August 4, the Sheriff's counsel suggested a
24  call to discuss the statement, and Plaintiffs did not respond.  We then spoke with Plaintiffs' counsel on
    August 7 about their interrogatory response concerning the relief they were seeking.  We explained our
25  disagreement with that relief and asked for the shell as soon as possible so we could respond to whatever
    request for relief Plaintiffs articulated there.  Plaintiffs indicated they would send the shell on Friday the
26  10th; they did not.  We emailed again on the morning Monday the 13th; Plaintiffs finally circulated the
    shell that evening, before the meet-and-confer scheduled for the next morning. At the meet-and-confer, the
27  Sheriff told Plaintiffs both that she would file a motion in limine concerning the newly disclosed evidence
    and also provide her insert for the shell responding to Plaintiffs' requested relief.  All parties, including
28  Plaintiffs, agreed at the meet-and-confer that they would provide their inserts at noon on Thursday, which
    is what the Sheriff did.

1      Plaintiffs also complain above that the Sheriff "seeks to avoid this Court ordering her to

2 affirmatively *do* anything at all."   When a plaintiff claims a constitutional injury caused by a state

3 official's enforcement of state law, then the remedy is to enjoin the state official from enforcing

4 that law.  This is not a controversial proposition.  Moreover, the fact that Plaintiffs themselves are

5 still unable to articulate what the Sheriff should be ordered to do differently illustrates that the

6 requested relief is not within the scope of the claim asserted.

7      **B.**    **Relief Prayed**

8 <u>Plaintiffs' Position</u>

9      Plaintiffs seek an order from the Court:

10        1.  Declaring the Sheriff's use of the San Francisco Felony-Misdemeanor Bail

11            Schedule unconstitutional and enjoining the Sheriff from using any form of the

12            Bail Schedule against any member of the class;

13        2.  Prohibiting the Sheriff from detaining any new arrestee in violation of the U.S.

14            Constitution, consistent with the Court's rulings in this case;

15        3.  Staying the effective date of the order for 90 days; and

16        4.  Requiring the Sheriff to submit to the Court within 60 days a plan for

17            implementing the Court's order.  That plan should consider the evidence

18            presented at trial regarding all possible appropriate release options and include a

19            description of any changes the Sheriff intends to make regarding the notice new

20            arrestees will receive regarding release options.

21      Contrary to CBAA's arguments, this relief is straightforward and squarely supported by

22 law.  CBAA cannot cite to a single case for its assertion that the relief sought in (4) is "both illogical

23 and wholly unsupported by Fourteenth Amendment jurisprudence."  That is because the assertion

24 is squarely wrong; Plaintiffs discuss this, with relevant authority, in Section III below, as that is

25 where the Sheriff raised this issue at length.

26      With respect to the Sheriff's arguments here, Plaintiffs are surprised that a government

27 actor defendant in this action—who has been enforcing, in her own words, a "two-tiered system

28 of pretrial justice" that "unfairly discriminates against the poor," and results in an "all-purpose

1    denial of liberty for the indigent"—would in essence tell a federal court that if the Court *in fact*

2    finds the law unconstitutional, the Sheriff will simply lock up more people, and this Court can do

3    *nothing* to order any other relief.  The Sheriff is wrong: she is not above this Court.  As the Sheriff

4    simply makes assertions and states conclusions in this section, we address her arguments in great

5    detail in Section III.

6    <u>Intervenor CBAA's Position</u>

7        CBAA submits that the relief should conform to that requested in Plaintiffs' operative

8    Third Amended Complaint (Dkt. 71) and to the case posture as articulated by the Court in Docket

9    191. The relief set forth by Plaintiffs in this Joint Pretrial Conference Statement strays from those

10   pleadings and introduces ambiguity into the case. With respect to Plaintiffs' relief #4, above, it

11   appears that the Sheriff is being asked to devise a "plausible proposed alternative" after the Court

12   has found a constitutional violation. But this gets the inquiry backward with respect to both timing

13   and burden: it is Plaintiffs' burden to first provide "competent evidence that the proffered

14   alternative systems could be administered feasibly in the specific context of the County" (Dkt.

15   191, p. 19), which the Court must then evaluate in determining whether the alternative is

16   sufficiently less restrictive and as effective to warrant a judicial declaration that the challenged

17   practice is unconstitutional. Plaintiffs' suggestion that the Court should put the burden on the

18   *Sheriff* to decide what to do, *after* the Court has eliminated the Bail Schedule (based on unknown

19   factual findings), is both illogical and wholly unsupported by Fourteenth Amendment

20   jurisprudence. The nature of Plaintiffs' relief as set forth in this Statement touches on the same

21   concerns as CBAA raises in its Motion *in limine* No. 2, seeking exclusion of any undisclosed

22   "plausible alternatives."

23       CBAA further submits that Plaintiffs' relief is problematic to the extent that it would

24   amount to an injunction against the use of the Bail Schedule for all persons arrested in San

25   Francisco County (and not just class members who claim inability to avail themselves of secured

26   money bail in the first place), because such an injunction would amount to a deprivation for non-

27   class members of the right to "bail by sufficient sureties," as codified in the California Constitution,

28   Art. I §12.

23

<u>Sheriff's Position</u>

The Sheriff agrees that Plaintiffs' claims, if proved, would enable this Court to declare Penal Code § 1269b unconstitutional insofar as it ties pre-arraignment release to the bail schedule established by the Superior Court, *i.e.*, without individualized consideration of the appropriate terms of pre-trial release.  The Sheriff further agrees that the Court could accordingly enjoin her from using the San Francisco Superior Court's bail schedule to detain or release individuals in the San Francisco jail.  Because California law assigns the responsibility to set the terms of pretrial release to the court, not the Sheriff, and requires her to detain people booked into the jail until they satisfy any terms of release imposed by the court, ECF No. 99 at 10-15; ECF No. 55 at 9, the consequence of that injunction is that the Sheriff will: (1) detain individuals booked into the jail until the court sets the terms of pretrial release, whether before arraignment or at arraignment as authorized by California law; and (2) thereafter release or detain each individual in accordance with the terms the court has set.  This relief remedies the constitutional violation alleged in the Third Amended Complaint.  The Sheriff disagrees that Plaintiffs may seek the different or additional relief described above, and explains the basis for her disagreement in Section III below.

Plaintiffs' expression of "surprise" at the Sheriff's position—which we have been telling Plaintiffs for a long time—was a belated addition to this document, and it misunderstands the scope of the Sheriff's authority under California law.  She does not decide when people get "locked up" or when they get released.  Needless to say, the Sheriff's position does not mean that she is "above this Court."  The last-minute rhetorical barbs with which Plaintiffs have decided to pepper this document are not helpful.

II.     **THE FACTUAL BASIS OF THE ACTION**

A.     **Undisputed Facts**

The parties incorporate by reference all stipulated facts contained in the Joint Stipulation of Facts, Dkt. 136-1, without prejudice to the parties being able to discuss and utilize such facts as they see fit during trial.  The parties are continuing to meet and confer about whether they can

24

1    stipulate to additional undisputed facts, and will notify the Court of any such additional stipulations

2    during the course of other filings contemplated by the Court's scheduling and standing orders.

3           **B.    Disputed Factual Issues**

4    <u>Plaintiffs' Position</u>

5           Consistent with this Court's order on summary judgment, the bulk of the facts in

6    this case are undisputed or not subject to reasonable dispute.  The two key questions in this

7    case, as framed by the Court—"(i) whether the Sheriff, through use of the Bail Schedule,

8    has significantly deprived plaintiffs of their fundamental right to liberty, and, if so, (ii)

9    whether, under the strict scrutiny standard of review, the Sheriff's use of the Bail Schedule

10   is the least restrictive alternative for achieving the government's compelling interests"

11   (Dkt. 191 at 14, 17)—will primarily involve the *application* of undisputed facts.  That said,

12   below is a non-exclusive, and subject to change, list of some of the key factual issues that

13   the parties may dispute in some fashion at trial:

14   •   The extent of the deprivation of liberty caused by the Sheriff's use of the Bail

15       Schedule, as a general matter;

16   •   The extent of the deprivation of liberty caused by the Sheriff's use of the Bail

17       Schedule in cases involving charges subsequently dropped or reduced;

18   •   The practices and procedures, of bail bond agencies operating in San Francisco,

19       that serve to harm arrestees and/or third parties assisting arrestees in complying

20       with the Sheriff's use of the Bail Schedule;

21   •   Notice and information regarding the existence of the OR process;

22   •   The length of time and conditions of release relating to the OR process;

23   •   The efficacy, with respect to any legitimate government goals, of the Sheriff's use

24       of the Bail Schedule

25   •   The efficacy, with respect to any legitimate government goals, of computerized

26       risk-assessment processes, including but not limited to the PSA tool.

27   •   The efficacy, with respect to any legitimate government goals, of interview

28       processes

- The efficacy, with respect to any legitimate government goals, of hybrid computerized risk-assessment and interview processes;

- The potential and efficacy of various release conditions implemented as part of any computerized risk-assessment and interview processes;

- Other jurisdictions' use of alternatives to bail schedules;

Intervenor CBAA's Position

At this time, CBAA anticipates the following disputed factual issues at trial:

- Whether, and to what extent, the non-monetary pre-arraignment release alternatives currently offered to arrestees in San Francisco County are "slower than monetary release," as alleged;

- Whether, and to what extent "those who can afford bail procure release much faster than those who must wait for the OR Project," as alleged;

- Whether, and to what extent, pre-arraignment release through the OR Project achieves higher or lower failure to appear (FTA) rates as compared to pre-arraignment release on secured money bail in San Francisco County;

- Whether, and to what extent, pre-arraignment release on non-monetary conditions achieves higher or lower failure to appear (FTA) rates as compared to pre-arraignment release on secured money bail in other jurisdictions.

Sheriff's Position

The Sheriff has not been able to determine whether there are any factual claims she would dispute. When the parties met and conferred, the Sheriff asked Plaintiffs to provide more information about the unidentified evidence they claim will "show that new arrestees are often not informed that the process exists…." The parties have stipulated about what information is provided to arrestees and when. ECF No. 136-1 ¶¶ 7, 11, 23, 25, 28, 37, 43. The Sheriff may dispute evidence inconsistent with these stipulations, but Plaintiffs did not say whether they believe the evidence they intend to offer is inconsistent with these stipulations.

The Sheriff has offered to review any proposed factual stipulations between Plaintiffs and CBAA to confirm that they are accurate in her understanding as well. As she did in responding to the

26

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   cross-motions for summary judgment, she will endeavor to identify any errors in factual assertions

2   concerning matters in her knowledge, to the extent there is an opportunity to do so.

3       **C.     Agreed Statement**

4       The parties do not believe that the entirety of this action can be presented upon an agreed

5   statement of facts, but remain in discussions regarding whether some portion of the action, in

6   addition to the stipulated facts contained in the Joint Stipulation of Facts (Dkt. 136-1), may be so

7   presented.

8       **D.     Stipulations**

9       Apart from the Joint Stipulation of Facts (Dkt. 136-1) referenced above, there are no

10  additional such stipulations requested or proposed at this time.  The Parties have begun to meet

11  and confer regarding potential trial stipulations and have agreed to exchange initial proposals on

12  this topic on August 21, 2018.

13  **III.    DISPUTED LEGAL ISSUES**

14      **A.     Points of Law**

15  Plaintiffs' Position

16      In its January 16, 2018 order resolving Plaintiffs' and Defendant-Intervenor

17  CBAA's cross-motions for summary judgment (Dkt. No. 191) this Court resolved the legal

18  framework applicable to this case, and no party has challenged or asked for reconsideration

19  of those rulings before this Court.  As a result, and consistent with the law of this case,

20  Plaintiffs do not believe that there are any disputed points of law for resolution by the Court

21  at this time.  The only questions remaining involve the application of the constitutional

22  strict scrutiny legal framework to the challenged conduct in this case, which will involve

23  testimony and other evidence presented at trial.

24      Pursuant to the Court's April 20, 2018 Scheduling Order (Dkt. No . 229), Plaintiffs

25  will file their Proposed Findings of Fact and Conclusions of Law with this Court on August

26  24, 2018, and anticipate including therein a brief overview of the legal framework of this

27  case, pursuant to the Court's summary judgment order.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    With respect to the CBAA's positions below, Plaintiffs have addressed them in

2  Section I above.

3    With respect to the Sheriff's positions, Plaintiffs find it somewhat difficult to

4  respond.  As an initial matter, Plaintiffs do not understand how a defendant who has stated

5  that she will not defend this Action in any respect, and then refuses to abide by the Federal

6  Rules as a result (i.e., not providing Initial Disclosures), can now suddenly submit a 5-page

7  outline on what a federal court, should it find liability, can and cannot do by way of

8  ordering relief.  Moreover, Plaintiffs find it difficult to follow the Sheriff's arguments, as

9  they seem to be made in a legal outline format that appears to make various conclusory

10  leaps and raises straw-man arguments that do not follow Plaintiffs' requests for relief.

11    All this only underscores that a Pretrial Conference Statement is not the first time

12  that a party should raise in granular fashion, with the Court, detailed issues regarding the

13  relief being sought in a particular case.[10]  Should the Court deem it appropriate, Plaintiffs

14  would be pleased to respond to the Sheriffs arguments in detailed briefing, where Plaintiffs

15  and the Court can better understand what positions the Sheriff is actually taking.  For now,

16  Plaintiffs will respond at a high level as follows, to what appears to be the two principal

17  arguments the Sheriff is making.

18    The first of the Sheriff's  main arguments appears to be that this Court is prohibited

19  from issuing a ruling, as part of any relief in this case, that "prohibits the Sheriff from

20  detaining any new arrestee in violation of the U.S. Constitution, consistent with the Court's

21  rulings in this case."  The Sheriff is wrong.  This requested relief is aimed at ensuring the

22  Sheriff does not create an end-run around the Court's specific rulings regarding the Bail

23  Schedule.  Of course, the Court will decide at trial whether it wants to include additional

24  details in this catch-all protective ruling.  But there is no authority for the proposition that

---

[10] Indeed, the Sheriff propounded discovery on Plaintiffs on this issue months back, and—despite the questionable propriety of such discovery, given the Sheriff's refusal to litigate the case—Plaintiffs responded, providing the Sheriff with a detailed list of potential relief options they were considering, all of which follow from the issues in this action as articulated by the Court.  The Sheriff did not object to the Court, or raise it via motion or otherwise, at that time.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

JOINT PRETRIAL CONFERENCE STATEMENT
CASE NO. 4:15-CV-04959-YGR

1    a federal court cannot, as part of a trial ruling, order that a defendant comply with its rulings

2    and make sure that it includes language aimed at thwarting a clever defendant's ability to

3    circumvent the ruling.  This is straightforward, noncontroversial, and absolutely within the

4    general power of a federal court; the Sheriff's few cited cases here do not limit this Court's

5    power in that respect.

6         The second of the Sheriff's  main arguments appears to be that this Court is

7    prohibited from requiring the Sheriff "to submit to the Court within 60 days a plan for

8    implementing the Court's order" that "should consider the evidence presented at trial

9    regarding all possible appropriate release options and include a description of any changes

10   the Sheriff intends to make regarding the notice new arrestees will receive regarding release

11   options."  This, too, is just wrong.  Significantly, the Sheriff is unable to cite to a *single*

12   case that prohibits a federal court from requiring defendants to present plans for how they

13   will implement a Court's order.  There are many, many that expressly do.[11]

14   Intervenor CBAA's Position

15        CBAA's statement of its defenses and the anticipated disputed points of law

16   concerning liability and relief, including citations to supporting statutes and decisions, are

17   set forth in section I, above.  CBAA joins the Sheriff's surprise at Plaintiffs' recent

18   disclosure of their intent to pursue a new putative "policy and practice" claim, in violation

19   of this Court's orders establishing the scope of Plaintiffs' claim.

20

21

22

---

23   [11] *See, e.g., Armstrong v. Wilson*, 124 F.3d 1019, 1021 (9th Cir. 1997) (remedial order and injunction
     issued by district court "require[d] the defendants to submit detailed plans for complying with the ADA
24   and RA");  *El-Tabech v. Gunter*, 992 F.2d 183, 184 (8th Cir. 1993) ("[The district court] directed
     defendants to submit, within 90 days after entry of judgment, a remedial plan to correct the ongoing
25   constitutional deficiencies that it identified); *Handberry v. Thompson*, 92 F. Supp. 2d 244, 249 (S.D.N.Y.
     2000) ("The court also ordered City defendants to file a plan for providing full and complete educational
26   services for all eligible inmates of Rikers Island."; *United States v. Sharlands Terrace, LLC*, 2008 WL
     4547209, at *4 (D. Nev. Oct. 1, 2008) ("As a result of their liability under the FHA, the court orders D/C
27   Defendants to submit a detailed remedial plan with appropriate timetables identifying how they will
     timely eliminate the discriminatory condition"); *Lancaster v. Tilton*, No. C 79-01630 WHA, 2007 WL
28   1807825, at *1 (N.D. Cal. June 21, 2007) (ordering defendants to submit plan to cure violations of
     consent decree within 45 days).

1    Sheriff's Position

2        As to the relief sought by Plaintiffs, the Sheriff has set forth her view of the permissible

3    relief in Section I.B above.  To the extent Plaintiffs seek different or additional relief, the Sheriff

4    responds as follows:

5    1.  Plaintiffs may not ask for an order "prohibiting the Sheriff from detaining any new arrestee

6        in violation of the U.S. Constitution."

7            a.  Such an order is too vague to be enforceable.  *See Del Webb Communities, Inc. v.*

8                *Partington*, 652 F.3d 1145, 1149–50 (9th Cir. 2011) (holding injunction requiring

9                party to refrain from "illegal, unlicensed and false practices" was "too vague to be

10               enforceable" and failed to comply with Rule 65(d) of the Federal Rules of Civil

11               Procedure); *see also Hughey v. JMS Dev. Corp.,* 78 F.3d 1523, 1531 (11th Cir. 1996)

12               ("[A]ppellate courts will not countenance injunctions that merely require someone to

13               'obey the law.'").

14                    i.  After reading this response, Plaintiffs then modified their request for relief by

15                        adding the phrase, "consistent with the Court's rulings in this case."  We do

16                        not know what rulings Plaintiffs have in mind, or what they believe would be

17                        "consistent" with them.  The new phrase does not remedy the vagueness of the

18                        requested order.

19           b.   To the extent Plaintiffs intend to challenge or control conduct other than the

20               enforcement of California law that has been identified as the basis for the

21               constitutional violation in this case, they are impermissibly asking this Court to enter

22               an injunction beyond the scope of the claim.  *See Pac. Radiation Oncology, LLC v.*

23               *Queen's Med. Ctr.*, 810 F.3d 631, 633, 636 (9th Cir. 2015) ("When a plaintiff seeks

24               injunctive relief based on claims not pled in the complaint, the court does not have the

25               authority to issue an injunction.").

26           c.  During the meet-and-confer, Plaintiffs indicated that they believe the requested

27               injunction would enable them to challenge detentions resulting from certain pre-

28

1  arraignment judicial orders, but did not clearly articulate under what circumstances

2  they believe such a challenge would be permissible.

3      i.  Plaintiffs indicated that they would seek to prevent judicial officers from

4          making an "end run" around the bail schedule by setting bail in an amount the

5          person cannot afford, because it imposes the same constitutional injury the

6          bail schedule does.

7      ii. Recent habeas cases challenging individual orders setting bail hold that a

8          court must consider ability to pay, but may set bail in an amount the defendant

9          cannot afford if it determines that no lesser amount would ensure the

10         defendant's appearance at trial.  *See In re Humphrey*, 19 Cal.App.5th 1006,

11         1037 (2018), *review granted*, 417 P.3d 769 (Cal. 2018); *Coleman v. Hennessy*,

12         No. 17-CV-06503-EMC, 2018 WL 541091, at *1 (N.D. Cal. Jan. 5, 2018);

13         *Reem v. Hennessy*, No. 17-CV-06628-CRB, 2017 WL 6539760, at *5 (N.D.

14         Cal. Dec. 21, 2017).

15             1.  While the bail schedule by definition precludes individualized

16                 consideration of the defendant's circumstances, a judge setting bail for

17                 a particular defendant may have failed to consider relevant factors,

18                 may have considered improper factors, or may have considered all

19                 relevant and proper factors and determined that no lesser bail amount

20                 would suffice.

21     iii. Regardless, a challenge to individual judicial decisions is not part of this case

22          and is outside the class certified by this Court.  ECF No. 214, at 3 ("whose

23          terms of pretrial release have not received an individualized determination by

24          a judicial officer").

25             1.  There has been no showing that such a claim could be asserted on a

26                 class-wide basis; had it been asserted, it would have required

27                 allegations and evidence concerning the decision-making practices of

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

JOINT PRETRIAL CONFERENCE STATEMENT
CASE NO. 4:15-CV-04959-YGR

1      the judges and/or commissioners of the Superior Court, along with

2      relevant legal argument.

3         2.   Plaintiffs appear to envision filing what are essentially one or more

4            habeas corpus actions, but styling them as instances of the Sheriff's

5            putative failure to comply with an injunction against detaining people

6            unconstitutionally, entered in a case that never certified a class

7            consisting of individuals who have received an individualized

8            determination of the terms of pretrial release.

9         3.   Because judicial officers were not on notice that their individual

10           decisions were being challenged in this lawsuit, Plaintiffs cannot seek

11           to bind them after trial.

12        4.   In addition, while the Sheriff is nominally the defendant in an action

13           for habeas corpus, she would normally be represented in those cases

14           not by the City Attorney's Office, but by the District Attorney or the

15           Attorney General, who, as representatives of the People of the State of

16           California, decide whether and how to defend the state court's

17           decision.

18   d.   While Plaintiffs have told the Sheriff that they do *not* intend to challenge the statutory

19       exclusion of serious and violent felonies from consideration for pre-arraignment

20       release, they have declined to specify what conduct they believe would constitute a

21       violation of this order, such as, for example:

22        i.   the failure to notify arrestees about OR procedures;

23        ii.  the failure to present OR applications for eligible arrestees within a particular

24           timeframe; and

25        iii. the failure of the court to rule on OR applications within a particular

26           timeframe.

27   e.   These unanswered questions highlight the vagueness of the proposed order, but in any

28       event, Plaintiffs may not seek an injunction that purports to control such conduct

32

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    because that conduct was never alleged as the basis for Plaintiffs' constitutional

2    claim.

3        i.  The Sheriff is the defendant in this case only because and insofar as she

4            enforces the bail schedule, as she is required to do by state law.  ECF No. 99

5            at 10-15.

6       ii.  Plaintiffs' position has been that the bail schedule is facially

7            unconstitutional—and that the details of the OR Project are irrelevant—

8            because the bail schedule is the only method that offers immediate release.

9            ECF No. 71 ¶ 71; ECF No. 95 ¶¶ 1, 4; ECF No. 214 at 7-8.

10     iii.  Plaintiffs have never alleged any constitutional infirmity in pre-arraignment

11           detention practices in San Francisco independent of the bail schedule; to the

12           contrary one of their "plausible alternatives" is the removal of the bail

13           schedule from San Francisco's existing system, and another is the removal of

14           the bail schedule from the previous process San Francisco had in place when

15           the class representatives were in custody.  ECF No. 221 at 2-3 & n.4.

16     iv.  Had Plaintiffs alleged unconstitutional practices in the Third Amended

17           Complaint, rather than simply the enforcement of the bail schedule, the

18           litigation would have unfolded very differently:

19         1.  The Superior Court may have intervened, or the Attorney General may

20              have remained in the case to defend any claims regarding the Superior

21              Court.

22         2.  San Francisco would likely have remained a defendant to defend any

23              *Monell* claims asserted against it.

24         3.  The Sheriff would have participated in the case in a very different

25              way, because she would have been defending challenges to her

26              practices rather than just to her enforcement of state law.

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1          v.   Having failed to allege and prove any unconstitutional conduct beyond

2               enforcement of the bail schedule, Plaintiffs cannot ask for an injunction that

3               would prohibit such further conduct.

4   2.   Plaintiffs cannot request an order requiring the Sheriff "to submit to the Court within 60 days

5        a plan for implementing the Court's order" that "should consider the evidence presented at

6        trial regarding all possible appropriate release options and include a description of any

7        changes the Sheriff intends to make regarding the notice new arrestees will receive regarding

8        release options" if it is intended to require more than the change described above to remedy

9        the constitutional violation.

10       a.   The Sheriff already explained in Section I.B above her plan for implementing the

11            Court's order.

12       b.   Plaintiffs have declined to say whether, and if so why, they believe that plan does not

13            remedy the constitutional violation, or to what extent they believe other changes are

14            necessary.

15       c.   Nonetheless, Plaintiffs apparently envision a post-trial hearing in which the Sheriff

16            will be required to propose further changes of an unspecified nature, Plaintiffs will

17            have an opportunity to object to them, and the Court will adjudicate any dispute.

18       d.   This request for relief suffers from the same problem as the previous one insofar as it

19            seeks to compel the Sheriff to make changes to practices that Plaintiffs did not allege

20            or prove were unconstitutional.  Plaintiffs' injury is alleged to result from the

21            Sheriff's enforcement of state law.  The Sheriff will cease enforcing that law if and

22            when it is declared unconstitutional, ending the claimed constitutional violation.

23       e.    In addition, the Sheriff controls neither the Superior Court nor the City and County

24            of San Francisco (which provides the funding for the OR Project).  The current risk

25            assessment process in San Francisco reflects decisions by the Superior Court and

26            numerous local criminal justice agencies in addition to the Sheriff's Department.

27            ECF Nos. 91, 136-1 ¶ 22, 191 at 3 n.4.  It is not dictated by the Sheriff.  Plaintiffs

28            cannot ask this Court to enter an order requiring non-parties to change particular

34

1    practices, or requiring the Sheriff to submit a "plan" that requires changes by non-

2    parties who are under no obligation to do what the Sheriff says.

3    **f.**   Plaintiffs added footnote 11 above citing cases in which courts have required

4    defendants to submit plans for implementing the court's order.  In the first place, all

5    of those cases were challenges to particular practices, not facial challenges to a law's

6    constitutionality.  Moreover, the Sheriff has already described how she will

7    implement the court's order.  None of the cases cited by Plaintiffs remotely suggests

8    that a court may require a defendant to submit a plan to change practices that were not

9    challenged in the litigation, or by other entities that were not named as defendants.[12]

10   **B.    Proposed Conclusions of Law**

11   Pursuant to the Court's April 20, 2018 Scheduling Order (Dkt. No . 229), the parties will

12   file their respective Proposed Findings of Fact and Conclusions of Law on August 24, 2018.  The

13   Sheriff does not intend to submit any proposed Conclusions of Law, because she has stated that

14   she will not defend the laws at issue in this case.

15   **IV.    FURTHER DISCOVERY OR MOTIONS**

16   Plaintiffs' Position

17   Until three days ago, Plaintiffs did not believe that any further discovery or motions were

18   necessary at this time, and indeed included a proposed insert to the other parties, for this section

19   of the Statement, that read "With the exception of the Motions *in Limine* and Daubert motions

20   filed today, the parties do not believe that further discovery or motions are necessary at this

21   time."  Unfortunately, that has now changed.  The Sheriff—who has represented to this Court *for*

22   *years* that she believes the Bail Schedule to be unconstitutional and would not defend it or this

23

24

_____

25   [12] Plaintiffs also added footnote 10, writing that they responded to interrogatories about the relief
     they were seeking, and that "the Sheriff did not object to the Court, or raise it via motion or

26   otherwise, at that time."  The Sheriff met and conferred with Plaintiffs about that response,
     telling them what relief she believed was permissible and why their requests for relief were

27   improper.  Putting aside that what Plaintiffs served just over a month ago is not what they have
     written here, when a plaintiff serves an interrogatory response stating that it seeks relief that the

28   defendant believes improper, there is no "motion" that the defendant is supposed to file
     immediately with the Court.

35

LATHAM&WATKINS‹‹›
ATTORNEYS AT LAW
SAN FRANCISCO

1    lawsuit in any respect—has, in what appears to be a remarkable turnaround, apparently decided

2    otherwise, in two significant respects:

3    • At a live meet and confer between the parties several days ago, counsel for the

4    Sheriff stated that they would be filing a motion *in limine* to limit evidence

5    Plaintiffs can put on at trial regarding the Sheriff's use of the Bail Schedule—a

6    motion *in limine* that Defendant-Intevenor CBAA did not submit, and one where

7    the Sheriff seeks to exclude evidence regarding the Sheriff's use of the Bail

8    Schedule in "charge-stacking" and "wobbler offense" cases that the president of

9    the CBAA has in fact *admitted* have exacerbating effects on the certified class in

10   this case.  They stated they would file such a Motion notwithstanding it is in

11   violation of the Court's Standing Order and the Court's April 20, 2018

12   Scheduling Order in this case (Dkt. No . 229), which *required all parties* to

13   submit any MILs to the other side by Friday, August 10, 2018.

14   • At the same meet and confer, counsel for the Sheriff stated that they were

15   intending to put on whatever evidence and argument at trial as they saw fit, in

16   order to assist the Court with any perceived "misrepresentations" that they heard

17   during trial.  When pressed about what this proposed role would look like—and in

18   particular, how the Sheriff was planning to occupy the role/put on any evidence or

19   argument—counsel simply stated that they would do so in the "normal" manner,

20   and did not take any positions about whether they would be submitting a witness

21   or exhibit list, ask for some time to put on a case, or otherwise comply in any

22   respect with this Court's clear orders for the appropriate conduct of pretrial and

23   trial proceedings.

24   Plaintiffs are at somewhat of a loss as to this about-face, and how to proceed at this

25   juncture.  It is quite clear that the Sheriff is planning to occupy a self-created "ombudsperson"

26   role in the upcoming trial—seeking to undercut Plaintiffs' ability to prosecute this action, in

27   whatever manner she may deem fit, at any given time.  This is unprecedented, and remarkable

28   given the procedural posture of this case.  The Sheriff is a *defendant* in this action.  She has been

36

1    enforcing a law that she states is unconstitutional, for years.  She only escaped having to defend

2    this action (and provide Initial Disclosures, engage in significant discovery, and so on) by telling

3    this Court she would not defend the Bail Schedule or this action seeking to hold it

4    unconstitutional.   She does not get to occupy a "special" role at trial now, which will apparently

5    allow her to submit whatever motions and evidence she wants, without any apparent need to

6    follow this Court's orders.

7         As a result of the foregoing, very recent developments, Plaintiffs are currently evaluating

8    their options and the relief they intend to seek from the Court.  Unless further meet-and-confer

9    results in the Sheriff satisfactorily resolving these issues, Plaintiffs may be forced to shortly file a

10   motion that will (i) ask the Court for clarification and a ruling on what positions and actions the

11   Sheriff can take at the upcoming trial, as informed and mandated by her representations and

12   positions to date, and (ii) depending on the scope of the Court's clarification, seek limited

13   deposition discovery of the Sheriff and key individuals in the Sheriff's department, so that

14   Plaintiffs are prepared for the evidentiary role that the Sheriff apparently now intends to occupy

15   at trial.

16        Plaintiffs, as noted, will also file an opposition to the Sheriff's untimely motion *in limine*.

17   In that opposition, Plaintiffs intend to discuss at length the assertion by Sheriff's counsel that they

18   were "surprised" on August 13 by the fact that the Sheriff's use of the Bail Schedule—including

19   in "charge-stacking" and "wobbler offense" cases—was part of this case.  That assertion is not

20   supported by (i) the Court's orders in this case, (ii) the *months* of discovery where the matter was

21   discussed at length (with Sheriff's counsel in the deposition room, never objecting), and (iii) in a

22   *specific* notice to the Sheriff regarding Plaintiffs' potential claims for relief.  To be clear,

23   Plaintiffs are not separately, independently challenging the constitutionality of these practices, but

24   they clearly exacerbate the harm experienced by the class as a result of the Sheriff's use of the

25   Bail Schedule.  The Sheriff's and CBAA's "surprise" that these issues can even be considered by

26   this Court is feigned.  Plaintiffs will also discuss the Sheriff's repeated claim, above and below,

27   that this "Court has ruled that this case concerns only the constitutionality of California law, that

28   the Sheriff is a defendant solely because and insofar she is required under state law to enforce the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  bail schedule, and that the case does not challenge any local policies or practices.  ECF No. 99 at

2  10-15."  This Court has never held that.  The fact that the Sheriff says that repeatedly—but can

3  only cite to ECF 99 in its entirety (or to a *5-page* pincite), without any specific cite to where the

4  Court allegedly held such things, and must ignore the Court's recent summary judgment order

5  laying out clearly what is at issue in this case—is telling.

6  Sheriff's Response:

7      Plaintiffs' assertions above are inaccurate.  The Sheriff has not changed her position in

8  any way.  The Sheriff does not intend to present any evidence or argument concerning the

9  constitutionality of the Bail Schedule.  The only "turnaround" is by Plaintiffs.  On August 13,

10  after the date to exchange motions in limine, Plaintiffs disclosed for the first time that they

11  intended to offer evidence at trial not about the Bail Schedule itself, but about allegedly unique

12  ways in which it is used in San Francisco (involving discretionary charging decisions by

13  unspecified entities and charge stacking).

14      Two and half years ago, this Court granted San Francisco's motion for a more definite

15  statement because, among other reasons, Plaintiffs had not specified "whether they challenge a

16  statewide law imposing a duty on superior court judges to 'prepare, adopt, and annually revise a

17  uniform countywide schedule of bail,' Cal. Penal Code § 1269b(c), or whether they challenge the

18  City's application of this state law."  ECF No. 55 at 8.  Since that time, the Court has ruled that

19  this case concerns only the constitutionality of California law, that the Sheriff is a defendant

20  solely because and insofar she is required under state law to enforce the bail schedule, and that

21  the case does not challenge any local policies or practices.  ECF No. 99 at 10-15.[13]  It was on the

22  basis of that ruling that the Sheriff elected not to defend the merits, stating that she declined to

23  defend the constitutionality of California law requiring the use of a bail schedule.  ECF No. 101

24  _____

25  [13] At 8:30 p.m. on August 17th, Plaintiffs objected that this pincite was not precise enough.  So:
    "As noted, California law requires the Sheriff's conduct challenged by plaintiffs. The Penal
26  provides her no discretion to alter the terms of release as she sees fit. Instead, the Sheriff must
    detain individuals lawfully in her custody unless a court order directs their release…." ECF No.
27  99 at 14:3-5.  And: "[P]laintiffs have not tethered the Sheriff's policymaking authority on behalf
    of the County to the conduct at issue." *Id.* at 15:6-7.  And: "The State is the relevant actor when
28  the Sheriff detains a person who does not pay bail and plaintiffs have not alleged a municipal
    policy or practice for which the County may be held liable." *Id.* at 15:17-19.

at 1.  Before that point, however, both the City and County of San Francisco and the Sheriff

vigorously contested any purported "policy and practice" claims, as opposed to a claim based on

the Sheriff's performance of her obligations under state law.  *E.g.*, ECF Nos. 26 at 5-6, 63 at 7-

15, 67 at 1-14, 76 at 5-20, 86 at 1-12.  Similarly, the City and the Sheriff have argued throughout

this case that Plaintiffs are not entitled to relief that goes beyond the legal claim they assert and

prove.  *E.g.*, ECF Nos. 26 at 5-6, 29 at 6-7, 39 at 2-3, 63 at 16-19, 67 at 15, 149 at 6-10, 157 at 2.

   We respond to Plaintiffs' two specific points from above.

   1.  The motion in limine concerns Plaintiffs' disclosure for the first time on August 13

that they would offer evidence that "the charging practices in San Francisco City and County

amplify the harmful effects of the bail schedule," that "San Francisco has a practice of stacking

charges in order to increase a detainee's total bail amount, whereas other jurisdictions in

California do not permit charge stacking," and that "California criminal offenses that can be

charged as felonies or misdemeanors—'wobbler offenses'—are consistently charged as felonies

so that the corresponding bail amount under the Bail Schedule is higher."  This is not evidence

about "a statewide law," but rather "the application of this state law" by the Superior Court,

District Attorney, Police Department, Sheriff's Department, or someone else (it is not clear

whom Plaintiffs hold responsible), in ways that are allegedly unique to San Francisco.  *See* ECF

No. 55 at 8.  The claim in this case, however, does not challenge local policies and practices.

*See, e.g.*, ECF No. 99 at 13 n.8 ("That the Sheriff determines the booking charge, which in turn

dictates the bail amount, is irrelevant to plaintiffs' claims. The 3AC does not allege that the

Sheriff's policy in setting the booking charge is unconstitutional. Under plaintiffs' theory, the

Sheriff acts unconstitutionally when she detains a person who cannot afford the applicable bail,

regardless of the amount.").  Plaintiffs' accusation, presumably penned by their new lawyers,

that the Sheriff has engaged in a "turnaround" by objecting to the introduction of evidence about

what appears to be a new "policy and practice" claim betrays some unfamiliarity with the history

of the case.  And their complaint that the Sheriff did not prepare a motion in limine to exclude

such evidence before Plaintiffs disclosed that they intended to offer it is as unreasonable as it

39

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   sounds.  In any event, the motion has no bearing on the constitutional claim Plaintiffs **have**

2   asserted, and in no way changes the Sheriff's previously stated position on that claim.

3        2.  We believe Plaintiffs are misremembering the conversation at the meet-and-confer.

4   As described above in Section II.B, we asked Plaintiffs to provide more information about their

5   statement that they will offer evidence to "show that new arrestees are often not informed that

6   the [OR] process exists," and specifically, whether they believed that evidence would be

7   inconsistent with the parties' stipulated facts concerning that issue.  Plaintiffs declined to say.

8   Instead, they demanded to know what the Sheriff would do if the Sheriff believed Plaintiffs were

9   presenting evidence that the Sheriff believed to be factually incorrect.  We responded that in light

10  of Plaintiffs' refusal to describe the evidence, we could not specify what the Sheriff would do.

11  But we explained that the Sheriff does not want the Court to rely on incorrect factual assertions

12  about practices in San Francisco, and that all we could say based on the limited information

13  Plaintiffs were providing was that the Sheriff would likely use the tools that are generally

14  available in a trial to call attention to inaccurate information.

15        This is not "a 'special' role … which will apparently allow her to submit whatever

16  motions and evidence she wants, without any apparent need to follow this Court's orders," and it

17  does not make the Sheriff an "ombudsperson."  It also is not a change in her position.  We

18  remind Plaintiffs, for example, that the Sheriff filed a response to their motion for summary

19  judgment pointing out that they got some of their facts wrong.  ECF No. 149 at 1-5.  In their

20  reply, Plaintiffs expressed appreciation rather than indignation:

21        Plaintiffs appreciate the Sheriff's several clarifications about the
        details of the OR Project processes; any inaccuracies were

22        inadvertent.  The Sheriff is in the best position to convey the facts
        about the OR Project—an agency contracted by the Sheriff.

23        Plaintiffs want this Court to have the most accurate and complete
        factual foundation possible, and Plaintiffs agree with the Sheriff

24        that the details of the OR Project (as well as the details of Ms.
        Buffin's job loss) do not affect the merits of the claims before the

25        Court.

26  ECF No. 162 at 1-2.  Plaintiffs have apparently made an about-face now, but they did not say at

27  summary judgment that the Sheriff's response was inappropriate in light of her decision not to

28  defend the constitutionality of the Bail Schedule; neither did this Court.  And it was not.  As

40

1   Plaintiffs properly recognized then, by endeavoring to correct errors in their factual assertions

2   about San Francisco—errors the Sheriff did not know Plaintiffs were going to make until she

3   saw them in their papers—the Sheriff was not trying to prove or disprove anything about the

4   constitutionality of the Bail Schedule, but simply trying to ensure the accuracy of the facts about

5   San Francisco presented to the Court.  That is as true now as it was then.

6          At the meet-and-confer, the Sheriff's counsel told Plaintiffs' and CBAA's counsel that

7   there is no reason the parties should not be able to resolve any lingering factual questions about

8   San Francisco before trial, and that she would participate in any effort to reach further factual

9   stipulations about those issues.  The Sheriff continues to agree that those issues do not affect the

10  merits of Plaintiffs' claim in any event.

11         Apart from any further stipulations the parties may reach, Plaintiffs now propose that the

12  Sheriff stand mute in the face of unspecified factual assertions about San Francisco they make at

13  trial, no matter how wrong they may be.  It is not seeking a special role for the Sheriff to say that

14  this proposal is inconsistent with the Sheriff's and her counsel's view of their responsibilities to

15  the Court.  We also question what reason Plaintiffs have to make new and untested factual

16  assertions about San Francisco at trial, given their own repeated statements (consistent with this

17  Court's prior rulings) that those issues do not affect the merits of their claims, and given the

18  parties' efforts to present such facts by way of stipulation.  To be clear, we do not know what

19  Plaintiffs have in mind, at least apart from the matters that are the subject of the Sheriff's motion

20  in limine, and thus we are unable to say anything about the Sheriff's substantive position with

21  respect to them.

22         We are concerned about the number of times it has been necessary to remind Plaintiffs in

23  these pretrial filings that San Francisco is not on trial here; the Court has held that the case is

24  about the constitutionality of California law.  Because the Sheriff relied on the Court's ruling

25  when deciding not to defend the merits, she does not believe Plaintiffs should be permitted to

26  offer evidence about a new putative "policy and practice" claim, and that is why she has moved

27  to exclude it.  This reflects a change in Plaintiffs' position, not hers.  If Plaintiffs' claim remains

28  what this Court has held it to be—as the Sheriff believes it must—then the Sheriff has no

41

1   affirmative agenda:  There are no facts she seeks to prove, no witnesses she intends to call, and

2   no exhibits she intends to offer.  The Sheriff has already stipulated with Plaintiffs and CBAA

3   about the facts concerning San Francisco they believe to be relevant, after working to verify their

4   accuracy.  If there is more Plaintiffs choose to say about San Francisco, and they do not want to

5   describe it now, then all the Sheriff can do is wait to hear what it is and decide at that time

6   whether any response is warranted, consistent with normal trial procedures.

7   **V.     ESTIMATE OF TRIAL TIME**

8          Plaintiffs and CBAA each expect to present their cases in-chief in two and a half days,

9   with an additional half to full day for rebuttal, as the developments at trial dictate.

10  **VI.    LIST OF MOTIONS *IN LIMINE***

11         The parties met and conferred about their Motions *in Limine*.  The Motions *in Limine*

12  listed below are the contested, non-duplicative motions each party filed today.

13       •   Plaintiffs' Motion *in Limine* No. 1 to Exclude Evidence, Testimony, and Argument

14           Relating to Surety Data Spreadsheets

15       •   CBAA's Motion *in Limine* No. 1 to Exclude Evidence and Argument Concerning

16           Negative Outcomes Allegedly Resulting from Prolonged Pretrial Detention;

17       •   CBAA's Motion *in Limine* No. 2 to Exclude Evidence and Argument Concerning

18           Undisclosed Alternatives;

19       •   CBAA's Daubert Motions to Exclude Opinion Testimony of: Claire M. Brooker,

20           Michael R. Jones, and Robert I. Weisberg.

21       •   Sheriff's Motion in Limine No. 1 to exclude evidence and argument about practices

22           of the San Francisco Superior Court and/or San Francisco criminal justice agencies

23           concerning bail stacking and charging decisions.

24         As noted above, Plaintiffs object to the Sheriff filing a surprise motion *in limine* today,

25  which motion is contrary to the positions and representations the Sheriff has made with this

26  Court for years, and in violation of the Court's Standing Order and April 20, 2018 Scheduling

27  Order (Dkt. No . 229).   In light of these violations, Plaintiffs have not had the Court-ordered

28

42

1   amount of time to prepare their opposition to this motion *in limine* (should the Court choose to

2   consider it), and will file that opposition as soon as practicable.

3   Sheriff's Response:  As described above, the Sheriff's motion is in no way contrary to any

4   positions she has taken or representations she has made in this lawsuit, but fully consistent with

5   them.  It was drafted in response to Plaintiffs' surprise disclosure, ***after*** the date to exchange

6   motions in limine, that they would seek to offer evidence concerning a new putative "policy and

7   practice" claim, in violation of this Court's orders establishing the scope of Plaintiffs' claim.

8   Plaintiffs disclosed this evidence for the first time the evening before the meet-and-confer; the

9   Sheriff told Plaintiffs the next morning that she would move to exclude the newly disclosed

10  evidence; she began drafting the motion immediately following the meet-and-confer and served

11  it on Plaintiffs before noon the next day (August 15); and she offered to confer further with

12  Plaintiffs about it if they wished (they did not).

13  **VII.    TRIAL ALTERNATIVES AND OPTIONS**

14        **A.    Settlement Discussions**

15        Plaintiffs' Position.

16        The parties have had several discussions regarding settlement, which have to date been

17  unsuccessful.  Based on Defendants' responses, Plaintiffs do not believe a settlement is likely at

18  this time, but would be happy to continue discussing such matters and immediately report any

19  developments in this area to the Court.

20        CBAA's Position.

21        The CBAA believes that settlement of this matter would require input from stakeholders

22  (San Francisco Superior Court, San Francisco Probation Department, San Francisco District

23  Attorney, and San Francisco Public Defender) who are not parties in this case.

24        Sheriff's Position.

25        The Sheriff is required to follow California law unless and until it is declared

26  unconstitutional by this Court.  Because Plaintiffs and CBAA intend to litigate the law's

27  constitutionality, the Sheriff does not see any way in which it would be possible to settle this

28  case.

43

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**B.      Consent to Trial Before a Magistrate Judge**

The parties do not believe that reference of all or part of the action to a master or magistrate judge is feasible given the constitutional issues at stake.  The parties do not consent to a trial before a magistrate judge.

**C.      Amendments, Dismissals**

The parties do not request any amendments or dismissals at this time.

**D.      Bifurcation, Separate Trial of Issues**

Plaintiffs' Position:

Plaintiffs do not believe that bifurcation is feasible or desirable in this case. Prior to the preparation of this document, Plaintiffs were not aware that either Defendant believed bifurcation was appropriate, but apparently each seek bifurcation—in different ways.  Both options should be rejected.

Federal Rule of Civil Procedure 42(b) authorizes bifurcation of a trial for "convenience, to avoid prejudice, or to expedite and economize."  Fed. R. Civ. P. 42(b); *see also Lam Research Corp. v. Schunk Semiconductor*, 65 F. Supp. 3d 863, 865 (N.D. Cal. 2014).  Whether to grant bifurcation is within the district court's discretion.  *Id.* (citing *Hangarter v. Provident Life & Acc. Ins. Co*., 373 F.3d 998, 1021 (9th Cir. 2004)).  Courts consider several factors in deciding whether to bifurcate, including "whether the issues are clearly separable, and whether bifurcation would increase convenience and judicial economy, reduce the risk of jury confusion, and avoid prejudice to the parties."  *GEM Acquisitionco, LLC v. Sorenson Grp. Holdings, LLC*, No. C 09-01484 SI, 2010 WL 1729400, at *2 (N.D. Cal. Apr. 27, 2010) (citing *Hirst v. Gertzen*, 676 F.2d 1252, 1261 (9th Cir. 1982)).  The party requesting bifurcation has the burden to prove it is warranted in that particular case.  *Id.* (citation omitted).

Bifurcating the issues in this case would only frustrate the intended purpose of the rule by decreasing convenience and judicial economy.  There is little distinction between the evidence showing significant deprivation and the evidence of plausible alternatives—which also speaks to the Sheriff ultimately complying with whatever relief the Court ultimately deems appropriate in this case.  Plaintiffs are not currently aware of any witness—except class representatives

44

1    themselves, Plaintiffs Crystal Patterson and Riana Buffin—whose testimony will be limited to

2    only one of the issues, and bifurcation would therefore require almost all trial witnesses to testify

3    twice.  And data from documentary evidence proving constitutional deprivation will

4    simultaneously show the effectiveness of alternative systems and how implementation of those

5    systems would ameliorate the constitutional deprivation.  Furthermore, there is no risk of jury

6    confusion here, and bifurcation would waste the Court's time by requiring the issuance of two

7    separate rulings.  Because CBAA ignores these realities and does not cite any law supporting its

8    position, it has failed to carry its burden to show that bifurcation of the constitutional deprivation

9    and plausible alternatives issues is appropriate here.

10        Similarly, Plaintiffs have a hard time understanding what "bifurcation" the Sheriff is

11   actually asking for at this point (similarly, without any citation to case law or any other

12   authority).  Bifurcation does not happen in a vacuum, untethered to actual standards.  Should the

13   Court agree with Plaintiffs' constitutional arguments, and require the Sheriff to present a plan for

14   how its ongoing enforcement will comply with the Court's mandates, the Sheriff will have plenty

15   of time to do so.  Requiring the Court to apparently determine whether "the relief already

16   proposed by the Sheriff" (whatever that is) is adequate, before considering Plaintiffs' views of

17   what relief is appropriate, seems grossly inefficient and inappropriate—and, unsurprisingly, not

18   supported by any law.

19   Intervenor CBAA's Position:

20        CBAA submits that whether Plaintiffs have suffered a "genuinely significant deprivation"

21   of their fundamental right to liberty is a discrete issue that must be answered in the affirmative

22   before the Court conducts a strict scrutiny analysis of Plaintiffs' Fourteenth Amendment claims.

23   *See discussion at* I(A)(2)(h)(i), *supra.* Should the Court be persuaded by *ODonnell II* and find no

24   "significant deprivation" as a matter of law, a rational basis review standard will apply, and the

25   Court and parties need not waste resources with an evidentiary showing regarding Plaintiffs'

26   proposed alternatives and whether they are plausible, as effective, and less restrictive than the

27   *status quo*. As such, CBAA submits that the trial can and should be bifurcated among these two

28   issues.

1    Sheriff's Position:

2         Plaintiffs' requests for relief appear to envision a separate trial of potentially disputed

3    issues regarding what the Sheriff can or must do to remedy the constitutional violation.  This

4    would take the form of a hearing two or three months after trial to adjudicate the "plan" they

5    wish to require the Sheriff to submit, followed by further motions and/or hearings to enforce an

6    injunction against any detention that they consider unconstitutional because it results from

7    currently unspecified conduct and/or judicial decisions.

8         The Sheriff believes that, before requiring her to submit a plan describing particular

9    changes, the Court should determine whether the relief already proposed by the Sheriff would

10   remedy the constitutional violation.  Plaintiffs have not stated or explained their position on that

11   question.

12        The Sheriff is also concerned that, at trial, Plaintiffs would contend (as they already have)

13   that San Francisco's existing system, without the bail schedule, is a "plausible alternative," but at

14   the envisioned post-trial hearing, would claim that the existing system without the bail schedule

15   is inadequate to remedy the constitutional violation and that further changes are necessary.

16   Plaintiffs contend that these are separate issues, but the Sheriff does not believe that Plaintiffs

17   can reasonably or consistently put forth as a "plausible alternative" to an existing

18   unconstitutional system a modified system (*i.e.*, the existing system without the bail schedule)

19   that they will also contend is unconstitutional.

20        To be clear, the Sheriff is not proposing bifurcation or a separate trial of issues, because

21   she believes that the relief to which Plaintiffs are entitled is a consequence of the claim they have

22   asserted, and does not require the further proceedings they envision.  Rather, it appears to the

23   Sheriff that Plaintiffs are effectively proposing a separate trial of issues—with the second phase

24   concerning the relief to be ordered—while denying that this is what they are doing.  To make

25   matters worse, it appears that Plaintiffs may claim in the second phase that the "plausible

26   alternative" they put forth in the first is actually unconstitutional itself.  If the Court concludes

27   that the question of what relief to order involves factual questions about which it should hear

28   evidence—and again, the Sheriff disagrees that it does—then the Sheriff does believe that trying

46

1    to do everything at the same time would derail the current trial plan and likely take considerably

2    longer than the amount of time Plaintiffs and CBAA have proposed.  Moreover, since Plaintiffs

3    have not actually said what changes they think are necessary, and have instead asked only for an

4    order directing the Sheriff to come up with a "plan," the Sheriff does not consider it feasible to

5    have a trial on the contemplated plan on September 17th.

6    Dated:  August 17, 2018                    Respectfully submitted,

7                                               LATHAM & WATKINS LLP

8                                               By:  /s/ Robert E. Sims
9                                                      Robert E. Sims (Bar No. 116680)

10                                              *Attorneys for Plaintiffs*
                                                *Riana Buffin and Crystal Patterson*
11

12   Dated:  August 17, 2018                    DENNIS J. HERRERA
13                                              City Attorney

14                                              By:  /s/ Jeremy M. Goldman
15                                                     Jeremy M. Goldman (Bar No. 218888)
                                                       City Hall, Room 234
16                                                     1 Dr. Carlton B. Goodlett Place
                                                       San Francisco, CA  94102-4682
17                                                     Telephone: +1.415.554.6762
                                                       Email: jeremy.goldman@sfcityatty.org
18                                                     Email: neha.gupta@sfcityatty.org

19                                              *Attorneys for Defendant Sheriff Vicki Hennessy*

20
21   Dated:  August 17, 2018                    DHILLON LAW GROUP INC.
                                                       Harmeet K. Dhillon
22                                                     Krista L. Baughman
                                                       Brandon Baum
23
                                                By:  /s/ Krista L. Baughman
24                                                     Krista L. Baughman (Bar No. 264600)
                                                       177 Post Street, Suite 700
25                                                     San Francisco, CA  94108
                                                       Telephone: +1.415.433.1700
26                                                     Email: bbaum@dhillonlaw.com
27
                                                *Attorneys for Defendant-Intervenor California Bail*
28                                              *Agents Association*

47

1

## ATTESTATION (CIVIL LOCAL RULE 5-1(i)(3))

2

3
   In accordance with Civil Local Rule 5-1(i)(3), I attest that Krista Baughman and Jeremy

4
M. Goldman concurred in filing this statement.

5
Dated:  August 17, 2018      By:    /s/ Robert E. Sims

6
               Robert E. Sims

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

48

JOINT PRETRIAL CONFERENCE STATEMENT
CASE NO. 4:15-CV-04959-YGR