LATHAM & WATKINS LLP
   Sadik Huseny (CA Bar No. 224659)
   Tyler P. Young (CA Bar No. 291041)
   Aaron T. Chiu (CA Bar No. 287788)
   David Derrick (CA Bar No. 316745)
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095
Email: Sadik.Huseny@lw.com
Email: Tyler.Young@lw.com
Email: Aaron.Chiu@lw.com
Email: David.Derrick@lw.com

EQUAL JUSTICE UNDER LAW
   Phil Telfeyan (Bar No. 258270)
400 7th Street NW, Suite 602
Washington, D.C. 20004
Telephone: +1.202.505.2058
Email: Ptelfeyan@equaljusticeunderlaw.org

Attorneys for Plaintiffs
*Riana Buffin and Crystal Patterson*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| RIANA BUFFIN and CRYSTAL PATTERSON, on behalf of themselves and others similarly situated,<br><br>          Plaintiffs,<br><br>   v.<br><br>PAUL M. MIYAMOTO in his official capacity as the San Francisco Sheriff, *et al.*,<br><br>          Defendants. | CASE NO. 4:15-cv-04959-YGR<br><br>**JOINT STATEMENT REGARDING COMPLIANCE WITH FINAL JUDGMENT AND INJUNCTION** |

1     Plaintiffs and Defendant the San Francisco Sheriff hereby submit this Statement in advance

2 of the compliance hearing scheduled for July 24, 2020. *See* Dkt. 399.

3 **I.   PLAINTIFFS' STATEMENT**

4     **A.   Background**

5     Since the Parties' last update on April 24, 2020 (Dkt. 398), the initial 3-month period of

6 the implementation of the Injunction and Final Judgment ("Injunction") entered by the Court has

7 been completed.  On June 19, 2020, the Sheriff provided to Plaintiffs a report summarizing the

8 data collected and maintained pursuant to Section II of the Injunction, in addition to the underlying

9 data itself. *See* Exhibit A (the "Report").  The Report summarizes the data collected from February

10 20, 2020 through May 31, 2020.

11     Given that the initial 3-month period of the Injunction coincided with the COVID-19

12 pandemic and numerous emergency procedures enacted related to the pandemic, the data provided

13 necessarily reflects both the implementation of the Injunction as well as these additional

14 developments and procedures.   We therefore provide a brief overview of these relevant

15 developments.

16     When the Parties last submitted a compliance update, on April 24, 2020, the Judicial

17 Council of California had recently adopted several new emergency rules in light of the onset of

18 the COVID-19 pandemic, and in particular, Emergency Rule 4, which required each superior court

19 in the state to implement a new statewide "Emergency Bail Schedule" that set bail at $0 for all

20 misdemeanors and felonies other than those enumerated in the rule. *See* Dkt. 396, Ex. A.  Pursuant

21 to the Parties' request, the Court entered an order clarifying the Final Judgment and Injunction in

22 this action does not prevent the Sheriff from enforcing the statewide Emergency Bail Schedule

23 under Emergency Rule 4.  *See* Dkt. 397. The San Francisco Superior Court subsequently

24 implemented the statewide emergency rules from the Judicial Council of California, including

25

26

27

28

implementing the Emergency Bail Schedule authorized by the Judicial Council that set bail to $0 for many offenses.[1]

   In that intervening time, the San Francisco Superior Court also entered various General Orders implementing emergency relief under Cal. Government Code § 68115 to address the impact of COVID-19 on court operations.  Beginning with the March 24, 2020 implementation order, and each subsequent implementation order through to the one dated April 30, 2020, the San Francisco Superior Court extended the time period under Cal. Penal Code § 825 within which a defendant charged with a felony offense must be arraigned before a magistrate from 48 hours to not more than 7 days.  The San Francisco Superior Court had initially requested the ability to make this adjustment, which the Judicial Council authorized.[2]  The Judicial Council subsequently issued a statewide order on March 30, 2020 authorizing all superior courts the ability to extend time under CPC 825 to arraign a defendant charged with a felony from 48 hours to 7 days.[3]

   On June 10, 2020, the Judicial Council voted to end the Emergency Bail Schedule implemented under Emergency Rule 4.[4]  Though the emergency bail schedule was no longer mandatory, superior courts were to implement their own procedures and the Judicial Counsel "encouraged [courts] to retain or adopt schedules with $0 bail or significantly reduced bail levels for most misdemeanors and low-level felonies, where appropriate" and "direct[ed] each superior

---

[1] Superior Court of California County of San Francisco, General Order re: Implementation of Emergency Relief (April 30, 2020) https://www.sfsuperiorcourt.org/sites/default/files/pdfs/COVID-19/Implementation%20Order%20-%20COVID-19%202020%2004%2030.pdf?1594863005461.

[2] Hon. Tani G. Cantil-Sakauye, Judicial Council of California, Emergency Order of the Chief Justice (Mar. 16, 2020), https://www.sfsuperiorcourt.org/sites/default/files/pdfs/CJ%20Emergency%20Order%20-%20COVID-19%202020%2003%2016.pdf?1594956522066.

[3] Hon. Tani G. Cantil-Sakauye, Judicial Council of California, Statewide Order of the Chief Justice (Mar. 30, 2020), https://www.sfsuperiorcourt.org/general-info/Information-Regarding-Coronavirus-And-Court-Operations.

[4] News Release, Judicial Council, Chief Justice End Some Emergency Measures as California and Courts Expand Reopening (June 10, 2020), https://newsroom.courts.ca.gov/news/judicial-council-chief-justice-end-some-emergency-measures-as-california-and-courts-expand-reopening.

1    court to . . . provid[e] timely arraignments."[5]  In Plaintiffs' view, this guidance made sense, because

2    according to the Judicial Council itself, implementation of these emergency procedures had

3    reduced California's jail population by more than 20,000 defendants, helping to flatten the curve

4    of the pandemic[6]—and Plaintiffs are not aware of any study, analysis, or data demonstrating that

5    this significant reduction in unnecessary jail time had any negative impact on overall public safety

6    or any other legitimate government goal.  Numerous counties, including in the Bay Area, have

7    followed the Judicial Council's guidance, and continued their use of the $0 bail system.[7]  The San

8    Francisco Superior Court, however, elected to end its use of the $0 bail schedule.[8]  Plaintiffs are

9    unaware of any study or analysis done to support the San Francisco Superior Court's decision,

10   contrary to the Judicial Council's guidance and encouragement.

11           Also on June 10, Chief Justice Cantil-Sakauye rescinded her March 30 statewide order

12   authorizing superior courts to extend the time period under CPC § 825 (within which a defendant

13   charged with a felony must be arraigned before a magistrate) from 48 hours to no more than 7

14   days.[9]  Pursuant to that statewide order, any arraignment extension implemented by a superior

15   court (including the one implemented by San Francisco Superior Court on April 30) was rescinded

16   effective June 20, 2020.[10]

17

18

---

[5] Judicial Council of California, Circulating Order Memorandum Order Number CO-20-11 (June 10, 2020) https://jcc.legistar.com/View.ashx?M=M&ID=793396&GUID=148E67E5-F24A-4FEC-AA1B-609CA5D3B2D1.

[6] News Release, Judicial Council, Chief Justice End Some Emergency Measures as California and Courts Expand Reopening (June 10, 2020) https://newsroom.courts.ca.gov/news/judicial-council-chief-justice-end-some-emergency-measures-as-california-and-courts-expand-reopening.

[7] Bay City News, SF DA Criticizes Superior Court for Ending Zero-Bail Policy Amid Pandemic, NBC Bay Area (June 19, 2020, 9:54 p.m.), https://www.nbcbayarea.com/news/local/sf-da-criticizes-superior-court-for-ending-zero-bail-policy-amid-pandemic/2312837/.  Neighboring counties, such as Alameda, Contra Costa and Santa Clara, decided to continue with the use of $0 bail.

[8] *Id.*

[9] Hon. Tani G. Cantil-Sakauye, Judicial Council of California, Statewide Emergency Order of the Chief Justice (Jun. 10, 2020), https://newsroom.courts.ca.gov/internal_redirect/cms.ipressroom.com.s3.amazonaws.com/262/files/20205/StatewideOrderonArraignmentsbyCJ-ChairofJC%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.pdf.

[10] *Id.* at 2.

3

As reflected in the Sheriff's initial report, the numbers Plaintiffs received for this first reporting period were undoubtedly implicated by these COVID-19 related emergency procedures. Given that these procedures continued to be in place through June 20, we expect that the data for the next reporting period to be somewhat implicated as well (as it will, of course, should new procedures be implemented). Nevertheless, although a fulsome set of data related only to the Buffin Injunction proceeding will not be available until later in the year, the data received allows Plaintiffs to provide an initial set of observations.

**B.    Sheriff's Data and Plaintiffs' Observations**

Based on the set of data Plaintiffs reviewed, we are pleased to see that procedures mandated in the Final Order and Injunction have been implemented. Based on the preliminary report, we are cautiously optimistic that the stipulated injunction is achieving its intended result for many class members. As detailed in the attached summary (Ex. A), Pretrial staff completed 306 workups during this compliance period, and only 15 of those workups were uploaded outside of the 8-hour deadline. The Sheriff reported that the 15 instances of non-compliance were largely due to administrative errors that the Pretrial staff has since corrected. Of the 306 workups, 304 were heard by duty judge within the 18-hour period allotted. The other two were subject to law enforcement extension requests, and they were both heard within the 28 hours allotted. These numbers indicate that Pretrial staff and the Superior Court are executing the terms of the injunction on these fronts.

Notwithstanding these positive reports, we believe it is necessary to advise the Court of two important topics arising from the data, based on current events.

***First***, the period captured by this three-month report was highly unusual because it included a deviation from standard detention procedures given the implementation of Emergency Rule 4. The primary consequence of Emergency Rule 4, for these purposes, is that many of the individuals for whom a risk assessment would have been completed were instead released on $0 bail. Thus, the underlying data reported for this period reflects a reduction in the number of cases prepared and presented for judicial review via the Buffin Injunction procedures. Accordingly,

there remains an open question as to whether the current system will be able to appropriately handle the increased capacity that will surely begin now that Emergency Rule 4 and the $0 bail schedule has been rescinded.  We have raised this concern with the Sheriff, who has assured us that capacity is sufficient for compliance, even as volume increases.  We will continue monitoring this issue into in the next reporting period.

**Second**, based on the data provided to date, Plaintiffs are quite concerned about one particular subset of pre-arraignment arrestees: those charged with § 1270.1 offenses, for whom the Buffin OR procedures are not applicable, but as to whom the Court granted the ability to file § 1269c applications requesting early release (rather than being forced to wait until arraignment). According to the Sheriff's data, the Sheriff is aware of only 4 instances where these individuals charged with offenses enumerated in § 1270.1 filed an application for independent judicial consideration pre-arraignment.  That reflects a mere **0.4%** of the 997 individuals who were eligible to apply for such relief from the reporting period.

As the Court will recall, it was very important to Plaintiffs that under the Buffin Injunction individuals charged with § 1270.1 offenses (who would not be eligible for OR release, and who would of course not be eligible to be released on cash bail) be allowed at least the opportunity to petition a judicial officer for release from jail prior to arraignment.  *See* Sept. 3 2019 Hr'g. Tr. at 5:17–20  (discussing elderly woman charged with assault with a "deadly weapon"—her walking cane—who would be forced to stay in jail until arraignment were there no application process). Although the Sheriff would not stipulate to such an application process (and took no position on it), the Court agreed with Plaintiff's proposal and ordered the form of the injunction Plaintiffs proposed.  Dkt. Nos. 368, 372.

The Sheriff's data reveals that during the reporting period, the average time between booking and arraignment exceeded three (3) days.  This average may have been affected, in part, by the emergency procedures implemented by the San Francisco Superior Court during the reporting period, which extended the time under which arrestees charged with felonies are to be arraigned from 48 hours to 7 days (and which extension we understand was rescinded for everyone,

effective June 20, by statewide order of the Judicial Council). Plaintiffs intend to examine this data closely over the next reporting period to ascertain and better understand the historical and current trends on this issue.  But whatever the cause may be for this reporting period, given this length of time of pre-arraignment incarceration, one would expect many individuals charged with § 1270.1 offenses to have filed an application for early release.

That did not happen.  Four applications—out of 997 eligible arrestees—represents an extremely small percentage of applications utilizing this important safety valve.  The practical result of this is that the individuals who were arrested and charged with crimes under § 1270.1 no longer had access to bail as a result of the Injunction, and had to wait for potentially up to a week in jail before arraignment.  The Sheriff has informed Plaintiffs that he has displayed a notice related to § 1269c in the jail and that detainees receive a document explaining the availability of such applications.  Plaintiffs appreciate that some efforts have been made to inform arrestees of this important right.  The data indicates, however, that these methods of informing arrestees of their rights may not be sufficient, or that other issues may be in play that result in very low utilization of this important mechanism.     During the next reporting period, Plaintiffs will seek to work closely with the Sheriff, in addition to the Public Defender and related criminal justice constituencies, to determine why § 1269c applications are so low, and what can be done to ensure that these class members are adequately protected by the Buffin Injunction.  We have no reason to doubt at this time that we will be able to work collaboratively to solve this issue, but will provide the Court with a full report, including seeking whatever relief we feel may be necessary at that time, during the next reporting period.

**C.   Sheriff's Statement**

The Sheriff has continued to comply with the injunction, and provided data and the attached report to Plaintiffs' counsel on June 19, 2020.  Although the issues Plaintiffs raise above do not concern compliance with the injunction, the Sheriff appreciates Plaintiffs' raising them and looks forward to discussing them with Plaintiffs' counsel.  Going forward, the Sheriff also encourages Plaintiffs to share in advance complex issues like these that they wish to raise in a joint report so

1    that the Sheriff has a meaningful opportunity to respond and the parties can both meet and confer

2    and make a fuller presentation to the Court.

3

4    Dated: July 17, 2020                   Respectfully submitted,

5                                  LATHAM & WATKINS LLP
                                 Sadik Huseny

6                                  Tyler P. Young
                                 Aaron T. Chiu

7                                  David Derrick

8

                               By:   /s/ Sadik Huseny

9                                    Sadik Huseny

10                              *Attorneys for Plaintiffs*
                             *Riana Buffin and Crystal Patterson*

11

12    Dated: July 17, 2020                   Respectfully submitted,

13                                    DENNIS J. HERRERA
                               City Attorney

14

15                                By:   /s/ Jeremy M. Goldman

16                                  Jeremy M. Goldman

                             *Attorneys for Defendant*

17                              *Sheriff Vicki Hennessy*

18

19

20

21

22

23

24

25

26

27

28

1

## SIGNATURE ATTESTATION

2        I, Sadik Huseny, am the ECF user whose ID and password are being used to file this Joint

3    Statement Regarding Compliance with Final Judgment and Injunction.  In compliance with Civil

4    Local Rule 5-1(i)(3), I hereby attest that concurrence in the filing of this document has been

5    obtained from each of the other Signatories.

6

7    Dated:  July 17, 2020                   /s/ Sadik Huseny

8                                   Sadik Huseny

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8